NO. 25-2153

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

THOMSON REUTERS ENTERPRISE CENTRE GMBH AND
WEST PUBLISHING CORPORATION,

PLAINTIFFS - APPELLEES,

V.

ROSS INTELLIGENCE INC.,

DEFENDANT - APPELLANT.

On Appeal from the United States District Court
for the District of Delaware
Case No. 1:20-cv-613
The Honorable Stephanos Bibas, Circuit Judge, Sitting by Designation

# BRIEF OF *AMICI CURIAE* ELECTRONIC FRONTIER FOUNDATION, AMERICAN LIBRARY ASSOCIATION, ASSOCIATION OF RESEARCH LIBRARIES, INTERNET ARCHIVE, PUBLIC KNOWLEDGE, AND PUBLIC.RESOURCE.ORG IN SUPPORT OF DEFENDANT-APPELLANT AND REVERSAL

Victoria J. Noble (337290)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Fax: (415) 436-9993
Email: tori@eff.org

*Counsel for Amici Curiae*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amici* state that they do not have a parent corporation and that no publicly held corporation owns 10% or more of their stock.

Dated: September 26, 2025                    s/ Victoria J. Noble
                                                     Victoria J. Noble

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT..........................................................i

TABLE OF AUTHORITIES................................................................... iii

STATEMENT OF INTEREST AND IDENTITY OF *AMICI CURIAE* ..................1

INTRODUCTION....................................................................................4

ARGUMENT ........................................................................................5

      I.      HOLDINGS IN JUDICIAL OPINIONS ARE NOT
             COPYRIGHTABLE. ............................................................5

      II.     THE FACTUAL NATURE OF THE HEADNOTES SHOULD
             PLAY A DECISIVE ROLE IN THE FAIR USE ANALYSIS ..........11

CONCLUSION ...................................................................................15

CERTIFICATIONS...............................................................................16

# TABLE OF AUTHORITIES

## Cases

*Am. Soc'y for Testing & Materials v. UpCodes, Inc.*,
752 F. Supp. 3d 480 (E.D. Pa. 2024) ............................................................ 14, 15

*Banks v. Manchester*,
128 U.S. 244 (1888) ............................................................................................ 5

*Callaghan v. Myers*,
128 U.S. 617 (1888) ............................................................................................ 5

*Cambridge Univ. Press v. Patton*,
769 F.3d 1232 (11th Cir. 2014) ........................................................................ 13

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) .......................................................................................... 12

*Compaq Computer Corp. v. Ergonome Inc.*,
387 F.3d 403 (5th Cir. 2004) ............................................................................ 13

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) .................................................................................... *passim*

*Google LLC v. Oracle America, Inc.*,
593 U.S. 1 (2021) ........................................................................... 11, 12, 13, 14

*Int'l Code Council, Inc. v. UpCodes, Inc.*,
2020 WL 2750636 (S.D.N.Y. May 27, 2020) .................................................... 10

*L. Batlin & Son, Inc. v. Snyder*,
536 F.2d 486 (2d Cir. 1976) ........................................................................... 6, 7

*Lowenschuss v. West Pub. Co.*,
542 F.2d 180 (3d Cir. 1976) ............................................................................... 4

*M. Kramer Mfg. Co. v. Andrews*,
783 F.2d 421 (4th Cir. 1986) .............................................................................. 7

*Matthew Bender & Co. v. West Pub. Co.*,
158 F.3d 674 (2d Cir. 1998) ..................................................................... 7, 9, 10

*Murphy v. Millenium Radio Group LLC*,
650 F.3d 295 (3d Cir. 2011) ............................................................................. 14

*New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*,
497 F.3d 109 (2d Cir. 2007) ........................................................................ 10, 11

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964)...........................................................................9

*Online Pol'y Grp. v. Diebold, Inc.*,
  337 F. Supp. 2d 1195 (N.D. Cal. 2004) ...........................................14

*Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*,
  38 F.4th 331 (3d Cir. 2022) ..........................................................6, 10

*Southco, Inc. v. Kanebridge Corp.*,
  390 F.3d 276 (3d Cir. 2004) ..............................................................5

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
  756 F.3d 73 (2d Cir. 2014) .................................................12, 13, 14

*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016) ............................................................13

*Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*,
  765 F. Supp. 3d 382 (D. Del. 2025).....................................................6

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.*,
  293 F.3d 791 (5th Cir. 2002) .......................................................6, 10

*Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*,
  342 F.3d 191 (3d Cir. 2003) ............................................................12

*Wheaton v. Peters*,
  33 U.S. 591 (1834).............................................................................5

**Statutes**

17 U.S.C. § 102(a)................................................................................7

17 U.S.C. § 107(2)..............................................................................11

**Other Authorities**

Edward Lee, *Fair Use and the Origin of AI Training*,
  63 Houston L. Rev. 101 (forthcoming 2025).....................................15

L. Ray Patterson & Craig Joyce, *Monopolizing the Law: The Scope of
  Copyright Protection for Law Reports and Statutory Compilations*,
  36 UCLA L. Rev. 719 (1989) ............................................................11

Pierre N. Leval, *Judging under the Constitution: Dicta about Dicta*,
  81 N.Y. Law Rev. 1249 (Oct. 2006).....................................................8

William F. Patry & Shira Perlmutter, *Fair Use Misconstrued: Profit,
  Presumptions, and Parody*, 11 Cardozo Arts & Ent. L.J. 667 (1993)................15

**Constitutional Provisions**

U.S. Const. Art. I, § 8, cl. 8............................................................................6, 13

# STATEMENT OF INTEREST AND IDENTITY OF *AMICI CURIAE*[1]

The Electronic Frontier Foundation ("EFF") is a nonprofit civil liberties organization with over 30,000 active donors that has worked for 35 years to protect consumer interests, innovation, and free expression in the digital world. EFF and its members have a strong interest in ensuring that copyright law fulfills its purpose of promoting progress, and in helping the courts and policymakers ensure that copyright law serves the interests of creators, innovators, and the general public. EFF has appeared before multiple courts to advocate for the public's right to access the law, free from the restrictions of copyright. *See, e.g., Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262 (D.C. Cir. 2023) (counsel for defendant); *Am. Soc'y for Testing & Materials v. Upcodes, Inc.*, No. 24-2965, ECF No. 62 (3d Cir. Mar. 31, 2025) (Br. for Public.Resource.Org, *et al.*, as *amici curiae*) (counsel for *amici*).

The American Library Association ("ALA"), established in 1876, is a nonprofit professional organization of about 50,000 librarians, library trustees, and other friends of libraries dedicated to providing and improving library services and promoting the public interest in a free and open information society. The

---

[1] Pursuant to Federal Rule of Appellate Procedure Rule 29(a)(4)(E), *amici* certify that no person or entity, other than *amici curiae*, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. The parties have consented to the filing of this brief.

Association of Research Libraries ("ARL") is an association of 127 research libraries in the United States and Canada. ARL promotes equitable access to and effective use of recorded knowledge in support of teaching and research. ALA and ARL work collaboratively on copyright issues through the Library Copyright Alliance. Collectively, ALA and ARL represent over 100,000 libraries in the United States. ALA and ARL members rely on the government edicts doctrine to preserve and provide access to all elements of the law.

The Internet Archive is a public nonprofit organization that was founded in 1996 to build an Internet library. Located in San Francisco, California, the Internet Archive collects, records, and digitizes material from a multitude of sources, including libraries, educational institutions, and government agencies. The Internet Archive provides free public access to its collections to researchers, scholars, and the general public. The Internet Archive was designated a Federal Depository Library in 2025.

Public Knowledge is a non-profit public interest organization that defends consumer rights online. Public Knowledge advocates for balanced intellectual property policies that promote access to knowledge, support innovation, and serve the broader public good.

Public.Resource.Org ("Public Resource") is a nonprofit organization dedicated to making all government information, including law, easily and freely

available online. Not long ago, that would have seemed impossible; today, it is not just possible but critically important. Thanks in part to Public Resource's work, the public can access judicial opinions, state and federal statutes, and the Federal Register, online, for free, without needing to waive any rights or surrender personal information, and with the full ability to study and share what they learn. Public Resource was the defendant in *Georgia v. Public.Resource.Org*, where the Supreme Court held that the government edicts doctrine allowed the organization to post the Official Code of Georgia Annotated online; and in *ASTM v. Public.Resource.Org*, where the D.C. Circuit Court of Appeals held that Public Resource's publication of standards incorporated by reference into law was a lawful fair use. Given its mission and long experience with efforts to use copyright claims to inhibit the public's ability to read, share, and comment on law in all of its forms, Public Resource believes it can help the Court understand the full array of public interests at issue in this case.

**INTRODUCTION**

"[N]o one can own the law." *Georgia v. Public.Resource.Org*, 590 U.S. 255, 265 (2020). That is so because "'[e]very citizen is presumed to know the law,' and 'it needs no argument to show that all should have free access' to its contents." *Id.* (alteration omitted). The "public interest in and need for access to" judicial decisions is hard to overstate—the "effective and efficient functioning" of our entire legal system depends on it. *Lowenschuss v. West Pub. Co.*, 542 F.2d 180, 185 (3d Cir. 1976). Legal research tools facilitate unfettered access to the law by helping users locate relevant precedent.

Copyright law does not prohibit the use of judicial decisions to build useful legal research tools. It does not empower private companies to monopolize access to the law. Yet the district court's decision granting summary judgment to Thomson Reuters on infringement of its Westlaw headnotes would expand private control over the law and increase the public's costs of access.

The court held as a matter of law that Westlaw headnotes were copyrightable—they're not. Even if they are copyrightable, any copyright is extraordinarily thin. This, along with the other statutory factors, should have rendered Ross Intelligence's use of the materials a non-infringing fair use.

Prohibiting the use of paraphrased judicial holdings to build a new legal research tool is inconsistent with the central aim of copyright: promoting the

creation of useful works for the public's benefit. Robust access to the law isn't just a public benefit—it's a necessity.

*Amici* urge this Court to reverse.

## ARGUMENT

### I. HOLDINGS IN JUDICIAL OPINIONS ARE NOT COPYRIGHTABLE.

Under the nearly two-hundred-year-old "government edicts" doctrine, judicial opinions are never copyrightable. *Public.Resource.Org*, 590 U.S. at 263–65, 276. Thus, publishers like Thomson Reuters can never own copyrights in judicial decisions written by courts. *Wheaton v. Peters*, 33 U.S. 591, 668 (1834) ("no reporter has or can have any copyright in the written opinions delivered by [the] court"); *see also Banks v. Manchester*, 128 U.S. 244, 253–54 (1888). Adding headnotes to a case report does not confer copyright protection to judicial opinions published on Westlaw. Thomson Reuters can only own copyrights in its original contributions "not embracing the written opinions of the court." *Callaghan v. Myers*, 128 U.S. 617, 649 (1888).

Those contributions are not universally subject to copyright. They must still possess "some minimal degree of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345–51 (1991) ("originality is a constitutionally mandated prerequisite for copyright protection"); *see also Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 281 (3d Cir. 2004) (*en banc*) (Alito, J.). The new contributions must

differ from the underlying judicial opinions in a non-trivial way. *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 339–40 (3d Cir. 2022).

The originality requirement "is the means by which copyright advances the progress of science and art" to benefit the public. *Feist*, 499 U.S. at 345–46, 349–50; *see also* U.S. Const. Art. I, § 8, cl. 8. "To extend copyrightability to minuscule variations would simply put a weapon for harassment in the hands of mischievous copiers intent on appropriating and monopolizing public domain work." *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 491–92 (2d Cir. 1976). Originality is particularly important in the context of judicial opinions, because it helps preserve the public's access to the law.

Individual Westlaw headnotes are unlikely to satisfy the originality requirement. The district court erroneously concluded that "all headnotes, even any that quote judicial opinions verbatim, have original value as individual works," because they "express[ ] the editor's idea about what the important point of law from the opinion is." *Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 765 F. Supp. 3d 382, 393 (D. Del. 2025) (hereinafter "Op."). This is incorrect because simply reciting a holding of a case—an uncopyrightable fact—is not a legally sufficient, "original" creative contribution. *See Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 801 (5th Cir. 2002) ("for copyright purposes, laws are 'facts'"); *Feist*, 499 U.S. at 344 ("That there can be no copyright in facts is universally

understood.")

The district court reasoned that copyright obtains because a lawyer-editor chisels a headnote from a judicial opinion, much like a sculptor chisels a sculpture out of raw marble. Op. at 393. This analogy misses the mark; the Copyright Act *may* protect sculptural works—but *only* if they satisfy the originality requirement. *See Southco*, 390 F.3d at 281 (quoting 17 U.S.C. § 102(a)) (emphasis original) ("Congress has provided copyright protection for '*original* works of authorship'"); *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 433 (4th Cir. 1986). Even sculptures aren't copyrightable if they merely replicate existing works. *L. Batlin & Son, Inc.*, 536 F.2d at 491–92.

There may be cases in which the selection and curation of existing material involves enough originality to confer copyright protection. This is not such a case. Simply identifying the holding of a case is insufficient for originality, because it typically doesn't require "making non-obvious choices from among more than a few options." *Matthew Bender & Co. v. West Pub. Co.*, 158 F.3d 674, 682, 689 (2d Cir. 1998); *See also Feist*, 499 U.S. at 362 (holding that "entirely typical" and "obvious" selection of information did "not satisfy the minimum constitutional standards for copyright protection").

The holding of a case is often readily apparent, and in many cases, has already been cited by other courts. Most often, "there can be no doubt" whether

language is holding or dicta. Pierre N. Leval, *Judging under the Constitution:*

*Dicta about Dicta*, 81 N.Y. Law Rev. 1249, 1258 (Oct. 2006).[2] Without findings of

fact showing that identifying the holdings expressed in each headnote required

non-obvious, discretionary decision making, the district court should not have

granted summary judgment to Thomson Reuters on copyrightability.

Nor are any slight variations to the wording of judicial opinions likely to be

enough to confer copyright protection.[3] The district court's opinion does not

reproduce any of the headnotes at issue nor specify how the headnotes differed

from the underlying judicial opinions. However, typical Westlaw headnotes closely

mirror the language of the opinions, sometimes with trivial modifications for

readability or concision. Consider the following headnote for *New York Times v.*

*Sullivan*:[4]

---

[2] Available at https://perma.cc/4HFE-U96H.

[3] The district court granted summary judgment as to 2,243 headnotes sealed headnotes that it deemed to "differ significantly" from the underlying judicial decisions in an unspecified manner. Op. at 395–96.

[4] *Amici* do not know whether this headnote is among the 2,243 headnotes at issue on appeal. It is provided here solely as an illustration.

| JUDICIAL DECISION | WESTLAW HEADNOTE 9 | LEXIS HEADNOTE 9 |
|---|---|---|
| Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.[5] | There is a national commitment to principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic and sometimes unpleasantly sharp attacks on government and public officials. | Debate on public issues should be uninhibited, robust, and wide-open, and it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. |

Thomson Reuters modified the language of the case, but only by four words that do little work in the holding. Nor is identifying this specific language as important much of a judgment call: 1,117 cases on Westlaw have cited it, and its competitor, Lexis, identified the very same language in its own headnote. Copyrightability doesn't demand novelty, but "obvious" choices that "have been selected countless times before" are not enough. *Matthew Bender & Co.*, 158 F.3d at 677, 683; *see also Feist*, 499 U.S. at 345–46, 362–63.

A single headnote typically represents just one fact—a single holding—and

---

[5] *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

is not a "creative arrangement" or organizational structure of multiple holdings, *i.e.* facts. *Cf. Matthew Bender & Co.*, 158 F.3d at 681. An individual headnote is simply a statement of a single fact, and any creativity "is, at most, de minimis." *Pyrotechnics Mgmt., Inc.*, 38 F.4th at 340; *see also Feist,* 499 U.S. at 363 ("As a constitutional matter, copyright protects only those constituent elements of a work that possess more than a *de minimis* quantum of creativity.")

Even if "any part" of the headnotes is expression, "the merger doctrine bars enforcement of copyright protection for that expression." *Pyrotechnics Mgmt., Inc.*, 38 F.4th at 339 n.7. "Under merger, when the idea and the expression of the idea coincide, then the expression will not be protected in order to prevent creation of a monopoly on the underlying art." *Id.* (cleaned up).

The text of judicial opinions "are the unique, unalterable expression of the 'idea' that constitutes…law." *Veeck*, 293 F.3d at 800–02. Granting a copyright over key language in a judicial decision, or a close paraphrase thereof, "would bar others from expressing the underlying idea," *i.e.* the law. *See New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 117 (2d Cir. 2007); *Int'l Code Council, Inc. v. UpCodes, Inc.*, 2020 WL 2750636, at *21 (S.D.N.Y. May 27, 2020) (merger doctrine applied to model codes that differed slightly from enacted laws). Thus, even if identifying the language of a holding within a judicial opinion entails some creativity, the merger doctrine precludes copyright protection.

Finally, "policy considerations weigh heavily in determining the appropriate application of the merger doctrine." *New York Mercantile Exch.*, 497 F.3d at 118. Robust application of merger in concert with the government edicts doctrine is essential to preserving access to the law. "The question is whether copyright as a statutory monopoly enables a law book publisher to capture the law from the public domain and retain control of the key that unlocks access." L. Ray Patterson & Craig Joyce, *Monopolizing the Law: The Scope of Copyright Protection for Law Reports and Statutory Compilations*, 36 UCLA L. Rev. 719, 814 (1989).[6] The merger doctrine prevents this outcome.

## II. THE FACTUAL NATURE OF THE HEADNOTES SHOULD PLAY A DECISIVE ROLE IN THE FAIR USE ANALYSIS.

Even if this Court were to affirm the holding that Westlaw headnotes are copyrightable subject matter, the Court should still reverse on the grounds of fair use. To the extent that the headnotes are copyrightable, that protection is exceptionally thin, and is strictly limited to the minimal alterations that Westlaw attorney-editors have made to the judicial language included in its headnotes. Here, the thinness of any copyrights, primarily considered under the second statutory fair use factor, must weigh heavily in favor of fair use. 17 U.S.C. § 107(2); *see also Google LLC v. Oracle America, Inc.,* 593 U.S. 1, 20–21 (2021).

---

[6] Available at https://perma.cc/2CC9-9VSR.

Fair use is "a context-based check that can help to keep a copyright monopoly within its lawful bounds." *Id.* at 18–19, 21–22. Fair use requires a "case-by-case" exploration of all four factors, "weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577–78 (1994); *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 200 (3d Cir. 2003), *as amended* (Sept. 19, 2003). "[S]ome factors may prove more important in some contexts than in others." *Google*, 593 U.S. at 19. The thinness of the copyright in factual works, primarily considered under the second factor, may determine the fair use inquiry. *Id.* at 21. Overall, fair use "puts a heavy thumb on the scale in favor of an unrestrained ability to say what the law is." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1270 (D.C. Cir. 2023) (cleaned up).

The second factor looks at "the nature of the copyrighted work"—an inquiry that is key to the fair use analysis in this case. *Id.* at 1268. This factor looks at whether a work "falls within the core of…copyright's protective purposes." *Campbell*, 510 U.S. at 586; *Video Pipeline, Inc.*, 342 F.3d at 200. Facts are not copyrightable. 17 U.S.C. § 102(b). Works that primarily convey facts, without adding significant creative expression, have at most a "thin" copyright; the second factor ensures that such works are highly amenable to fair use. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 87 (2d Cir. 2014); *see also*

*Google*, 593 U.S. at 20–21, 27–29.

The second factor is related to the inquiry into whether a work is copyrightable in the first place: both concern the amount of creativity present in the work. But while "even a slight amount" of creativity suffices for copyright to apply, *Feist*, 499 U.S. at 345, the second factor looks beyond this initial inquiry. *See Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1268 n.25 (11th Cir. 2014) ("[T]he mere fact that the copied portions are themselves copyrightable cannot incline the second factor against fair use.") (cleaned up); *Swatch*, 756 F.3d at 87; *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 410 (5th Cir. 2004). A highly factual work "more of diligence than of originality or inventiveness" is more likely to be a fair use. *See TCA Television Corp. v. McCollum*, 839 F.3d 168, 180 (2d Cir. 2016) (cleaned up). Both the second factor and the prohibition on extending copyright to facts help ensure that copyright fulfills its Constitutional purpose to "promote the Progress of Science and useful Arts," U.S. Const. Art. I, § 8, cl. 8, by removing impediments to the use and dissemination of facts. *See Feist*, 499 U.S. at 349–50; *Google*, 593 U.S. at 22.

By their very nature, the highly factual works at issue in this case— Westlaw's headnotes—bear an exceedingly thin copyright at most. *See supra* Section I. Any creativity in the interpretation of decisions is "inextricably bound together" with uncopyrightable judicial facts. *See Google*, 593 U.S. at 22, 27–29

("where copyrightable material is bound up with uncopyrightable material, copyright protection is 'thin'").

As the district court correctly recognized, the headnotes are "far from the most creative works," and thus factor two favors fair use. Op. at 399. But the district court erred by reducing the second factor to irrelevance. Here, the court effectively gave this factor no role in the overall fair use determination, holding that it categorically "matters less than the others," while giving no consideration to the importance of access to the underlying judicial facts. Op. at 400–01; *see also Murphy v. Millenium Radio Group LLC*, 650 F.3d 295, 309 (3d Cir. 2011) (vacating fair use decision that erroneously discounted the weight of the second factor).

This was error because the second factor is highly significant to determining fair use in cases that concern access to the law. *Am. Soc'y for Testing & Materials*, 82 F.4th at 1268 (where works at issue had been incorporated into binding regulations, the second factor "weighs heavily in favor of fair use."); *Am. Soc'y for Testing & Materials v. UpCodes, Inc*., 752 F. Supp. 3d 480, 502 (E.D. Pa. 2024) (same). Likewise for access to other important factual material. *See, e.g., Google*, 593 U.S. at 10–12, 26–29 (user interfaces widely used by programmers); *Swatch*, 756 F.3d at 87 (corporate earnings information); *Online Pol'y Grp. v. Diebold, Inc*., 337 F. Supp. 2d 1195, 1203 (N.D. Cal. 2004) (company's internal discussion

of flaws in its electronic voting machines).

Given the exceedingly factual nature of the works involved and the importance of access to the legal facts underlying them, discounting the second factor was error. Moreover, the nature of these works also inclines other factors towards fair use. *See UpCodes*, 752 F. Supp. 3d at 499–501, 504–06; William F. Patry & Shira Perlmutter, *Fair Use Misconstrued: Profit, Presumptions, and Parody*, 11 Cardozo Arts & Ent. L.J. 667, 692 (1993).[7] As a result, no other factor weighs strongly against fair use in this case. Thus, this Court should hold that the factual nature of the works is determinative of fair use.

## CONCLUSION

For the reasons stated above, this Court should reverse the district court's decision and remand the case for further proceedings.

Dated: September 26, 2025

Respectfully submitted,

*s/ Victoria J. Noble*
Victoria J. Noble
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Fax: (415) 436-9993
Email: tori@eff.org

*Counsel for Amici Curiae*

---

[7] Available at https://perma.cc/ZE4B-PNSK. *See also* Edward Lee, *Fair Use and the Origin of AI Training*, 63 Houston L. Rev. 101, 141, 180–81 (forthcoming 2025), available at https://perma.cc/9Q2T-74ZE.

## CERTIFICATIONS

I hereby certify the following:

1.      I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit. 3d Cir. L.A.R. 28.3(d).

2.      This brief complies with the type-volume limitation of F.R.A.P. 29(a)(5) and 32(a)(7)(B) because this brief contains 3,367 words, excluding the parts of the brief exempted by F.R.A.P. 32(f) and 3d Cir. L.A.R 29.1(b).

3.      I certify that the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system and that service will be accomplished by the appellate CM/ECF system.

4.      The text of the electronic brief is identical to the text in the paper copies. 3d Cir. L.A.R. 31.1(c).

5.      The VirusTotal virus protection program has been run on this file and no virus was detected. 3d Cir. L.A.R. 31.1(c).

6.      This brief complies with the typeface and type-style requirements of F.R.A.P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen-point Times New Roman font.

Dated: September 26, 2025                     *s/ Victoria J. Noble*
                                                              Victoria J. Noble