No. 25-2153

# In The United States Court of Appeals For the Third Circuit

THOMSON REUTERS ENTERPRISE CENTRE GMBH and
WEST PUBLISHING CORPORATION,
Plaintiffs-Appellees,

v.

ROSS INTELLIGENCE INC.,
Defendant-Appellant.

*On Appeal from an Order of the United States
District Court for the District of Delaware
Civil Action No. 20-613 (The Honorable Stephanos Bibas)*

## JOINT APPENDIX
### Volume 2 of 12 (Pages A71 to A534)

Anne M. Voigts
Ranjini Acharya
PILLSBURY WINTHROP
SHAW PITTMAN
2400 Hanover Street
Palo Alto, CA 94304

Yar R. Chaikovsky
WHITE & CASE
3000 El Camino Real
2 Palo Alto Square;
Suite 900
Palo Alto, CA 94306

Mark S. Davies
Anna B. Naydonov
Kufere J. Laing
WHITE & CASE
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
mark.davies@whitecase.com

Kayvan M. Ghaffari
PILLSBURY WINTHROP
SHAW PITTMAN
Four Embarcadero
Center, 22nd Floor
San Francisco, CA 94111

Andy M. LeGolvan
WHITE & CASE
555 S Flower Street,
Suite 2700
Los Angeles, CA 90071

*Counsel for Defendant-Appellant*

*(For Continuation of Appearances See Inside Cover)*

Miranda D. Means
KIRKLAND & ELLIS
200 Clarendon Street
Boston, MA 02116

Dale M. Cendali
Joshua L. Simmons
KIRKLAND & ELLIS
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
dale.cendali@kirkland.com

*Counsel for Plaintiffs-Appellees*

**i**

## TABLE OF CONTENTS

**Page**

### Volume 1 of 12

Memorandum Opinion, dated
September 25, 2023
  (Doc. 547)....................................................... A1

Memorandum Opinion, dated
  February 11, 2025 (Doc. 770)....................... A35

Order, dated February 11, 2025 (Doc. 772) .... A58

Order, dated April 3, 2025 (Doc. 799) ............. A59

Memorandum Opinion, dated May 23, 2025
  (Doc. 804)....................................................... A60

Order granting Petition for Permission to
  Appeal, dated June 17, 2025 (Doc. 805) ...... A70

### Volume 2 of 12

District Court Docket Entries ......................... A71

Complaint, dated May 6, 2020 (Doc. 1)........... A157

Defendant and Counterclaimant Ross
  Intelligence Inc.'s Amended Partial
  Answer and Defenses and Amended
  Counterclaims in Response to Plaintiffs'
  Complaint and Demand for Jury Trial,
  dated January 25, 2021 (Doc. 24)................ A174

Letter from Michael J. Flynn to the
  Honorable Stephanos Bibas, dated
  July 15, 2022 (Doc. 200)............................... A221

ii

**Page**

Defendant and Counterclaimant Ross
    Intelligence Inc.'s Second Amended
    Answer and Defenses and Amended
    Counterclaims in Response to Plaintiffs'
    Complaint and Demand for Jury Trial,
    dated September 14, 2022 (Doc. 225).......... A229

Plaintiffs' Notice Of Lodging, dated
    December 22, 2022 (Doc. 257)..................... A276

Declaration of Miranda D. Means in Support
    of Motion for Partial Summary Judgment,
    dated January 9, 2023 (Doc. 298)
    (Omitted)

    Exhibit 6 -
    Deposition of Barbara Frederiksen-Cross,
    dated November 11, 2022 (Doc. 298-1)........ A279

Declaration of Laurie Oliver in Support of
    Plaintiffs' Motions for Partial Summary
    Judgment, dated December 21, 2022
    (Doc. 304)....................................................... A291

Declaration, dated September 14, 2023
    (Doc. 544)
    (Omitted)

    Exhibit 25 -
    Deposition of Tomas Van Der Heijden,
    dated March 17, 2022 (Doc. 544-1).............. A297

    Exhibit 43 -
    Scope of Coverage (Doc. 545-1).................... A313

iii

**Page**

Exhibit 44 -
Defendant and Counterclaimant Ross
Intelligence Inc.'s Response and Objection
to Plaintiffs' Fifth Set of Interrogatories
(Doc. 545-1)................................................ A318

Exhibits 50, 51, 53-55, 58 -
Entirely Redacted (Doc. 545-1).................... A336

Declaration of Max Samels in Support of
Thomson Reuters' Motions for Partial
Summary Judgment (Nos. 1-6), dated
August 31, 2023 (Doc. 546) ......................... A348

Exhibits 83-87 -
Entirely Redacted (Doc. 546-1).................... A351

Exhibit 88 -
Left Intentionally Blank (Doc. 546-1) ......... A361

Exhibit 89 -
2022 Legal Technology Survey Report
(Doc. 546-1)................................................ A362

Exhibits 90-92 -
Entirely Redacted (Doc. 546-1).................... A379

Exhibit 93 -
The Real Impact of Using Artificial
Intelligence in Legal Research (Doc. 546-1)    A385

Exhibits 94-104 -
Entirely Redacted (Doc. 546-1).................... A396

Memorandum Opinion, dated
September 25, 2023 (Doc. 547) .................... A418

Memorandum Opinion, dated
September 27, 2024 (Doc. 669) .................... A452

iv

**Page**

Order, dated September 27, 2024 (Doc. 670).. A466

Second Declaration of Laurie Oliver in
    Support of Plaintiffs' Renewed Motions for
    Summary Judgment, dated
    October 1, 2024 (Doc. 679) ........................... A468

Plaintiffs' Brief in Support of Their Renewed
    Motion for Partial Summary Judgment on
    Fair Use, dated October 1, 2024 (Doc. 693) A474

    Exhibits 1-18 -
    Entirely Redacted (Doc. 695-1).................... A476

    Exhibit 19 -
    Exhibit 1 from the Deposition of Alan Cox,
    dated November 2, 2022 (Doc. 695-1).......... A477

    Exhibit 20 -
    Exhibit 2 from the Deposition of Alan Cox,
    dated November 2, 2022 (Doc. 695-1).......... A490

    Exhibits 21-39 -
    Entirely Redacted (Doc. 695-1).................... A492

    Exhibit 40 -
    Statement of Work II for Ross Bulk Memos
    (Doc. 695-1).................................................. A493

    Exhibits 41, 42 -
    Entirely Redacted (Doc. 695-1).................... A508

    Exhibit 43 -
    *HJS Development, Inc. v. Pierce County ex*
    *rel. Dept. of...*, 148 Wash.2d 451 (2003)
    (Doc. 695-1).................................................. A509

    Exhibits 44-76 -
    Entirely Redacted (Doc. 695-1).................... A534

v

Page

**Volume 3 of 12**

Exhibit 77 -
Westlaw is Suing Us. Our Response
(Doc. 695-1).................................................. A535

Exhibit 78 -
ROSS Intelligence Facebook Pages
(Doc. 695-1).................................................. A540

Exhibits 79, 80 -
Entirely Redacted (Doc. 695-1)................... A545

Exhibit 81 -
Copyright Form TX (Doc. 695-1) ................ A546

Exhibit 82 -
Copyright Certificate of Registration
(Doc. 695-1).................................................. A551

Exhibit 83 -
Amended Notice of Deposition, dated
September 25, 2019, with Transcript
(Doc. 695-2).................................................. A556

Exhibits 84-86 -
Entirely Redacted (Doc. 695-2)................... A875

Exhibit 87 -
Notes (Doc. 695-2) ....................................... A876

Exhibit 88 -
Westlaw Quick Reference Guide "West
Key Number System Numerical List of
Digest Topics" (Doc. 695-2) ......................... A878

Exhibits 89-93 -
Entirely Redacted (Doc. 695-2)................... A887

vi

**Page**

Exhibit 94 -
How is Natural Language Search
Changing the Face of Legal Research?
(Doc. 695-2)................................................... A888

Exhibit 95 -
*Seymour v. Richardson*, 194 Va. 709 (1953)
(Doc. 695-2)................................................... A892

Exhibit 96 -
Editorial Enhancements (Doc. 695-2) ......... A899

Exhibit 97 -
Thomson Reuters Westlaw | Headnotes
(Doc. 695-2)................................................... A902

Exhibit 98 -
Thomson Reuters Westlaw | Key Number
System (Doc. 695-2)...................................... A905

Exhibits 99-100 -
Entirely Redacted (Doc. 695-2).................... A908

Exhibit 101 -
Surprising Differences: An Empirical
Analysis of LexisNexis and West
Headnotes in the Written Opinions of the
2009 Supreme Court Term
(Doc. 695-2)................................................... A909

Exhibit 102 -
Westlaw Precision 141E Education
(Doc. 695-2)................................................... A983

Exhibit 103 -
Entirely Redacted (Doc. 695-2).................... A986

vii

**Page**

**Volume 4 of 12**

Declaration of Richard A. Leiter, for
Defendant/Counterclaimant, in Support of
Motion for Summary Judgment on its
Affirmative Defense of Fair Use and on
Plaintiffs' Claims for Copyright
Infringement, filed October 9, 2024
(Doc. 700)
(Omitted)

   Exhibit B -
   Report of Defendants' Expert Professor
   Richard Leiter, J.D., dated August 1, 2022
   (Doc. 700-1)..................................................... A987

Declaration of Joseph Marks, for Defendant/
Counterclaimant, in Support of Motion for
Summary Judgment on its Affirmative
Defense of Fair Use and on Plaintiffs'
Claims for Copyright Infringement, dated
October 1, 2024 (Doc. 701)
(Omitted)

   Exhibit B -
   Entirely Redacted (Doc. 701-1).................... A1010

Declaration of Jimoh Ovbiagele in Support of
Defendant/Counterclaimant Ross
Intelligence Inc.'s Motion for Summary
Judgment on Its Affirmative Defense of
Fair Use, dated October 1, 2024 (Doc. 702) A1012

Declaration of Jimoh Ovbiagele in Support of
Defendant Ross Intelligence Inc.'s Motion
for Summary Judgment on Plaintiffs'
Claims of Copyright Infringement, dated
October 1, 2024 (Doc. 703) ........................... A1030

viii

**Page**

Declaration of Alan J. Cox, for Defendant/
  Counterclaimant, in Support of Motion for
  Summary Judgment on its Affirmative
  Defense of Fair Use, filed October 9, 2024
  (Doc. 704)
  (Omitted)

  Exhibit A -
  *Curriculum Vitae* of Alan J. Cox, Ph.D.
  (Doc. 704-1)................................................... A1040

  Exhibits B, C -
  Entirely Redacted (Doc. 704-1).................... A1080

Declaration of Warrington S. Parker III, for
  Defendant Ross Intelligence Inc., in
  Support of Motion for Summary Judgment
  as to Plaintiffs' Copyright Claims, filed
  October 9, 2024 (Doc. 705)
  (Omitted)

  Exhibit 13 -
  Excerpts of Deposition Transcript of Erik
  Lindberg, dated March 22, 2022
  (Doc. 705-1).................................................. A1084

  Exhibit 15 -
  Entirely Redacted (Doc. 705-2).................... A1102

  Exhibit 26 -
  Excerpts of Deposition Transcript of Tariq
  Hafeez, dated May 26, 2022 (Doc. 705-2).... A1104

  Exhibit 28 -
  Excerpts of Deposition Transcript of
  Christopher Cahn, dated May 12, 2022
  (Doc. 705-7).................................................. A1148

ix

**Page**

Exhibit 29 -
Morae Global, Project Rose, Project
Protocol, TR-0178604, updated
November 19, 2017 (Doc. 705-7) .................. A1175

Exhibit 30 -
Excerpts of Deposition Transcript of
Andrew Arruda, dated March 30, 2022
(Doc. 705-7) ................................................. A1185

Exhibit 31 -
Excerpts of Deposition Transcript of
Barbara Frederiksen-Cross, dated
November 11, 2022 (Doc. 705-7) .................. A1204

Exhibit 32 -
Research Subscriber Agreement
(Doc. 705-7) ................................................. A1219

Exhibit 33 -
Best Practices Guide for ROSS
Intelligence, TR-0045731, last revised
September 14, 2017 (Doc. 705-7) ................. A1224

Declaration of Jacob Canter, for Defendant/
Counterclaimant Ross Intelligence Inc., in
Support of Motion for Summary Judgment
on its Affirmative Defense of Fair Use,
dated October 1, 2024 (Doc. 708)
(Omitted)

Exhibit 1 -
Excerpts from the Transcript Deposition of
Dr. Isabelle Moulinier, dated July 1, 2022
(Doc. 708-1) ................................................. A1245

x

**Page**

Exhibit 2 -
Excerpts from the Transcript Deposition of
Jimoh Ovbiagele, dated April 12, 2022
(Doc. 708-1)................................................. A1277

Exhibit 7 -
Marketing Information from ROSS
(Doc. 708-3)................................................. A1297

Exhibit 8 -
Westlaw Slide Decks (Doc. 708-3) ............... A1301

Exhibit 9 -
West Publishing Turns 150 Slide Decks
(Doc. 708-3)................................................. A1330

Exhibit 47 -
Artificial Intelligence & Westlaw, in 2022
(Doc. 708-9)................................................. A1343

Exhibit 48 -
Statement of Work II for ROSS Bulk
Memos (Doc. 708-9) ..................................... A1366

Ross Intelligence Inc.'s Brief in Response to
Plaintiffs' Motion for Partial Summary
Judgment on Direct Copyright
Infringement and Related Defenses, dated
November 4, 2024 (Doc. 723) ....................... A1381

Declaration of Jacob Canter, for Defendant
Ross Intelligence Inc., in Response to
Plaintiffs' Motion for Partial Summary
Judgment on Direct Copyright
Infringement and Related Defenses, dated
October 30, 2024 (Doc. 728)
(Omitted)

xi

**Page**

Exhibit 30 -
Entirely Redacted (Doc. 728-2) ................... A1385

Plaintiffs' Opposition to Ross Intelligence
Inc.'s Renewed Motion for Summary
Judgment on Ross's Affirmative Defense of
Fair Use, dated October 30, 2024
(Doc. 730) ...................................... A1387

Declaration of Miranda D. Means, for
Plaintiffs, in Opposition to Ross
Intelligence Inc.'s Renewed Motion for
Summary Judgment on Ross's Affirmative
Defense of Fair Use, dated
October 30, 2024 (Doc. 731)
(Omitted)

Exhibits 104-114 -
Entirely Redacted (Doc. 731-1) ................... A1390

Exhibit 115 -
Webpage entitled "lexis.com Quick
Reference Guide" (Doc. 731-1) ................... A1391

Exhibit 116 -
Webpage entitled "The past, present, and
future of legal research with generative
AI" (Doc. 731-1) ............................... A1408

Exhibits 117-137 -
Entirely Redacted (Doc. 731-1) ................... A1418

Exhibit 138 -
Webpage entitled "What is image
compression?" (Doc. 731-1) ..................... A1419

xii

Page

Declaration of Miranda D. Means, for
 Plaintiffs, in Support Reply Brief in
 Support of their Renewed Motion for
 Partial Summary Judgment on Fair Use,
 dated November 13, 2024 (Doc. 740)
 (Omitted)

Exhibit 139 -
 Entirely Redacted (Doc. 740-1)....................  A1428

**Volume 5 of 12**
**(FILED UNDER SEAL)**

Complaint, dated May 6, 2020 (Doc. 1)...........  A1429

Defendant and Counterclaimant Ross
 Intelligence Inc.'s Amended Partial
 Answer and Defenses and Amended
 Counterclaims in Response to Plaintiffs'
 Complaint and Demand for Jury Trial,
 dated January 25, 2021 (Doc. 24)................  A1446

Letter from Michael J. Flynn to the
 Honorable Stephanos Bibas, dated
 July 15, 2022 (Doc. 195)..............................  A1493

Exhibit A -
 Notes of Charles von Simson (Doc. 195-1) ..  A1497

Exhibit B -
 Defendant and Counterclaimant Ross
 Intelligence, Inc.'s Response to Plaintiffs
 Thomson Reuters Enterprise Centre
 GmbH and West Publishing Corporation's
 First Set of Requests for Admissions to
 Defendant Ross Intelligence, Inc., dated
 February 22, 2022 (Doc. 195-1) ...................  A1499

xiii

|  | Page |
|---|---|
| Exhibit C - Emails (Doc. 195-1) | A1579 |
| Exhibit D - Deposition Transcript of Charles von Simson, dated April 19, 2022 (Doc. 195-1) | A1588 |
| Exhibit E - Emails (Doc. 195-1) | A1595 |
| Defendant and Counterclaimant Ross Intelligence Inc.'s Second Amended Answer and Defenses and Amended Counterclaims in Response to Plaintiffs' Complaint and Demand for Jury Trial, dated September 14, 2022 (Doc. 225) | A1598 |
| Declaration of Miranda D. Means in Support of Motion for Partial Summary Judgment, dated January 9, 2023 (Doc. 298) (Omitted) | |
| Exhibit 6 - Deposition of Barbara Frederiksen-Cross, dated November 11, 2022 (Doc. 255-1) | A1645 |
| Declaration of Laurie Oliver in Support of Plaintiffs' Motions for Partial Summary Judgment, dated December 21, 2022 (Doc. 256) | A1657 |
| Plaintiffs' Notice of Lodging, dated December 22, 2022 (Doc. 257) | A1663 |
| Declaration, dated September 14, 2023 (Doc. 544) (Omitted) | |

xiv

**Page**

Exhibit 25 -
Deposition of Tomas Van Der Heijden,
dated March 17, 2022 (Doc. 531-1).............. A1666

Exhibit 43 -
Scope of Coverage (Doc. 532-1).................... A1682

Exhibit 44 -
Defendant and Counterclaimant Ross
Intelligence Inc.'s Response and Objection
to Plaintiffs' Fifth Set of Interrogatories,
dated May 11, 2023 (Doc. 532-1) ................. A1687

Exhibit 50 -
ROSS Discussion Materials – Competitive
Analysis & Profiling, dated April 16, 2015
(Doc. 532-1).................................................... A1705

Exhibit 51 -
Emails (Doc. 532-1) ...................................... A1717

Exhibit 53 -
Emails (Doc. 532-1) ...................................... A1724

Exhibit 54 -
Summary of Various Pricing Plans
(Doc. 532-1).................................................... A1728

Exhibit 55 -
ROSS Discussion Materials – Competitive
Analysis & Profiling, dated April 16, 2015
(Doc. 532-1).................................................... A1732

Exhibit 58 -
Emails (Doc. 532-1) ...................................... A1744

Exhibit 62 -
Powered by IBM Watson Application
Business Plan (Doc. 532-2) .......................... A1749

xv

**Page**

Exhibit 63 -
Emails (Doc. 532-2) ..................................... A1752

Exhibit 73 -
Emails (Doc. 532-2) ..................................... A1755

Exhibit 74 -
Emails (Doc. 532-2) ..................................... A1760

Exhibit 78 -
Emails (Doc. 532-2) ..................................... A1768

Declaration of Max Samels in Support of
    Thomson Reuters' Motions for Partial
    Summary Judgment (Nos. 1-6), dated
    August 31, 2023 (Doc. 533)
    (Omitted)

Exhibit 83 -
Emails (Doc. 533-1) ..................................... A1771

Exhibit 84 -
ROSS Board Meeting Slides, dated
January 14, 2020 (Doc. 533-1) ..................... A1778

Exhibit 85 -
Why Users are Not Buying or Using
ROSS? (Doc. 533-1) ..................................... A1794

Exhibit 86 -
Income Statement (Doc. 533-1) ................... A1806

Exhibit 87 -
Thomson Reuters Legal Products and
Services (Doc. 533-1) ..................................... A1810

Exhibit 88 -
Left Intentionally Blank (Doc. 533-1) ......... A1813

xvi

**Page**

Exhibit 89 -
2022 Legal Technology Survey Report
(Doc. 533-1)................................................. A1814

Exhibit 90 -
Artificial Intelligence & Westlaw
(Doc. 533-1)................................................. A1831

Exhibit 91 -
Thomson Reuters Global Brand Monitor –
Legal Business Unit Report (Doc. 533-1).... A1854

Exhibit 92 -
Positioning Guide: Key Value Prop
Statements (Doc. 533-1).............................. A1914

Exhibit 93 -
The Real Impact of Using Artificial
Intelligence in Legal Research (Doc. 533-1) A1918

Exhibit 100 -
Thomson Reuters Westlaw Proposal
(Doc. 533-3)................................................. A1929

Exhibit 101 -
Thomson Reuters Westlaw Proposal
Update (Doc. 533-3)..................................... A1946

Exhibit 102 -
Practical Law Overview (Doc. 533-3) .......... A1960

Exhibit 103 -
WestlawNext Marketing (Doc. 533-3) ......... A1963

Exhibit 104 -
Thomson Reuters Proposal (Doc. 533-3) ..... A1964

Memorandum Opinion, dated
September 25, 2023 (Doc. 547) .................... A1972

xvii

Page

**Volume 6 of 12**
**(FILED UNDER SEAL)**

Memorandum Opinion, dated
    September 27, 2024 (Doc. 669) .................... A2006

Order, dated September 27, 2024 (Doc. 670).. A2020

Plaintiffs' Brief in Support of Their Renewed
    Motion for Partial Summary Judgment on
    Fair Use, dated October 1, 2024 (Doc. 673) A2022

Declaration of Miranda D. Means, for
    Plaintiffs, in Support of Renewed Motions
    for Summary Judgment, dated
    October 1, 2024 (Doc. 678)
    (Omitted)

    Exhibit 1 -
    Excerpts from the Deposition of Khalid Al-
    Kofahi, dated April 8, 2022 (Doc. 678-1) ..... A2024

    Exhibit 2 -
    Excerpts from the Deposition of Andrew
    Arruda, dated March 30, 2022 (Doc. 678-2) A2041

    Exhibit 3 -
    Excerpts from the Deposition of L. Karl
    Branting, Ph.D., dated October 19, 2022
    (Doc. 678-3).................................................. A2061

    Exhibit 4 -
    Excerpts from the Deposition of
    Christopher Cahn,  May 12, 2022
    (Doc. 678-4).................................................. A2069

    Exhibit 5 -
    Excerpts from the Deposition of Alan Cox,
    dated November 2, 2022 (Doc. 678-5).......... A2075

xviii

Page

Exhibit 6 -
Excerpts from the Deposition of Tariq
Hafeez, dated May 26, 2022 (Doc. 678-6)....    A2094

Exhibit 7 -
Excerpts from the Deposition of Richard A.
Leiter, dated October 24, 2022 (Doc. 678-7)    A2107

Exhibit 8 -
Excerpts from the Deposition of Erik
Lindberg, dated March 22, 2022
(Doc. 678-8)....................................    A2125

Exhibit 9 -
Excerpts from the Deposition of James
Malackowski, dated November 4, 2022
(Doc. 678-9)....................................    A2138

Exhibit 11 -
Excerpts from the Deposition of Isabelle
Moulinier, dated July 1, 2022 (Doc. 678-11)    A2144

Exhibit 12 -
Excerpts from the Deposition of Laurie
Oliver, dated March 30, 2022 (Doc. 678-12)    A2153

Exhibit 13 -
Excerpts from the Deposition of Jimoh
Ovbiagele, dated April 12, 2022
(Doc. 678-13)...................................    A2161

Exhibit 14 -
Excerpts from the Deposition of Jimoh
Ovbiagele, dated May 2, 2023
(Doc. 678-14)...................................    A2183

Exhibit 15 -
Excerpts from the Deposition of Sean O.
Shafik, dated April 22, 2022 (Doc. 678-15) .    A2189

xix

**Page**

Exhibit 16 -
Excerpts from the Deposition of Tomas van
der Heijden, dated March 17, 2022
(Doc. 678-16)................................................. A2193

Exhibit 17 -
Excerpts from the Deposition of Charles
von Simson, dated April 19, 2022
(Doc. 678-17)................................................. A2221

Exhibit 18 -
Excerpts from the Deposition of Teri
Whitehead, dated April 18, 2022
(Doc. 678-18)................................................. A2225

Exhibit 19 -
Exhibit 1 from the Deposition of Alan Cox,
dated November 2, 2022 (Doc. 678-19)........ A2229

Exhibit 20 -
Exhibit 2 from the Deposition of Alan Cox,
dated November 2, 2022 (Doc. 678-20)........ A2242

Exhibit 22 -
Report of Defendants' Expert L. Karl
Branting, J.D., Ph.D., dated July 28, 2022
(Doc. 678-22)................................................. A2244

Exhibit 24 -
Opening Expert Report of Barbara
Frederiksen-Cross, dated August 1, 2022
(Doc. 678-24)................................................. A2284

Exhibit 25 -
Opening Expert Report of Jonathan L.
Krein, dated August 1, 2022 (Doc. 678-25) . A2336

xx

Page

Exhibit 28 -
Opening Expert Report of James E.
Malackowski, dated August 1, 2022
(Doc. 678-28)................................................ A2431

Exhibit 29 -
Rebuttal Expert Report of James E.
Malackowski, dated September 6, 2022
(Doc. 678-29)................................................ A2496

**Volume 7 of 12**
**(FILED UNDER SEAL)**

Exhibit 31 -
Defendant and Counterclaimant ROSS
Intelligence, Inc.'s Supplemental
Responses and Objections to Plaintiffs' Set
of Interrogatories, dated
September 14, 2022 (Doc. 678-31) ............... A2527

Exhibit 34 -
Excel File (Doc. 678-34) .............................. A2621

Exhibit 35 -
Excel File (Doc. 678-35) .............................. A2623

Exhibit 36 -
Best Practices Guide for ROSS
Intelligence, last revised on
September 18, 2017 (Doc. 678-36) ............... A2625

Exhibit 37 -
Project Rose - Project Protocol
(Doc. 678-37)................................................ A2645

Exhibit 38 -
Email from Tariq Hafeez to Andrew
Arruda, dated October 23, 2020
(Doc. 678-38)................................................ A2655

xxi

**Page**

Exhibit 39 -
Westlaw Screenshots (Doc. 678-39).............    A2660

Exhibit 40 -
Statement of Work II for Ross Bulk Memos
(Doc. 678-40)................................................    A2667

Exhibit 44 -
Email Exchange between Teri Whitehead
and Thomas van der Heijden, dated
September 15, 2017 (Doc. 678-44) ..............    A2682

Exhibit 46 -
Design Studio Notes (Doc. 678-46) .............    A2685

Exhibit 47 -
Spreadsheet "ROSS Data Spend –
Jan 1, 2017 to Present" (Doc. 678-47) .........    A2702

Exhibit 50 -
Email Exchange between Thomas
Hamilton and John R. Fernandez, dated
August 6, 2015 (Doc. 678-50) ......................    A2709

Exhibit 51 -
Email Exchange between Thomas
Hamilton and Melissa Pritchard, dated
September 25, 2015 (Doc. 678-51) ..............    A2711

Exhibit 52 -
Email from Andrew Arruda to Andre
Garber, dated August 22, 2015
(Doc. 678-52)................................................    A2715

Exhibit 54 -
Email Exchange between Andrew Arruda
to Andre Garber, dated
October 18-19, 2015  (Doc. 678-54)..............    A2717

xxii

**Page**

Exhibit 55 -
[Slack] Notifications from the Ross Inc.
Team for February 16, 2015 (Doc. 678-55).. A2722

Exhibit 56 -
Updated Tasks in poweredbyross.com
(Doc. 678-56)................................................. A2724

Exhibit 57 -
Standard "ROSS Launch Partner" Pricing
List (Doc. 678-57) ........................................ A2726

Exhibit 58 -
Mapping Practice Areas with the New
Q&A Data  (Doc. 678-58) ............................ A2728

Exhibit 61 -
Email Exchange between Thomas
Hamilton and Shazina Razeen, dated
September 17-20, 2015 (Doc. 678-61).......... A2732

Exhibit 63 -
Presentation Outline for Fastcase
(Doc. 678-63)................................................. A2737

Exhibit 64 -
Top 3 Product Goals for Q1 2019
(Doc. 678-64)................................................. A2744

Exhibit 70 -
Document entitled "The Death of Westlaw
Contracts and Pricing" (Doc. 678-70) .......... A2747

Exhibit 71 -
Email Exchange between Akash Venkat
and Tariq Hafee, dated
September 20, 2015 (Doc. 678-71) ............... A2750

xxiii

**Page**

Exhibit 73 -
Document entitled "Westlaw is Suing Us.
Our Response:" (Doc. 678-73) ...................... A2753

Exhibit 74 -
Correspondence between Charles von
Simson and Jullian D'Angelo, dated
May 17, 2019 (Doc. 678-74)......................... A2758

Exhibit 76 -
Email from Andre Garber to Andrew
Arruda, dated July 21, 2015 (Doc. 678-76) . A2761

Exhibit 78 -
ROSS Intelligence Facebook Pages
(Doc. 678-78)................................................. A2763

Exhibit 79 to Means Declaration -
Editorial Manual, Policies and Guidelines
for Headnoting (Doc. 678-79)....................... A2768

Exhibit 83 -
Amended Notice of Deposition, dated
September 25, 2019, with Transcript
(Doc. 678-83)................................................. A3043

Exhibit 85 to Means Declaration -
Diagram entitled "Bulk Memos – Process
for Clutch" (Doc. 678-85).............................. A3045

Exhibit 86 to Means Declaration -
Email from Teri Whitehead to Saloni
Agara Dwarakanath, dated
October 24, 2017 (Doc. 678-86).................... A3047

Exhibit 90 to Means Declaration -
Salesforce Opportunity Detail
(Doc. 678-90)................................................. A3050

xxiv

Page

**Volume 8 of 12**
**(FILED UNDER SEAL)**

Exhibit 91 to Means Declaration -
Modules (Doc. 678-91)................................. A3052

Exhibit 92 to Means Declaration -
Document entitled "Vetting Customers –
High Usage and Competitors"
(Doc. 678-92)................................................. A3191

Exhibit 93 to Means Declaration -
Article "How is Natural Language Search
Changing The Face of Legal Research?"
(Doc. 678-93)................................................. A3211

Exhibit 96 -
Editorial Enhancements (Doc. 678-96) ....... A3213

Exhibit 97 -
Thomson Reuters Westlaw | Headnotes
(Doc. 678-97)................................................. A3216

Exhibit 98 -
Thomson Reuters Westlaw | Key Number
System  (Doc. 678-98).................................. A3219

Exhibit 99 to Means Declaration -
Messages from Charles von Simson, dated
June 4, 2019 (Doc. 678-99)........................... A3222

Exhibit 103 -
Supplemental Expert Report of Dr.
Jonathan L. Krein, dated August 11, 2024
(Doc. 678-103).............................................. A3224

xxv

**Page**

Second Declaration of Laurie Oliver in
Support of Plaintiffs' Renewed Motions for
Summary Judgment, dated
October 1, 2024 (Doc. 679) ........................... A3249

Declaration of Jimoh Ovbiagele in Support of
Defendant/Counterclaimant Ross
Intelligence Inc.'s Motion for Summary
Judgment on Its Affirmative Defense of
Fair Use, dated October 1, 2024 (Doc. 680)   A3255

Declaration of Alan J. Cox, for Defendant/
Counterclaimant, in Support of Motion for
Summary Judgment on its Affirmative
Defense of Fair Use, filed October 9, 2024
(Doc. 681)
(Omitted)

    Exhibit A -
    *Curriculum Vitae* of Alan J. Cox, Ph.D.
    (Doc. 681-1) .................................................. A3275

    Exhibit B -
    Expert Report of Alan J. Cox, Ph.D., dated
    August 1, 2022 (Doc. 681-1) ........................ A3315

    Exhibit C -
    Expert Rebuttal Report of Alan J. Cox,
    Ph.D., dated September 6, 2022
    (Doc. 681-1) .................................................. A3359

Declaration of Jimoh Ovbiagele in Support of
Defendant Ross Intelligence Inc.'s Motion
for Summary Judgment on Plaintiffs'
Claims of Copyright Infringement, dated
October 1, 2024 (Doc. 686) ........................... A3374

xxvi

Page

Declaration of Richard A. Leiter, for
    Defendant/Counterclaimant, in Support of
    Motion for Summary Judgment on its
    Affirmative Defense of Fair Use and on
    Plaintiffs' Claims for Copyright
    Infringement, filed October 9, 2024
    (Doc. 687)
    (Omitted)

    Exhibit B -
    Report of Defendants' Expert Professor
    Richard Leiter, J.D., dated August 1, 2022
    (Doc. 687-1)................................................... A3386

Declaration of Joseph Marks, for Defendant/
    Counterclaimant, in Support of Motion for
    Summary Judgment on its Affirmative
    Defense of Fair Use and on Plaintiffs'
    Claims for Copyright Infringement, dated
    October 1, 2024 (Doc. 689)
    (Omitted)

    Exhibit B -
    Report of Defendants' Expert L. Karl
    Branting, J.D., Ph.D., dated July 28, 2022
    (Doc. 689-1).................................................. A3409

Declaration of Jacob Canter, for Defendant/
    Counterclaimant Ross Intelligence Inc., in
    Support of Motion for Summary Judgment
    on its Affirmative Defense of Fair Use,
    dated October 1, 2024 (Doc. 690)
    (Omitted)

    Exhibit 2 -
    Excerpts from the Transcript Deposition of
    Jimoh Ovbiagele, dated April 12, 2022
    (Doc. 690-2).................................................. A3487

xxvii

Page

Exhibit 8 -
Westlaw Slide Decks (Doc. 690-4) ............... A3507

Exhibit 16 -
Chart (Doc. 690-10) ...................................... A3536

**Volume 9 of 12**
**(FILED UNDER SEAL)**

Exhibit 16 (Continued) -
Chart (Doc. 690-10) ...................................... A3631

**Volume 10 of 12**
**(FILED UNDER SEAL)**

Exhibit 16 (Continued) -
Chart (Doc. 690-10) ...................................... A4201

Exhibit 47 -
Artificial Intelligence & Westlaw, in 2022
(Doc. 690-27) ................................................. A4436

Exhibit 48 -
Statement of Work II for ROSS Bulk
Memos (Doc. 690-27) .................................... A4459

Declaration of Warrington S. Parker III, for
Defendant Ross Intelligence Inc., in
Support of Motion for Summary Judgment
as to Plaintiffs' Copyright Claims, filed
October 9, 2024 (Doc. 691)
(Omitted)

Exhibit 13 -
Excerpts of Deposition Transcript of Erik
Lindberg, dated March 22, 2022
(Doc. 691-4) .................................................. A4474

Exhibit 15 -
Summarization Manual (Doc. 691-7) .......... A4492

xxviii

**Page**

Exhibit 26 -
Excerpts of Deposition Transcript of Tariq
Hafeez, dated May 26, 2022 (Doc. 691-9)....    A4649

Exhibit 30 -
Excerpts of Deposition Transcript of
Andrew Arruda, dated March 30, 2022
(Doc. 691-14)................................................    A4693

Declaration of Jacob Canter, for Defendant
Ross Intelligence Inc., in Response to
Plaintiffs' Motion for Partial Summary
Judgment on Direct Copyright
Infringement and Related Defenses, dated
October 30, 2024 (Doc. 711)
(Omitted)

Exhibit 30 -
Request for Admissions (Doc. 711-4)...........    A4712

Ross Intelligence Inc.'s Brief in Response to
Plaintiffs' Motion for Partial Summary
Judgment on Direct Copyright
Infringement and Related Defenses, dated
October 30, 2024 (Doc. 713) ........................    A4715

Plaintiffs' Opposition to Ross Intelligence
Inc.'s Renewed Motion for Summary
Judgment on Ross's Affirmative Defense of
Fair Use, dated October 30, 2024
(Doc. 716).....................................................    A4719

xxix

**Page**

Declaration of Miranda D. Means, for
    Plaintiffs, in Opposition to Ross
    Intelligence Inc.'s Renewed Motion for
    Summary Judgment on Ross's Affirmative
    Defense of Fair Use, dated
    October 30, 2024 (Doc. 718)
    (Omitted)

Exhibit 107 -
Excerpts of Deposition Transcript of
Richard A. Leiter, dated October 24, 2022
(Doc. 718-4).................................................. A4722

Exhibit 109 -
Excerpts of Deposition Transcript of
Isabelle Moulinier, dated July 1, 2022
(Doc. 718-6).................................................. A4738

Exhibit 110 -
Excerpts of Deposition Transcript of
Tomas Van Der Heijden, dated
March 17, 2022 (Doc. 718-7)........................ A4751

**Volume 11 of 12**
**(FILED UNDER SEAL)**

Exhibit 111 -
Excerpts of Deposition Transcript of
Laurie Oliver, dated March 30, 2022
(Doc. 718-8).................................................. A4755

Exhibit 113 -
Rebuttal Expert Report of Dr. Jonathan L.
Krein, dated September 6, 2022
(Doc. 718-10)................................................ A4762

Exhibit 115 -
Webpage entitled "lexis.com Quick
Reference Guide" (Doc. 718-12) ................... A4819

**xxx**

**Page**

Exhibit 116 -
Webpage entitled "The past, present, and
future of legal research with generative
AI" (Doc. 718-13) ............................................ A4836

Exhibit 135 -
WestlawNext WestSearch Technology
(Doc. 718-32)................................................. A4846

Declaration of Miranda D. Means, for
Plaintiffs, in Support Reply Brief in
Support of their Renewed Motion for
Partial Summary Judgment on Fair Use,
dated November 13, 2024 (Doc. 736)
(Omitted)

Exhibit 139 -
Excerpts of Deposition Transcript of Erik
Lindberg, dated March 22, 2022
(Doc. 736-1)................................................. A4851

Appendix A to Memorandum Opinion, dated
February 11, 2025 (Doc. 771)...................... A4855

**Volume 12 of 12
(FILED UNDER SEAL)**

Appendix A to Memorandum Opinion, dated
February 11, 2025 (Doc. 771) (Continued).. A5321

**Query    Reports    Utilities    Help    Log Out**

STAYED,APPEAL,MEDIATION-MPT,Multi-Media Docs

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:20-cv-00613-SB

| | |
|---|---|
| Thomson Reuters Enterprise Centre GmbH et al v. ROSS Intelligence Inc. | Date Filed: 05/06/2020 |
| Assigned to: Judge Stephanos Bibas | Jury Demand: Both |
| Cause: 17:101 Copyright Infringement | Nature of Suit: 820 Copyright |
| | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Thomson Reuters Enterprise Centre GmbH** | represented by | **Jack B. Blumenfeld** |

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
Email: Jbbefiling@mnat.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dale M. Cendali**
Email: dale.cendali@kirkland.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric A. Loverro**
Email: eric.loverro@kirkland.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua L. Simmons**
Email: joshua.simmons@kirkland.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Flynn**
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302-351-9661
Fax: 302-498-6217
Email: mflynn@mnat.com
*ATTORNEY TO BE NOTICED*

**Miranda D. Means**
Email: miranda.means@kirkland.com

A71

|  |  |  |
|---|---|---|
|  |  | *PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
|  |  | **Yungmoon Chang**<br>Email: yungmoon.chang@kirkland.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| **West Publishing Corporation** | represented by | **Jack B. Blumenfeld**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|
|  |  | **Dale M. Cendali**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
|  |  | **Eric A. Loverro**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
|  |  | **Joshua L. Simmons**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
|  |  | **Michael J. Flynn**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
|  |  | **Miranda D. Means**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
|  |  | **Yungmoon Chang**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| **ROSS Intelligence Inc.** | represented by | **David Ellis Moore**<br>Potter Anderson & Corroon, LLP<br>1313 N. Market St., Hercules Plaza, 6th Flr.<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>(302) 984-6000<br>Email: dmoore@potteranderson.com |
|---|---|---|

A72

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew L. Brown**
Potter Anderson & Corroon LLP
1313 N. Market Street
6th Floor
Wilmington, DE 19801
302-984-6107
Email: abrown@potteranderson.com
*TERMINATED: 11/01/2024*

**Andy J. LeGolvan**
Email: andy.legolvan@whitecase.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Z. Saber**
Email: asaber@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anne M. Voigts**
Email: anne.voigts@pillsburylaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bindu Ann George Palapura**
Potter Anderson & Corroon, LLP
1313 N. Market St., Hercules Plaza, 6th Flr.
P.O. Box 951
Wilmington, DE 19899-0951
302-984-6000
Fax: 302-778-6000
Email: bpalapura@potteranderson.com
*ATTORNEY TO BE NOTICED*

**Christopher J Banks**
Email: cbanks@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Crinesha B. Berry**
Email: cberry@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Kuwahara**
Email: ekuwahara@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gabriel M. Ramsey**
Email: gramsey@crowell.com

A73

*TERMINATED: 12/11/2023*
*PRO HAC VICE*

**Jacob Canter**
Email: jcanter@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joachim B. Steinberg**
Email: jsteinberg@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jordan Ludwig**
Email: JLudwig@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua M Rychlinski**
Email: jrychlinski@crowell.com
*TERMINATED: 02/11/2022*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kayvan M. Ghaffari**
Email: kghaffari@crowell.com
*PRO HAC VICE*

**Keith J. Harrison**
Email: kharrison@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa Kimmel**
Email: lkimmel@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Margaux Poueymirou**
Email: mpoueymirou@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark S. Davies**
Email: mark.davies@whitecase.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark A. Klapow**
Email: mklapow@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ranjini Acharya**

A74

Email: ranjini.acharya@pillsburylaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Henry Seewald**
Email: rseewald@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shira Liu**
Email: sliu@crowell.com
*TERMINATED: 02/06/2024*
*PRO HAC VICE*

**Stephanie E. O'Byrne**
DLA Piper LLP (US)
1201 N. Market Street
Suite 2100
Wilmington, DE 19801
302-468-5645
Fax: 302-691-4745
Email: Stephanie.OByrne@us.dlapiper.com
*TERMINATED: 01/07/2022*
*ATTORNEY TO BE NOTICED*

**Warrington Parker**
Email: wparker@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Yar R. Chaikovsky**
Email: yar.chaikovsky@whitecase.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Notice Only**

**Fastcase, Inc.**

**Counter Claimant**

**ROSS Intelligence Inc.**                      represented by **David Ellis Moore**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Anna Z. Saber**
                                                (See above for address)
                                                *PRO HAC VICE*
                                                *ATTORNEY TO BE NOTICED*

                                                **Anne M. Voigts**
                                                (See above for address)
                                                *PRO HAC VICE*
                                                *ATTORNEY TO BE NOTICED*

A75

**Christopher J Banks**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Kuwahara**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gabriel M. Ramsey**
(See above for address)
*TERMINATED: 12/11/2023*
*PRO HAC VICE*

**Jordan Ludwig**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua M Rychlinski**
(See above for address)
*TERMINATED: 02/11/2022*
*ATTORNEY TO BE NOTICED*

**Kayvan M. Ghaffari**
(See above for address)

**Keith J. Harrison**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Margaux Poueymirou**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark S. Davies**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark A. Klapow**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ranjini Acharya**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Henry Seewald**
(See above for address)

A76

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shira Liu**
(See above for address)
*TERMINATED: 02/06/2024*
*PRO HAC VICE*

**Stephanie E. O'Byrne**
(See above for address)
*TERMINATED: 01/07/2022*
*ATTORNEY TO BE NOTICED*

**Yar R. Chaikovsky**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Thomson Reuters Enterprise Centre GmbH**                    represented by    **Jack B. Blumenfeld**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dale M. Cendali**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric A. Loverro**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua L. Simmons**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Flynn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda D. Means**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Yungmoon Chang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

A77

| | | |
|---|---|---|
| **West Publishing Corporation** | represented by | **Jack B. Blumenfeld**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Dale M. Cendali**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Eric A. Loverro**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Joshua L. Simmons**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Michael J. Flynn**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Miranda D. Means**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Yungmoon Chang**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Counter Claimant**

| | | |
|---|---|---|
| **ROSS Intelligence Inc.** | represented by | **David Ellis Moore**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Anna Z. Saber**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Anne M. Voigts**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Christopher J Banks**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Emily T. Kuwahara** |

A78

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gabriel M. Ramsey**
(See above for address)
*TERMINATED: 12/11/2023*
*PRO HAC VICE*

**Jordan Ludwig**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua M Rychlinski**
(See above for address)
*TERMINATED: 02/11/2022*
*ATTORNEY TO BE NOTICED*

**Kayvan M. Ghaffari**
(See above for address)

**Keith J. Harrison**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Margaux Poueymirou**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark S. Davies**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark A. Klapow**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ranjini Acharya**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Henry Seewald**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shira Liu**
(See above for address)
*TERMINATED: 02/06/2024*

A79

*PRO HAC VICE*

**Stephanie E. O'Byrne**
(See above for address)
*TERMINATED: 01/07/2022*
*ATTORNEY TO BE NOTICED*

**Yar R. Chaikovsky**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Thomson Reuters Enterprise Centre GmbH**               represented by   **Jack B. Blumenfeld**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dale M. Cendali**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric A. Loverro**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua L. Simmons**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Flynn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda D. Means**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Yungmoon Chang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**West Publishing Corporation**               represented by   **Jack B. Blumenfeld**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

A80

**Dale M. Cendali**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric A. Loverro**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua L. Simmons**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Flynn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda D. Means**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Yungmoon Chang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**ROSS Intelligence Inc.**                  represented by  **David Ellis Moore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Z. Saber**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anne M. Voigts**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher J Banks**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Kuwahara**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gabriel M. Ramsey**

A81

(See above for address)
*TERMINATED: 12/11/2023*
*PRO HAC VICE*

**Jacob Canter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jordan Ludwig**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua M Rychlinski**
(See above for address)
*TERMINATED: 02/11/2022*
*ATTORNEY TO BE NOTICED*

**Kayvan M. Ghaffari**
(See above for address)

**Keith J. Harrison**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa Kimmel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Margaux Poueymirou**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark S. Davies**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark A. Klapow**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ranjini Acharya**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Henry Seewald**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

A82

**Shira Liu**
(See above for address)
*TERMINATED: 02/06/2024*
*PRO HAC VICE*

**Stephanie E. O'Byrne**
(See above for address)
*TERMINATED: 01/07/2022*
*ATTORNEY TO BE NOTICED*

**Yar R. Chaikovsky**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Thomson Reuters Enterprise Centre GmbH**                    represented by    **Jack B. Blumenfeld**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dale M. Cendali**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric A. Loverro**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua L. Simmons**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Flynn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda D. Means**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Yungmoon Chang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**West Publishing Corporation**                    represented by    **Jack B. Blumenfeld**
(See above for address)

A83

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dale M. Cendali**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric A. Loverro**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua L. Simmons**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Flynn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda D. Means**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Yungmoon Chang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**ROSS Intelligence Inc.**                represented by **David Ellis Moore**
                                            (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **Anna Z. Saber**
                                            (See above for address)
                                            *PRO HAC VICE*
                                            *ATTORNEY TO BE NOTICED*

                                            **Anne M. Voigts**
                                            (See above for address)
                                            *PRO HAC VICE*
                                            *ATTORNEY TO BE NOTICED*

                                            **Bindu Ann George Palapura**
                                            (See above for address)
                                            *ATTORNEY TO BE NOTICED*

                                            **Christopher J Banks**
                                            (See above for address)
                                            *ATTORNEY TO BE NOTICED*

A84

**Crinesha B. Berry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily T. Kuwahara**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gabriel M. Ramsey**
(See above for address)
*TERMINATED: 12/11/2023*
*PRO HAC VICE*

**Jacob Canter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joachim B. Steinberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jordan Ludwig**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua M Rychlinski**
(See above for address)
*TERMINATED: 02/11/2022*
*ATTORNEY TO BE NOTICED*

**Kayvan M. Ghaffari**
(See above for address)

**Keith J. Harrison**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa Kimmel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Margaux Poueymirou**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark S. Davies**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

A85

**Mark A. Klapow**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ranjini Acharya**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Henry Seewald**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shira Liu**
(See above for address)
*TERMINATED: 02/06/2024*
*PRO HAC VICE*

**Stephanie E. O'Byrne**
(See above for address)
*TERMINATED: 01/07/2022*
*ATTORNEY TO BE NOTICED*

**Warrington Parker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Yar R. Chaikovsky**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Thomson Reuters Enterprise Centre
GmbH**

represented by **Jack B. Blumenfeld**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dale M. Cendali**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric A. Loverro**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua L. Simmons**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

A86

                                  **Michael J. Flynn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda D. Means**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Yungmoon Chang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**West Publishing Corporation**        represented by  **Jack B. Blumenfeld**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dale M. Cendali**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric A. Loverro**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua L. Simmons**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Flynn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda D. Means**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Yungmoon Chang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/06/2020 | 1 | COMPLAINT filed with Jury Demand against ROSS Intelligence Inc. - Magistrate Consent Notice to Pltf. ( Filing fee $ 400, receipt number ADEDC-2919270.) - filed by |

A87

| | | |
|---|---|---|
| | | West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet)(mal) (Entered: 05/06/2020) |
| 05/06/2020 | 2 | Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction. (mal) (Entered: 05/06/2020) |
| 05/06/2020 | 3 | Report to the Register of Copyrights for Copyright Number(s) see attached list. (mal) (Entered: 05/06/2020) |
| 05/06/2020 | 4 | Disclosure Statement pursuant to Rule 7.1: identifying Corporate Parent Thomson Reuters Corporation for Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation filed by Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation. (mal) (Entered: 05/06/2020) |
| 05/06/2020 | 5 | Summonses Issued (please complete the top portion of the form and print out for use/service). (mal) (Entered: 05/06/2020) |
| 05/06/2020 | 6 | SUMMONS Returned Executed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH. ROSS Intelligence Inc. served on 5/6/2020, answer due 5/27/2020. (Blumenfeld, Jack) (Entered: 05/06/2020) |
| 05/06/2020 | 7 | MOTION for Pro Hac Vice Appearance of Attorney Dale M. Cendali, Joshua L. Simmons, and Eric A. Loverro - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Blumenfeld, Jack) (Entered: 05/06/2020) |
| 05/13/2020 | | Case Assigned to Judge Leonard P. Stark. Please include the initials of the Judge (LPS) after the case number on all documents filed. (rjb) (Entered: 05/13/2020) |
| 05/14/2020 | 8 | Report to the Register of Copyrights for Copyright Number(s) *(See Attached List) (AMENDED)*. (Blumenfeld, Jack) (Entered: 05/14/2020) |
| 05/18/2020 | | SO ORDERED, re 7 MOTION for Pro Hac Vice Appearance of Attorney Dale M. Cendali, Joshua L. Simmons, and Eric A. Loverro filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH. Signed by Judge Leonard P. Stark on 5/18/20. (ntl) (Entered: 05/18/2020) |
| 05/22/2020 | 9 | STIPULATION TO EXTEND TIME to answer, move or otherwise respond to the Complaint to July 13, 2020 - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 05/22/2020) |
| 05/22/2020 | | SO ORDERED, re 9 STIPULATION TO EXTEND TIME to answer, move or otherwise respond to the Complaint to July 13, 2020 filed by ROSS Intelligence Inc. Signed by Judge Leonard P. Stark on 5/22/20. (ntl) (Entered: 05/22/2020) |
| 05/29/2020 | 10 | MOTION for Pro Hac Vice Appearance of Attorney Joshua M. Rychlinski, Mark A. Klapow, Gabriel M. Ramsey, and Kayvan M. Ghaffari of Crowell & Moring LLP - filed by ROSS Intelligence Inc.. (O'Byrne, Stephanie) (Entered: 05/29/2020) |
| 06/01/2020 | | SO ORDERED, re 10 MOTION for Pro Hac Vice Appearance of Attorney Joshua M. Rychlinski, Mark A. Klapow, Gabriel M. Ramsey, and Kayvan M. Ghaffari of Crowell & Moring LLP filed by ROSS Intelligence Inc. Signed by Judge Leonard P. Stark on 6/1/20. (ntl) (Entered: 06/01/2020) |
| 06/01/2020 | | Pro Hac Vice Attorney Dale M. Cendali for Thomson Reuters Enterprise Centre GmbH, for West Publishing Corporation added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (myr) (Entered: 06/01/2020) |
| 06/01/2020 | | Pro Hac Vice Attorney Joshua Simmons for Thomson Reuters Enterprise Centre GmbH,for West Publishing Corporation added for electronic noticing. Pursuant to Local |

A88

| | | |
|---|---|---|
| | | Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (myr) (Entered: 06/01/2020) |
| 06/01/2020 | | Pro Hac Vice Attorney Eric A. Loverro for Thomson Reuters Enterprise Centre GmbH, for West Publishing Corporation added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (myr) (Entered: 06/01/2020) |
| 06/02/2020 | | Pro Hac Vice Attorneys Kayvan M. Ghaffari, Joshua M Rychlinski, Gabriel M. Ramsey, and Mark A. Klapow for ROSS Intelligence Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (amf) (Entered: 06/02/2020) |
| 07/13/2020 | 11 | MOTION to Dismiss for Failure to State a Claim - filed by ROSS Intelligence Inc.. (Attachments: # 1 Text of Proposed Order)(Moore, David) (Entered: 07/13/2020) |
| 07/13/2020 | 12 | OPENING BRIEF in Support re 11 MOTION to Dismiss for Failure to State a Claim filed by ROSS Intelligence Inc..Answering Brief/Response due date per Local Rules is 7/27/2020. (Moore, David) (Entered: 07/13/2020) |
| 07/13/2020 | 13 | Disclosure Statement pursuant to Rule 7.1: No Parents or Affiliates Listed filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 07/13/2020) |
| 07/14/2020 | 14 | STIPULATION TO EXTEND TIME (1) for Plaintiffs to respond to Defendants Motion to Dismiss Complaint (D.I. 11) and (2) for Defendant to file a reply to August 10, 2020 and August 20, 2020, respectively - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 07/14/2020) |
| 07/20/2020 | | SO ORDERED, re 14 STIPULATION TO EXTEND TIME (1) for Plaintiffs to respond to Defendants Motion to Dismiss Complaint (D.I. 11) and (2) for Defendant to file a reply to August 10, 2020 and August 20, 2020, respectively filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH. Signed by Judge Leonard P. Stark on 7/20/20. (ntl) (Entered: 07/20/2020) |
| 08/10/2020 | 15 | ANSWERING BRIEF in Opposition re 11 MOTION to Dismiss for Failure to State a Claim filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Reply Brief due date per Local Rules is 8/17/2020. (Blumenfeld, Jack) (Entered: 08/10/2020) |
| 08/10/2020 | 16 | DECLARATION re 15 Answering Brief in Opposition, -- *Declaration of Dale M. Cendali* -- by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exhibit 1)(Blumenfeld, Jack) (Entered: 08/10/2020) |
| 08/20/2020 | 17 | REPLY BRIEF re 11 MOTION to Dismiss for Failure to State a Claim filed by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-11)(Moore, David) (Entered: 08/20/2020) |
| 08/25/2020 | 18 | REQUEST for Oral Argument by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation re 11 MOTION to Dismiss for Failure to State a Claim . (Flynn, Michael) (Entered: 08/25/2020) |
| 09/14/2020 | 19 | ORAL ORDER: IT IS HEREBY ORDERED that the Court will hear argument by teleconference on the motion to dismiss on October 30, 2020 beginning at 11:00 a.m. Each side will be allocated up to forty-five (45) minutes to present its argument. Any party wishing to refer to slides or other materials shall provide a copy to the Court no later than 4:00 p.m. the day before the hearing. The parties can access the teleconference by dialing 877-336-1829 and using the access code 1408971. ORDERED by Judge Leonard P. Stark on 9/14/20. (ntl) (Entered: 09/14/2020) |

A89

CM/ECF LIVE - U.S. District Court:ded

| 10/30/2020 | | Minute Entry for proceedings held before Judge Leonard P. Stark - Argument by Telephone Conference held on 10/30/2020. (Court Reporter B. Gaffigan.) (ntl) (Entered: 10/30/2020) |
|---|---|---|
| 11/02/2020 | 20 | Official Transcript of Telephonic Argument held on October 30, 2020 before Chief Judge Leonard P. Stark. Court Reporter Brian Gaffigan, email: gaffigan@verizon.net. Transcript may be viewed at the court public terminal or ordered/purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 11/23/2020. Redacted Transcript Deadline set for 12/3/2020. Release of Transcript Restriction set for 2/1/2021.(bpg) (Entered: 11/02/2020) |
| 12/13/2020 | 21 | ANSWER to 1 Complaint, with Jury Demand *[Partial Answer and Defenses]*, COUNTERCLAIM against Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation by ROSS Intelligence Inc..(Moore, David) (Entered: 12/13/2020) |
| 12/13/2020 | 22 | NOTICE of Partial Withdrawal of Motion to Dismiss (D.I. 11) by ROSS Intelligence Inc. re 11 MOTION to Dismiss for Failure to State a Claim (Moore, David) (Entered: 12/13/2020) |
| 01/04/2021 | 23 | ANSWER to 21 Answer to Complaint, Counterclaim -- *Answer to Counterclaims* -- by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 01/04/2021) |
| 01/25/2021 | 24 | Amended ANSWER to 1 Complaint, with Jury Demand *[Amended Partial Answer and Defenses]*, Amended COUNTERCLAIM against Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation by ROSS Intelligence Inc..(O'Byrne, Stephanie) (Entered: 01/25/2021) |
| 01/25/2021 | 25 | MOTION for Pro Hac Vice Appearance of Attorney Lisa Kimmel and Jacob Canter of Crowell & Moring LLP - filed by ROSS Intelligence Inc.. (O'Byrne, Stephanie) (Entered: 01/25/2021) |
| 01/26/2021 | | SO ORDERED, re 25 MOTION for Pro Hac Vice Appearance of Attorney Lisa Kimmel and Jacob Canter of Crowell & Moring LLP filed by ROSS Intelligence Inc. Signed by Judge Leonard P. Stark on 1/26/21. (ntl) (Entered: 01/26/2021) |
| 01/27/2021 | | Pro Hac Vice Attorneys Lisa Kimmel and Jacob Canter for ROSS Intelligence Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) (Entered: 01/27/2021) |
| 01/28/2021 | 26 | STIPULATION TO EXTEND TIME to respond to Amended Partial Answer and Amended Counterclaims (D.I. 24) to March 25, 2021 - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 01/28/2021) |
| 01/29/2021 | | SO ORDERED, re 26 STIPULATION TO EXTEND TIME to respond to Amended Partial Answer and Amended Counterclaims (D.I. 24) to March 25, 2021 filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH. Signed by Judge Leonard P. Stark on 1/29/21. (ntl) (Entered: 01/29/2021) |
| 03/25/2021 | 27 | MOTION to Dismiss for Failure to State a Claim *Defendant's Antitrust and State Law Counterclaims* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 03/25/2021) |
| 03/25/2021 | 28 | OPENING BRIEF in Support re 27 MOTION to Dismiss for Failure to State a Claim *Defendant's Antitrust and State Law Counterclaims* - filed by Thomson Reuters |

A90

| | | |
|---|---|---|
| | | Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 4/8/2021. (Attachments: # 1 Exhibit A)(Flynn, Michael) (Entered: 03/25/2021) |
| 03/25/2021 | 29 | MOTION for Pro Hac Vice Appearance of Attorney Daniel E. Laytin, Christa C. Cottrell, and Cameron Ginder - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 03/25/2021) |
| 03/26/2021 | | SO ORDERED, re 29 MOTION for Pro Hac Vice Appearance of Attorney Daniel E. Laytin, Christa C. Cottrell, and Cameron Ginder filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH. Signed by Judge Leonard P. Stark on 3/26/21. (ntl) (Entered: 03/26/2021) |
| 03/26/2021 | 30 | STIPULATION TO EXTEND TIME for Defendant to respond to Plaintiff's Motion to Dismiss Defendant's Antitrust Counterclaims (D.I. 27) and for Plaintiffs to file their reply brief to April 21, 2021 and May 12, 2021, respectively - filed by ROSS Intelligence Inc.. (O'Byrne, Stephanie) (Main Document 30 replaced 3/29/2021) (ntl). (Entered: 03/26/2021) |
| 03/29/2021 | | CORRECTING ENTRY: Corrected document added to D.I. 30 per request of counsel. (ntl) (Entered: 03/29/2021) |
| 03/29/2021 | | SO ORDERED, re 30 STIPULATION TO EXTEND TIME for Defendant to respond to Plaintiff's Motion to Dismiss Defendant's Antitrust Counterclaims (D.I. 27) and for Plaintiffs to file their reply brief to April 21, 2021 and May 12, 2021, respectively filed by ROSS Intelligence Inc. Signed by Judge Leonard P. Stark on 3/29/21. (ntl) (Entered: 03/29/2021) |
| 03/29/2021 | 31 | MEMORANDUM OPINION re 11 motion to dismiss. Signed by Judge Leonard P. Stark on 3/29/21. (ntl) (Entered: 03/29/2021) |
| 03/29/2021 | 32 | ORDER re 31 Memorandum Opinion -- 11 MOTION to Dismiss filed by ROSS Intelligence Inc. is DENIED. Signed by Judge Leonard P. Stark on 3/29/21. (ntl) (Entered: 03/29/2021) |
| 03/30/2021 | 33 | MOTION for Pro Hac Vice Appearance of Attorney Warrington Parker of Crowell & Moring LLP - filed by ROSS Intelligence Inc.. (O'Byrne, Stephanie) (Entered: 03/30/2021) |
| 03/31/2021 | | SO ORDERED, re 33 MOTION for Pro Hac Vice Appearance of Attorney Warrington Parker of Crowell & Moring LLP filed by ROSS Intelligence Inc. Signed by Judge Leonard P. Stark on 3/31/21. (ntl) (Entered: 03/31/2021) |
| 04/05/2021 | 34 | Joint STATUS REPORT - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 04/05/2021) |
| 04/12/2021 | 35 | ORAL ORDER: Having considered the parties' joint status report (D.I. 34), IT IS HEREBY ORDERED that the parties shall meet and confer and, no later than April 19, 2021, file a proposed scheduling order. ORDERED by Judge Leonard P. Stark on 4/12/21. (ntl) (Entered: 04/12/2021) |
| 04/12/2021 | 36 | AMENDED ANSWER to 21 Answer to Complaint, Counterclaim, 1 Complaint, 24 Answer to Complaint,, Counterclaim,, COUNTERCLAIM *[Amended Answer (following Courts 3/29/21 denial of partial motion to dismiss) and Counterclaims]* against Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation by ROSS Intelligence Inc.. (O'Byrne, Stephanie) (Entered: 04/12/2021) |
| 04/16/2021 | | Pro Hac Vice Attorney Warrington Parker for ROSS Intelligence Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users |

A91

| | | of CM/ECF and shall be required to file all papers. (kmd) (Entered: 04/16/2021) |
|---|---|---|
| 04/19/2021 | 37 | PROPOSED ORDER -- Scheduling Order -- by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Letter to The Honorable Leonard P. Stark)(Flynn, Michael) (Entered: 04/19/2021) |
| 04/22/2021 | 38 | ANSWERING BRIEF in Opposition re 27 MOTION to Dismiss for Failure to State a Claim *Defendant's Antitrust and State Law Counterclaims* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 4/29/2021. (O'Byrne, Stephanie) (Entered: 04/22/2021) |
| 04/26/2021 | 39 | MOTION to Dismiss for Failure to State a Claim *Defendant's Antitrust and State Law Counterclaims (Renewed)* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 04/26/2021) |
| 04/26/2021 | 40 | MOTION for Pro Hac Vice Appearance of Attorney Megan McKeown - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 04/26/2021) |
| 04/27/2021 | | SO ORDERED, re 40 MOTION for Pro Hac Vice Appearance of Attorney Megan McKeown filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH. Signed by Judge Leonard P. Stark on 4/27/21. (ntl) (Entered: 04/27/2021) |
| 05/03/2021 | 41 | SCHEDULING ORDER: Case referred to the Magistrate Judge for the purpose of exploring ADR. Fact Discovery completed by 1/21/2022. Status Report due by 11/12/2021. Dispositive Motions due by 6/10/2022. The pretrial conference and jury trial dates will be determined at a later date. Signed by Judge Leonard P. Stark on 5/3/21. (ntl) (Entered: 05/03/2021) |
| 05/03/2021 | 42 | NOTICE OF SERVICE of (1) Plaintiffs Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's First Set of Requests for Production to Defendant Ross Intelligence Inc. and (2) Plaintiffs Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's First Set of Interrogatories to Defendant Ross Intelligence Inc. - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 05/03/2021) |
| 05/04/2021 | | CASE REFERRED to Magistrate Judge Mary Pat Thynge for Mediation. Please see Standing Order dated January 20, 2016, regarding disclosure of confidential ADR communications. A link to the standing order is provided here for your convenience at https://www.ded.uscourts.gov/sites/ded/files/forms/StandingOrderforADR-Mediation.pdf (Taylor, Daniel) (Entered: 05/04/2021) |
| 05/12/2021 | 43 | MOTION for Pro Hac Vice Appearance of Attorney Alyssa C. Kalisky - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 05/12/2021) |
| 05/12/2021 | 44 | NOTICE OF SERVICE of Defendant/Counterclaimant Ross Intelligence, Inc.'s First Set Of Interrogatories (Nos. 1-8); and Defendant/Counterclaimant Ross Intelligence, Inc.'s First Set Of Requests For Production (Nos. 1-103) filed by ROSS Intelligence Inc.. (O'Byrne, Stephanie) (Entered: 05/12/2021) |
| 05/13/2021 | | SO ORDERED, re 43 MOTION for Pro Hac Vice Appearance of Attorney Alyssa C. Kalisky filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH. Signed by Judge Leonard P. Stark on 5/13/21. (ntl) (Entered: 05/13/2021) |
| 05/13/2021 | 45 | REPLY BRIEF re 39 MOTION to Dismiss for Failure to State a Claim *Defendant's Antitrust and State Law Counterclaims (Renewed)* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 05/13/2021) |

A92

| 05/13/2021 | 46 | NOTICE OF SERVICE of Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Initial Disclosures - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 05/13/2021) |
|---|---|---|
| 05/13/2021 | 47 | NOTICE OF SERVICE of Initial Disclosures of Defendant/Counterclaimant Ross Intelligence Inc. Pursuant to Fed. R. Civ. P. 26(A)(1) And Paragraph 3 of The Default Standard filed by ROSS Intelligence Inc..(Moore, David) (Entered: 05/13/2021) |
| 05/13/2021 | 48 | PROPOSED ORDER -- [Proposed] Stipulated Protective Order -- by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 05/13/2021) |
| 05/14/2021 | 49 | [SEALED] NOTICE of Subpoena by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 05/14/2021) |
| 05/17/2021 | 50 | NOTICE of Issuance of Document Subpoena to LegalEase Solutions, LLC by ROSS Intelligence Inc. (O'Byrne, Stephanie) (Entered: 05/17/2021) |
| 05/19/2021 | 51 | REQUEST for Oral Argument by ROSS Intelligence Inc. re 39 MOTION to Dismiss for Failure to State a Claim *Defendant's Antitrust and State Law Counterclaims (Renewed)*, 27 MOTION to Dismiss for Failure to State a Claim *Defendant's Antitrust and State Law Counterclaims*. (O'Byrne, Stephanie) (Entered: 05/19/2021) |
| 05/21/2021 | | SO ORDERED, re 48 Stipulated Protective Order. Signed by Judge Leonard P. Stark on 5/21/21. (ntl) (Entered: 05/21/2021) |
| 05/26/2021 | 52 | ORAL ORDER: IT IS HEREBY ORDERED that the Court will hear argument on the motion to dismiss on August 3, 2021 beginning at 10:00 a.m. in Courtroom 6B. Each side will be allocated up to 45 minutes to present its argument. ORDERED by Judge Leonard P. Stark on 5/26/21. (ntl) (Entered: 05/26/2021) |
| 06/07/2021 | 53 | ORDER Setting Mediation Conferences: A Telephone Conference is set for 6/17/2021 at 12:00 Noon before Judge Mary Pat Thynge. Plaintiffs' counsel to initiate the call to chambers. Signed by Judge Mary Pat Thynge on 6/7/2021. (Taylor, Daniel) (Entered: 06/07/2021) |
| 06/07/2021 | 54 | Letter to The Honorable Leonard P. Stark from Michael Flynn regarding request that oral argument be rescheduled - re 52 Order,, Set Hearings,. (Flynn, Michael) (Entered: 06/07/2021) |
| 06/08/2021 | 55 | MOTION for Pro Hac Vice Appearance of Attorney Crinesha B. Berry - filed by ROSS Intelligence Inc.. (O'Byrne, Stephanie) (Entered: 06/08/2021) |
| 06/08/2021 | | SO ORDERED, re 55 MOTION for Pro Hac Vice Appearance of Attorney Crinesha B. Berry filed by ROSS Intelligence Inc. Signed by Judge Leonard P. Stark on 6/8/21. (ntl) (Entered: 06/08/2021) |
| 06/09/2021 | | Pro Hac Vice Attorney Crinesha B. Berry for ROSS Intelligence Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (sam) (Entered: 06/09/2021) |
| 06/11/2021 | 56 | ORAL ORDER: IT IS HEREBY ORDERED that the oral argument scheduled for August 3, 2021 is RESCHEDULED for September 2, 2021 at 3:00 p.m. in Courtroom 6B. ORDERED by Judge Leonard P. Stark on 6/11/21. (ntl) (Entered: 06/11/2021) |
| 06/22/2021 | 57 | ORDER Setting Mediation Conferences: A Virtual/Video Mediation Conference is set for 10/21/2021 at 10:00 AM before Judge Mary Pat Thynge. See ORDER for details. Signed by Judge Mary Pat Thynge on 6/22/2021. (Taylor, Daniel) (Entered: 06/22/2021) |

A93

| 07/06/2021 | 58 | NOTICE OF SERVICE of Defendant And Counterclaimant ROSS Intelligence Inc.'s Response To Plaintiffs' First Set Of Interrogatories [Highly Confidential Attorneys' Eyes Only]; and Defendant And Counterclaimant ROSS Intelligence Inc.'s Responses To Plaintiffs' First Set Of Requests For Production filed by ROSS Intelligence Inc..(Moore, David) (Entered: 07/06/2021) |
|---|---|---|
| 07/12/2021 | 59 | NOTICE OF SERVICE of (1) Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Responses and Objections to Defendant and Counterclaimant Ross Intelligence Inc.'s First Set of Interrogatories (1-12) and (2) Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Responses and Objections to Defendant and Counterclaimant Ross Intelligence Inc.'s First Set of Requests for Production (1-103) filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 07/12/2021) |
| 08/24/2021 | 60 | ORAL ORDER: IT IS HEREBY ORDERED that the oral argument scheduled for September 2, 2021 is RESCHEDULED for October 4, 2021 at 2:00 p.m. ORDERED by Judge Leonard P. Stark on 8/24/21. (ntl) (Entered: 08/24/2021) |
| 08/26/2021 | 61 | Letter to The Honorable Leonard P. Stark from Michael Flynn regarding request for the scheduling of a discovery teleconference. (Flynn, Michael) (Entered: 08/26/2021) |
| 08/30/2021 | 62 | ORAL ORDER: After having been advised by Plaintiff(s) and Defendant(s) of their inability to resolve a discovery matter (D.I. 61), IT IS HEREBY ORDERED that not later than September 1, 2021, any party seeking relief shall file with the Court a letter, not to exceed three (3) pages, outlining the issues in dispute and its position on those issues. Not later than September 3, 2021, any party opposing the application for relief may file a letter, not to exceed three (3) pages, outlining that party's reasons for its opposition. Each party shall submit to the Court two (2) courtesy copies of its discovery letter and any attachments. After reviewing the letter submissions, the Court may schedule a teleconference. ORDERED by Judge Leonard P. Stark on 8/30/21. (ntl) (Entered: 08/30/2021) |
| 09/01/2021 | 63 | Letter to The Honorable Leonard P. Stark from Michael Flynn regarding request for Blankenship access to information ROSS designates as Highly Confidential. (Attachments: # 1 Ex. A)(Flynn, Michael) (Entered: 09/01/2021) |
| 09/01/2021 | 64 | Letter to The Honorable Leonard P. Stark from Stephanie E. O'Byrne regarding opening discovery dispute. (Attachments: # 1 Exhibit A-D)(O'Byrne, Stephanie) (Entered: 09/01/2021) |
| 09/03/2021 | 65 | Letter to The Honorable Leonard P. Stark from Stephanie E. O'Byrne regarding response to discovery dispute letter - re 63 Letter. (O'Byrne, Stephanie) (Entered: 09/03/2021) |
| 09/03/2021 | 66 | Letter to The Honorable Leonard P. Stark from Michael Flynn regarding ROSS's September 1, 2021 letter - re 64 Letter. (Flynn, Michael) (Entered: 09/03/2021) |
| 09/08/2021 | 67 | ORAL ORDER: Having considered the parties' letters (D.I. 63, 64, 65, 66) regarding Plaintiff's request to provide its in-house attorney, Carolyn Blankenship, with information that Defendant has designated as "Highly Confidential - Attorneys' Eyes Only" under the governing protective order (D.I. 48), IT IS HEREBY ORDERED that Blankenship shall be permitted to access information designated as "Highly Confidential - Attorneys' Eyes Only." The protective order explicitly provides that each side may designate up to four in-house counsel who may review Highly Confidential information. (D.I. 48 para. 2.4) Defendant has not met its burden to show that "the risk of harm that disclosure would entail (under the safeguards proposed) outweighs [Plaintiff]'s need to disclose" the Highly Confidential information. (Id. para. 7.5(c)) The risk of harm to Defendant, which no |

A94

| | | |
|---|---|---|
| | | longer operates as an active competitor to Plaintiff (see D.I. 65 at 3), is relatively low. Blankenship is an in-house legal advisor for Plaintiff, not a competitive decision-maker. (See, e.g., D.I. 63-1 para. 11) Preventing her from seeing Highly Confidential information might also prejudice Plaintiff because she is responsible for managing this case and has previously been involved with similar cases. (See D.I. 63 at 2-3) ORDERED by Judge Leonard P. Stark on 9/8/21. (ntl) (Entered: 09/08/2021) |
| 09/28/2021 | 68 | ORAL ORDER: IT IS HEREBY ORDERED that the Oral Argument scheduled for October 4, 2021 will begin at 4:00 PM in Courtroom 6B. ORDERED by Judge Leonard P. Stark on 9/28/21. (ntl) (Entered: 09/28/2021) |
| 10/04/2021 | | Minute Entry for proceedings held before Judge Leonard P. Stark - Oral Argument held on 10/4/2021. (Court Reporter B. Gaffigan.) (ntl) (Entered: 10/05/2021) |
| 10/13/2021 | 69 | Official Transcript of Oral Argument Hearing held on October 4, 2021 before Judge Leonard P. Stark. Court Reporter Brian Gaffigan, email: gaffigan@verizon.net. Transcript may be viewed at the court public terminal or ordered/purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 11/3/2021. Redacted Transcript Deadline set for 11/15/2021. Release of Transcript Restriction set for 1/11/2022.(bpg) (Entered: 10/13/2021) |
| 10/26/2021 | 70 | NOTICE of Subpoena (Fastcase, Inc.) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 10/26/2021) |
| 10/26/2021 | 71 | NOTICE of Subpoena (Morae Global Corporation) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 10/26/2021) |
| 10/28/2021 | 72 | NOTICE of Subpoena (Lawriter, LLC d/b/a Casemaker) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 10/28/2021) |
| 10/28/2021 | 73 | NOTICE of Subpoena (TrustPoint International, LLC) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 10/28/2021) |
| 11/10/2021 | 74 | STIPULATION and [Proposed] Order to Extend Deadlines - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/10/2021) |
| 11/12/2021 | 75 | NOTICE of Subpoena (Automate Medical, Inc.) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 11/12/2021) |
| 11/12/2021 | 76 | Letter to The Honorable Leonard P. Stark from Michael Flynn regarding Interim Status Report - re 41 Scheduling Order,. (Flynn, Michael) (Entered: 11/12/2021) |
| 11/12/2021 | | SO ORDERED, re 74 STIPULATION and [Proposed] Order to Extend Deadlines filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH -- Fact Discovery completed by 4/21/2022. Dispositive Motions due by 9/8/2022. Signed by Judge Leonard P. Stark on 11/12/21. (ntl) (Entered: 11/12/2021) |
| 11/12/2021 | 77 | [SEALED] NOTICE of Issuance of Subpoenas upon Morae Global Corporation and Trustpoint International, LLC by ROSS Intelligence Inc. (O'Byrne, Stephanie) (Entered: 11/12/2021) |
| 11/12/2021 | 78 | NOTICE OF SERVICE of Defendant/Counterclaimant Ross Intelligence Inc.'s Second Set Of Requests For Production (Nos. 104-141) filed by ROSS Intelligence Inc..(O'Byrne, Stephanie) (Entered: 11/12/2021) |
| 11/19/2021 | 79 | NOTICE OF SERVICE of Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's First Supplemental Responses and |

A95

| | | |
|---|---|---|
| | | Objections to Defendant and Counterclaimant Ross Intelligence Inc.'s First Set of Interrogatories - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 11/19/2021) |
| 11/23/2021 | 80 | NOTICE of Subpoena (Kelly Services, Inc.) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 11/23/2021) |
| 11/30/2021 | 81 | NOTICE OF SERVICE of (1) Plaintiffs Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Second Set of Interrogatories to Defendant ROSS Intelligence Inc. and (2) Plaintiffs Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Second Set of Requests for Production to Defendant ROSS Intelligence Inc. - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 11/30/2021) |
| 12/13/2021 | 82 | NOTICE OF SERVICE of Responses and Objections to Defendant and Counterclaimant ROSS Intelligence Inc.'s Second Set of Requests for Production (Nos. 104-141) filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 12/13/2021) |
| 12/22/2021 | 83 | Joint Letter to The Honorable Leonard P. Stark from Stephanie E. O'Byrne regarding request for the scheduling of a discovery teleconference. (O'Byrne, Stephanie) (Entered: 12/22/2021) |
| 01/03/2022 | 84 | Joint Letter to The Honorable Leonard P. Stark from David E. Moore regarding letter request for a discovery dispute conference - re 83 Letter. (Moore, David) (Entered: 01/03/2022) |
| 01/04/2022 | 85 | ORAL ORDER: After having been advised by Plaintiffs and Defendant of their inability to resolve a discovery matter (see D.I. 83, 84), IT IS HEREBY ORDERED that: (i) Defendant shall file its opening letter brief no later than January 5, and (ii) Plaintiffs shall file their responsive letter brief no later than January 18. IT IS FURTHER ORDERED that a teleconference is scheduled for January 26, 2022 at 4:15 p.m. The parties and any interested members of the public can access the teleconference by dialing 877-336-1829 and using the access code 1408971. Should the Court find further briefing necessary upon conclusion of the telephone conference, the Court will order it. Alternatively, the Court may choose to resolve the dispute prior to the telephone conference and will, in that event, cancel the conference. ORDERED by Judge Leonard P. Stark on 1/4/22. (ntl) (Entered: 01/04/2022) |
| 01/05/2022 | 86 | [SEALED] Letter to The Honorable Leonard P. Stark from David E. Moore regarding discovery dispute - re 85 Order Setting Teleconference,,,. (Attachments: # 1 Exhibit A-J) (Moore, David) (Entered: 01/05/2022) |
| 01/05/2022 | 87 | REDACTED VERSION of 86 Letter by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-J)(Moore, David) (Entered: 01/05/2022) |
| 01/07/2022 | 88 | NOTICE of Withdrawal of Stephanie E. O'Byrne by ROSS Intelligence Inc. (Moore, David) (Entered: 01/07/2022) |
| 01/07/2022 | 89 | NOTICE OF SERVICE of Defendant/Counterclaimant ROSS Intelligence Inc.'s Third Set Of Requests For Production (No. 142); and Defendant/Counterclaimant ROSS Intelligence, Inc.'s Second Set Of Interrogatories (No. 13) filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 01/07/2022) |
| 01/11/2022 | 90 | MOTION for Pro Hac Vice Appearance of Attorney Miranda D. Means - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 01/11/2022) |

A96

| | | |
|---|---|---|
| 01/11/2022 | 91 | NOTICE OF SERVICE of Defendant And Counterclaimant ROSS Intelligence Inc.'s Responses And Objections To Plaintiffs' Second Set Of Requests For Production; Defendant And Counterclaimant ROSS Intelligence Inc.'s Response And Objection To Plaintiffs' Second Set Of Interrogatories [Highly Confidential Attorneys' Eyes Only]; and Defendant And Counterclaimant ROSS Intelligence Inc.'s Supplemental Responses And Objections To Plaintiffs' First Set Of Interrogatories [Highly Confidential Attorneys' Eyes Only] filed by ROSS Intelligence Inc..(Moore, David) (Entered: 01/11/2022) |
| 01/11/2022 | | SO ORDERED, re 90 MOTION for Pro Hac Vice Appearance of Attorney Miranda D. Means filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH. Signed by Judge Leonard P. Stark on 1/11/22. (ntl) (Entered: 01/11/2022) |
| 01/14/2022 | 92 | NOTICE requesting Clerk to remove Megan McKeown as co-counsel.. (Flynn, Michael) (Entered: 01/14/2022) |
| 01/18/2022 | 93 | [SEALED] Letter to The Honorable Leonard P. Stark from Michael Flynn regarding Discovery Dispute - re 86 Letter. (Attachments: # 1 Exs. 1-6)(Flynn, Michael) (Entered: 01/18/2022) |
| 01/21/2022 | 94 | NOTICE OF SERVICE of Plaintiffs Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's First Set of Requests for Admissions to Defendant ROSS Intelligence Inc. - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 01/21/2022) |
| 01/25/2022 | 95 | REDACTED VERSION of 93 Letter by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 01/25/2022) |
| 01/25/2022 | 96 | NOTICE OF SERVICE of Defendant / Counterclaimant ROSS Intelligence, Inc.'s Third Set Of Interrogatories (Nos. 14-21) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 01/25/2022) |
| 01/25/2022 | 97 | ORAL ORDER: Having considered the letter briefing regarding the parties' discovery disputes (D.I. 86, 93), IT IS HEREBY ORDERED that ROSS's motion to compel is DENIED WITHOUT PREJUDICE. As a general matter, the requested discovery does not appear to be proportional to the needs of the case. Specifically, for RFP Nos. 1, 3-4, and 53-54, ROSS seeks the production of "agreements with third-parties regarding Plaintiffs' alleged copyrighted materials." (D.I. 86 at 1) Plaintiffs have already produced a settlement agreement involving LegalEase (see D.I. 93 at 1) and the Court has not been persuaded that settlement agreements with other entities would be relevant to the specific allegations against ROSS in this case. Rather, the Court agrees with Plaintiffs that inserting third-party settlement agreements into this case risks "a burdensome series of mini-trials on whether unrelated third parties infringe and the circumstances of each settlement." (Id. at 2) For RFP Nos. 48-54, ROSS seeks the production of "interpretations (parol evidence) relating to [Plaintiffs'] licensing agreements." (D.I. 86 at 1) ROSS's requests are overbroad in seeking interpretations regarding all licenses (not just those at issue in this case) during the past 20 years. (See D.I. 93 at 3) The Court agrees with Plaintiffs that their "interpretation of licenses that are not at issue in this case is plainly irrelevant." (Id.) For RFP Nos. 57-65, ROSS seeks production of "agreements by which Plaintiffs obtain judicial opinions and the agreements relating to use and the provision of headnotes." (D.I. 86 at 1) Plaintiffs maintain, however, that they are not asserting copyrights in any judicial opinions. (See D.I. 93 at 3) To the extent ROSS wants to compare headnotes in state judicial opinions with headnotes on Westlaw, ROSS can already do so without the requested production from Plaintiffs. (See id.) For the foregoing reasons, ROSS's motion to compel is denied, but should ROSS believe that developments in this case going forward would materially alter the Court's analysis, it may (after again meeting and conferring with Plaintiffs) renew its requests. IT IS FURTHER ORDERED |

A97

| | | |
|---|---|---|
| | | that the teleconference scheduled for tomorrow is CANCELLED. ORDERED by Judge Leonard P. Stark on 1/25/22. (ntl) (Entered: 01/25/2022) |
| 02/04/2022 | 98 | NOTICE OF SERVICE of Plaintiffs Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Third Set of Interrogatories to Defendant and Counterclaimant Ross Intelligence Inc. - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 02/04/2022) |
| 02/07/2022 | 99 | NOTICE OF SERVICE of (1) Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Responses and Objections to Defendant and Counterclaimant Ross Intelligence Inc.'s Third Set of Requests for Production (No. 142) and (2) Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Responses and Objections to Defendant and Counterclaimant Ross Intelligence Inc.'s Second Set of Interrogatories (No. 13) - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 02/07/2022) |
| 02/09/2022 | 100 | NOTICE to Take Deposition of Pargles Dall'Oglio on March 9, 2022 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 02/09/2022) |
| 02/09/2022 | 101 | NOTICE to Take Deposition of Andrew Arruda on March 24, 2022 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 02/09/2022) |
| 02/09/2022 | 102 | NOTICE to Take Deposition of Sean Shafik on March 29, 2022 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 02/09/2022) |
| 02/09/2022 | 103 | NOTICE to Take Deposition of Tomas Van der Heijden on March 31, 2022 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 02/09/2022) |
| 02/09/2022 | 104 | NOTICE to Take Deposition of Thomas Hamilton on April 5, 2022 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 02/09/2022) |
| 02/09/2022 | 105 | NOTICE to Take Deposition of Jimoh Ovbiagele on April 12, 2022 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 02/09/2022) |
| 02/10/2022 | 106 | NOTICE of Subpoena (Fastcase Inc.) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 02/10/2022) |
| 02/10/2022 | 107 | NOTICE of Subpoena (Charles Von Simson) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 02/10/2022) |
| 02/11/2022 | 108 | NOTICE requesting Clerk to remove Joshua M. Rychlinski as co-counsel. Reason for request: no longer with the firm of Crowell & Moring LLP. (Moore, David) (Entered: 02/11/2022) |
| 02/11/2022 | 109 | MOTION for Pro Hac Vice Appearance of Attorney Joachim B. Steinberg of Crowell & Moring LLP - filed by ROSS Intelligence Inc.. (Palapura, Bindu) (Entered: 02/11/2022) |
| 02/11/2022 | | SO ORDERED, re 109 MOTION for Pro Hac Vice Appearance of Attorney Joachim B. Steinberg of Crowell & Moring LLP filed by ROSS Intelligence Inc. Signed by Judge Leonard P. Stark on 2/11/22. (ntl) (Entered: 02/11/2022) |

A98

| 02/15/2022 | | Pro Hac Vice Attorney Joachim B. Steinberg for ROSS Intelligence Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (srs) (Entered: 02/15/2022) |
|---|---|---|
| 02/16/2022 | [110](#) | NOTICE of Subpoena (LegalEase Solutions, LLC) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 02/16/2022) |
| 02/17/2022 | [111](#) | NOTICE to Take Deposition of Andrew Martens on March 10, 2022 filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 02/17/2022) |
| 02/17/2022 | [112](#) | NOTICE to Take Deposition of Erik Lindberg on March 16, 2022 filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 02/17/2022) |
| 02/17/2022 | [113](#) | NOTICE to Take Deposition of Laurie Oliver on March 21, 2022 filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 02/17/2022) |
| 02/17/2022 | [114](#) | NOTICE to Take Deposition of Mark Hoffman on March 24, 2022 filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 02/17/2022) |
| 02/17/2022 | [115](#) | NOTICE to Take Deposition of Cameron Tario on April 4, 2022 filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 02/17/2022) |
| 02/17/2022 | [116](#) | NOTICE to Take Deposition of Julie Smith on April 7, 2022 filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 02/17/2022) |
| 02/17/2022 | [117](#) | NOTICE to Take Deposition of Thomas Leighton on April 8, 2022 filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 02/17/2022) |
| 02/17/2022 | [118](#) | NOTICE to Take Deposition of Isabelle Moulinier on April 14, 2022 filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 02/17/2022) |
| 02/18/2022 | [119](#) | NOTICE of Issuance of Deposition Subpoena to Khalid Al-Kofahi by ROSS Intelligence Inc. (Palapura, Bindu) (Entered: 02/18/2022) |
| 02/18/2022 | [120](#) | NOTICE of Issuance of Deposition Subpoena to Tariq Hafeez by ROSS Intelligence Inc. (Palapura, Bindu) (Entered: 02/18/2022) |
| 02/18/2022 | [121](#) | NOTICE of Issuance of Deposition Subpoena to Teri Whitehead by ROSS Intelligence Inc. (Palapura, Bindu) (Entered: 02/18/2022) |
| 02/18/2022 | [122](#) | NOTICE of Issuance of Deposition Subpoena to LegalEase Solutions, LLC by ROSS Intelligence Inc. (Palapura, Bindu) (Entered: 02/18/2022) |
| 02/18/2022 | [123](#) | NOTICE of Issuance of Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action directed to Free Law Project and Fastcase, Inc. by ROSS Intelligence Inc. (Palapura, Bindu) (Entered: 02/18/2022) |
| 02/18/2022 | [124](#) | NOTICE to Take Deposition of West Publishing Corporation on March 23, 2022 (30(b) (6) Notice) filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 02/18/2022) |
| 02/18/2022 | [125](#) | NOTICE to Take Deposition of Thomson Reuters Enterprise Centre GmbH on March 30, 2022 (30(b)(6) Notice) filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 02/18/2022) |
| 02/22/2022 | [126](#) | NOTICE OF SERVICE of Defendant and Counterclaimant Ross Intelligence, Inc.'s Response to Plaintiffs Thomson Reuters Enterprise Centre Gmbh and West Publishing Corporation's First Set of Requests for Admissions to Defendant Ross Intelligence, Inc.; and Defendant and Counterclaimant Ross Intelligence Inc.'s Supplemental Responses and Objections to Plaintiffs' Set of Interrogatories (Supplemental Response to Interrogatory |

A99

| | | |
|---|---|---|
| | | No. 11 Only) [Highly Confidential - Attorneys' Eyes Only] filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 02/22/2022) |
| 02/24/2022 | 127 | NOTICE OF SERVICE of Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Responses and Objections to Defendant and Counterclaimant Ross Intelligence Inc.'s Third Set Interrogatories (No. 14-21) - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 02/24/2022) |
| 02/25/2022 | 128 | [SEALED] NOTICE of Issuance of Amended Document Subpoena to Morae Global Corporation by ROSS Intelligence Inc. (Moore, David) (Entered: 02/25/2022) |
| 02/25/2022 | 129 | [SEALED] NOTICE of Issuance of Deposition Subpoena to Morae Global Corporation by ROSS Intelligence Inc. (Moore, David) (Entered: 02/25/2022) |
| 02/28/2022 | 130 | NOTICE OF SERVICE of Non-Party Fastcase, Inc.'s Responses and Objections to Defendant's Document Subpoena re 123 Notice (Other) filed by Fastcase, Inc..(Gaul, Catherine) (Entered: 02/28/2022) |
| 03/01/2022 | 131 | NOTICE to Take Deposition of ROSS Intelligence Inc. on March 30, 2022 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/01/2022) |
| 03/04/2022 | 132 | REDACTED VERSION of 128 Notice (Other) by ROSS Intelligence Inc.. (Moore, David) (Entered: 03/04/2022) |
| 03/04/2022 | 133 | REDACTED VERSION of 129 Notice (Other) by ROSS Intelligence Inc.. (Moore, David) (Entered: 03/04/2022) |
| 03/07/2022 | 134 | NOTICE to Take Deposition of Thomson Reuters Enterprise Centre GmbH on April 18, 2022 (Amended 30(b)(6) Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 03/07/2022) |
| 03/07/2022 | 135 | NOTICE to Take Deposition of West Publishing Corporation on April 19, 2022 (Amended 30(b)(6) Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 03/07/2022) |
| 03/08/2022 | 136 | NOTICE OF SERVICE of Defendant/Counterclaimant Ross Intelligence, Inc.'s First Set Of Requests For Admission (Nos. 1-129) [Contains Material Designated As Highly Confidential-Attorneys' Eyes Only]; Defendant/Counterclaimant Ross Intelligence, Inc.'s Fourth Set Of Requests For Production (No. 143-173); and Defendant And Counterclaimant Ross Intelligence, Inc.'s Responses And Objections To Plaintiffs' Third Set Of Interrogatories [Highly Confidential Attorneys' Eyes Only] filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 03/08/2022) |
| 03/09/2022 | 137 | NOTICE of Issuance of Deposition Subpoena to Cameron Tario by ROSS Intelligence Inc. (Moore, David) (Entered: 03/09/2022) |
| 03/11/2022 | 138 | [SEALED] NOTICE of Subpoena by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/11/2022) |
| 03/16/2022 | 139 | NOTICE OF SERVICE of Defendant And Counterclaimant ROSS Intelligence, Inc.'s Objections To Plaintiffs Thomson Reuters Enterprise Centre GmbH And West Publishing Corporation's Notice Of 30(b)(6) Deposition Of Defendant ROSS Intelligence, Inc. filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 03/16/2022) |
| 03/17/2022 | 140 | NOTICE OF SERVICE of (1) Plaintiff and Counterdefendant Thomson Reuters Enterprise Centre Gmbh's Objections and Responses to Defendant and Counterclaimant Ross Intelligence Inc.'s Amended Notice of 30(b)(6) Deposition and (2) Plaintiff and |

A100

Case: 25-2153    Document: 144-2    Page: 63    Date Filed: 12/19/2025

| | | |
|---|---|---|
| | | Counterdefendant West Publishing Corporation's Objections and Responses to Defendant and Counterclaimant Ross Intelligence Inc.'s Amended Notice of 30(b)(6) Deposition - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/17/2022) |
| 03/18/2022 | 141 | NOTICE of Subpoena (Dentons US LLP) by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/18/2022) |
| 03/18/2022 | 142 | NOTICE of Subpoena (Comcast Ventures, LP ) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/18/2022) |
| 03/18/2022 | 143 | NOTICE of Subpoena (Y Combinator Continuity Holdings I, LLC) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/18/2022) |
| 03/18/2022 | 144 | NOTICE of Subpoena (Y Combinator Investments, LLC Series S15 (Common)) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/18/2022) |
| 03/18/2022 | 145 | NOTICE of Subpoena (YC Holdings II, LLC) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/18/2022) |
| 03/22/2022 | 146 | NOTICE OF SERVICE of Defendant/Counterclaimant ROSS Intelligence Inc.'s Second Set of Requests for Admission (Nos. 130-135)[Contains Material Designated as Highly Confidential-Attorneys' Eyes Only]; and Defendant/Counterclaimant ROSS Intelligence Inc.'s Fourth Set of Requests for Production (Nos. 174-181) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 03/22/2022) |
| 03/22/2022 | 147 | NOTICE of Issuance of Amended Deposition Subpoena to LegalEase Solutions, LLC by ROSS Intelligence Inc. (Moore, David) (Entered: 03/22/2022) |
| 03/22/2022 | 148 | NOTICE of Issuance of Amended Deposition Subpoena to Tariq Hafeez by ROSS Intelligence Inc. (Moore, David) (Entered: 03/22/2022) |
| 03/22/2022 | 149 | NOTICE OF SERVICE of (1) Third Set of Requests for Production to Defendant and Counterclaimant ROSS Intelligence Inc.; and (2) Fourth Set of Interrogatories to Defendant and Counterclaimant ROSS Intelligence Inc. filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/22/2022) |
| 03/24/2022 | 150 | NOTICE OF SERVICE of Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Second Supplemental Responses and Objections to Defendant and Counterclaimant Ross Intelligence Inc.'s Interrogatory No. 1 - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 03/24/2022) |
| 03/24/2022 | 151 | NOTICE of Subpoena (iNovia Investment Fund 2015, LP) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/24/2022) |
| 03/24/2022 | 152 | NOTICE of Subpoena (iNovia Investment Fund 2015-A, L.P.) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/24/2022) |
| 03/24/2022 | 153 | NOTICE of Subpoena (iNovia Investment Fund III, L.P.) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/24/2022) |

A101

| 03/24/2022 | 154 | NOTICE of Subpoena (Y Combinator Continuity Holdings I, LLC) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/24/2022) |
|---|---|---|
| 03/24/2022 | 155 | NOTICE of Subpoena [Y Combinator Investments, LLC Series S15 (Common)] - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/24/2022) |
| 03/24/2022 | 156 | NOTICE of Subpoena (YC Holdings II, LLC) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/24/2022) |
| 03/30/2022 | 157 | NOTICE of Subpoena (iNovia Investment Fund 2015, LP) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/30/2022) |
| 03/30/2022 | 158 | NOTICE of Subpoena (iNovia Investment Fund 2015-A, LP) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/30/2022) |
| 03/30/2022 | 159 | NOTICE of Subpoena (iNovia Investment Fund III, LP) - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 03/30/2022) |
| 03/31/2022 |  | Case Reassigned to Judge Leonard P. Stark of the United States Court of Appeals for the Federal Circuit. Please include the initials of the Judge (LPS) after the case number on all documents filed. (ntl) (Entered: 03/31/2022) |
| 03/31/2022 | 160 | ORAL ORDER: In light of Defendant's filing of its amended answer and counterclaims (D.I. 36) and Plaintiffs' filing of their renewed motion to dismiss (D.I. 39), IT IS HEREBY ORDERED that Plaintiffs' earlier-filed motion to dismiss (D.I. 27) is DENIED AS MOOT. ORDERED by Judge Leonard P. Stark on 3/31/22. (ntl) (Entered: 03/31/2022) |
| 04/05/2022 | 161 | Joint Letter to The Honorable Leonard P. Stark from David E. Moore regarding request for a briefing schedule and discovery teleconference. (Moore, David) (Entered: 04/05/2022) |
| 04/06/2022 | 162 | NOTICE OF SERVICE of (1) Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Responses and Objections to Defendant and Counterclaimant Ross Intelligence Inc.'s Fourth Set of Requests for Production (Nos. 143-173) and (2) Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Responses and Objections to Defendant and Counterclaimant Ross Intelligence Inc.'s First Set of Requests for Admission (Nos. 1-129) - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 04/06/2022) |
| 04/07/2022 | 163 | NOTICE of Issuance of Amended Deposition Subpoena to Teri Whitehead by ROSS Intelligence Inc. (Moore, David) (Entered: 04/07/2022) |
| 04/12/2022 | 164 | NOTICE requesting Clerk to remove Kayvan M. Ghaffari of Crowell & Moring LLP as co-counsel. Reason for request: no longer working on case. (Moore, David) (Entered: 04/12/2022) |
| 04/13/2022 | 165 | NOTICE OF SERVICE of Amended Initial Disclosures of Defendant/Counterclaimant Ross Intelligence Inc. Pursuant to Fed. R. Civ. P. 26(a)(1) filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 04/13/2022) |
| 04/15/2022 | 166 | MOTION for Pro Hac Vice Appearance of Attorney Christopher J. Banks of Crowell & Moring LLP - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 04/15/2022) |

A102

| 04/15/2022 | 167 | STIPULATION and Order to Permit Depositions to be Taken After the Close of Fact Discovery by ROSS Intelligence Inc.. (Moore, David) (Entered: 04/15/2022) |
| 04/18/2022 | | SO ORDERED, re 166 MOTION for Pro Hac Vice Appearance of Attorney Christopher J. Banks of Crowell & Moring LLP filed by ROSS Intelligence Inc. Signed by Judge Leonard P. Stark on 4/18/22. (ntl) (Entered: 04/18/2022) |
| 04/19/2022 | | SO ORDERED, re 167 STIPULATION and Order to Permit Depositions to be Taken After the Close of Fact Discovery filed by ROSS Intelligence Inc. Signed by Judge Leonard P. Stark on 4/19/22. (ntl) (Entered: 04/19/2022) |
| 04/21/2022 | 168 | NOTICE OF SERVICE of (1) Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's First Supplemental Responses and Objections to Defendant and Counterclaimant Ross Intelligence Inc.'s Interrogatory No. 21, (2) Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Responses and Objections to Defendant and Counterclaimant Ross Intelligence Inc.'s Second Set of Requests for Admission (Nos. 130-135), and (3) Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Responses and Objections to Defendant and Counterclaimant Ross Intelligence Inc.'s Fifth Set of Requests for Production (Nos. 174-181) filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 04/21/2022) |
| 04/22/2022 | 169 | NOTICE OF SERVICE of Defendant And Counterclaimant Ross Intelligence Inc.'s Responses And Objections To Plaintiffs' Third Set Of Requests For Production; and Defendant And Counterclaimant Ross Intelligence Inc.'s Responses And Objections To Plaintiffs' Fourth Set Of Interrogatories [Highly Confidential-Attorneys' Eyes Only] filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 04/22/2022) |
| 04/26/2022 | 170 | MEMORANDUM OPINION re 39 motion to dismiss. Signed by Judge Leonard P. Stark on 4/26/22. (ntl) (Entered: 04/26/2022) |
| 04/26/2022 | 171 | ORDER re 170 Memorandum Opinion -- 39 MOTION to Dismiss filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH is GRANTED IN PART and DENIED IN PART. Signed by Judge Leonard P. Stark on 4/26/22. (ntl) (Entered: 04/26/2022) |
| 04/28/2022 | 172 | ORDER: DESIGNATION OF CIRCUIT JUDGE TO HOLD A DISTRICT COURT WITHIN THE CIRCUIT, designating and assigning the Honorable Stephanos Bibas of the United States Court of Appeals for the Third Circuit. Signed by Judge Michael A Chagares, Chief Judge of the United States Court of Appeals for the Third Circuit on 4/28/2022. (rjb) (Entered: 04/28/2022) |
| 04/28/2022 | | Case Reassigned to Judge Stephanos Bibas of the United States Court of Appeals for the Third Circuit. Please include the initials of the Judge (SB) after the case number on all documents filed. (rjb) (Entered: 04/28/2022) |
| 04/29/2022 | 173 | ORDER, the parties shall confer and file a brief joint status report within fourteen days of this order. Signed by Judge Stephanos Bibas on 4/29/2022. (nmg) (Entered: 04/29/2022) |
| 04/29/2022 | | Pro Hac Vice Attorney Christopher J Banks for ROSS Intelligence Inc., added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mpb) (Entered: 04/29/2022) |
| 05/03/2022 | 174 | NOTICE of Issuance of Second Amended Deposition Subpoena to Tariq Hafeez by ROSS Intelligence Inc. (Palapura, Bindu) (Entered: 05/03/2022) |

A103

| | | |
|---|---|---|
| 05/03/2022 | 175 | NOTICE of Issuance of Second Amended Deposition Subpoena to LegalEase Solutions, LLC by ROSS Intelligence Inc. (Palapura, Bindu) (Entered: 05/03/2022) |
| 05/03/2022 | 176 | [SEALED] NOTICE of Issuance of Deposition Subpoena to Morae Global Corporation by ROSS Intelligence Inc. (Palapura, Bindu) (Entered: 05/03/2022) |
| 05/04/2022 | 177 | REDACTED VERSION of 176 Notice (Other) by ROSS Intelligence Inc.. (Palapura, Bindu) (Entered: 05/04/2022) |
| 05/04/2022 | 178 | NOTICE to Take Deposition of Isabelle Moulinier on May 24, 2022 (Amended Notice) filed by ROSS Intelligence Inc..(Bartlett, Carson) (Entered: 05/04/2022) |
| 05/06/2022 | 179 | STIPULATION to Extend Deadline re Plaintiffs' Response to Defendant's Amended Counterclaims - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 05/06/2022) |
| 05/12/2022 | 180 | Joint STATUS REPORT by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A)(Moore, David) (Entered: 05/12/2022) |
| 05/13/2022 | 181 | STIPULATION and Order to Extend Deadlines - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 05/13/2022) |
| 06/09/2022 | 182 | Letter to The Honorable Stephanos Bibas from David E. Moore regarding pending discovery dispute - re 161 Letter. (Moore, David) (Entered: 06/09/2022) |
| 06/09/2022 | 183 | NOTICE OF SERVICE of Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Second Supplemental Responses and Objections to Defendant and Counterclaimant ROSS Intelligence Inc.'s Interrogatory No. 21 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 06/09/2022) |
| 06/21/2022 | 184 | STIPULATION and [Proposed] Order to Extend Deadlines - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 06/21/2022) |
| 06/22/2022 | 185 | ANSWER to 36 Amended Answer to Complaint,, Counterclaim, - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 06/22/2022) |
| 06/27/2022 | 186 | Joint Letter to The Honorable Stephanos Bibas from David E. Moore regarding pending discovery dispute. (Moore, David) (Entered: 06/27/2022) |
| 06/27/2022 | 187 | Joint Letter to The Honorable Stephanos Bibas from David E. Moore regarding pending discovery dispute. (Moore, David) (Entered: 06/27/2022) |
| 06/28/2022 | 188 | ORAL ORDER, I direct the parties to file simultaneous 10-page, single-spaced letter briefs by July 11 at noon addressing all pending discovery disputes. Ordered by Judge Stephanos Bibas on 6/28/2022. (twk) (Entered: 06/28/2022) |
| 07/01/2022 | 189 | Joint Letter to The Honorable Stephanos Bibas from David E. Moore regarding pending discovery dispute - re 188 Oral Order. (Moore, David) (Entered: 07/01/2022) |
| 07/05/2022 | 190 | STIPULATION and Order to Extend Deadlines - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 07/05/2022) |
| 07/06/2022 | 191 | SO ORDERED, re 190 Stipulation filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH. Signed by Judge Stephanos Bibas on 07/06/2022. (smg) (Entered: 07/06/2022) |

A104

| | | |
|---|---|---|
| 07/11/2022 | 192 | [SEALED] Letter to The Honorable Stephanos Bibas from Michael Flynn regarding Discovery Disputes - re 188 Oral Order. (Attachments: # 1 Exs. 1-4)(Flynn, Michael) (Entered: 07/11/2022) |
| 07/11/2022 | 193 | [SEALED] Letter to The Honorable Stephanos Bibas from David E. Moore regarding discovery dispute - re 188 Oral Order. (Attachments: # 1 Exhibit 1-22, # 2 Exhibit 23, # 3 Exhibit 24-27, # 4 Exhibit 28-30, # 5 Exhibit 31, # 6 Exhibit 32)(Moore, David) (Entered: 07/11/2022) |
| 07/15/2022 | 194 | MOTION for Leave to File *Amended Complaint* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exhibits 1-2)(Flynn, Michael) (Attachment 1 replaced on 8/3/2022) (apk). (Entered: 07/15/2022) |
| 07/15/2022 | 195 | [SEALED] Letter to The Honorable Stephanos Bibas from Michael J. Flynn regarding motion for leave to amend - re 194 MOTION for Leave to File *Amended Complaint*. (Attachments: # 1 Exhibits A-E)(Flynn, Michael) (Entered: 07/15/2022) |
| 07/18/2022 | 196 | REDACTED VERSION of 193 Letter, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-23, # 2 Exhibit 24-32)(Moore, David) (Entered: 07/18/2022) |
| 07/18/2022 | 197 | REDACTED VERSION of 192 Letter by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exhibits 1-4)(Flynn, Michael) (Entered: 07/18/2022) |
| 07/22/2022 | 198 | [SEALED] Letter to The Honorable Stephanos Bibas from David E. Moore regarding regarding response to motion for leave to amend - re 194 MOTION for Leave to File *Amended Complaint*. (Attachments: # 1 Exhibit A-S)(Moore, David) (Entered: 07/22/2022) |
| 07/22/2022 | 199 | STATEMENT re 198 Letter *[Defendant and Counterclaimant ROSS Intelligence Inc.'s Request For Judicial Notice In Support of ROSS's Response to Plaintiffs' Motion for Leave to File Amended Complaint]* by ROSS Intelligence Inc.. (Moore, David) (Entered: 07/22/2022) |
| 07/22/2022 | 200 | REDACTED VERSION of 195 Letter by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 07/22/2022) |
| 07/25/2022 | 201 | [SEALED] ORDER. Signed by Judge Stephanos Bibas on 7/25/2022. This order has been emailed to local counsel. (twk) (Entered: 07/25/2022) |
| 07/25/2022 | 202 | [SEALED] Letter to The Honorable Stephanos Bibas from Michael J. Flynn regarding motion for leave to amend - re 194 MOTION for Leave to File *Amended Complaint*. (Attachments: # 1 Exhibits A-C)(Flynn, Michael) (Entered: 07/25/2022) |
| 07/25/2022 | 203 | Letter to The Honorable Stephanos Bibas from Michael J. Flynn regarding request for teleconference - re 194 MOTION for Leave to File *Amended Complaint*. (Flynn, Michael) (Entered: 07/25/2022) |
| 07/29/2022 | 204 | REDACTED VERSION of 198 Letter by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-S)(Moore, David) (Entered: 07/29/2022) |
| 08/01/2022 | 205 | REDACTED VERSION of 202 Letter - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. A-C)(Flynn, Michael) (Entered: 08/01/2022) |
| 08/02/2022 | 206 | NOTICE OF SERVICE of Report Of Defendants' Expert Professor Richard Leiter, J.D. with Exhibits 1-5; Expert Report Of Alan J. Cox, Ph.D. with Appendices A-B [Highly Confidential-Attorneys' Eyes Only]; Report Of Defendants' Expert L. Karl Branting, J.D., Ph.D. with Exhibits 1-33 [Highly Confidential-Attorneys' Eyes Only]; and Expert Report |

A105

| | | |
|---|---|---|
| | | Of Barbara Frederiksen-Cross [Highly Confidential-Attorneys' Eyes Only] filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 08/02/2022) |
| 08/02/2022 | 207 | NOTICE OF SERVICE of (1) Opening Expert Report of Dr. Jonathan L. Krein and (2) Expert Report of James E. Malackowski filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 08/02/2022) |
| 08/03/2022 | | CORRECTING ENTRY: Exhibits 1-2 to D.I. 194 have been replaced per counsels request. (apk) (Entered: 08/03/2022) |
| 08/03/2022 | 208 | [SEALED] Letter to The Honorable Stephanos Bibas from David E. Moore regarding response to Plaintiffs' July 25, 2022 letter - re 202 Letter. (Attachments: # 1 Exhibit 1-5) (Moore, David) (Entered: 08/03/2022) |
| 08/04/2022 | 209 | [SEALED] Letter to The Honorable Stephanos Bibas from Michael J. Flynn regarding motion to amend - re 208 Letter. (Attachments: # 1 Exhibits A-C)(Flynn, Michael) (Entered: 08/04/2022) |
| 08/09/2022 | 210 | NOTICE of Withdrawal of Motion to Amend by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation re 194 MOTION for Leave to File *Amended Complaint* (Flynn, Michael) (Entered: 08/09/2022) |
| 08/09/2022 | 211 | MOTION for Leave to File *a Second Amended Answer to the Complaint* - filed by ROSS Intelligence Inc.. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A (Redline to Amended Answer), # 3 Exhibit B (Second Amended Answer to Complaint))(Moore, David) (Entered: 08/09/2022) |
| 08/09/2022 | 212 | Letter to The Honorable Stephanos Bibas from David E. Moore regarding motion for leave to amend Second Amended Answer to the Complaint - re 211 MOTION for Leave to File *a Second Amended Answer to the Complaint*. (Attachments: # 1 Exhibit C, # 2 Exhibit D)(Moore, David) (Entered: 08/09/2022) |
| 08/10/2022 | 213 | REDACTED VERSION of 208 Letter by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-5)(Moore, David) (Entered: 08/10/2022) |
| 08/11/2022 | 214 | REDACTED VERSION of 209 Letter by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exhibits A-C)(Flynn, Michael) (Entered: 08/11/2022) |
| 08/16/2022 | 215 | [SEALED] Letter to The Honorable Stephanos Bibas from Michael Flynn regarding Opposition to Ross's Motion for Leave to File a Second Amended Answer - re 211 MOTION for Leave to File *a Second Amended Answer to the Complaint*. (Attachments: # 1 Exs. A-G)(Flynn, Michael) (Entered: 08/16/2022) |
| 08/19/2022 | 216 | [SEALED] Letter to The Honorable Stephanos Bibas from David E. Moore regarding Reply to Motion for Leave to File a Second Amended Answer - re 211 MOTION for Leave to File *a Second Amended Answer to the Complaint*. (Moore, David) (Additional attachment(s) added on 8/22/2022: # 1 Exhibit A) (lam). (Entered: 08/19/2022) |
| 08/19/2022 | 217 | Letter to The Honorable Stephanos Bibas from David E. Moore regarding request for a teleconference - re 211 MOTION for Leave to File *a Second Amended Answer to the Complaint*. (Moore, David) (Entered: 08/19/2022) |
| 08/19/2022 | 218 | NOTICE of of Errata by ROSS Intelligence Inc. re 212 Letter, 216 Letter (Moore, David) (Entered: 08/19/2022) |
| 08/22/2022 | | CORRECTING ENTRY: Exhibit A attached to DI 216 per counsel request (lam) (Entered: 08/22/2022) |

A106

| 08/23/2022 | 219 | REDACTED VERSION of 215 Letter, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. A-G)(Flynn, Michael) (Entered: 08/23/2022) |
|---|---|---|
| 08/24/2022 | 220 | REDACTED VERSION of 216 Letter, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A)(Moore, David) (Entered: 08/24/2022) |
| 09/01/2022 | 221 | NOTICE OF SERVICE of Second Amended Initial Disclosures of Defendant/Counterclaimant ROSS Intelligence Inc. Pursuant to Fed. R. Civ. P. 26(a)(1) [Confidential] filed by ROSS Intelligence Inc..(Moore, David) (Entered: 09/01/2022) |
| 09/01/2022 | 222 | NOTICE OF SERVICE of Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Supplemental Initial Disclosures - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 09/01/2022) |
| 09/07/2022 | 223 | NOTICE OF SERVICE of Rebuttal Report of Barbara Frederiksen-Cross [Confidential, Highly Confidential-Attorneys' Eyes Only] filed by ROSS Intelligence Inc..(Moore, David) (Entered: 09/07/2022) |
| 09/12/2022 | 224 | ORDER, I GRANT ROSS's Motion for Leave to File a Second Amended Answer to the Complaint. D.I. 211 . ROSS's preemption defense is not clearly futile, and Thomson Reuters cannot show concrete prejudice. The parties are ordered to meet and confer within ten days to propose a briefing schedule in case ROSS files a motion to dismiss. Signed by Judge Stephanos Bibas on 9/12/2022. (srs) Modified on 9/12/2022 (srs). (Entered: 09/12/2022) |
| 09/14/2022 | 225 | AMENDED ANSWER to 1 Complaint,, Amended COUNTERCLAIM *[Defendant and Counterclaimant ROSS Intelligence Inc.'s Second Amended Answer and Defenses and Amended Counterclaims in Response to Plaintiffs' Complaint and Demand for Jury Trial]* against Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation by ROSS Intelligence Inc.. (Moore, David) (Entered: 09/14/2022) |
| 09/15/2022 | 226 | NOTICE OF SERVICE of Defendant And Counterclaimant ROSS Intelligence Inc.'s Supplemental Responses And Objections To Plaintiffs' Set Of Interrogatories (Supplemental Response To Interrogatory Nos. 11 & 12 Only)[Highly Confidential - Attorneys' Eyes Only] filed by ROSS Intelligence Inc..(Moore, David) (Entered: 09/15/2022) |
| 09/21/2022 | 227 | NOTICE OF SERVICE of Expert Report of Alan J. Cox, Ph.D. [Confidential-Attorneys Eyes' Only] filed by ROSS Intelligence Inc..(Bartlett, Carson) (Entered: 09/21/2022) |
| 09/21/2022 | 228 | NOTICE OF SERVICE of Defendant/Counterclaimant Ross Intelligence Inc.'s First Set Of Counterclaim Requests For Admission (No. 136), and Defendant/Counterclaimant Ross Intelligence Inc.'s First Set Of Counterclaim Requests For Production To Plaintiff/Counterdefendants Thomson Reuters Enterprise Centre GmbH And West Publishing Corporation (Nos. 182-233) filed by ROSS Intelligence Inc..(Bartlett, Carson) (Entered: 09/21/2022) |
| 09/22/2022 | 229 | Joint Letter to The Honorable Stephanos Bibas from David E. Moore regarding proposed briefing schedule to address the issue of copyright preemption. (Moore, David) (Entered: 09/22/2022) |
| 09/23/2022 | 230 | NOTICE to Take Deposition of Jonathan Krein on October 28, 2022 filed by ROSS Intelligence Inc..(Moore, David) (Entered: 09/23/2022) |
| 09/23/2022 | 231 | NOTICE to Take Deposition of James E. Malackowski on November 4, 2022 filed by ROSS Intelligence Inc..(Moore, David) (Entered: 09/23/2022) |

**A107**

| 09/23/2022 | 232 | NOTICE OF SERVICE of Plaintiffs' / Counterdefendants' Fourth Set of Requests for Production to Defendant/Counterclaimant filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 09/23/2022) |
|---|---|---|
| 09/26/2022 | 233 | ORAL ORDER: I GRANT IN PART the parties' stipulated summary judgment briefing schedule. D.I. 184 ; D.I. 229 . Opening briefs are due December 22, 2022; opposition briefs January 30, 2023; reply briefs February 13, 2023. Ordered by Judge Stephanos Bibas on 09/26/2022. (smg) (Entered: 09/26/2022) |
| 10/06/2022 | 234 | ANSWER to 225 Amended Answer to Complaint,, Counterclaim, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 10/06/2022) |
| 10/12/2022 | 235 | NOTICE to Take Deposition of Jonathan Krein on October 22, 2022 (Amended Notice) filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 10/12/2022) |
| 10/12/2022 | 236 | NOTICE to Take Deposition of James E. Malackowski on November 4, 2022 (Amended Notice) filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 10/12/2022) |
| 10/12/2022 | 237 | NOTICE OF SERVICE of Expert Reply Report of Alan J. Cox, Ph.D. [Confidential-Attorneys' Eyes Only], and L. Karl Branting, J.D., Ph.D.'s Reply to Krein Rebuttal Report [Confidential, Highly Confidential - Attorneys' Eyes Only] filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 10/12/2022) |
| 10/14/2022 | 238 | NOTICE to Take Deposition of L. Karl Branting, J.D., Ph.D. on October 19, 2022 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 10/14/2022) |
| 10/14/2022 | 239 | NOTICE to Take Deposition of Richard Leiter, J.D. on October 24, 2022 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 10/14/2022) |
| 10/14/2022 | 240 | NOTICE to Take Deposition of Alan J. Cox, Ph.D. on November 2, 2022 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 10/14/2022) |
| 10/14/2022 | 241 | NOTICE to Take Deposition of Barbara Frederiksen-Cross on November 3, 2022 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 10/14/2022) |
| 10/18/2022 | 242 | NOTICE OF SERVICE of Correction to Typographical Error in Report of Defendant's Expert L. Karl Branting, J.D., Ph.D. [Confidential, Highly Confidential - Attorneys' Eyes Only] filed by ROSS Intelligence Inc..(Moore, David) (Entered: 10/18/2022) |
| 10/19/2022 | 243 | NOTICE OF SERVICE of Reply Expert Report of James E. Malackowski filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 10/19/2022) |
| 10/20/2022 | 244 | NOTICE OF SERVICE of (1) Responses and Objections to Defendant and Counterclaimant ROSS Intelligence Inc.'s First Set of Counterclaim Requests for Production (Nos. 182-233); and (2) Responses and Objections to Defendant and Counterclaimant ROSS Intelligence Inc.'s First Set of Counterclaim Requests for Admission (No. 136) filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 10/20/2022) |
| 10/24/2022 | 245 | NOTICE OF SERVICE of Defendant And Counterclaimant Ross Intelligence Inc.'s Responses And Objections To Plaintiffs' Fourth Set Of Requests For Production filed by ROSS Intelligence Inc..(Palapura, Bindu) (Entered: 10/24/2022) |

A108

| 10/27/2022 | 246 | NOTICE OF SERVICE of Correction to Typographical Error in Reply Report of Plaintiffs Expert Dr. Jonathan L. Krein - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 10/27/2022) |
| --- | --- | --- |
| 11/03/2022 | 247 | STIPULATION TO EXTEND TIME for the deadline for completion of expert discovery related to Plaintiffs' claims, solely for the purpose of taking the deposition of Defendant's expert Barbara Frederiksen-Cross to November 11, 2022 - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/03/2022) |
| 11/07/2022 | 248 | ORAL ORDER: I GRANT the parties' stipulation deadline extension, D.I. 247 . The expert discovery deadline will be November 11, 2022 ( Expert Discovery due by 11/11/2022.) Signed by Judge Stephanos Bibas on 11/7/2022. (apk) (Entered: 11/07/2022) |
| 12/22/2022 | 249 | MOTION for Partial Summary Judgment *(No. 1) on Copyright Infringement* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 250 | [SEALED] OPENING BRIEF in Support re 249 MOTION for Partial Summary Judgment *(No. 1) on Copyright Infringement* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 1/5/2023. (Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 251 | MOTION for Partial Summary Judgment *(No. 2) on Tortious Interference with Contract and Copyright Preemption* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 252 | [SEALED] OPENING BRIEF in Support re 251 MOTION for Partial Summary Judgment *(No. 2) on Tortious Interference with Contract and Copyright Preemption* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 1/5/2023. (Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 253 | MOTION for Partial Summary Judgment *(No. 3) on Fair Use and Other Defenses* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 254 | [SEALED] OPENING BRIEF in Support re 253 MOTION for Partial Summary Judgment *(No. 3) on Fair Use and Other Defenses* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 1/5/2023. (Flynn, Michael)(Entered: 12/22/2022) |
| 12/22/2022 | 255 | [SEALED] DECLARATION re 249 MOTION for Partial Summary Judgment *(No. 1) on Copyright Infringement*, 253 MOTION for Partial Summary Judgment *(No. 3) on Fair Use and Other Defenses*, 251 MOTION for Partial Summary Judgment *(No. 2) on Tortious Interference with Contract and Copyright Preemption -- Declaration of Miranda D. Means --* by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Ex. 1-22, # 2 Ex. 23, # 3 Ex. 24-43, # 4 Ex. 44-74, # 5 Ex. 75-80, # 6 Ex. 81, # 7 Ex. 82-86, # 8 Ex. 87, # 9 Ex. 88, # 10 Ex. 89-97, # 11 Ex. 98-103)(Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 256 | [SEALED] DECLARATION re 249 MOTION for Partial Summary Judgment *(No. 1) on Copyright Infringement*, 251 MOTION for Partial Summary Judgment *(No. 2) on Tortious Interference with Contract and Copyright Preemption*, 253 MOTION for Partial Summary Judgment *(No. 3) on Fair Use and Other Defenses -- Declaration of Laurie Oliver --* by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 12/22/2022) |

A109

| 12/22/2022 | 257 | NOTICE of Lodging by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation re 255 Declaration,, *(Declaration of Miranda D. Means)* (Flynn, Michael) (Entered: 12/22/2022) |
|---|---|---|
| 12/22/2022 | 258 | MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of L. Karl Branting* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 259 | [SEALED] OPENING BRIEF in Support re 258 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of L. Karl Branting* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 1/5/2023. (Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 260 | MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Barbara Frederiksen-Cross* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 261 | [SEALED] OPENING BRIEF in Support re 260 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Barbara Frederiksen-Cross* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 1/5/2023. (Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 262 | MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Alan Cox* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 263 | [SEALED] OPENING BRIEF in Support re 262 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Alan Cox* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 1/5/2023. (Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 264 | MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Richard Leiter* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 265 | [SEALED] OPENING BRIEF in Support re 264 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Richard Leiter* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 1/5/2023. (Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 266 | [SEALED] DECLARATION re 264 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Richard Leiter*, 260 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Barbara Frederiksen-Cross*, 262 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Alan Cox*, 258 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of L. Karl Branting -- Declaration of Eric Loverro --* by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. AA-BI)(Flynn, Michael) (Entered: 12/22/2022) |
| 12/22/2022 | 267 | MOTION to Preclude *the Opinions and Testimony of Plaintiffs' Expert Jonathan L. Krein* - filed by ROSS Intelligence Inc.. (Attachments: # 1 Text of Proposed Order)(Moore, David) (Entered: 12/22/2022) |

A110

| | | |
|---|---|---|
| 12/22/2022 | 268 | [SEALED] OPENING BRIEF in Support re 267 MOTION to Preclude *the Opinions and Testimony of Plaintiffs' Expert Jonathan L. Krein* filed by ROSS Intelligence Inc..Answering Brief/Response due date per Local Rules is 1/5/2023. (Moore, David) (Entered: 12/22/2022) |
| 12/22/2022 | 269 | MOTION for Summary Judgment *as to Plaintiffs' Tortious Interference with Contract Claim* - filed by ROSS Intelligence Inc.. (Attachments: # 1 Text of Proposed Order) (Moore, David) (Entered: 12/22/2022) |
| 12/22/2022 | 270 | [SEALED] OPENING BRIEF in Support re 269 MOTION for Summary Judgment *as to Plaintiffs' Tortious Interference with Contract Claim* filed by ROSS Intelligence Inc..Answering Brief/Response due date per Local Rules is 1/5/2023. (Moore, David) (Entered: 12/22/2022) |
| 12/22/2022 | 271 | MOTION for Summary Judgment *on its Affirmative Defense of Fair Use* - filed by ROSS Intelligence Inc.. (Attachments: # 1 Text of Proposed Order)(Moore, David) (Entered: 12/22/2022) |
| 12/22/2022 | 272 | [SEALED] OPENING BRIEF in Support re 271 MOTION for Summary Judgment *on its Affirmative Defense of Fair Use* filed by ROSS Intelligence Inc..Answering Brief/Response due date per Local Rules is 1/5/2023. (Moore, David) (Entered: 12/22/2022) |
| 12/22/2022 | 273 | MOTION to Preclude *[Ross Intelligence Inc.'s Motion to Exclude Two Opinions of James E. Malackowski]* - filed by ROSS Intelligence Inc.. (Attachments: # 1 Text of Proposed Order)(Moore, David) (Entered: 12/22/2022) |
| 12/22/2022 | 274 | [SEALED] OPENING BRIEF in Support re 273 MOTION to Preclude *[Ross Intelligence Inc.'s Motion to Exclude Two Opinions of James E. Malackowski]* filed by ROSS Intelligence Inc..Answering Brief/Response due date per Local Rules is 1/5/2023. (Moore, David) (Entered: 12/22/2022) |
| 12/22/2022 | 275 | [SEALED] DECLARATION re 267 MOTION to Preclude *the Opinions and Testimony of Plaintiffs' Expert Jonathan L. Krein*, 268 Opening Brief in Support, 273 MOTION to Preclude *[Ross Intelligence Inc.'s Motion to Exclude Two Opinions of James E. Malackowski]*, 274 Opening Brief in Support, *[Declaration of Joachim B. Steinberg]* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8)(Palapura, Bindu) (Entered: 12/22/2022) |
| 12/22/2022 | 276 | [SEALED] DECLARATION re 272 Opening Brief in Support *of Motion for Summary Judgment on its Affirmative Defense of Fair Use* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B (part 1 of 4), # 3 Exhibit B (part 2 of 4), # 4 Exhibit B (part 3 of 4), # 5 Exhibit B (part 4 of 4), # 6 Exhibit C-E)(Moore, David) (Entered: 12/22/2022) |
| 12/22/2022 | 277 | DECLARATION re 272 Opening Brief in Support *of Motion for Summary Judgment on its Affirmative Defense of Fair Use (Declaration of Richard Leiter)* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-D)(Moore, David) (Entered: 12/22/2022) |
| 12/22/2022 | 278 | [SEALED] DECLARATION re 272 Opening Brief in Support *of Motion for Summary Judgment on its Affirmative Defense of Fair Use (Declaration of Jimoh Ovbiagele))* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-B)(Moore, David) (Entered: 12/22/2022) |
| 12/22/2022 | 279 | [SEALED] DECLARATION re 272 Opening Brief in Support *of Motion for Summary Judgment on its Affirmative Defense of Fair Use (Declaration of L. Karl Branting)* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B (part 1 of 16), # 3 |

A111

| | | |
|---|---|---|
| | | Exhibit B (part 2 of 16), # [4](#) Exhibit B (part 3 of 16), # [5](#) Exhibit B (part 4 of 16), # [6](#) Exhibit B (part 5 of 16), # [7](#) Exhibit B (part 6 of 16), # [8](#) Exhibit B (part 7 of 16), # [9](#) Exhibit B (part 8 of 16), # [10](#) Exhibit B (part 9 of 16), # [11](#) Exhibit B (part 10 of 16), # [12](#) Exhibit B (part 11 of 16), # [13](#) Exhibit B (part 12 of 16), # [14](#) Exhibit B (part 13 of 16), # [15](#) Exhibit B (part 14 of 16), # [16](#) Exhibit B (part 15 of 16), # [17](#) Exhibit B (part 16 of 16), # [18](#) Exhibit C, # [19](#) Exhibit D)(Moore, David) (Entered: 12/22/2022) |
| 12/22/2022 | [280](#) | [SEALED] DECLARATION re [272](#) Opening Brief in Support *of Motion for Summary Judgment on its Affirmative Defense of Fair Use (Declaration of Barbra Frederiksen-Cross* by ROSS Intelligence Inc.. (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit C (part 1 of 9), # [4](#) Exhibit C (part 2 of 9), # [5](#) Exhibit C (part 3 of 9), # [6](#) Exhibit C (part 4 of 9), # [7](#) Exhibit C (part 5 of 9), # [8](#) Exhibit C (part 6 of 9), # [9](#) Exhibit C (part 7 of 9), # [10](#) Exhibit C (part 8 of 9), # [11](#) Exhibit C (part 9 of 9), # [12](#) Exhibit D (part 1 of 33), # [13](#) Exhibit D (part 2 of 33), # [14](#) Exhibit D (part 3 of 33), # [15](#) Exhibit D (part 4 of 33), # [16](#) Exhibit D (part 5 of 33), # [17](#) Exhibit D (part 6 of 33), # [18](#) Exhibit D (part 7 of 33), # [19](#) Exhibit D (part 8 of 33), # [20](#) Exhibit D (part 9 of 33), # [21](#) Exhibit D (part 10 of 33), # [22](#) Exhibit D (part 11 of 33), # [23](#) Exhibit D (part 12 of 33), # [24](#) Exhibit D (part 13 of 33), # [25](#) Exhibit D (part 14 of 33), # [26](#) Exhibit D (part 15 of 33), # [27](#) Exhibit D (part 16 of 33), # [28](#) Exhibit D (part 17 of 33), # [29](#) Exhibit D (part 18 of 33), # [30](#) Exhibit D (part 19 of 33), # [31](#) Exhibit D (part 20 of 33), # [32](#) Exhibit D (part 21 of 33), # [33](#) Exhibit D (part 22 of 33), # [34](#) Exhibit D (part 23 of 33), # [35](#) Exhibit D (part 24 of 33), # [36](#) Exhibit D (part 25 of 33), # [37](#) Exhibit D (part 26 of 33), # [38](#) Exhibit D (part 27 of 33), # [39](#) Exhibit D (part 28 of 33), # [40](#) Exhibit D (part 29 of 33), # [41](#) Exhibit D (part 30 of 33), # [42](#) Exhibit D (part 31 of 33), # [43](#) Exhibit D (part 32 of 33), # [44](#) Exhibit D (part 33 of 33))(Moore, David) (Entered: 12/22/2022) |
| 12/22/2022 | [281](#) | [SEALED] DECLARATION re [270](#) Opening Brief in Support, [271](#) MOTION for Summary Judgment *on its Affirmative Defense of Fair Use,* [269](#) MOTION for Summary Judgment *as to Plaintiffs' Tortious Interference with Contract Claim,* [272](#) Opening Brief in Support *[Declaration of Warrington S. Parker III]* by ROSS Intelligence Inc.. (Attachments: # [1](#) Exhibit 1-14, # [2](#) Exhibit 15-25, # [3](#) Exhibit 26 part 1 of 6, # [4](#) Exhibit 26 part 2 of 6, # [5](#) Exhibit 26 part 3 of 6, # [6](#) Exhibit 26 part 4 of 6, # [7](#) Exhibit 26 part 5 of 6, # [8](#) Exhibit 26 part 6 of 6, # [9](#) Exhibit 27-35, # [10](#) Exhibit 36 part 1 of 4, # [11](#) Exhibit 36 part 2 of 4, # [12](#) Exhibit 36 part 3 of 4, # [13](#) Exhibit 36 part 4 of 4, # [14](#) Exhibit 37-41, # [15](#) Exhibit 42-43, # [16](#) Exhibit 44 part 1 of 3, # [17](#) Exhibit 44 part 2 of 3, # [18](#) Exhibit 44 part 3 of 3, # [19](#) Exhibit 45 part 1 of 3, # [20](#) Exhibit 45 part 2 of 3, # [21](#) Exhibit 45 part 3 of 3, # [22](#) Exhibit 46, # [23](#) Exhibit 47, # [24](#) Exhibit 48, # [25](#) Exhibit 49, # [26](#) Exhibit 50, # [27](#) Exhibit 51, # [28](#) Exhibit 52, # [29](#) Exhibit 53, # [30](#) Exhibit 54, # [31](#) Exhibit 55, # [32](#) Exhibit 56, # [33](#) Exhibit 57, # [34](#) Exhibit 58, # [35](#) Exhibit 59, # [36](#) Exhibit 60, # [37](#) Exhibit 61, # [38](#) Exhibit 62, # [39](#) Exhibit 63, # [40](#) Exhibit 64 part 1 of 2, # [41](#) Exhibit 64 part 2 of 2, # [42](#) Exhibit 65 part 1 of 2, # [43](#) Exhibit 65 part 2 of 2, # [44](#) Exhibit 66)(Palapura, Bindu) (Entered: 12/22/2022) |
| 12/28/2022 | [282](#) | STIPULATION TO EXTEND TIME for the parties to submit redacted versions of their sealed summary judgment and Daubert papers originally filed on December 22, 2022 (D.I. 250, 252, 254-256, 259, 261, 263, 265, 266, 268, 270, 272, 274-276, and 278-281) to January 5, 2023 - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 12/28/2022) |
| 12/29/2022 | 283 | ORAL ORDER, I GRANT the parties stipulation to extend the deadline to submit redacted versions of their papers (D.I. [282](#) ) to January 5, 2023. Signed by Judge Stephanos Bibas on 12/29/2022. (apk) (Entered: 12/29/2022) |
| 01/03/2023 | 284 | MULTI MEDIA DOCUMENT filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation in the form of a USB Drive. Filing related to D.I. [255](#) Declaration |

A112

| | | and D.I. 257 Notice of Lodging. (Media on file in Clerk's Office). (smg) (Entered: 01/03/2023) |
|---|---|---|
| 01/05/2023 | 285 | REDACTED VERSION of 268 Opening Brief in Support, by ROSS Intelligence Inc.. (Moore, David) (Entered: 01/05/2023) |
| 01/05/2023 | 286 | REDACTED VERSION of 270 Opening Brief in Support, by ROSS Intelligence Inc.. (Moore, David) (Entered: 01/05/2023) |
| 01/05/2023 | 287 | REDACTED VERSION of 272 Opening Brief in Support by ROSS Intelligence Inc.. (Moore, David) (Entered: 01/05/2023) |
| 01/05/2023 | 288 | REDACTED VERSION of 274 Opening Brief in Support, by ROSS Intelligence Inc.. (Moore, David) (Entered: 01/05/2023) |
| 01/05/2023 | 289 | REDACTED VERSION of 275 Declaration,, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-8)(Moore, David) (Entered: 01/05/2023) |
| 01/05/2023 | 290 | REDACTED VERSION of 276 Declaration, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-E)(Moore, David) (Entered: 01/05/2023) |
| 01/05/2023 | 291 | REDACTED VERSION of 278 Declaration by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-B)(Moore, David) (Entered: 01/05/2023) |
| 01/05/2023 | 292 | REDACTED VERSION of 279 Declaration,,, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-D)(Moore, David) (Entered: 01/05/2023) |
| 01/05/2023 | 293 | REDACTED VERSION of 280 Declaration,,,,, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-D)(Moore, David) (Entered: 01/05/2023) |
| 01/05/2023 | 294 | REDACTED VERSION of 281 Declaration,,,,, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-25, # 2 Exhibit 26 part 1 of 6, # 3 Exhibit 26 part 2 of 6, # 4 Exhibit 26 part 3 of 6, # 5 Exhibit 26 part 4 of 6, # 6 Exhibit 26 part 5 of 6, # 7 Exhibit 26 part 6 of 6, # 8 Exhibit 27-30, # 9 Exhibit 31-43, # 10 Exhibit 44 part 1 of 3, # 11 Exhibit 44 part 2 of 3, # 12 Exhibit 44 part 3 of 3, # 13 Exhibit 45 part 1 of 3, # 14 Exhibit 45 part 2 of 3, # 15 Exhibit 45 part 3 of 3, # 16 Exhibit 46-66)(Moore, David) (Entered: 01/05/2023) |
| 01/09/2023 | 295 | REDACTED VERSION of 250 Opening Brief in Support, re 249 MOTION for Partial Summary Judgment (No. 1) on Copyright Infringement - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 01/09/2023) |
| 01/09/2023 | 296 | REDACTED VERSION of 252 Opening Brief in Support, re 251 MOTION for Partial Summary Judgment (No. 2) on Tortious Interference with Contract and Copyright Preemption - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 01/09/2023) |
| 01/09/2023 | 297 | REDACTED VERSION of 254 Opening Brief in Support, re 253 MOTION for Partial Summary Judgment (No. 3) on Fair Use and Other Defenses - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 01/09/2023) |
| 01/09/2023 | 298 | REDACTED VERSION of 255 Declaration,, of Miranda D. Means - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. 1-103)(Flynn, Michael) (Entered: 01/09/2023) |
| 01/09/2023 | 299 | REDACTED VERSION of 259 Opening Brief in Support, re 258 MOTION to Preclude Certain Testimony, Argument, or Evidence Regarding the Opinions of L. Karl Branting - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 01/09/2023) |

| 01/09/2023 | 300 | REDACTED VERSION of 261 Opening Brief in Support, *re 260 MOTION to Preclude Certain Testimony, Argument, or Evidence Regarding the Opinions of Barbara Frederiksen-Cross* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 01/09/2023) |
|---|---|---|
| 01/09/2023 | 301 | REDACTED VERSION of 263 Opening Brief in Support, *re 262 MOTION to Preclude Certain Testimony, Argument, or Evidence Regarding the Opinions of Alan Cox* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 01/09/2023) |
| 01/09/2023 | 302 | REDACTED VERSION of 265 Opening Brief in Support, *re 264 MOTION to Preclude Certain Testimony, Argument, or Evidence Regarding the Opinions of Richard Leiter* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 01/09/2023) |
| 01/09/2023 | 303 | REDACTED VERSION of 266 Declaration,, *of Eric Loverro* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. AA-BI) (Flynn, Michael) (Entered: 01/09/2023) |
| 01/09/2023 | 304 | REDACTED VERSION of 256 Declaration, *of Laurie Oliver* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 01/09/2023) |
| 01/11/2023 | 305 | STIPULATION to Extend Time deadlines related to Defendant's Antitrust and California Unfair Competition Law Counterclaims by ROSS Intelligence Inc.. (Moore, David) (Entered: 01/11/2023) |
| 01/12/2023 | 306 | ORAL ORDER, I GRANT the parties' stipulated deadline extensions, D.I. 305 . Substantial completion of document production due by February 23, 2023; close of fact discovery May 11, 2023; expert reports May 25, 2023; rebuttal expert reports June 22, 2023; reply expert reports July 20, 2023; close of expert discovery August 3, 2023. Opening summary judgment briefs due August 31, 2023; opposition briefs September 28, 2023; reply briefs October 26, 2023. I will not look kindly on further requests for extensions. Ordered by Judge Stephanos Bibas on 1/12/2023. (twk) (Entered: 01/12/2023) |
| 01/13/2023 | 307 | NOTICE OF SERVICE of Defendant/Counterclaimant ROSS Intelligence Inc.'s Second Set of Counterclaim Requests for Production to Plaintiff/Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation (Nos. 234-247) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 01/13/2023) |
| 01/24/2023 | 308 | NOTICE of Errata by ROSS Intelligence Inc. re 287 Redacted Document, 272 Opening Brief in Support *of its Motion for Summary Judgment on its Affirmative Defense of Fair Use* (Moore, David) (Entered: 01/24/2023) |
| 01/30/2023 | 309 | [SEALED] ANSWERING BRIEF in Opposition re 264 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Richard Leiter* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 2/6/2023. (Moore, David) (Entered: 01/30/2023) |
| 01/30/2023 | 310 | [SEALED] ANSWERING BRIEF in Opposition re 249 MOTION for Partial Summary Judgment *(No. 1) on Copyright Infringement* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 2/6/2023. (Moore, David) (Entered: 01/30/2023) |
| 01/30/2023 | 311 | [SEALED] ANSWERING BRIEF in Opposition re 251 MOTION for Partial Summary Judgment *(No. 2) on Tortious Interference with Contract and Copyright Preemption* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 2/6/2023. (Moore, David) (Entered: 01/30/2023) |

A114

| 01/30/2023 | 312 | [SEALED] ANSWERING BRIEF in Opposition re 258 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of L. Karl Branting* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 2/6/2023. (Moore, David) (Entered: 01/30/2023) |
|---|---|---|
| 01/30/2023 | 313 | [SEALED] ANSWERING BRIEF in Opposition re 262 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Alan Cox* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 2/6/2023. (Moore, David) (Entered: 01/30/2023) |
| 01/30/2023 | 314 | [SEALED] ANSWERING BRIEF in Opposition re 260 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Barbara Frederiksen-Cross* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 2/6/2023. (Moore, David) (Entered: 01/30/2023) |
| 01/30/2023 | 315 | [SEALED] ANSWERING BRIEF in Opposition re 267 MOTION to Preclude *the Opinions and Testimony of Plaintiffs' Expert Jonathan L. Krein* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Reply Brief due date per Local Rules is 2/6/2023. (Flynn, Michael) (Entered: 01/30/2023) |
| 01/30/2023 | 316 | [SEALED] ANSWERING BRIEF in Opposition re 269 MOTION for Summary Judgment *as to Plaintiffs' Tortious Interference with Contract Claim* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Reply Brief due date per Local Rules is 2/6/2023. (Flynn, Michael) (Entered: 01/30/2023) |
| 01/30/2023 | 317 | [SEALED] ANSWERING BRIEF in Opposition re 271 MOTION for Summary Judgment *on its Affirmative Defense of Fair Use* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Reply Brief due date per Local Rules is 2/6/2023. (Flynn, Michael) (Entered: 01/30/2023) |
| 01/30/2023 | 318 | [SEALED] ANSWERING BRIEF in Opposition re 253 MOTION for Partial Summary Judgment *(No. 3) on Fair Use and Other Defenses* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 2/6/2023. (Moore, David) (Entered: 01/30/2023) |
| 01/30/2023 | 319 | [SEALED] ANSWERING BRIEF in Opposition re 273 MOTION to Preclude *[Ross Intelligence Inc.'s Motion to Exclude Two Opinions of James E. Malackowski]* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Reply Brief due date per Local Rules is 2/6/2023. (Flynn, Michael) (Entered: 01/30/2023) |
| 01/30/2023 | 320 | [SEALED] DECLARATION re 317 Answering Brief in Opposition, 319 Answering Brief in Opposition, 315 Answering Brief in Opposition, 316 Answering Brief in Opposition, *of Miranda D. Means* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. 104-115)(Flynn, Michael) (Entered: 01/30/2023) |
| 01/30/2023 | 321 | [SEALED] DECLARATION re 314 Answering Brief in Opposition, 313 Answering Brief in Opposition, 312 Answering Brief in Opposition, 309 Answering Brief in Opposition, *[Declaration of Crinesha B. Berry]* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 9, # 2 Exhibit 10, # 3 Exhibit 11, # 4 Exhibit 12, # 5 Exhibit 13, # 6 Exhibit 14, # 7 Exhibit 15, # 8 Exhibit 16)(Moore, David) (Entered: 01/30/2023) |
| 01/30/2023 | 322 | [SEALED] DECLARATION re 310 Answering Brief in Opposition *[Declaration of Jimoh Ovbiagele]* by ROSS Intelligence Inc.. (Moore, David) (Entered: 01/30/2023) |
| 01/30/2023 | 323 | [SEALED] OBJECTIONS by ROSS Intelligence Inc. to 310 Answering Brief in Opposition, 249 MOTION for Partial Summary Judgment *(No. 1) on Copyright Infringement*, 250 Opening Brief in Support, *[Defendant's Objections to Evidence Offered In Support of Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment (No. 1) on Copyright Infringement (DI 249, 250)]*. (Moore, David) (Entered: 01/30/2023) |

A115

| | | |
|---|---|---|
| 01/30/2023 | 324 | [SEALED] DECLARATION re 310 Answering Brief in Opposition, 311 Answering Brief in Opposition, 318 Answering Brief in Opposition *[Declaration of Jacob Canter]* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 67, # 2 Exhibit 68, # 3 Exhibit 69, # 4 Exhibit 70, # 5 Exhibit 71, # 6 Exhibit 72, # 7 Exhibit 73, # 8 Exhibit 74, # 9 Exhibit 75, # 10 Exhibit 76, # 11 Exhibit 77, # 12 Exhibit 78, # 13 Exhibit 79, # 14 Exhibit 80, # 15 Exhibit 81, # 16 Exhibit 82, # 17 Exhibit 83, # 18 Exhibit 84, # 19 Exhibit 85, # 20 Exhibit 86, # 21 Exhibit 87, # 22 Exhibit 88, # 23 Exhibit 89, # 24 Exhibit 90 (Part 1 of 3), # 25 Exhibit 90 (Part 2 of 3), # 26 Exhibit 90 (Part 3 of 3))(Palapura, Bindu) (Entered: 01/30/2023) |
| 01/30/2023 | 325 | [SEALED] OBJECTIONS by ROSS Intelligence Inc. to 311 Answering Brief in Opposition, 251 MOTION for Partial Summary Judgment *(No. 2) on Tortious Interference with Contract and Copyright Preemption*, 252 Opening Brief in Support, *Defendant's Objections to Evidence Offered In Support of Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment (No. 2) on Tortious Interference (DI 251, 252)].* (Moore, David) (Entered: 01/30/2023) |
| 01/30/2023 | 326 | [SEALED] OBJECTIONS by ROSS Intelligence Inc. to 254 Opening Brief in Support, 253 MOTION for Partial Summary Judgment *(No. 3) on Fair Use and Other Defenses*, 318 Answering Brief in Opposition *[Defendant's Objections to Evidence Offered In Support of Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment (No. 3) on Fair Use and Other Defenses (DI 253, 254)].* (Moore, David) (Entered: 01/30/2023) |
| 01/30/2023 | 327 | NOTICE of filing the following Non-Paper material(s) in multi media format: Exhibit 89 submitted in support of the Declaration of Jacob Canter in Support of Defendant/Counterclaimant ROSS Intelligence Inc.'s Briefs in Response to Plaintiffs' Motions for Partial Summary Judgment (D.I. 324). Original Non-paper material(s) to be filed with the Clerk's Office. Notice filed by Bindu Ann George Palapura on behalf of ROSS Intelligence Inc. (Palapura, Bindu) (Entered: 01/30/2023) |
| 02/06/2023 | 328 | REDACTED VERSION of 315 Answering Brief in Opposition, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/06/2023) |
| 02/06/2023 | 329 | REDACTED VERSION of 316 Answering Brief in Opposition, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/06/2023) |
| 02/06/2023 | 330 | REDACTED VERSION of 317 Answering Brief in Opposition, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/06/2023) |
| 02/06/2023 | 331 | REDACTED VERSION of 319 Answering Brief in Opposition, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/06/2023) |
| 02/06/2023 | 332 | REDACTED VERSION of 320 Declaration, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. 104-115)(Flynn, Michael) (Entered: 02/06/2023) |
| 02/06/2023 | 333 | REDACTED VERSION of 309 Answering Brief in Opposition, by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/06/2023) |
| 02/06/2023 | 334 | REDACTED VERSION of 310 Answering Brief in Opposition by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/06/2023) |

A116

| 02/06/2023 | 335 | REDACTED VERSION of 311 Answering Brief in Opposition, by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/06/2023) |
| --- | --- | --- |
| 02/06/2023 | 336 | REDACTED VERSION of 312 Answering Brief in Opposition, by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/06/2023) |
| 02/06/2023 | 337 | REDACTED VERSION of 313 Answering Brief in Opposition, by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/06/2023) |
| 02/06/2023 | 338 | REDACTED VERSION of 314 Answering Brief in Opposition, by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/06/2023) |
| 02/06/2023 | 339 | REDACTED VERSION of 318 Answering Brief in Opposition by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/06/2023) |
| 02/06/2023 | 340 | REDACTED VERSION of 321 Declaration, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 9, # 2 Exhibit 11, # 4 Exhibit 12, # 5 Exhibit 13, # 6 Exhibit 14, # 7 Exhibit 15, # 8 Exhibit 16)(Moore, David) (Entered: 02/06/2023) |
| 02/06/2023 | 341 | REDACTED VERSION of 322 Declaration by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/06/2023) |
| 02/06/2023 | 342 | REDACTED VERSION of 323 Objections, by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/06/2023) |
| 02/06/2023 | 343 | REDACTED VERSION of 324 Declaration,,, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 67, # 2 Exhibit 68, # 3 Exhibit 69, # 4 Exhibit 70, # 5 Exhibit 71, # 6 Exhibit 72, # 7 Exhibit 73, # 8 Exhibit 74, # 9 Exhibit 75, # 10 Exhibit 76, # 11 Exhibit 77, # 12 Exhibit 78, # 13 Exhibit 79, # 14 Exhibit 80, # 15 Exhibit 81, # 16 Exhibit 82, # 17 Exhibit 83, # 18 Exhibit 84, # 19 Exhibit 85, # 20 Exhibit 86, # 21 Exhibit 87, # 22 Exhibit 88, # 23 Exhibit 89, # 24 Exhibit 90)(Palapura, Bindu) (Entered: 02/06/2023) |
| 02/06/2023 | 344 | REDACTED VERSION of 325 Objections, by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/06/2023) |
| 02/06/2023 | 345 | REDACTED VERSION of 326 Objections, by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/06/2023) |
| 02/13/2023 | 346 | [SEALED] REPLY BRIEF re 269 MOTION for Summary Judgment *as to Plaintiffs' Tortious Interference with Contract Claim* filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/13/2023) |
| 02/13/2023 | 347 | [SEALED] REPLY BRIEF re 271 MOTION for Summary Judgment *on its Affirmative Defense of Fair Use* filed by ROSS Intelligence Inc.. (Moore, David) (Main Document 347 replaced on 2/21/2023) (vfm). (Entered: 02/13/2023) |
| 02/13/2023 | 348 | [SEALED] DECLARATION re 347 Reply Brief *in Support of Motion for Summary Judgment on Affirmative Defense of Fair Use [Declaration of Gabriel M. Ramsey]* by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/13/2023) |
| 02/13/2023 | 349 | [SEALED] REPLY BRIEF re 273 MOTION to Preclude *[Ross Intelligence Inc.'s Motion to Exclude Two Opinions of James E. Malackowski]* filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/13/2023) |
| 02/13/2023 | 350 | [SEALED] REPLY BRIEF re 267 MOTION to Preclude *the Opinions and Testimony of Plaintiffs' Expert Jonathan L. Krein* filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/13/2023) |
| 02/13/2023 | 351 | [SEALED] REPLY BRIEF re 249 MOTION for Partial Summary Judgment *(No. 1) on Copyright Infringement* - filed by Thomson Reuters Enterprise Centre GmbH, West |

A117

| | | Publishing Corporation. (Flynn, Michael) (Entered: 02/13/2023) |
|---|---|---|
| 02/13/2023 | 352 | [SEALED] DECLARATION re 350 Reply Brief, 349 Reply Brief *[Declaration of Mark A. Klapow in Support of Reply Briefs]* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 17-20)(Moore, David) (Entered: 02/13/2023) |
| 02/13/2023 | 353 | [SEALED] REPLY BRIEF re 251 MOTION for Partial Summary Judgment *(No. 2) on Tortious Interference with Contract and Copyright Preemption* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/13/2023) |
| 02/13/2023 | 354 | [SEALED] REPLY BRIEF re 253 MOTION for Partial Summary Judgment *(No. 3) on Fair Use and Other Defenses* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/13/2023) |
| 02/13/2023 | 355 | [SEALED] REPLY BRIEF re 258 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of L. Karl Branting* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/13/2023) |
| 02/13/2023 | 356 | [SEALED] REPLY BRIEF re 260 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Barbara Frederiksen-Cross* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/13/2023) |
| 02/13/2023 | 357 | [SEALED] REPLY BRIEF re 262 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Alan Cox* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/13/2023) |
| 02/13/2023 | 358 | [SEALED] REPLY BRIEF re 264 MOTION to Preclude *Certain Testimony, Argument, or Evidence Regarding the Opinions of Richard Leiter* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/13/2023) |
| 02/13/2023 | 359 | [SEALED] DECLARATION re 351 Reply Brief, 358 Reply Brief, 354 Reply Brief, 356 Reply Brief, 353 Reply Brief, 357 Reply Brief, 355 Reply Brief, *of Miranda D. Means* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. 116-122, # 2 Ex. 123, # 3 Exs. 124-127)(Flynn, Michael) (Attachment 3 replaced on 2/21/2023) (vfm). (Entered: 02/13/2023) |
| 02/13/2023 | 360 | [SEALED] RESPONSE TO OBJECTIONS by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation re 323 Objections, *re 249 MOTION for Partial Summary Judgment (No. 1) on Copyright Infringement*. (Flynn, Michael) (Entered: 02/13/2023) |
| 02/13/2023 | 361 | [SEALED] RESPONSE TO OBJECTIONS by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation re 325 Objections, *re 251 MOTION for Partial Summary Judgment (No. 2) on Tortious Interference with Contract and Copyright Preemption*. (Flynn, Michael) (Entered: 02/13/2023) |
| 02/13/2023 | 362 | [SEALED] RESPONSE TO OBJECTIONS by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation re 326 Objections, *re 253 MOTION for Partial Summary Judgment (No. 3) on Fair Use and Other Defenses*. (Flynn, Michael) (Entered: 02/13/2023) |
| 02/13/2023 | 363 | NOTICE OF SERVICE of Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Responses and Objections to Defendant and Counterclaimant ROSS Intelligence Inc.'s Second Set of Counterclaim Requests for |

A118

| | | |
|---|---|---|
| | | Production (Nos. 234-247) - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 02/13/2023) |
| 02/15/2023 | 364 | REQUEST for Oral Argument by ROSS Intelligence Inc. re 271 MOTION for Summary Judgment *on its Affirmative Defense of Fair Use*, 269 MOTION for Summary Judgment *as to Plaintiffs' Tortious Interference with Contract Claim*. (Moore, David) (Entered: 02/15/2023) |
| 02/21/2023 | | CORRECTING ENTRY: D.I. 347 Replaced per request of counsel to correct wording of sentence in the first paragraph. (vfm) (Entered: 02/21/2023) |
| 02/21/2023 | | CORRECTING ENTRY: Exhibit 124-127 replaced for D.I. 359 per counsels request due to a page missing from Ex. 125 (vfm) (Entered: 02/21/2023) |
| 02/21/2023 | 365 | STIPULATION TO EXTEND TIME to Submit Redacted Versions of Sealed Summary Judgment and Daubert Papers (filed on February 13, 2023) to February 24, 2023 - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/21/2023) |
| 02/22/2023 | 366 | ORAL ORDER, I GRANT the parties' stipulated extension, D.I. 365 . Redacted papers are due February 24, 2023. Signed by Judge Stephanos Bibas on 2/22/2023. (apk) (Entered: 02/22/2023) |
| 02/22/2023 | 367 | NOTICE OF SERVICE of [Corrected] Defendant ROSS Intelligence Inc.'s Reply Brief in Support of its Motion for Summary Judgment on its Affirmative Defense of Fair Use (D.I. 347) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 02/22/2023) |
| 02/23/2023 | 368 | REDACTED VERSION of 351 Reply Brief re *249 MOTION for Partial Summary Judgment (No. 1) on Copyright Infringement* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/23/2023) |
| 02/23/2023 | 369 | REDACTED VERSION of 353 Reply Brief, re *251 MOTION for Partial Summary Judgment (No. 2) on Tortious Interference with Contract and Copyright Preemption* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/23/2023) |
| 02/23/2023 | 370 | REDACTED VERSION of 354 Reply Brief re *253 MOTION for Partial Summary Judgment (No. 3) on Fair Use and Other Defenses* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/23/2023) |
| 02/23/2023 | 371 | REDACTED VERSION of 355 Reply Brief, re *258 MOTION to Preclude Certain Testimony, Argument, or Evidence Regarding the Opinions of L. Karl Branting* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/23/2023) |
| 02/23/2023 | 372 | REDACTED VERSION of 356 Reply Brief, re *260 MOTION to Preclude Certain Testimony, Argument, or Evidence Regarding the Opinions of Barbara Frederiksen-Cross* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/23/2023) |
| 02/23/2023 | 373 | REDACTED VERSION of 357 Reply Brief re *262 MOTION to Preclude Certain Testimony, Argument, or Evidence Regarding the Opinions of Alan Cox* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/23/2023) |
| 02/23/2023 | 374 | REDACTED VERSION of 358 Reply Brief re *264 MOTION to Preclude Certain Testimony, Argument, or Evidence Regarding the Opinions of Richard Leiter* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 02/23/2023) |

A119

| 02/23/2023 | 375 | REDACTED VERSION of 359 Declaration, *of Miranda D. Means* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. 116-127) (Flynn, Michael) (Entered: 02/23/2023) |
|---|---|---|
| 02/24/2023 | 376 | REDACTED VERSION of 346 Reply Brief by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/24/2023) |
| 02/24/2023 | 377 | REDACTED VERSION of 347 Reply Brief by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/24/2023) |
| 02/24/2023 | 378 | REDACTED VERSION of 348 Declaration by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/24/2023) |
| 02/24/2023 | 379 | REDACTED VERSION of 349 Reply Brief by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/24/2023) |
| 02/24/2023 | 380 | REDACTED VERSION of 350 Reply Brief by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/24/2023) |
| 02/24/2023 | 381 | REDACTED VERSION of 352 Declaration by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 17-20)(Moore, David) (Entered: 02/24/2023) |
| 03/14/2023 | 382 | NOTICE to Take Deposition of Laurie Oliver on April 4, 2023 filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/14/2023) |
| 03/14/2023 | 383 | NOTICE to Take Deposition of Bridgett You on April 5, 2023 filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/14/2023) |
| 03/14/2023 | 384 | NOTICE to Take Deposition of Heather Miller-Sammons on April 6, 2023 filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/14/2023) |
| 03/14/2023 | 385 | NOTICE to Take Deposition of Mike Dahn on April 7, 2023 filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/14/2023) |
| 03/14/2023 | 386 | NOTICE to Take Deposition of Dustin Cripe on April 10, 2023 filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/14/2023) |
| 03/14/2023 | 387 | NOTICE to Take Deposition of Christine Post on April 11, 2023 filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/14/2023) |
| 03/14/2023 | 388 | NOTICE to Take Deposition of Thomas Leighton on April 12, 2023 filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/14/2023) |
| 03/14/2023 | 389 | NOTICE to Take Deposition of Andrew Martens on April 13, 2023 filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/14/2023) |
| 03/14/2023 | 390 | NOTICE to Take Deposition of Erik Lindberg on April 14, 2023 filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/14/2023) |
| 03/14/2023 | 391 | NOTICE to Take Deposition of Mark Hoffman on April 17, 2023 filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/14/2023) |
| 03/14/2023 | 392 | NOTICE to Take Deposition of Isabelle Moulinier on April 18, 2023 filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/14/2023) |
| 03/14/2023 | 393 | NOTICE to Take Deposition of Thomson Reuters Enterprise Centre GmbH on April 19, 2023 (30(b)(6) Notice) filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/14/2023) |
| 03/14/2023 | 394 | NOTICE to Take Deposition of West Publishing Corporation on April 19, 2023 (30(b)(6) Notice) filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/14/2023) |

A120

| | | |
|---|---|---|
| 03/16/2023 | 395 | Joint Letter to The Honorable Stephanos Bibas from Bindu A. Palapura regarding request for a briefing schedule and discovery teleconference. (Palapura, Bindu) (Entered: 03/16/2023) |
| 03/16/2023 | 396 | Letter to The Honorable Stephanos Bibas from Bindu A. Palapura regarding discovery dispute - re 395 Letter. (Attachments: # 1 Exhibit A-H)(Palapura, Bindu) (Entered: 03/16/2023) |
| 03/17/2023 | 397 | NOTICE of Issuance of Subpoenas upon Berger Singerman, Dentons US LLP, Fennemore Wendel, Office of the Indiana Attorney General, Jackson Lewis P.C., King & Spalding LLP, Land of Lincoln Legal Aid, Nowack & Olsen, PLLC, Salazar Law, Van Horn Law Group, and White & Case LLP by ROSS Intelligence Inc. (Brown, Andrew) (Entered: 03/17/2023) |
| 03/17/2023 | 398 | NOTICE to Take Deposition of Andrew Arruda on April 24, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/17/2023) |
| 03/17/2023 | 399 | NOTICE to Take Deposition of Jimoh Ovbiagele on April 25, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/17/2023) |
| 03/17/2023 | 400 | NOTICE to Take Deposition of Thomas Hamilton on April 26, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/17/2023) |
| 03/17/2023 | 401 | NOTICE to Take Deposition of Tomas Van Der Heijden on April 27, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/17/2023) |
| 03/17/2023 | 402 | NOTICE to Take Deposition of Sean Shafik on April 28, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/17/2023) |
| 03/17/2023 | 403 | NOTICE to Take Deposition of Charles von Simson on May 1, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/17/2023) |
| 03/17/2023 | 404 | NOTICE to Take Deposition of Pargles Dall'Oglio on May 2, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/17/2023) |
| 03/17/2023 | 405 | NOTICE to Take Deposition of Julian D'Angelo on May 3, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/17/2023) |
| 03/17/2023 | 406 | NOTICE to Take Deposition of Jorge Estrada on May 4, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/17/2023) |
| 03/17/2023 | 407 | NOTICE to Take Deposition of Anthony Phan on May 5, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/17/2023) |
| 03/17/2023 | 408 | ORAL ORDER, Plaintiff's response letter regarding the pending discovery dispute is due March 24, 2023, at 12:00 P.M.. Signed by Judge Stephanos Bibas on 3/17/2023. (twk) (Entered: 03/17/2023) |

A121

| 03/20/2023 | 409 | NOTICE OF SERVICE of Defendant/Counterclaimant Ross Intelligence Inc.'s Third Set Of Counterclaim Requests For Production To Plaintiff/Counterdefendants Thomson Reuters Enterprise Centre GmbH And West Publishing Corporation (Nos. 248-262) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 03/20/2023) |
|---|---|---|
| 03/23/2023 | 410 | NOTICE of Issuance of Subpoena upon Access/Information, Inc. by ROSS Intelligence Inc. (Brown, Andrew) (Entered: 03/23/2023) |
| 03/24/2023 | 411 | NOTICE of Issuance of Amended Subpoena upon Access/Information, Inc. by ROSS Intelligence Inc. (Brown, Andrew) (Entered: 03/24/2023) |
| 03/24/2023 | 412 | [SEALED] Letter to The Honorable Stephanos Bibas from Michael J. Flynn regarding Discovery Dispute - re 396 Letter. (Attachments: # 1 Exs. 1-2)(Flynn, Michael) (Entered: 03/24/2023) |
| 03/24/2023 | 413 | NOTICE to Take Deposition of ROSS Intelligence Inc. on May 11, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/24/2023) |
| 03/27/2023 | | ORAL ORDER, The Court will hold a Zoom conference regarding the parties' discovery dispute on Tuesday, March 28, 2023, at 10:00 A.M. The Court has emailed the parties the Zoom information. (A Discovery Dispute Hearing is set for 3/28/2023 at 10:00 AM in Virtually before Judge Stephanos Bibas.) Signed by Judge Stephanos Bibas on 03/27/2023. (apk) (Entered: 03/27/2023) |
| 03/28/2023 | | ORAL ORDER, I OVERRULE Plaintiffs' objections to requests for production Nos. 185 -87, 191 -93, 196 -98, 205 -06, 210 -15, 219 -33. I OVERRULE Plaintiffs' objections to No. 218 on the condition that documents only dated on or after January 1, 2000, are discoverable. I SUSTAIN Plaintiffs' objections to Nos. 216 -17. I ORDER the parties to report back to the Court by April 5, 2023, at noon any stipulations regarding No. 246 . (Notice of Compliance deadline set for 4/5/2023.) Signed by Judge Stephanos Bibas on 03/28/2023. (apk) (Entered: 03/28/2023) |
| 03/29/2023 | 414 | NOTICE to Take Deposition of Alex Abid on May 8, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 03/29/2023) |
| 03/29/2023 | 415 | NOTICE to Take Deposition of West Publishing Corporation on April 19, 2023 (Amended Notice of 30(b)(6) Deposition) filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/29/2023) |
| 03/29/2023 | 416 | NOTICE to Take Deposition of Thomson Reuters Enterprise Centre GmbH on April 19, 2023 (Amended Notice of 30(b)(6) Deposition) filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 03/29/2023) |
| 03/29/2023 | 417 | NOTICE OF SERVICE of Third Amended Initial Disclosures Of Defendant/Counterclaimant ROSS Intelligence Inc. Pursuant To Fed. R. Civ. P. 26(a)(1) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 03/29/2023) |
| 03/30/2023 | 418 | Letter to The Honorable Stephanos Bibas from Michael J. Flynn regarding Thomson Reuters' source code production. (Flynn, Michael) (Entered: 03/30/2023) |
| 03/31/2023 | 419 | REDACTED VERSION of 412 Letter - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. 1-2)(Flynn, Michael) (Entered: 03/31/2023) |
| 04/03/2023 | 420 | NOTICE to Take Deposition of Erik Lindberg on April 24, 2023 (Amended Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 04/03/2023) |

A122

| 04/03/2023 | [421](#) | NOTICE to Take Deposition of Mark Hoffman on April 25, 2023 (Amended Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 04/03/2023) |
| 04/03/2023 | [422](#) | NOTICE to Take Deposition of Dustin Cripe on April 25, 2023 (Amended Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 04/03/2023) |
| 04/03/2023 | [423](#) | NOTICE to Take Deposition of Laurie Oliver on April 26, 2023 (Amended Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 04/03/2023) |
| 04/03/2023 | [424](#) | NOTICE to Take Deposition of Bridgett You on April 26, 2023 (Amended Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 04/03/2023) |
| 04/03/2023 | [425](#) | NOTICE to Take Deposition of Heather Miller-Sammons on April 27, 2023 (Amended Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 04/03/2023) |
| 04/03/2023 | [426](#) | NOTICE to Take Deposition of Christine Post on April 27, 2023 (Amended Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 04/03/2023) |
| 04/03/2023 | [427](#) | NOTICE to Take Deposition of Mike Dahn on April 28, 2023 (Amended Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 04/03/2023) |
| 04/03/2023 | [428](#) | NOTICE of Issuance of Subpoena upon Nextlaw Referral Network by ROSS Intelligence Inc. (Moore, David) (Entered: 04/03/2023) |
| 04/03/2023 | [429](#) | NOTICE to Take Deposition of Thomas Leighton on April 24, 2023 (Amended Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 04/03/2023) |
| 04/05/2023 | [430](#) | Letter to The Honorable Stephanos Bibas from Michael Flynn regarding update on the parties' efforts to resolve source code issues. (Flynn, Michael) (Entered: 04/05/2023) |
| 04/05/2023 | [431](#) | NOTICE of Issuance of Subpoenas upon Shearman & Sterling LLP, and Siskind Susser P.C. by ROSS Intelligence Inc. (Moore, David) (Entered: 04/05/2023) |
| 04/06/2023 | [432](#) | Cross NOTICE of Document Subpoena to King & Spalding LLP by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/06/2023) |
| 04/06/2023 | [433](#) | Cross NOTICE of Document Subpoena to Dentons US, LLP by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/06/2023) |
| 04/06/2023 | [434](#) | NOTICE to Take Deposition of Sean Shafik, Charles Von Simson, Jimoh Ovbiagele, Julian DAngelo, Thomas Hamilton, Anthony Phan and Tomas van der Heijden on the dates set forth in the attached notice (Amended) filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 04/06/2023) |
| 04/07/2023 | [435](#) | NOTICE of Document Subpoena to Casetext, Inc. - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |
| 04/07/2023 | [436](#) | NOTICE of Deposition Subpoena to Casetext, Inc. - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |
| 04/07/2023 | [437](#) | NOTICE of Document Subpoena to Fastcase, Inc. - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |
| 04/07/2023 | [438](#) | NOTICE of Deposition Subpoena to Fastcase, Inc. - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |

A123

| 04/07/2023 | 439 | NOTICE of Document Subpoena to iNovia Investment Fund 2015, LP - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |
| 04/07/2023 | 440 | NOTICE of Deposition Subpoena to iNovia Investment Fund 2015, LP - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |
| 04/07/2023 | 441 | NOTICE of Document Subpoena to iNovia Investment Fund III, LP - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |
| 04/07/2023 | 442 | NOTICE of Deposition Subpoena to iNovia Investment Fund III, LP - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |
| 04/07/2023 | 443 | NOTICE of Document Subpoena to Y Combinator Continuity Holdings I, LLC - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |
| 04/07/2023 | 444 | NOTICE of Deposition Subpoena to Y Combinator Continuity Holdings I, LLC - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |
| 04/07/2023 | 445 | NOTICE of Document Subpoena to Y Combinator Investments, LLC - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |
| 04/07/2023 | 446 | NOTICE of Deposition Subpoena to Y Combinator Investments, LLC - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |
| 04/07/2023 | 447 | NOTICE of Document Subpoena to YC Holdings II, LLC - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |
| 04/07/2023 | 448 | NOTICE of Deposition Subpoena to YC Holdings II, LLC - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/07/2023) |
| 04/07/2023 | 449 | NOTICE of Issuance of Subpoena upon David Curle by ROSS Intelligence Inc. (Moore, David) (Entered: 04/07/2023) |
| 04/11/2023 | 450 | NOTICE of Issuance of Subpoena upon Phase 5 Consulting Group Inc. by ROSS Intelligence Inc. (Moore, David) (Entered: 04/11/2023) |
| 04/11/2023 | 451 | Cross NOTICE of Document Subpoena to Nextlaw Referral Network - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/11/2023) |
| 04/11/2023 | 452 | NOTICE OF SERVICE of Defendant/Counterclaimant ROSS Intelligence, Inc.'s First Set of Counterclaim Interrogatories (Nos. 22-28); and Defendant/Counterclaimant ROSS Intelligence, Inc.'s Second Set of Counterclaim Requests for Admission (Nos. 137-154) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 04/11/2023) |
| 04/11/2023 | 453 | NOTICE OF SERVICE of Plaintiffs' / Counterdefendants' Fifth Set of Interrogatories to Defendant / Counterclaimant - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 04/11/2023) |

A124

| 04/12/2023 | 454 | MOTION for Pro Hac Vice Appearance of Attorney Margaux Poueymirou, Anna Z. Saber, and Shira Liu of Crowell & Moring LLP - filed by ROSS Intelligence Inc.. (Palapura, Bindu) (Entered: 04/12/2023) |
|---|---|---|
| 04/12/2023 | 455 | NOTICE to Take Deposition of Kai Bond on May 10, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 04/12/2023) |
| 04/12/2023 | 456 | NOTICE of Document Subpoena to Kai Bond - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 04/12/2023) |
| 04/13/2023 | | SO ORDERED, regarding D.I. 454 MOTION for Pro Hac Vice Appearance of Attorney Margaux Poueymirou, Anna Z. Saber, and Shira Liu of Crowell & Moring LLP filed by ROSS Intelligence Inc. Signed by Judge Stephanos Bibas on 04/13/2023. (apk) (Entered: 04/13/2023) |
| 04/17/2023 | 457 | NOTICE OF SERVICE of (1) Plaintiff and Counter-Defendant Thomson Reuters Enterprise Centre GmbH's Objections and Responses to Defendant and Counterclaimant ROSS Intelligence Inc.'s Amended Notice of 30(b)(6) Deposition and (2) Plaintiff and Counter-Defendant West Publishing Corporation's Objections and Responses to Defendant and Counterclaimant ROSS Intelligence Inc.'s Amended Notice of 30(b)(6) Deposition - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 04/17/2023) |
| 04/18/2023 | 458 | MOTION for Pro Hac Vice Appearance of Attorney Vanessa Barsanti, Danielle ONeal, Jonathan Emmanuel, Lexi Wung, and Erin Bishop - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 04/18/2023) |
| 04/20/2023 | 459 | NOTICE OF SERVICE of Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Responses and Objections to Defendant and Counterclaimant ROSS Intelligence Inc.'s Third Set of Counterclaim Requests for Production (Nos. 228-262) - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 04/20/2023) |
| 04/20/2023 | 460 | SO ORDERED, re 458 MOTION for Pro Hac Vice Appearance of Attorney Vanessa Barsanti, Danielle ONeal, Jonathan Emmanuel, Lexi Wung, and Erin Bishop filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH. Ordered by Judge Stephanos Bibas on 4/20/2023. (smg) (Entered: 04/20/2023) |
| 04/20/2023 | 461 | Letter to The Honorable Stephanos Bibas from David E. Moore regarding request for a briefing schedule and discovery teleconference. (Moore, David) (Entered: 04/20/2023) |
| 04/20/2023 | 462 | Letter to The Honorable Stephanos Bibas from David E. Moore regarding opening discovery dispute letter brief. (Attachments: # 1 Exhibit A-Y)(Moore, David) (Entered: 04/20/2023) |
| 04/21/2023 | 463 | NOTICE to Take Deposition of Pargles DallOglio, Alex Abid, Jorge Estrada and Andrew Arruda on May 4, 2023; May 9, 2023; May 11, 2023; and May 19, 2023, respectively (Amended) filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 04/21/2023) |
| 04/21/2023 | 464 | NOTICE of Issuance of Deposition Subpoena to YC Holdings II, LLC by ROSS Intelligence Inc. (Moore, David) (Entered: 04/21/2023) |
| 04/21/2023 | 465 | NOTICE of Issuance of Deposition Subpoena to Y Combinator Investments, LLC Series S15 (Common) by ROSS Intelligence Inc. (Moore, David) (Entered: 04/21/2023) |

A125

| 04/21/2023 | 466 | NOTICE of Issuance of Deposition Subpoena to Y Combinator Continuity Holdings I, LLC by ROSS Intelligence Inc. (Moore, David) (Entered: 04/21/2023) |
| 04/21/2023 | 467 | NOTICE of Issuance of Deposition Subpoena to iNovia Investment Fund III, LP by ROSS Intelligence Inc. (Moore, David) (Entered: 04/21/2023) |
| 04/21/2023 | 468 | NOTICE of Issuance of Deposition Subpoena to iNovia Investment Fund 2015, LP by ROSS Intelligence Inc. (Moore, David) (Entered: 04/21/2023) |
| 04/21/2023 | 469 | NOTICE of Issuance of Deposition Subpoena to Kai Bond by ROSS Intelligence Inc. (Moore, David) (Entered: 04/21/2023) |
| 04/21/2023 | 470 | NOTICE of Issuance of Deposition Subpoena to Fastcase, Inc. by ROSS Intelligence Inc. (Moore, David) (Entered: 04/21/2023) |
| 04/21/2023 | 471 | NOTICE of Issuance of Deposition Subpoena to Casetext, Inc. by ROSS Intelligence Inc. (Moore, David) (Entered: 04/21/2023) |
| 04/24/2023 | 472 | [SEALED] NOTICE of Subsequent Authority by ROSS Intelligence Inc. (Attachments: # 1 Exhibit 1-3)(Moore, David) (Entered: 04/24/2023) |
| 04/24/2023 | 473 | ORAL ORDER : Plaintiffs' response letter regarding the pending discovery dispute is due Friday, April 28, 2023, at 5:00 P.M. The Court will hold a Zoom conference regarding that dispute on Tuesday, May 2, at 1:30 P.M. The Court has emailed the parties the Zoom information.Ordered by Judge Stephanos Bibas on 04/24/2023. (smg) (Entered: 04/24/2023) |
| 04/25/2023 | | Pro Hac Vice Attorney Shira Liu, Margaux Poueymirou, and Anna Z. Saber for ROSS Intelligence Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mpb) (Entered: 04/25/2023) |
| 04/28/2023 | 474 | Letter to The Honorable Stephanos Bibas from Michael J. Flynn regarding Discovery Dispute - re 462 Letter. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Flynn, Michael) (Entered: 04/28/2023) |
| 05/01/2023 | 475 | REDACTED VERSION of 472 Notice (Other) by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1)(Moore, David) (Entered: 05/01/2023) |
| 05/01/2023 | 476 | ORAL ORDER, I DENY the Defendant's requests for a date certain and discovery-deadline extension, D.I. 462 . The Defendant says that Plaintiffs cannot commit to producing all the requested documents by the close of discovery. But the Plaintiffs have since committed to producing the documents by the discovery deadline. D.I. 474 , at 3. So no date certain is needed. And this Court has already made clear that further requests for extension were disfavored. See D.I. 306 . The Defendant makes no effort to meet the demanding good cause standard that such requests require. See Fed. R. Civ. P. 16(b)(4). So I will not extend the discovery deadline at this time. If Plaintiffs fail to meet their discovery obligations, the Defendant can renew its requests. Because of this order, I CANCEL tomorrow's Zoom teleconference. Ordered by Judge Stephanos Bibas on 5/1/2023. (twk) (Entered: 05/01/2023) |
| 05/03/2023 | 477 | [SEALED] STATEMENT re 472 Notice (Other) -- *Plaintiffs' Response to Defendant's Notice of Subsequent Development* -- by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 05/03/2023) |
| 05/08/2023 | 478 | STIPULATION and [Proposed] Order to Take Deposition After Close of Fact Discovery by ROSS Intelligence Inc.. (Palapura, Bindu) (Entered: 05/08/2023) |

A126

| | | |
|---|---|---|
| 05/09/2023 | 479 | SO ORDERED, re 478 STIPULATION and [Proposed] Order to Take Deposition After Close of Fact Discovery. Entered by Judge Stephanos Bibas on 5/9/2023. (nmg) (Entered: 05/09/2023) |
| 05/10/2023 | 480 | NOTICE to Take Deposition of Mike Dahn on May 23, 2023 (Second Amended Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 05/10/2023) |
| 05/10/2023 | 481 | NOTICE to Take Deposition of Thomson Reuters Enterprise Centre GmbH on May 23, 2023 (Fourth Amended 30(b)(6) Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 05/10/2023) |
| 05/10/2023 | 482 | NOTICE to Take Deposition of West Publishing Corporation on May 23, 2023 (Fourth Amended 30(b)(6) Notice) filed by ROSS Intelligence Inc..(Moore, David) (Entered: 05/10/2023) |
| 05/10/2023 | 483 | REDACTED VERSION of 477 Statement by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 05/10/2023) |
| 05/11/2023 | 484 | NOTICE to Take Deposition of Charles von Simson on May 17, 2023 (Amended) filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 05/11/2023) |
| 05/11/2023 | 485 | NOTICE to Take Deposition of Andrew Aruda on May 19, 2023 (Amended) filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 05/11/2023) |
| 05/11/2023 | 486 | NOTICE OF SERVICE of (1) Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Responses and Objections to Defendant and Counterclaimant ROSS Intelligence Inc.'s Second Set of Counterclaim Requests for Admission (Nos. 137-154) and (2) Plaintiffs/Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Responses to Defendant/Counterclaimant, ROSS Intelligence Inc.'s First Set of Counterclaim Interrogatories (Nos. 22-28) - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 05/11/2023) |
| 05/12/2023 | 487 | NOTICE OF SERVICE of Defendant and Counterclaimant ROSS Intelligence Inc.'s Response and Objection to Plaintiffs' Fifth Set of Interrogatories [Highly Confidential-Attorneys' Eyes Only] filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 05/12/2023) |
| 05/17/2023 | 488 | Letter to The Honorable Stephanos Bibas from David E. Moore regarding defendant's renewed request to extend deadlines - re 476 Oral Order,,,. (Moore, David) (Entered: 05/17/2023) |
| 05/17/2023 | 489 | [SEALED] DECLARATION re 488 Letter *Declaration of Anna Z. Saber* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-6)(Moore, David) (Entered: 05/17/2023) |
| 05/18/2023 | 490 | ORDER, I ORDER Plaintiffs to respond to the Defendant's extension request (D.I. 488 ) by 5:00 P.M. on Monday, May 22. The Court will reach out to the parties to schedule a Zoom conference for next week. (Notice of Compliance deadline set for 5/22/2023.) Signed by Judge Stephanos Bibas on 5/18/2023. (apk) (Entered: 05/18/2023) |
| 05/22/2023 | 491 | Letter to The Honorable Stephanos Bibas from Michael J. Flynn regarding response to defendant's second request to extend the case schedule - re 488 Letter. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Flynn, Michael) (Entered: 05/22/2023) |

A127

| 05/23/2023 | 492 | ORAL ORDER, I EXTEND the initial expert report deadline to June 1, 2023. No other deadlines are affected. Ordered by Judge Stephanos Bibas on 5/23/2023. (twk) (Entered: 05/23/2023) |
|---|---|---|
| 05/24/2023 | 493 | REDACTED VERSION of 489 Declaration *of Anna Z. Saber* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-6)(Moore, David) (Entered: 05/24/2023) |
| 05/26/2023 | 494 | NOTICE of Supplemental Authority by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Attachments: # 1 Ex. A)(Flynn, Michael) (Entered: 05/26/2023) |
| 05/31/2023 | 495 | STATEMENT re 494 Notice (Other) *[Defendant ROSS Intelligence Inc.'s Response to Plaintiffs' Notice of Supplemental Authority]* by ROSS Intelligence Inc.. (Moore, David) (Entered: 05/31/2023) |
| 06/05/2023 | 496 | NOTICE OF SERVICE of Expert Report Of Alan J. Cox, Ph.D. [Confidential-Attorneys' Eyes Only], Report Of Defendant/Counterclaimant's Expert Gillian K. Hadfield, J.D., Ph.D. [Highly Confidential-Attorneys' Eyes Only], Report Of Defendant/Counterclaimant's Expert James D. Ratliff, Ph.D. [Highly Confidential-Attorneys' Eyes Only], Report Of Defendant/Counterclaimant's Expert L. Karl Branting, J.D., Ph.D. [Highly Confidential-Attorneys' Eyes Only], and Report Of Defendant/Counterclaimant's Expert Dr. Peter W. Martin, J.D. [Highly Confidential-Attorneys' Eyes Only] filed by ROSS Intelligence Inc..(Brown, Andrew) (Entered: 06/05/2023) |
| 06/08/2023 | 497 | NOTICE to Take Deposition of Peter Martin on June 19, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 06/08/2023) |
| 06/08/2023 | 498 | NOTICE to Take Deposition of Gillian Hadfield on June 20, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 06/08/2023) |
| 06/08/2023 | 499 | NOTICE to Take Deposition of Jim Ratliff on June 21, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 06/08/2023) |
| 06/08/2023 | 500 | NOTICE to Take Deposition of Alan Cox on June 22, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 06/08/2023) |
| 06/23/2023 | 501 | NOTICE OF SERVICE of (1) Rebuttal Expert Report of Mihran Yenikomshian and (2) Rebuttal Expert Report of Chad Syverson, Ph.D. - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 06/23/2023) |
| 06/27/2023 | 502 | MOTION for Pro Hac Vice Appearance of Attorney Beatrice B. Nguyen and Matthew J. McBurney of Crowell & Moring LLP - filed by ROSS Intelligence Inc.. (Brown, Andrew) (Entered: 06/27/2023) |
| 06/28/2023 | 503 | SO ORDERED, re 502 MOTION for Pro Hac Vice Appearance of Attorney Beatrice B. Nguyen and Matthew J. McBurney of Crowell & Moring LLP. Ordered by Judge Stephanos Bibas on 6/28/2023. (twk) (Entered: 06/28/2023) |
| 07/14/2023 | 504 | NOTICE to Take Deposition of Chad Syverson on August 2, 2023 filed by ROSS Intelligence Inc..(Moore, David) (Entered: 07/14/2023) |
| 07/14/2023 | 505 | NOTICE to Take Deposition of Mihran Yenikomshian on August 2, 2023 filed by ROSS Intelligence Inc..(Moore, David) (Entered: 07/14/2023) |

A128

| 07/18/2023 | 506 | NOTICE to Take Deposition of Karl Branting on July 26, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 07/18/2023) |
|---|---|---|
| 07/18/2023 | 507 | NOTICE to Take Deposition of James Ratliff (Amended) on July 28, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 07/18/2023) |
| 07/18/2023 | 508 | NOTICE to Take Deposition of Peter Martin (Amended) on August 3, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 07/18/2023) |
| 07/18/2023 | 509 | NOTICE to Take Deposition of Alan Cox (Amended) on August 9, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 07/18/2023) |
| 07/18/2023 | 510 | NOTICE to Take Deposition of Gillian Hadfield (Amended) on August 9, 2023 filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.(Flynn, Michael) (Entered: 07/18/2023) |
| 07/18/2023 | 511 | STIPULATION and [Proposed] Order to Take Depositions After Close of Expert Discovery by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 07/18/2023) |
| 07/19/2023 | 512 | SO ORDERED, re 511 STIPULATION and [Proposed] Order to Take Depositions After Close of Expert Discovery. Ordered by Judge Stephanos Bibas on 07/19/2023. (smg) (Entered: 07/19/2023) |
| 07/31/2023 | 513 | MOTION for Pro Hac Vice Appearance of Attorney Max Samels - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 07/31/2023) |
| 08/03/2023 | 514 | NOTICE OF SERVICE of Expert Reply Report Of Alan J. Cox, Ph.D. [Confidential-Attorneys' Eyes Only], And Reply Report Of Defendant/Counterclaimant's Expert James D. Ratliff, Ph.D. [Confidential, Highly Confidential-Attorneys' Eyes Only] filed by ROSS Intelligence Inc..(Moore, David) (Entered: 08/03/2023) |
| 08/04/2023 | 515 | SO ORDERED, re 513 MOTION for Pro Hac Vice Appearance of Attorney Max Samels filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH. Ordered by Judge Stephanos Bibas on 08/04/2023. (smg) (Entered: 08/04/2023) |
| 08/31/2023 | 516 | MOTION to Exclude Certain Opinions of Plaintiffs and Counter Defendants' Expert Chad Syverson - filed by ROSS Intelligence Inc.. (Attachments: # 1 Proposed Order)(Moore, David) (Entered: 08/31/2023) |
| 08/31/2023 | 517 | [SEALED] OPENING BRIEF in Support re 516 MOTION to Exclude Certain Opinions of Plaintiffs and Counter Defendants' Expert Chad Syverson filed by ROSS Intelligence Inc..Answering Brief/Response due date per Local Rules is 9/14/2023. (Moore, David) (Entered: 08/31/2023) |
| 08/31/2023 | 518 | [SEALED] DECLARATION re 517 Opening Brief in Support, 516 MOTION to Exclude Certain Opinions of Plaintiffs and Counter Defendants' Expert Chad Syverson by ROSS Intelligence Inc.. (Attachments: # 1 Exhibits A-K)(Moore, David) (Entered: 08/31/2023) |
| 08/31/2023 | 519 | MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 1) Separate Products* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 08/31/2023) |

A129

| 08/31/2023 | 520 | [SEALED] OPENING BRIEF in Support re 519 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 1) Separate Products* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 9/14/2023. (Flynn, Michael) (Entered: 08/31/2023) |
|---|---|---|
| 08/31/2023 | 521 | MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 2) Market Definition and Power* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 522 | [SEALED] OPENING BRIEF in Support re 521 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 2) Market Definition and Power* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 9/14/2023. (Flynn, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 523 | MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 3) Statute of Limitations* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 524 | [SEALED] OPENING BRIEF in Support re 523 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 3) Statute of Limitations* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 9/14/2023. (Flynn, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 525 | MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 4) Injunctive Relief* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 526 | [SEALED] OPENING BRIEF in Support re 525 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 4) Injunctive Relief* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 9/14/2023. (Flynn, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 527 | MOTION to Preclude *Dr. Alan Cox and*, MOTION for Summary Judgment *on Rosss Antitrust Counterclaims (No. 5) Comcast* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 528 | [SEALED] OPENING BRIEF in Support re 527 MOTION to Preclude *Dr. Alan Cox and* MOTION for Summary Judgment *on Rosss Antitrust Counterclaims (No. 5) Comcast* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 9/14/2023. (Flynn, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 529 | MOTION to Preclude *Dr. James Ratliff and Dr. Gillian Hadfield* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 530 | [SEALED] OPENING BRIEF in Support re 529 MOTION to Preclude *Dr. James Ratliff and Dr. Gillian Hadfield* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 9/14/2023. (Attachments: # 1 Exhibits A-B)(Flynn, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 531 | [SEALED] DECLARATION re 521 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 2) Market Definition and Power*, 519 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 1) Separate Products*, 527 MOTION to Preclude *Dr. Alan Cox and* MOTION for Summary Judgment *on Rosss Antitrust Counterclaims (No. 5) Comcast*, 529 MOTION to Preclude *Dr. James Ratliff and Dr. Gillian Hadfield*, 525 MOTION for Summary Judgment *on Ross's Antitrust* |

A130

| | | |
|---|---|---|
| | | *Counterclaims (No. 4) Injunctive Relief*, 523 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 3) Statute of Limitations -- Declaration of Max Samels (Volume 1 Exhibits 1-30 --* by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exhibits 1-30)(Flynn, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 532 | [SEALED] DECLARATION re 521 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 2) Market Definition and Power*, 519 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 1) Separate Products*, 527 MOTION to Preclude *Dr. Alan Cox and* MOTION for Summary Judgment *on Rosss Antitrust Counterclaims (No. 5) Comcast*, 529 MOTION to Preclude *Dr. James Ratliff and Dr. Gillian Hadfield*, 525 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 4) Injunctive Relief*, 523 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 3) Statute of Limitations -- Declaration of Max Samels (Volume 2 Exhibits 31-82 --* by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exhibits 31-61, # 2 Exhibits 62-82)(Flynn, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 533 | [SEALED] DECLARATION re 527 MOTION to Preclude *Dr. Alan Cox and* MOTION for Summary Judgment *on Rosss Antitrust Counterclaims (No. 5) Comcast*, 529 MOTION to Preclude *Dr. James Ratliff and Dr. Gillian Hadfield*, 525 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 4) Injunctive Relief*, 523 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 3) Statute of Limitations*, 521 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 2) Market Definition and Power*, 519 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 1) Separate Products -- Declaration of Max Samels (Volume 3 Exhibits 83-104) --* by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exhibits 83-93, # 2 Exhibits 94-99, # 3 Exhibits 100-104) (Flynn, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 534 | NOTICE of Lodging by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation re 532 Declaration,,, (Flynn, Michael) (Entered: 08/31/2023) |
| 09/01/2023 | 535 | STIPULATION TO EXTEND TIME for the parties to submit redacted versions of their sealed summary judgment and Daubert papers originally filed on August 31, 2023 (D.I. 517, 518, 520, 522, 524, 526, 528, 530-533) to September 14, 2023 - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 09/01/2023) |
| 09/07/2023 | 536 | REDACTED VERSION of 517 Opening Brief in Support, by ROSS Intelligence Inc.. (Moore, David) (Entered: 09/07/2023) |
| 09/07/2023 | 537 | REDACTED VERSION of 518 Declaration, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-K)(Moore, David) (Entered: 09/07/2023) |
| 09/14/2023 | 538 | REDACTED VERSION of 520 Opening Brief in Support, *re 519 MOTION for Summary Judgment on Ross's Antitrust Counterclaims (No. 1) Separate Products -* by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 09/14/2023) |
| 09/14/2023 | 539 | REDACTED VERSION of 522 Opening Brief in Support, *re 521 MOTION for Summary Judgment on Ross's Antitrust Counterclaims (No. 2) Market Definition and Power -* by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 09/14/2023) |
| 09/14/2023 | 540 | REDACTED VERSION of 524 Opening Brief in Support, *in Support re 523 MOTION for Summary Judgment on Ross's Antitrust Counterclaims (No. 3) Statute of Limitations -* |

A131

| | | |
|---|---|---|
| | | by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 09/14/2023) |
| 09/14/2023 | 541 | REDACTED VERSION of 526 Opening Brief in Support, *re 525 MOTION for Summary Judgment on Ross's Antitrust Counterclaims (No. 4) Injunctive Relief* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 09/14/2023) |
| 09/14/2023 | 542 | REDACTED VERSION of 528 Opening Brief in Support, *re 527 MOTION to Preclude Dr. Alan Cox and MOTION for Summary Judgment on Rosss Antitrust Counterclaims (No. 5) Comcast* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 09/14/2023) |
| 09/14/2023 | 543 | REDACTED VERSION of 530 Opening Brief in Support, *re 529 MOTION to Preclude Dr. James Ratliff and Dr. Gillian Hadfield* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 09/14/2023) |
| 09/14/2023 | 544 | REDACTED VERSION of 531 Declaration,,, *(Volume 1)* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. 1-30) (Flynn, Michael) (Entered: 09/14/2023) |
| 09/14/2023 | 545 | REDACTED VERSION of 532 Declaration,,, *(Volume 2)* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. 31-82) (Flynn, Michael) (Entered: 09/14/2023) |
| 09/14/2023 | 546 | REDACTED VERSION of 533 Declaration,,, *(Volume 3)* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. 83-104) (Flynn, Michael) (Entered: 09/14/2023) |
| 09/25/2023 | 547 | MEMORANDUM OPINION. Signed by Judge Stephanos Bibas on 9/25/2023. (twk) (Main Document 547 replaced on 10/2/2023) (twk). (Entered: 09/25/2023) |
| 09/25/2023 | 548 | ORDER, I GRANT IN PART AND DENY IN PART Plaintiffs' motion for summary judgment on copyright infringement (D.I. 249 ). I GRANT IN PART AND DENY IN PART Plaintiffs' motion for summary judgment on fair use and other defenses (D.I. 253 ). I DENY Defendant's motion for summary judgment on fair use (D.I. 271 ). I GRANT IN PART AND DENY IN PART Plaintiffs' motion for summary judgment on tortious-interference with contract (D.I. 251 ). I GRANT IN PART AND DENY IN PART Defendant's motion for summary judgment on tortious-interference with contract (D.I. 269 ). Within 14 days of the date of this Order, the parties SHALL meet, confer, and submit the estimated length of trial and the dates in May 2024 when they are available for trial. (See Order for further details). Signed by Judge Stephanos Bibas on 9/25/2023. (twk) (Entered: 09/25/2023) |
| 09/28/2023 | 549 | MEMORANDUM OPINION. Signed by Judge Stephanos Bibas on 9/28/2023. (apk) (Entered: 09/28/2023) |
| 09/28/2023 | 550 | ORDER: (1) I HOLD IN ABEYANCE IN PART AND DENY IN PART Defendant's motion to exclude opinions and testimony of Plaintiff's expert Jonathan L. Krein. (D.I. 267 ). I hold for future consideration the motion to exclude opinions and testimony on substantial similarity. But I deny the motion for all other opinions and testimony. (2) I HOLD IN ABEYANCE IN PART AND DENY IN PART Defendant's motion to exclude two opinions of Plaintiff's expert James Malackowski. (D.I. 273 ). I hold for future consideration the motion to exclude opinions and calculations on statutory damages under the Copyright Act. But I deny the motion to exclude opinions on the market for artificial intelligence training data. (3) I DENY Plaintiffs' motion to exclude opinions and testimony of defendant's expert L. Karl Branting. (D.I. 258 ) (4) I HOLD IN ABEYANCE Plaintiffs' motion to exclude opinions and testimony of defendant's expert Barbara |

| | | |
|---|---|---|
| | | Frederiksen-Cross. (5) I DENY Plaintiffs' motion to exclude opinions and testimony of defendant's expert Richard Leiter (D.I. 264) (6) I HOLD IN ABEYANCE IN PART, DENY IN PART, AND GRANT IN PART Plaintiffs' motion to exclude opinions and testimony of defendant's expert Alan Cox. (D.I. 262) I hold for future consideration the motion to exclude opinions on disgorgement and lost profits. I deny the motion to exclude opinions on market benefit. But I grant the motion to exclude opinions on the existence of a potential market for Westlaw Content as AI training data. Signed by Judge Stephanos Bibas on 9/28/2023. (apk) (Entered: 09/28/2023) |
| 09/28/2023 | 551 | [SEALED] ANSWERING BRIEF in Opposition re 527 MOTION to Preclude *Dr. Alan Cox and* MOTION for Summary Judgment *on Rosss Antitrust Counterclaims (No. 5) Comcast* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 10/5/2023. (Moore, David) (Entered: 09/28/2023) |
| 09/28/2023 | 552 | [SEALED] ANSWERING BRIEF in Opposition re 529 MOTION to Preclude *Dr. James Ratliff and Dr. Gillian Hadfield* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 10/5/2023. (Moore, David) (Entered: 09/28/2023) |
| 09/28/2023 | 553 | [SEALED] DECLARATION re 552 Answering Brief in Opposition, 551 Answering Brief in Opposition, *[Declaration of Matthew J. McBurney in Support of ROSS Intelligence, Inc.'s (1) Opposition to Counterdefendants' Motion to Exclude Dr. Alan Cox and Motion for Summary Judgment on ROSS's Antitrust Counterclaims (No. 5) - Comcast and (2) Opposition to Counterdefendants' Motion (No. 6) to Exclude Dr. James Ratliff and Dr. Gillian Hadfield]* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-25)(Moore, David) (Entered: 09/28/2023) |
| 09/28/2023 | 554 | [SEALED] ANSWERING BRIEF in Opposition re 521 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 2) Market Definition and Power [ROSS Intelligence, Inc.'s Opposition to Counterdefendants' Motion for Summary Judgment on ROSS's Antitrust Counterclaims (No. 2) - Market Definition and Market Power]* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 10/5/2023. (Moore, David) (Entered: 09/28/2023) |
| 09/28/2023 | 555 | [SEALED] ANSWERING BRIEF in Opposition re 519 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 1) Separate Products [ROSS Intelligence, Inc.'s Opposition to Counterdefendants' Motion for Summary Judgment on ROSS's Antitrust Counterclaims (No. 1) - Separate Products]* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 10/5/2023. (Moore, David) (Entered: 09/28/2023) |
| 09/28/2023 | 556 | [SEALED] ANSWERING BRIEF in Opposition re 523 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 3) Statute of Limitations [ROSS Intelligence, Inc.'s Opposition to Counterdefendants' Motion for Summary Judgment on ROSS's Antitrust Counterclaims (No. 3) - Statute of Limitations]* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 10/5/2023. (Moore, David) (Entered: 09/28/2023) |
| 09/28/2023 | 557 | [SEALED] ANSWERING BRIEF in Opposition re 525 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 4) Injunctive Relief [ROSS Intelligence, Inc.'s Opposition to Counterdefendants' Motion for Summary Judgment on ROSS's Antitrust Counterclaims (No. 4) - Injunctive Relief]* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 10/5/2023. (Moore, David) (Entered: 09/28/2023) |
| 09/28/2023 | 558 | [SEALED] DECLARATION re 554 Answering Brief in Opposition, 557 Answering Brief in Opposition, 556 Answering Brief in Opposition, 555 Answering Brief in Opposition, *[Declaration of Beatrice B. Nguyen]* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-Z, # 2 Exhibit AA-GG, # 3 Exhibit HH-ZZ, # 4 Exhibit AAA-HHH, # 5 |

A133

| | | |
|---|---|---|
| | | Exhibit III-NNN, # 6 Exhibit OOO-YYY, # 7 Exhibit ZZZ-GGGG)(Moore, David) (Entered: 09/28/2023) |
| 09/28/2023 | 559 | [SEALED] DECLARATION re 557 Answering Brief in Opposition, *on Ross's Antitrust Countercl[Declaration of Jimoh Ovbiagele In Support Of ROSS Intelligence, Inc.'s Opposition to Counterdefendants' Motion for Summary Judgment on ROSS's Antitrust Counterclaims (No. 4) - Injunctive Relief]* by ROSS Intelligence Inc.. (Moore, David) (Entered: 09/28/2023) |
| 09/28/2023 | 560 | [SEALED] NOTICE of Lodging by ROSS Intelligence Inc. re 558 Declaration, (Moore, David) (Entered: 09/28/2023) |
| 09/28/2023 | 561 | NOTICE of [ROSS Intelligence, Inc.'s Request for Judicial Notice in to CounterDefendants' Motion for Summary Judgment on ROSS's Antitrust Counterclaims (No. 4) - Injunctive Relief] by ROSS Intelligence Inc. re 557 Answering Brief in Opposition, (Attachments: # 1 Exhibit 1)(Moore, David) (Entered: 09/28/2023) |
| 09/28/2023 | 562 | [SEALED] ANSWERING BRIEF in Opposition re 516 MOTION to Exclude Certain Opinions of Plaintiffs and Counter Defendants' Expert Chad Syverson - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Reply Brief due date per Local Rules is 10/5/2023. (Flynn, Michael) (Entered: 09/28/2023) |
| 09/28/2023 | 563 | [SEALED] DECLARATION re 562 Answering Brief in Opposition, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Ex. 1)(Flynn, Michael) (Entered: 09/28/2023) |
| 10/02/2023 | 564 | STIPULATION TO EXTEND TIME for the parties to submit redacted versions of their sealed answering briefs in opposition to summary judgment and Daubert papers (D.I. Nos. 551 through 563) to October 12, 2023 - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 10/02/2023) |
| 10/04/2023 | 565 | ORAL ORDER: I GRANT the parties' stipulation (D.I. 564 ) to extend the deadline to submit redacted versions of their sealed answering briefs in opposition to summary judgment and Daubert papers to October 12, 2023. No other deadlines are affected. I will not look kindly on further requests for extension. (Notice of Compliance deadline set for 10/12/2023) Signed by Judge Stephanos Bibas on 10/4/2023. (apk) (Entered: 10/04/2023) |
| 10/09/2023 | 566 | Joint STATEMENT re 548 Order,,, -- *Joint Submission Regarding Trial* -- by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/09/2023) |
| 10/10/2023 | 567 | ORAL ORDER: The parties shall submit by October 13 at 5:00 p.m. EDT their availability for trial in July and August 2024. Ordered by Judge Stephanos Bibas on 10/10/2023. (smg) (Entered: 10/10/2023) |
| 10/12/2023 | 568 | REDACTED VERSION of 562 Answering Brief in Opposition, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/12/2023) |
| 10/12/2023 | 569 | REDACTED VERSION of 563 Declaration by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/12/2023) |
| 10/12/2023 | 570 | REDACTED VERSION of 551 Answering Brief in Opposition, by ROSS Intelligence Inc.. (Moore, David) (Entered: 10/12/2023) |
| 10/12/2023 | 571 | REDACTED VERSION of 552 Answering Brief in Opposition by ROSS Intelligence Inc.. (Moore, David) (Entered: 10/12/2023) |

A134

| 10/12/2023 | 572 | REDACTED VERSION of 553 Declaration,, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-25)(Moore, David) (Entered: 10/12/2023) |
|---|---|---|
| 10/12/2023 | 573 | REDACTED VERSION of 554 Answering Brief in Opposition, by ROSS Intelligence Inc.. (Moore, David) (Entered: 10/12/2023) |
| 10/12/2023 | 574 | REDACTED VERSION of 555 Answering Brief in Opposition, by ROSS Intelligence Inc.. (Moore, David) (Entered: 10/12/2023) |
| 10/12/2023 | 575 | REDACTED VERSION of 556 Answering Brief in Opposition, by ROSS Intelligence Inc.. (Moore, David) (Entered: 10/12/2023) |
| 10/12/2023 | 576 | REDACTED VERSION of 557 Answering Brief in Opposition, by ROSS Intelligence Inc.. (Moore, David) (Entered: 10/12/2023) |
| 10/12/2023 | 577 | REDACTED VERSION of 559 Declaration, by ROSS Intelligence Inc.. (Moore, David) (Entered: 10/12/2023) |
| 10/12/2023 | 578 | REDACTED VERSION of 560 Notice (Other) by ROSS Intelligence Inc.. (Moore, David) (Entered: 10/12/2023) |
| 10/12/2023 | 579 | REDACTED VERSION of 558 Declaration, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-Z, # 2 Exhibit AA-ZZ, # 3 Exhibit AAA-ZZZ, # 4 Exhibit AAAA-GGGG) (Moore, David) (Entered: 10/12/2023) |
| 10/13/2023 | 580 | STATEMENT -- *Joint Submission Regarding Trial* -- by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/13/2023) |
| 10/23/2023 | 581 | ORAL ORDER, Trial on the copyright issues will begin on August 26, 2024, at 9:00 a.m. in Wilmington, Delaware and will last five days. Jury selection will be on August 23, 2024, at 10:00 a.m. Ordered by Judge Stephanos Bibas on 10/23/2023. (twk) (Entered: 10/23/2023) |
| 10/26/2023 | 582 | [SEALED] REPLY BRIEF re 516 MOTION to Exclude Certain Opinions of Plaintiffs and Counter Defendants' Expert Chad Syverson filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 10/26/2023) |
| 10/26/2023 | 583 | [SEALED] REPLY BRIEF re 519 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 1) Separate Products* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/26/2023) |
| 10/26/2023 | 584 | [SEALED] REPLY BRIEF re 521 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 2) Market Definition and Power* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/26/2023) |
| 10/26/2023 | 585 | [SEALED] REPLY BRIEF re 523 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 3) Statute of Limitations* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/26/2023) |
| 10/26/2023 | 586 | [SEALED] REPLY BRIEF re 525 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 4) Injunctive Relief* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/26/2023) |
| 10/26/2023 | 587 | [SEALED] REPLY BRIEF re 527 MOTION to Preclude *Dr. Alan Cox and* MOTION for Summary Judgment *on Rosss Antitrust Counterclaims (No. 5) Comcast* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/26/2023) |
| 10/26/2023 | 588 | [SEALED] REPLY BRIEF re 529 MOTION to Preclude *Dr. James Ratliff and Dr. Gillian Hadfield (No. 6)* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing |

A135

| | | Corporation. (Flynn, Michael) (Entered: 10/26/2023) |
|---|---|---|
| 10/26/2023 | 589 | [SEALED] DECLARATION re 588 Reply Brief, 586 Reply Brief, 587 Reply Brief, 585 Reply Brief, 584 Reply Brief, 583 Reply Brief by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. 105-120)(Flynn, Michael) (Entered: 10/26/2023) |
| 10/27/2023 | 590 | REQUEST for Oral Argument by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation re 521 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 2) Market Definition and Power*, 519 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 1) Separate Products*, 527 MOTION to Preclude *Dr. Alan Cox and* MOTION for Summary Judgment *on Ross Antitrust Counterclaims (No. 5) Comcast*, 529 MOTION to Preclude *Dr. James Ratliff and Dr. Gillian Hadfield*, 525 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 4) Injunctive Relief*, 523 MOTION for Summary Judgment *on Ross's Antitrust Counterclaims (No. 3) Statute of Limitations*. (Flynn, Michael) (Entered: 10/27/2023) |
| 11/01/2023 | 591 | REDACTED VERSION of 582 Reply Brief by ROSS Intelligence Inc.. (Moore, David) (Entered: 11/01/2023) |
| 11/02/2023 | 592 | REDACTED VERSION of 583 Reply Brief by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/02/2023) |
| 11/02/2023 | 593 | REDACTED VERSION of 584 Reply Brief, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/02/2023) |
| 11/02/2023 | 594 | REDACTED VERSION of 585 Reply Brief by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/02/2023) |
| 11/02/2023 | 595 | REDACTED VERSION of 586 Reply Brief by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/02/2023) |
| 11/02/2023 | 596 | REDACTED VERSION of 587 Reply Brief, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/02/2023) |
| 11/02/2023 | 597 | REDACTED VERSION of 588 Reply Brief by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/02/2023) |
| 11/02/2023 | 598 | REDACTED VERSION of 589 Declaration, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. 105-120)(Flynn, Michael) (Entered: 11/02/2023) |
| 12/11/2023 | 599 | NOTICE requesting Clerk to remove Gabriel M. Ramsey as co-counsel. Reason for request: no longer with the firm of Crowell & Moring LLP. (Palapura, Bindu) (Entered: 12/11/2023) |
| 02/06/2024 | 600 | NOTICE requesting Clerk to remove Shira Liu as co-counsel. Reason for request: no longer with the law firm of Crowell & Moring LLP. (Brown, Andrew) (Entered: 02/06/2024) |
| 06/12/2024 | 601 | Joint Letter to The Honorable Stephanos Bibas from Bindu A. Palapura regarding Filtration Hearing. (Palapura, Bindu) (Entered: 06/12/2024) |
| 06/14/2024 | 602 | ORAL ORDER: I approve the parties' proposed briefing schedule (D.I. 601 ) on whether to hold a filtration hearing. Signed by Judge Stephanos Bibas on 6/14/2024. (rlr) (Entered: 06/14/2024) |
| 06/21/2024 | 603 | MOTION for the Setting of a Filtration Hearing - filed by ROSS Intelligence Inc.. (Attachments: # 1 Text of Proposed Order)(Moore, David) (Entered: 06/21/2024) |

A136

| 06/21/2024 | 604 | [SEALED] OPENING BRIEF in Support re 603 MOTION for the Setting of a Filtration Hearing filed by ROSS Intelligence Inc..Answering Brief/Response due date per Local Rules is 7/5/2024. (Attachments: # 1 Exhibit A-B)(Moore, David) (Entered: 06/21/2024) |
|---|---|---|
| 06/21/2024 | 605 | STIPULATION and [Proposed] Order Setting Pre-Trial Deadlines - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 06/21/2024) |
| 06/24/2024 | 606 | STIPULATION AND ORDER regarding D.I. 605 STIPULATION and Proposed Order Setting Pre-Trial Deadlines. Signed by Judge Stephanos Bibas on 6/24/2024. (apk) (Entered: 06/24/2024) |
| 06/25/2024 | 607 | ORAL ORDER: The pretrial conference will occur on August 8, 2024, at 3pm EDT. It will be held at the United States District Court for the District of Delaware. Signed by Judge Stephanos Bibas on 6/25/2024. (mpb) (Entered: 06/25/2024) |
| 06/28/2024 | 608 | REDACTED VERSION of 604 Opening Brief in Support, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-B)(Moore, David) (Entered: 06/28/2024) |
| 07/09/2024 | 609 | ORAL ORDER: I dismiss as moot D.I. 535 . Signed by Judge Stephanos Bibas on 07/09/2024. (vfm) (Entered: 07/09/2024) |
| 07/12/2024 | 610 | ANSWERING BRIEF in Opposition re 603 MOTION for the Setting of a Filtration Hearing filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Reply Brief due date per Local Rules is 7/19/2024. (Flynn, Michael) (Entered: 07/12/2024) |
| 07/15/2024 | 611 | ORAL ORDER: The pretrial conference is rescheduled to occur on Tuesday, August 6, 2024, at 3 p.m. EDT, in courtroom 2B. It will be held at the United States District Court for the District of Delaware. Signed by Judge Stephanos Bibas on 7/15/2024. (apk) (Entered: 07/15/2024) |
| 07/18/2024 | 612 | ORAL ORDER: I have considered both parties' arguments regarding a filtration hearing. See D.I. 604 , 610 . I ORDER Ross to submit a list of all headnotes it believes are verbatim quotations, or vary trivially from verbatim quotations, of judicial opinions by Monday, July 29, at noon EDT. ROSS should use the same format used for Exhibit A in D.I. 604-1. If Thomson Reuters wishes to submit comments on the list, it must do so by Monday, August 5, at noon EDT. This Court will not filter out any headnotes that are neither direct quotations nor trivial variations on direct quotations. The jury must consider all headnotes that it could reasonably find are original and thus eligible for copyright protection. D.I. 547 , at 7-8. Ordered by Judge Stephanos Bibas on 7/18/2024. (mpb) (Entered: 07/22/2024) |
| 07/19/2024 | 613 | ORAL ORDER: I ORDER both parties to confer and submit to the Court by July 26, 2024, their availability in September for potential oral argument on the antitrust summary judgment issues. D.I. 590 . We will not address these issues at the trial beginning August 26, 2024, because that trial is on the copyright issues. D.I. 581 . Ordered by Judge Stephanos Bibas on 7/19/2024. (mpb) (Entered: 07/22/2024) |
| 07/22/2024 | 614 | [SEALED] Letter to The Honorable Stephanos Bibas from David E. Moore regarding case status. (Moore, David) (Entered: 07/22/2024) |
| 07/25/2024 | 615 | Letter to The Honorable Stephanos Bibas from David E. Moore regarding The Court's July 22 Oral Order - re 613 Oral Order,, Set Deadlines,. (Moore, David) (Entered: 07/25/2024) |
| 07/29/2024 | 616 | ORAL ORDER: Oral argument on the antitrust counterclaims is scheduled for September 18 at 3 p.m. EDT. Oral argument will likely occur on Zoom, but the Court will confirm |

A137

| | | |
|---|---|---|
| | | closer to the date. Signed by Judge Stephanos Bibas on 7/29/2024. (rlr) (Entered: 07/29/2024) |
| 07/29/2024 | 617 | [SEALED] STATEMENT re 612 Oral Order,,, *[Defendant ROSS Intelligence, Inc.'s List of Headnotes in Response to the July 22, 2024, Order at Docket No. 612]* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A part 1, # 2 Exhibit A part 2, # 3 Exhibit A part 3, # 4 Exhibit A part 4, # 5 Exhibit A part 5, # 6 Exhibit B part 1, # 7 Exhibit B part 2, # 8 Exhibit B part 3, # 9 Exhibit C)(Moore, David) (Entered: 07/29/2024) |
| 07/29/2024 | 618 | REDACTED VERSION of 614 Letter by ROSS Intelligence Inc.. (Moore, David) (Entered: 07/29/2024) |
| 07/29/2024 | 619 | [SEALED] Proposed Pretrial Order *(Joint)* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exhibit 1 - Uncontested Facts, # 2 Exhibit 2 - TR Contested Facts, # 3 Exhibit 3 - ROSS Statement of Contested Facts, # 4 Exhibit 4 - TR Issues of Law, # 5 Exhibit 5 - ROSS Issues of Law, # 6 Exhibit 6 - Plaintiffs Trial Exhibit List with ROSS's Objections, # 7 Exhibit 7 - ROSS Trial Exhibit List, # 8 Exhibit 8 - TR Witness List, # 9 Exhibit 9- ROSS Witness List, # 10 Exhibit 10 - Plaintiffs' Deposition Designations with Objs and Counter-Counters, # 11 Exhibit 11 - ROSS Deposition Designations with Counters and Objs, # 12 Exhibit 12 - Plaintiff's Statement of Intended Proofs, # 13 Exhibit 13 - ROSS Statement of Intended Proofs, # 14 Exhibit 14 - TR MILs (1-3), # 15 Exhibit 15 - ROSS MILs (1-3))(Flynn, Michael) (Entered: 07/29/2024) |
| 07/30/2024 | 620 | MOTION for Pro Hac Vice Appearance of Attorney Emily T. Kuwahara, Ryan Henry Seewald, and Jordan Ludwig of Crowell & Moring LLP - filed by ROSS Intelligence Inc.. (Palapura, Bindu) (Entered: 07/30/2024) |
| 07/30/2024 | 621 | Pro Hac Vice Fee - Credit Card Payment received for Emily T. Kuwahara, Ryan Henry Seewald, and Jordan Ludwig. ( re 620 MOTION for Pro Hac Vice Appearance of Attorney Emily T. Kuwahara, Ryan Henry Seewald, and Jordan Ludwig of Crowell & Moring LLP )( Payment of $ 150, receipt number ADEDC-4463725).(Palapura, Bindu) (Entered: 07/30/2024) |
| 07/30/2024 | 622 | MOTION for Pro Hac Vice Appearance of Attorney Yungmoon Chang, Allyn Belusko, and Jeremy King - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 07/30/2024) |
| 07/30/2024 | 623 | Pro Hac Vice Fee - Credit Card Payment received for Yungmoon Chang, Allyn Belusko, and Jeremy King. ( re 622 MOTION for Pro Hac Vice Appearance of Attorney Yungmoon Chang, Allyn Belusko, and Jeremy King )( Payment of $ 150, receipt number ADEDC-4463825).(Flynn, Michael) (Entered: 07/30/2024) |
| 07/30/2024 | | SO ORDERED, re D.I. 620 MOTION for Pro Hac Vice Appearance of Attorney Emily T. Kuwahara, Ryan Henry Seewald, and Jordan Ludwig of Crowell & Moring LLP filed by ROSS Intelligence Inc. Ordered by Judge Stephanos Bibas on 07/30/2024. (oam) (Entered: 07/30/2024) |
| 07/30/2024 | 624 | [SEALED] PRETRIAL ORDER. Signed by Judge Stephanos Bibas on 7/30/2024.This order has been emailed to local counsel. (jfm) (Entered: 07/31/2024) |
| 07/31/2024 | | SO ORDERED, re 622 MOTION for Pro Hac Vice Appearance of Attorney Yungmoon Chang, Allyn Belusko, and Jeremy King filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH.Ordered by Judge Stephanos Bibas on 07/31/2024. (oam) (Entered: 07/31/2024) |
| 07/31/2024 | 625 | MOTION for Exemption of Persons from the Court's May 15, 2023 Standing Order on Personal Devices - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing |

A138

| | | Corporation. (Flynn, Michael) (Entered: 07/31/2024) |
|---|---|---|
| 07/31/2024 | 626 | Proposed Jury Instructions by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation *and Verdict Form*. (Attachments: # 1 Ex. A - Jury Instructions, # 2 Ex. B - Verdict form)(Flynn, Michael) (Entered: 07/31/2024) |
| 07/31/2024 | 627 | VERDICT SHEET by ROSS Intelligence Inc. . (Moore, David) (Entered: 07/31/2024) |
| 07/31/2024 | 628 | Proposed Voir Dire by ROSS Intelligence Inc.. (Moore, David) (Entered: 07/31/2024) |
| 07/31/2024 | 629 | Proposed Jury Instructions by ROSS Intelligence Inc. . (Moore, David) (Entered: 07/31/2024) |
| 08/01/2024 | 630 | SO ORDER, re 625 MOTION for Exemption of Persons from the Court's May 17, 2023 Standing Order on Personal Devices. Signed by Judge Stephanos Bibas on 8/1/2024. (jfm) (Entered: 08/01/2024) |
| 08/01/2024 | 631 | MOTION [Defendant-Counterclaimant's Motion and Proposed Order Granting Limited Exemption From the Standing Order Regarding Personal Electronic Devices (re 8/6/24 pretrial conference)] - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 08/01/2024) |
| 08/01/2024 | | ORAL ORDER, I GRANT Defendant-Counterclaimant's Motion and Proposed Order Granting Limited Exemption from the Standing Order Regarding Personal Electronic Devices (D.I. 631 ). Ordered by Judge Stephanos Bibas on 08/01/2024. (oam) (Entered: 08/01/2024) |
| 08/01/2024 | 632 | Proposed Voir Dire by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 08/01/2024) |
| 08/02/2024 | 633 | MEMORANDUM OPINION Signed by Judge Stephanos Bibas on 8/2/2024. (mpb) (Entered: 08/02/2024) |
| 08/02/2024 | 634 | ORDER: I DENY the part of Ross's motion (D.I. 267 ) seeking to exclude opinions and testimony of Plaintiffs' expert Jonathan Krein on substantial similarity. This fully resolves D.I. 267 . I DENY the part of Ross's motion (D.I. 273 ) seeking to exclude the opinions ofPlaintiffs expert James Malackowsi on statutory damages under the Copyright Act. This fully resolves D.I. 273 . I DENY Plaintiffs' motion to exclude opinions and testimony of Rosss expert Barbara Frederiksen-Cross (D.I. 260 ). This fully resolves D.I. 260. I GRANT the parts of Plaintiffs' motion (D.I. 262 ) seeking to exclude the opinions and testimony of Ross's expert Dr. Alan Cox on disgorgement and lost profits. This fully resolves D.I. 262 . Signed by Judge Stephanos Bibas on 8/2/2024. (mpb) (Entered: 08/02/2024) |
| 08/02/2024 | 635 | Proposed Voir Dire by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A)(Moore, David) (Entered: 08/02/2024) |
| 08/05/2024 | 636 | [SEALED] STATEMENT re 612 Oral Order,,, 617 Statement, --*Plaintiffs' Response to Defendant Ross's List of Headnotes in Response to the July 22, 2024, Order at Docket No. 612--* by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exhibit 1)(Flynn, Michael) (Entered: 08/05/2024) |
| 08/05/2024 | 637 | REDACTED VERSION of 617 Statement, *re 612 Oral Order,,, [Defendant ROSS Intelligence, Inc.'s List of Headnotes in Response to the July 22, 2024, Order at Docket No. 612]* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Moore, David) (Entered: 08/05/2024) |
| 08/05/2024 | 638 | ORDER granting D.I. 631 Defendant-Counterclaimant's Motion and Proposed Order Granting Limited Exemption From the Standing Order Regarding Personal Electronic |

A139

| | | Devices. Signed by Judge Stephanos Bibas on 8/5/2024. (mpb) (Entered: 08/05/2024) |
|---|---|---|
| 08/05/2024 | 639 | Proposed Jury Instructions by ROSS Intelligence Inc. *[ROSS Intelligence Inc.'s [Revised Proposed] Jury Instructions]*. (Moore, David) (Entered: 08/05/2024) |
| 08/05/2024 | 640 | VERDICT SHEET by ROSS Intelligence Inc. -*Revised*. (Moore, David) (Entered: 08/05/2024) |
| 08/06/2024 | 641 | [SEALED] Letter to The Honorable Stephanos Bibas from Michael Flynn regarding Amended Version of Exhibit 1 to D.I. 636 - re 636 Statement,. (Attachments: # 1 Exhibit 1)(Flynn, Michael) (Entered: 08/06/2024) |
| 08/06/2024 | | Minute Entry for Final Pretrial Conference proceedings held before Judge Stephanos Bibas - Final Pretrial Conference held on 8/6/2024. Present for Plaintiff: Dale M. Cendali, Joshua L. Simmons, Miranda D. Means, Yungmoon Chang, Eric A. Loverro and Jeremy Tigan. Present for Defense: Warrington Parker, David Ellis Moore, Keith J. Harrison and Joachim B. Steinberg. (Total Time - 1 hour 23 minutes.) (Court Reporter Deanna Warner.) (vfm) (Entered: 08/06/2024) |
| 08/07/2024 | 642 | Letter to The Honorable Stephanos Bibas from David E. Moore regarding case status. (Moore, David) (Entered: 08/07/2024) |
| 08/07/2024 | 643 | ORAL ORDER: During the pretrial conference on August 6, 2024, I addressed the issue of headnote filtration. I now enter that order on the docket. At this time, I will not filter out any headnotes as uncopyrightable for two separate reasons. First, there is the possibility that a jury could find sufficient creativity in Plaintiffs' selection and arrangement of the headnotes to establish a valid copyright. Second, even if the only consideration for copyrightability is whether the headnote text is the same as judicial opinion text, Ross's list of headnotes included some headnotes that sufficiently differ from the text of judicial opinions that a reasonable jury could find meaningful change and creativity sufficient to establish a valid copyright. So I cannot filter out the group of headnotes Ross listed. This resolves the motion at D.I. 603 . Ordered by Judge Stephanos Bibas on 8/7/2024. (mpb) (Entered: 08/08/2024) |
| 08/07/2024 | 644 | ORAL ORDER: During the pretrial conference on August 6, 2024, I orally resolved three motions in limine submitted by each side. I now enter the substance of those orders on the docket. For the reasons I stated at the pretrial conference, I do the following: (1) I DENY Thomson Reuterss motion to exclude testimony, evidence, or argument concerning the public benefit of generative artificial intelligence. D.I. 619 -14-1. But if Ross chooses to mention generative artificial intelligence, I require it to clarify the extent to which its technology differs from generative AI and then explain why generative AI is relevant. (2) I GRANT IN PART and DENY IN PART Thomson Reuters's motion to exclude testimony, evidence, or argument referencing Ross's antitrust counterclaims. D.I. 619 -14-2. Ross may not mention the fact that it has filed antitrust counterclaims against Thomson Reuters. But Ross is permitted to mention Thomson Reuterss market position to the extent relevant to any of the copyright-specific issues at this trial. (3) I GRANT Thomson Reuters's motion to exclude testimony, evidence, or argument regarding Ross purportedly ceasing operations due to this lawsuit. D.I. 619 -14-3. But I do not prevent Ross from discussing its past financial health if Thomson Reuters opens that door by maligning Ross's financial success. (4) I DENY Rosss motion to exclude any reference to Westlaw selling AI training data. D.I. 619 -15-1. (5) I DENY Ross's motion to exclude evidence or testimony regarding Charles von Simson. D.I. 619 -15-2. (6) I DENY Rosss motion to exclude evidence or testimony regarding Jonathan Krein's undisclosed opinions. D.I. 619 -15-3. Ordered by Judge Stephanos Bibas on 8/7/2024. (mpb) (Entered: 08/08/2024) |

A140

| 08/09/2024 | 645 | [SEALED] EXHIBIT re 619 Proposed Pretrial Order,,, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Ex. 6 - Plaintiffs Trial Exhibit List with ROSS's Objections)(Flynn, Michael) (Entered: 08/09/2024) |
| 08/12/2024 | 646 | Proposed Jury Instructions by ROSS Intelligence Inc. -Second Revised. (Attachments: # 1 Exhibit A - Redline)(Moore, David) (Entered: 08/12/2024) |
| 08/12/2024 | 647 | VERDICT SHEET by ROSS Intelligence Inc. - Second Revised. (Attachments: # 1 Exhibit A - Redline)(Moore, David) (Entered: 08/12/2024) |
| 08/12/2024 | 648 | MOTION for Pro Hac Vice Appearance of Attorney Keith J. Harrison of Crowell & Moring LLP - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 08/12/2024) |
| 08/12/2024 | 649 | Pro Hac Vice Fee - Credit Card Payment received for Keith J. Harrison. ( re 648 MOTION for Pro Hac Vice Appearance of Attorney Keith J. Harrison of Crowell & Moring LLP )( Payment of $ 50, receipt number ADEDC-4474027).(Moore, David) (Entered: 08/12/2024) |
| 08/13/2024 | 650 | MOTION for Exemption of Persons from the District of Delaware's May 17, 2024 Standing Order on Personal Devices - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 08/13/2024) |
| 08/13/2024 | 651 | MOTION and Proposed Order Granting Limited Exemption from the Standing Order Regarding Personal Electronic Devices (re 8/22/24, 8/23/24 & 8/30/24) - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 08/13/2024) |
| 08/14/2024 | 652 | SO ORDERED, re 648 MOTION for Pro Hac Vice Appearance of Attorney Keith J. Harrison of Crowell & Moring LLP filed by ROSS Intelligence Inc.. Ordered by Judge Stephanos Bibas on 8/14/2024. (jfm) (Entered: 08/14/2024) |
| 08/14/2024 | 653 | ORDER, granting D.I. 650 MOTION for Exemption of Persons from the District of Delaware's May 17, 2024 Standing Order on Personal Devices . Signed by Judge Stephanos Bibas on 08/14/2024. (vfm) (Entered: 08/14/2024) |
| 08/14/2024 | 654 | ORDER, granting 651 MOTION and Proposed Order Granting Limited Exemption from the Standing Order Regarding Personal Electronic Devices (re 8/22/24, 8/23/24 & 8/30/24). Signed by Judge Stephanos Bibas on 8/14/2024. (jfm) (Entered: 08/14/2024) |
| 08/14/2024 | 655 | REDACTED VERSION of 636 Statement, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 08/14/2024) |
| 08/15/2024 | 656 | VERDICT SHEET by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation --Revised Proposed Verdict Form--. (Attachments: # 1 Exhibit A)(Flynn, Michael) (Entered: 08/15/2024) |
| 08/16/2024 | 657 | STATEMENT re 656 Verdict Sheet [ROSS Intelligence Inc.'s Response and Objections to Plaintiffs' Proposed Verdict Form] by ROSS Intelligence Inc.. (Moore, David) (Entered: 08/16/2024) |
| 08/16/2024 | 658 | EXHIBIT re 657 Statement [Exhibit A to ROSS Intelligence Inc.'s Response and Objections to Plaintiffs' Proposed Verdict Form] by ROSS Intelligence Inc.. (Moore, David) (Entered: 08/16/2024) |
| 08/21/2024 | 659 | [SEALED] STATEMENT [Defendant's Response to the Court's Sua Sponte Summary Judgment Decision and Request for Continuance and Teleconference] by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-F)(Moore, David) (Entered: 08/21/2024) |
| 08/21/2024 | 660 | [SEALED] MOTION for Leave to File [ROSS Intelligence's Motion to Amend Final Pretrial Order] - filed by ROSS Intelligence Inc.. (Attachments: # 1 Text of Proposed |

A141

| | | |
|---|---|---|
| | | Order, # [2] Exhibit A - Redline, # [3] Exhibit B - Amended Final Pretrial Order)(Moore, David) (Entered: 08/21/2024) |
| 08/21/2024 | [661] | STATEMENT re [659] Statement *(Plaintiffs' Response to ROSS's Statement and Request for a Continuance)* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 08/21/2024) |
| 08/21/2024 | [662] | ANSWERING BRIEF in Opposition re [660] MOTION for Leave to File *[ROSS Intelligence's Motion to Amend Final Pretrial Order]* filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Reply Brief due date per Local Rules is 8/28/2024. (Flynn, Michael) (Entered: 08/21/2024) |
| 08/22/2024 | 663 | ORAL ORDER: Based on this morning's discussion with the parties, I CONTINUE this trial without setting a future date. I rescind all rulings made orally to the parties at the Zoom teleconference on Tuesday, August 20, 2024. Instead, I invite Thomson Reuters to renew its motions for summary judgment on those issues and Ross to renew its cross-motion for summary judgment on fair use. Thus, the parties may submit two sets of additional briefing on (1) copyrightability, validity, and infringement, and (2) the defense of fair use. In the briefing, the parties may also choose to address merger, scenes a faire, copyright misuse, and innocent infringement, as I instructed this morning. The parties shall meet and confer on a new briefing schedule, page limits, and dates for a two-day summary judgment hearing. The parties shall propose a joint scheduling order to the Court by 5 p.m. EDT on Wednesday, August 28. Ordered by Judge Stephanos Bibas on 8/22/2024. (mpb) (Entered: 08/22/2024) |
| 08/22/2024 | 664 | ORAL ORDER: Because of my order at D.I. 663 , I DISMISS AS MOOT Rosss motion at D.I. [660] to amend the pretrial order. Ordered by Judge Stephanos Bibas on 08/22/2024. (vfm) (Entered: 08/22/2024) |
| 08/22/2024 | | Pro Hac Vice Attorney Ryan Henry Seewald, Emily T. Kuwahara, Keith J. Harrison for ROSS Intelligence Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (cdd) (Entered: 08/22/2024) |
| 08/27/2024 | [665] | Letter to The Honorable Stephanos Bibas from Michael J. Flynn regarding September 18, 2024 Oral Argument - re 616 Oral Order, Set Deadlines/Hearings. (Flynn, Michael) (Entered: 08/27/2024) |
| 08/28/2024 | [666] | Joint Letter to The Honorable Stephanos Bibas from David E. Moore and Michael J. Flynn regarding Summary Judgment - re 663 Oral Order,,,, Terminate Hearings,,,, Set Deadlines,,,. (Moore, David) (Entered: 08/28/2024) |
| 08/29/2024 | 667 | ORDER: In response to the parties' joint letter at D.I. [666] , I GRANT the parties' proposed summary judgment briefing schedule and proposed brief lengths. Any opening briefs in support of a motion for summary judgment shall not exceed 40 pages and shall be filed by Tuesday, October 1, 2024 at 5 p.m. EDT. Any opposing briefs shall not exceed 40 pages and shall be filed by Wednesday, October 30, 2024 at 5 p.m. EDT. Any reply briefs shall not exceed 30 pages and shall be filed by Wednesday, November 13, 2024 at 5 p.m. EDT. All documents shall be double-spaced with one-inch margins and at least 12-point type.I also GRANT the parties' request to continue to meet and confer about hearing dates, and I ORDER the parties to provide mutually agreeable dates to the Court by Tuesday, October 1, 2024 at 5 p.m. These dates may include dates in early 2025. As for the substantive question raised by the parties, though Ross may move for summary judgment on copyrightability and infringement, the Court is unlikely to grant that motion, and Plaintiffs should not file any brief opposing such motion unless and until the Court asks for a response. Ordered by Judge Stephanos Bibas on 8/29/2024. (jfm) (Entered: 08/29/2024) |

A142

| | | |
|---|---|---|
| 09/03/2024 | 668 | ORAL ORDER: In response to Thomson Reuters' letter at D.I. 665 requesting additional guidance from the Court on the antitrust summary judgment oral argument, the Court anticipates specifically addressing (1) Motion No. 1 Separate Products, focusing on whether Ross has shown sufficient consumer demand; (2) Motion No. 2 Market Definition and Market Power and the separate but related Motion to Preclude Dr. James Ratliff, focusing on whether Dr. Ratliff's report is admissible and successfully defines the relevant market; and (3) Motion No. 5 Dr. Alan Cox and Comcast, focusing on the validity of Dr. Cox's approach to developing the but-for world. Despite these anticipated focal points, all summary judgment motions on the antitrust counterclaims and related motions about experts remain relevant for the argument. The oral argument will occur on Zoom. The Court will circulate Zoom information to the parties via email. Ordered by Judge Stephanos Bibas on 9/3/2024. (rlr) (Entered: 09/04/2024) |
| 09/11/2024 | | Pro Hac Vice Attorney Jordan Ludwig for ROSS Intelligence Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mws) (Entered: 09/11/2024) |
| 09/18/2024 | | Minute Entry for proceedings held before Judge Stephanos Bibas - Oral Argument held on 9/18/2024. (Total Time in Court: 59 minutes, 46 seconds) (Court Reporter N/A.) (mpb) (Entered: 10/25/2024) |
| 09/27/2024 | 669 | MEMORANDUM OPINION Signed by Judge Stephanos Bibas on 9/27/2024. (mpb) (Entered: 09/27/2024) |
| 09/27/2024 | 670 | ORDER: I GRANT Plaintiffs' Motion for Summary Judgment on Ross's Antitrust Counterclaims (No. 1) Separate Products (D.I. 519 ). I GRANT Plaintiffs' Motion for Summary Judgment on Ross's Antitrust Counterclaims (No. 2) Market Definition and Power (D.I. 521). Because I am granting summary judgment on Motions 1 and 2, I DISMISS AS MOOT Plaintiffs' Motion for Summary Judgment on Ross's Antitrust Counterclaims (No. 3) Statute of Limitations (D.I. 523 ). Because I am granting summary judgment on Motions 1 and 2, I DISMISS AS MOOT Plaintiffs' Motion for Summary Judgment on Ross' Antitrust Counterclaims (No. 4) Injunctive Relief (D.I. 525 ). Because I am granting summary judgment on Motions 1 and 2, I DISMISS AS MOOT Plaintiffs' Motion to Preclude Dr. Alan Cox and Motion for Summary Judgment on Ross's Antitrust Counterclaims (No. 5) Comcast (D.I. 527 ). I GRANT IN PART Plaintiffs Motion to Preclude Dr. James Ratliff and Dr. Gillian Hadfield. I exclude the portion of Dr. Ratliffs report that addresses market definition. I DISMISS AS MOOT the remainder of the motion because these experts are relevant only to the antitrust counterclaims which are now all resolved at summary judgment (D.I. 529 ). Because the antitrust counterclaims are now all resolved at summary judgment, I DISMISS AS MOOT Defendant's Motion to Exclude Certain Opinions of Plaintiffs and Counter Defendants' Expert Chad Syverson (D.I. 516 ). Signed by Judge Stephanos Bibas on 9/27/2024. (mpb) (Entered: 09/27/2024) |
| 10/01/2024 | 671 | Joint Letter to The Honorable Stephanos Bibas from the Parties regarding Summary Judgment Hearing - re 667 Order,,,,, Set Briefing Schedule,,,,, Terminate Scheduling Order Deadlines,,,,. (Flynn, Michael) (Entered: 10/01/2024) |
| 10/01/2024 | 672 | MOTION for Partial Summary Judgment *on Fair Use (Renewed)* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/01/2024) |
| 10/01/2024 | 673 | [SEALED] OPENING BRIEF in Support re 672 MOTION for Partial Summary Judgment *on Fair Use (Renewed)* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 10/15/2024. (Flynn, Michael) (Entered: 10/01/2024) |

A143

| 10/01/2024 | 674 | MOTION for Partial Summary Judgment *on Direct Copyright Infringement and Related Defenses (Renewed)* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/01/2024) |
|---|---|---|
| 10/01/2024 | 675 | [SEALED] OPENING BRIEF in Support re 674 MOTION for Partial Summary Judgment *on Direct Copyright Infringement and Related Defenses (Renewed)* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Answering Brief/Response due date per Local Rules is 10/15/2024. (Flynn, Michael) (Entered: 10/01/2024) |
| 10/01/2024 | 676 | MOTION for Summary Judgment *on its Affirmative Defenses of Fair Use* - filed by ROSS Intelligence Inc.. (Attachments: # 1 Text of Proposed Order)(Moore, David) (Entered: 10/01/2024) |
| 10/01/2024 | 677 | [SEALED] OPENING BRIEF in Support re 676 MOTION for Summary Judgment *on its Affirmative Defenses of Fair Use* filed by ROSS Intelligence Inc..Answering Brief/Response due date per Local Rules is 10/15/2024. (Moore, David) (Entered: 10/01/2024) |
| 10/01/2024 | 678 | [SEALED] DECLARATION re 677 Opening Brief in Support, 675 Opening Brief in Support, *of Miranda D. Means* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Ex. 1, # 2 Ex. 2, # 3 Ex. 3, # 4 Ex. 4, # 5 Ex. 5, # 6 Ex. 6, # 7 Ex. 7, # 8 Ex. 8, # 9 Ex. 9, # 10 Ex. 10, # 11 Ex. 11, # 12 Ex. 12, # 13 Ex. 13, # 14 Ex. 14, # 15 Ex. 15, # 16 Ex. 16, # 17 Ex. 17, # 18 Ex. 18, # 19 Ex. 19, # 20 Ex. 20, # 21 Ex. 21, # 22 Ex. 22, # 23 Ex. 23, # 24 Ex. 24, # 25 Ex. 25, # 26 Ex. 26, # 27 Ex. 27, # 28 Ex. 28, # 29 Ex. 29, # 30 Ex. 30, # 31 Ex. 31, # 32 Ex. 32, # 33 Ex. 33, # 34 Ex. 34, # 35 Ex. 35, # 36 Ex. 36, # 37 Ex. 37, # 38 Ex. 38, # 39 Ex. 39, # 40 Ex. 40, # 41 Ex. 41, # 42 Ex. 42, # 43 Ex. 43, # 44 Ex. 44, # 45 Ex. 45, # 46 Ex. 46, # 47 Ex. 47, # 48 Ex. 48, # 49 Ex. 49, # 50 Ex. 50, # 51 Ex. 51, # 52 Ex. 52, # 53 Ex. 53, # 54 Ex. 54, # 55 Ex. 55, # 56 Ex. 56, # 57 Ex. 57, # 58 Ex. 58, # 59 Ex. 59, # 60 Ex. 60, # 61 Ex. 61, # 62 Ex. 62, # 63 Ex. 63, # 64 Ex. 64, # 65 Ex. 65, # 66 Ex. 66, # 67 Ex. 67, # 68 Ex. 68, # 69 Ex. 69, # 70 Ex. 70, # 71 Ex. 71, # 72 Ex. 72, # 73 Ex. 73, # 74 Ex. 74, # 75 Ex. 75, # 76 Ex. 76, # 77 Ex. 77, # 78 Ex. 78, # 79 Ex. 79, # 80 Ex. 80, # 81 Ex. 81, # 82 Ex. 82, # 83 Ex. 83, # 84 Ex. 84, # 85 Ex. 85, # 86 Ex. 86, # 87 Ex. 87, # 88 Ex. 88, # 89 Ex. 89, # 90 Ex. 90, # 91 Ex. 91, # 92 Ex. 92, # 93 Ex. 93, # 94 Ex. 94, # 95 Ex. 95, # 96 Ex. 96, # 97 Ex. 97, # 98 Ex. 98, # 99 Ex. 99, # 100 Ex. 100, # 101 Ex. 101, # 102 Ex. 102, # 103 Ex. 103) (Flynn, Michael) (Entered: 10/01/2024) |
| 10/01/2024 | 679 | DECLARATION re 675 Opening Brief in Support, 677 Opening Brief in Support *(of Laurie Oliver)* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/01/2024) |
| 10/01/2024 | 680 | [SEALED] DECLARATION re 676 MOTION for Summary Judgment *on its Affirmative Defenses of Fair Use (Declaration of Jimoh Ovbiagele)* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 3, # 2 Exhibit 5, # 3 Exhibit 6, # 4 Exhibit 10, # 5 Exhibit 11, # 6 Exhibit 12, # 7 Exhibit 13, # 8 Exhibit 49, # 9 Exhibit 61, # 10 Exhibit 63, # 11 Exhibit 64)(Moore, David) (Entered: 10/01/2024) |
| 10/01/2024 | 681 | [SEALED] DECLARATION re 676 MOTION for Summary Judgment *on its Affirmative Defenses of Fair Use (Declaration of Alan Cox)* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-E)(Moore, David) (Entered: 10/01/2024) |
| 10/01/2024 | 682 | NOTICE of filing the following Non-Paper material(s) in multi media format: native electronic versions of Exhibits 33-35 to the Omnibus Declaration of Miranda Means in Support of Plaintiffs' Renewed Motions for Summary Judgment (D.I. 678) -. Original Non-paper material(s) to be filed with the Clerk's Office. Notice filed by Michael J. Flynn |

A144

| | | |
|---|---|---|
| | | on behalf of Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 10/01/2024) |
| 10/01/2024 | 683 | MOTION for Summary Judgment *as to Plaintiffs' Copyright Claims* - filed by ROSS Intelligence Inc.. (Attachments: # 1 Text of Proposed Order)(Moore, David) (Main Document 683 replaced on 10/3/2024) (mpb). (Attachment 1 replaced on 10/3/2024) (mpb). (Entered: 10/01/2024) |
| 10/01/2024 | 684 | [SEALED] OPENING BRIEF in Support re 683 MOTION for Summary Judgment *as to Plaintiffs' Copyright Claims* filed by ROSS Intelligence Inc..Answering Brief/Response due date per Local Rules is 10/15/2024. (Moore, David) (Entered: 10/01/2024) |
| 10/01/2024 | 685 | [SEALED] DECLARATION re 683 MOTION for Summary Judgment *as to Plaintiffs' Copyright Claims (Declaration of Jacob Canter)* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-C, # 2 Exhibit D-H)(Moore, David) Modified on 10/10/2024 (scs). (Entered: 10/01/2024) |
| 10/01/2024 | 686 | [SEALED] DECLARATION re 683 MOTION for Summary Judgment *as to Plaintiffs' Copyright Claims (Declaration of Jimoh Ovbiagele)* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-11)(Moore, David) (Entered: 10/01/2024) |
| 10/01/2024 | 687 | [SEALED] DECLARATION re 683 MOTION for Summary Judgment *as to Plaintiffs' Copyright Claims*, 676 MOTION for Summary Judgment *on its Affirmative Defenses of Fair Use [Declaration of Richard Leiter]* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-D)(Moore, David) (Entered: 10/01/2024) |
| 10/01/2024 | 688 | [SEALED] DECLARATION re 683 MOTION for Summary Judgment *as to Plaintiffs' Copyright Claims*, 676 MOTION for Summary Judgment *on its Affirmative Defenses of Fair Use [Declaration of Barbara Frederiksen-Cross]* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-D)(Moore, David) (Entered: 10/01/2024) |
| 10/01/2024 | 689 | [SEALED] DECLARATION re 683 MOTION for Summary Judgment *as to Plaintiffs' Copyright Claims*, 676 MOTION for Summary Judgment *on its Affirmative Defenses of Fair Use [Declaration of Joseph Marks]* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-D)(Moore, David) (Entered: 10/01/2024) |
| 10/01/2024 | 690 | [SEALED] DECLARATION re 676 MOTION for Summary Judgment *on its Affirmative Defenses of Fair Use [Declaration of Jacob Canter]* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 4, # 4 Exhibit 7-9, # 5 Exhibit 14-15, # 6 Exhibit 16 part 1, # 7 Exhibit 16 part 2, # 8 Exhibit 16 part 3, # 9 Exhibit 16 part 4, # 10 Exhibit 16 part 5, # 11 Exhibit 16 part 6, # 12 Exhibit 17-26, # 13 Exhibit 27 part 1, # 14 Exhibit 27 part 2, # 15 Exhibit 28-29, # 16 Exhibit 30 part 1, # 17 Exhibit 30 part 2, # 18 Exhibit 30 part 3, # 19 Exhibit 30 part 4, # 20 Exhibit 31-38, # 21 Exhibit 39 part 1, # 22 Exhibit 39 part 2, # 23 Exhibit 39 part 3, # 24 Exhibit 39 part 4, # 25 Exhibit 39 part 5, # 26 Exhibit 40-46, # 27 Exhibit 47-48, # 28 Exhibit 50-60, # 29 Exhibit 62, # 30 Exhibit 65-67)(Moore, David) Modified on 10/10/2024 (scs). (Entered: 10/01/2024) |
| 10/01/2024 | 691 | [SEALED] DECLARATION re 683 MOTION for Summary Judgment *as to Plaintiffs' Copyright Claims [Declaration of Warrington S. Parker III]* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-9, # 2 Exhibit 10 part 1, # 3 Exhibit 10 part 2, # 4 Exhibit 11-13, # 5 Exhibit 14 part 1, # 6 Exhibit 14 part 2, # 7 Exhibit 15 part 1, # 8 Exhibit 15 part 2, # 9 Exhibit 16-26, # 10 Exhibit 27 part 1, # 11 Exhibit 27 part 2, # 12 Exhibit 27 part 3, # 13 Exhibit 27 part 4, # 14 Exhibit 28-37, # 15 Exhibit 38, # 16 Exhibit 39 part 1, # 17 Exhibit 39 part 2, # 18 Exhibit 39 part 3, # 19 Exhibit 39 part 4, # 20 Exhibit 39 part 5, # 21 Exhibit 40 part 1, # 22 Exhibit 40 part 2, # 23 Exhibit 40 part 3, # 24 Exhibit 40 part 4, # 25 Exhibit 41, # 26 Exhibit 42)(Moore, David) (Entered: 10/01/2024) |

A145

| 10/01/2024 | 692 | ORAL ORDER: In response to the parties' joint letter (D.I. 671 ), I ORDER the parties to reserve December 5, 2024, and December 6, 2024, for oral argument on the renewed summary judgment motions. Also, given the busy schedules of all involved, I would like to reserve five days in early 2025 to use if the case proceeds to trial after resolution of the renewed summary judgment motions. I thus ORDER the parties to confer about possible dates for a continued trial and inform the Court of those dates by November 1, 2024. Signed by Judge Stephanos Bibas on 10/1/2024. (mpb) (Entered: 10/02/2024) |
|---|---|---|
| 10/03/2024 | | CORRECTING ENTRY: Per Counsel's request, the Main Document and Attachment 1 of D.I. 683 have been replaced to reflect the correct Motion for Summary Judgment. (mpb) (Entered: 10/03/2024) |
| 10/08/2024 | 693 | REDACTED VERSION of 673 Opening Brief in Support, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/08/2024) |
| 10/08/2024 | 694 | REDACTED VERSION of 675 Opening Brief in Support, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 10/08/2024) |
| 10/08/2024 | 695 | REDACTED VERSION of 678 Declaration,,,,,,, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exs. 1-82, # 2 Exs. 83-103) (Flynn, Michael) (Entered: 10/08/2024) |
| 10/08/2024 | 696 | STIPULATION TO EXTEND TIME to Submit Redacted Versions of its Sealed Opening Summary Judgement Briefs to October 9, 2024 - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 10/08/2024) |
| 10/09/2024 | 697 | REDACTED VERSION of 683 MOTION for Summary Judgment *as to Plaintiffs' Copyright Claims* by ROSS Intelligence Inc.. (Moore, David) (Entered: 10/09/2024) |
| 10/09/2024 | 698 | REDACTED VERSION of 676 MOTION for Summary Judgment *on its Affirmative Defenses of Fair Use* by ROSS Intelligence Inc.. (Moore, David) (Entered: 10/09/2024) |
| 10/09/2024 | 699 | REDACTED VERSION of 688 Declaration, *of Barbara Frederiksen-Cross* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-D)(Moore, David) (Entered: 10/09/2024) |
| 10/09/2024 | 700 | REDACTED VERSION of 687 Declaration, *of Richard Leiter* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-D)(Moore, David) (Entered: 10/09/2024) |
| 10/09/2024 | 701 | REDACTED VERSION of 689 Declaration, *of Joseph Marks* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-D)(Moore, David) (Entered: 10/09/2024) |
| 10/09/2024 | 702 | REDACTED VERSION of 680 Declaration, *of Jimoh Ovbiagele* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 3, # 2 Exhibit 5, # 3 Exhibit 6, # 4 Exhibit 10, # 5 Exhibit 11, # 6 Exhibit 12, # 7 Exhibit 13, # 8 Exhibit 49, # 9 Exhibit 61, # 10 Exhibit 63, # 11 Exhibit 64)(Moore, David) (Entered: 10/09/2024) |
| 10/09/2024 | 703 | REDACTED VERSION of 686 Declaration *of Jimoh Ovbiagele* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-11)(Moore, David) (Entered: 10/09/2024) |
| 10/09/2024 | 704 | REDACTED VERSION of 681 Declaration *of Alan Cox* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-E)(Moore, David) (Entered: 10/09/2024) |
| 10/09/2024 | 705 | REDACTED VERSION of 691 Declaration,,, *of Warrington S. Parker III* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-13, # 2 Exhibit 14-26, # 3 Exhibit 27 Part 1, # 4 Exhibit 27 Part 2, # 5 Exhibit 27 Part 3, # 6 Exhibit 27 Part 4, # 7 Exhibit 28-33, # 8 Exhibit 34-42)(Moore, David) (Entered: 10/09/2024) |

A146

| | | |
|---|---|---|
| 10/10/2024 | 706 | ORAL ORDER: I DISMISS AS MOOT Ross's Stipulation to Extend Time to Submit Redacted Versions of its Sealed Opening Summary Judgment Briefs (D.I. 696 ). Ordered by Judge Stephanos Bibas on 10/10/2024. (vfm) (Entered: 10/10/2024) |
| 10/10/2024 | | CORRECTING ENTRY: Per Counsels request, D.I. 685 and 690 have been placed under seal. (scs) (Entered: 10/10/2024) |
| 10/10/2024 | 707 | REDACTED VERSION of 685 Declaration, *of Jacob Canter* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-H)(Moore, David) (Entered: 10/10/2024) |
| 10/10/2024 | 708 | REDACTED VERSION of 690 Declaration,,, *of Jacob Canter* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-2, # 2 Exhibit 4, # 3 Exhibit 7-9, # 4 Exhibit 14-19, # 5 Exhibit 20-29, # 6 Exhibit 30 Part 1, # 7 Exhibit 30 Part 2, # 8 Exhibit 30 Part 3, # 9 Exhibit 31-48, # 10 Exhibit 50-60, # 11 Exhibit 62, # 12 Exhibit 65-67)(Moore, David) (Entered: 10/10/2024) |
| 10/28/2024 | 709 | Letter to The Honorable Stephanos Bibas from Michael Flynn regarding Summary Judgment Hearing - re 692 Oral Order,,. (Flynn, Michael) (Entered: 10/28/2024) |
| 10/30/2024 | 710 | [SEALED] ANSWERING BRIEF in Opposition re 672 MOTION for Partial Summary Judgment *on Fair Use (Renewed)* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 11/6/2024. (Moore, David) (Entered: 10/30/2024) |
| 10/30/2024 | 711 | [SEALED] DECLARATION re 710 Answering Brief in Opposition *of Jacob Canter* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-16, # 2 Exhibit 17, # 3 Exhibit 18-25, # 4 Exhibit 26-36, # 5 Exhibit 37 Part 1, # 6 Exhibit 37 Part 2, # 7 Exhibit 38, # 8 Exhibit 39, # 9 Exhibit 40, # 10 Exhibit 41 Part 1, # 11 Exhibit 41 Part 2, # 12 Exhibit 41 Part 3, # 13 Exhibit 41 Part 4, # 14 Exhibit 42, # 15 Exhibit 43 Part 1, # 16 Exhibit 43 Part 2, # 17 Exhibit 44)(Moore, David) (Entered: 10/30/2024) |
| 10/30/2024 | 712 | [SEALED] DECLARATION re 710 Answering Brief in Opposition *of Jimoh Ovbiagele* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-19)(Moore, David) (Entered: 10/30/2024) |
| 10/30/2024 | 713 | [SEALED] ANSWERING BRIEF in Opposition re 674 MOTION for Partial Summary Judgment *on Direct Copyright Infringement and Related Defenses (Renewed)* filed by ROSS Intelligence Inc..Reply Brief due date per Local Rules is 11/6/2024. (Moore, David) (Entered: 10/30/2024) |
| 10/30/2024 | 714 | [SEALED] DECLARATION re 713 Answering Brief in Opposition, *of Jimoh Ovbiagele* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-6)(Moore, David) (Entered: 10/30/2024) |
| 10/30/2024 | 715 | [SEALED] DECLARATION re 713 Answering Brief in Opposition, *of Warrington S. Parker III* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-11, # 2 Exhibit 12 Part 1, # 3 Exhibit 12 Part 2, # 4 Exhibit 13 Part 1, # 5 Exhibit 13 Part 2, # 6 Exhibit 14-31, # 7 Exhibit 32 Part 1, # 8 Exhibit 32 Part 2, # 9 Exhibit 32 Part 3, # 10 Exhibit 32 Part 4, # 11 Exhibit 32 Part 5, # 12 Exhibit 32 Part 6, # 13 Exhibit 33)(Moore, David) (Entered: 10/30/2024) |
| 10/30/2024 | 716 | [SEALED] ANSWERING BRIEF in Opposition re 676 MOTION for Summary Judgment *on its Affirmative Defenses of Fair Use* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Reply Brief due date per Local Rules is 11/6/2024. (Flynn, Michael) (Entered: 10/30/2024) |
| 10/30/2024 | 717 | [SEALED] DECLARATION re 713 Answering Brief in Opposition, *of Jacob Canter* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 7 Exhibit C-I) |

A147

| | | |
|---|---|---|
| | | (Moore, David) (Attachment 2 replaced on 10/31/2024) (mpb). Modified on 10/31/2024 (mpb). (Entered: 10/30/2024) |
| 10/30/2024 | 718 | [SEALED] DECLARATION re 716 Answering Brief in Opposition, *of Miranda D. Means* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Ex. 104, # 2 Ex. 105, # 3 Ex. 106, # 4 Ex. 107, # 5 Ex. 108, # 6 Ex. 109, # 7 Ex. 110, # 8 Ex. 111, # 9 Ex. 112, # 10 Ex. 113, # 11 Ex. 114, # 12 Ex. 115, # 13 Ex. 116, # 14 Ex. 117, # 15 Ex. 118, # 16 Ex. 119, # 17 Ex. 120, # 18 Ex. 121, # 19 Ex. 122, # 20 Ex. 123, # 21 Ex. 124, # 22 Ex. 125, # 23 Ex. 126, # 24 Ex. 127, # 25 Ex. 128, # 26 Ex. 129, # 27 Ex. 130, # 28 Ex. 131, # 29 Ex. 132, # 30 Ex. 133, # 31 Ex. 134, # 32 Ex. 135, # 33 Ex. 136, # 34 Ex. 137, # 35 Ex. 138)(Flynn, Michael) (Entered: 10/30/2024) |
| 10/30/2024 | 719 | NOTICE of filing the following Non-Paper material(s) in multi media format: Exhibits 117-124 to the Omnibus Declaration of Miranda D. Means In Support of Plaintiffs' Opposition to ROSS Intelligence Inc.'s Renewed Motion for Summary Judgment (D.I. 718) (flash drive lodged under seal). Original Non-paper material(s) to be filed with the Clerk's Office. Notice filed by Michael J. Flynn on behalf of Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation (Flynn, Michael) (Entered: 10/30/2024) |
| 10/31/2024 | | CORRECTING ENTRY: Per Counsel's request, Attachment 2 to D.I. 717 has been replaced to reflect the correct number of pages. Attachments 3 through 6 to D.I. 717 have been deleted to reflect the removal of blank pages. The docket of Attachment 7 to D.I. 717 has been modified to reflect the correct amount of exhibits. (mpb) (Entered: 10/31/2024) |
| 11/01/2024 | 720 | Joint Letter to The Honorable Stephanos Bibas from the Parties regarding 2025 Trial Dates. (Flynn, Michael) (Entered: 11/01/2024) |
| 11/01/2024 | 721 | NOTICE requesting Clerk to remove Andrew L. Brown as co-counsel. Reason for request: No longer with the firm of Potter Anderson & Corroon LLP. (Moore, David) (Entered: 11/01/2024) |
| 11/04/2024 | 722 | ORAL ORDER: I ORDER the parties to reserve the week beginning May 12, 2025, for trial. D.I. 720 . But I ask counsel for both sides to come to the start of the December 5-6 summary judgment hearing with their calendars in the hopes that we may identify an earlier, mutually acceptable date. I will provide guidance to counsel on the format of the summary judgment oral argument in advance of that hearing. D.I. 709 . Signed by Judge Stephanos Bibas on 11/4/2024. (mpb) (Entered: 11/04/2024) |
| 11/04/2024 | 723 | REDACTED VERSION of 713 Answering Brief in Opposition, by ROSS Intelligence Inc.. (Moore, David) (Entered: 11/04/2024) |
| 11/04/2024 | 724 | REDACTED VERSION of 714 Declaration *of Jimoh Ovbiagele* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-6)(Moore, David) (Entered: 11/04/2024) |
| 11/04/2024 | 725 | REDACTED VERSION of 715 Declaration, *of Warrington S. Parker III* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-33)(Moore, David) (Entered: 11/04/2024) |
| 11/04/2024 | 726 | REDACTED VERSION of 717 Declaration, *of Jacob Canter* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-I)(Moore, David) (Entered: 11/04/2024) |
| 11/06/2024 | 727 | REDACTED VERSION of 710 Answering Brief in Opposition by ROSS Intelligence Inc.. (Moore, David) (Entered: 11/06/2024) |

A148

| 11/06/2024 | 728 | REDACTED VERSION of 711 Declaration,, *of Jacob Canter* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-16, # 2 Exhibit 17-40, # 3 Exhibit 41 Part 1, # 4 Exhibit 41 Part 2, # 5 Exhibit 41 Part 3, # 6 Exhibit 41 Part 4, # 7 Exhibit 42-44)(Moore, David) (Entered: 11/06/2024) |
|---|---|---|
| 11/06/2024 | 729 | REDACTED VERSION of 712 Declaration *of Jimoh Ovbiagele* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-19)(Moore, David) (Entered: 11/06/2024) |
| 11/06/2024 | 730 | REDACTED VERSION of 716 Answering Brief in Opposition, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/06/2024) |
| 11/06/2024 | 731 | REDACTED VERSION of 718 Declaration,,, by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Exhibits 104-138)(Flynn, Michael) (Entered: 11/06/2024) |
| 11/13/2024 | 732 | [SEALED] REPLY BRIEF re 676 MOTION for Summary Judgment *on its Affirmative Defenses of Fair Use* filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 11/13/2024) |
| 11/13/2024 | 733 | DECLARATION re 732 Reply Brief *of Ryan Seewald* by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit 1-3)(Moore, David) (Entered: 11/13/2024) |
| 11/13/2024 | 734 | [SEALED] REPLY BRIEF re 672 MOTION for Partial Summary Judgment *on Fair Use (Renewed)* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/13/2024) |
| 11/13/2024 | 735 | [SEALED] REPLY BRIEF re 674 MOTION for Partial Summary Judgment *on Direct Copyright Infringement and Related Defenses (Renewed)* - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/13/2024) |
| 11/13/2024 | 736 | [SEALED] DECLARATION re 734 Reply Brief by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Ex. 139)(Flynn, Michael) (Entered: 11/13/2024) |
| 11/15/2024 | | Pro Hac Vice Attorneys Miranda D. Means and Yungmoon Chang for Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mpb) (Entered: 11/15/2024) |
| 11/18/2024 | 737 | REDACTED VERSION of 732 Reply Brief by ROSS Intelligence Inc.. (Moore, David) (Entered: 11/18/2024) |
| 11/18/2024 | 738 | REDACTED VERSION of 734 Reply Brief - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/18/2024) |
| 11/18/2024 | 739 | REDACTED VERSION of 735 Reply Brief - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/18/2024) |
| 11/18/2024 | 740 | REDACTED VERSION of 736 Declaration - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Ex. 139)(Flynn, Michael) (Entered: 11/18/2024) |
| 11/22/2024 | 741 | ORAL ORDER: The summary judgment hearing will be held beginning at 10 a.m. EST on December 5, 2024, in the James A. Byrne U.S. Courthouse, Courtroom 10-B, in Philadelphia, PA. I advise counsel that argument will focus on (1) the first fair use factor, 'the purpose and character of the use'; (2) the fourth fair use factor, "the effect of the use upon the potential market for or value of the copyrighted work"; (3) the type of copyright |

A149

(compilation, derivative, creative) that Thomson Reuters holds in each disputed part of Westlaw (headnotes, Key Number System) and any implications for the strength of copyright protection; (4) whether each headnote must be evaluated individually, or whether findings about individual or groups of headnotes can be extrapolated to the full set of headnotes; (5) the circumstances, with citations to caselaw, under which it is appropriate for a judge to resolve substantial similarity at summary judgment rather than leaving it to a jury; (6) record citations showing either no dispute of material fact or a genuine dispute of material fact as to actual copying, for each category of headnotes mentioned in the briefing, and including each alleged step in the chain (alleged copying by LegalEase, placement of the copied material into the Bulk Memos, use of the Bulk Memos by Ross); and (7) the relationship, if any, between Fed. R. Civ. P. 54(b) and the law of the case doctrine, as the Court is considering the extent to rely upon or revisit its prior summary judgment opinion. On each topic, Thomson Reuters will go first, followed by Ross. Counsel should come prepared with three minutes of material on each of these topics, after which counsel should be prepared to answer questions. Additional topics may also be covered. Counsel should also come prepared to discuss their availability for potential trial in 2025. D.I. 722 . Ordered by Judge Stephanos Bibas on 11/22/2024. (jfm) (Entered: 11/22/2024)

| 11/25/2024 | 742 | MOTION for a Limited Exemption from the Standing Order Regarding Personal Electronic Devices - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 11/25/2024) |
| 11/25/2024 | 743 | MOTION and Proposed Order Granting Limited Exemption from the Standing Order Regarding Personal Electronic Devices Regarding the December 5, 2024 Hearing - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 11/25/2024) |
| 11/26/2024 | 744 | SO ORDERED, re 742 MOTION for a Limited Exemption from the Standing Order Regarding Personal Electronic Devices filed by West Publishing Corporation, Thomson Reuters Enterprise Centre GmbH. Signed by Judge Stephanos Bibas on 11/26/2024. (mpb) (Entered: 11/26/2024) |
| 11/26/2024 | 745 | SO ORDERED, re 743 MOTION and Proposed Order Granting Limited Exemption from the Standing Order Regarding Personal Electronic Devices Regarding the December 5, 2024 Hearing filed by ROSS Intelligence Inc. Signed by Judge Stephanos Bibas on 11/26/2024. (mpb) (Entered: 11/26/2024) |
| 12/04/2024 | 746 | MOTION and Proposed Order Granting Limited Exemption From the Standing Order Regarding Personal Electronic Devices (re 12/5/24 & 12/6/24) - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 12/04/2024) |
| 12/05/2024 | 747 | SO ORDERED, re 746 MOTION and Proposed Order Granting Limited Exemption From the Standing Order Regarding Personal Electronic Devices (re 12/5/24 & 12/6/24). Signed by Judge Stephanos Bibas on 12/5/2024. (jfm) (Entered: 12/05/2024) |
| 12/05/2024 | 748 | ORAL ORDER: The summary judgment hearing adjourned the afternoon of December 5, 2024. No further argument will occur December 6, 2024. Ordered by Judge Stephanos Bibas on 12/5/2024. (mpb) (Entered: 12/05/2024) |
| 12/05/2024 | | Minute Entry for proceedings held before Judge Stephanos Bibas - Oral Argument held on 12/5/2024. Counsel for Plaintiffs: Dale Cendali, Esq., Miranda Means, Esq., Joshua Simmons, Esq., Yungmoon Chang, Esq., and Michael Flynn, Esq. Counsel for Defendant: Warrington Parker, Esq., Joachim Steinberg, Esq., Keith Harrison, Esq., and Crinesha Berry, Esq. (Court Reporter Kim Haley.) (mpb) (Entered: 12/06/2024) |
| 12/09/2024 | 749 | Letter to The Honorable Stephanos Bibas from David E. Moore, Esq. regarding Hearing Follow Up Submissions. (Moore, David) (Entered: 12/09/2024) |

A150

| 12/10/2024 | 750 | STATEMENT *[December 5, 2024 Hearing Follow Up]* by ROSS Intelligence Inc.. (Moore, David) (Entered: 12/10/2024) |
| 12/10/2024 | 751 | Letter to The Honorable Stephanos Bibas from Michael J. Flynn regarding Plaintiffs' Response to ROSS's December 9, 2024 Letter - re 749 Letter. (Flynn, Michael) (Entered: 12/10/2024) |
| 12/13/2024 | 752 | Letter to The Honorable Stephanos Bibas from Michael Flynn regarding public version of the Joint Statement of Uncontested Facts (D.I. 619 - Proposed Joint PTO, Ex. 1). (Attachments: # 1 Exhibit 1)(Flynn, Michael) (Entered: 12/13/2024) |
| 12/18/2024 | 753 | ORAL ORDER: Thank you to the parties for providing the native Excel file of D.I. 678 21 to the Court. Please update this file with the year of publication of each headnote in a new column (maintaining the same ID for each headnote in each row as previously submitted) and resend to the Court by 5 p.m. on Monday, December 23. Alternatively, if there is a way for the Court to glean the year of publication from the information already in the spreadsheet or elsewhere in the record, please explain how. Ordered by Judge Stephanos Bibas on 12/18/2024. (mpb) (Entered: 12/19/2024) |
| 12/20/2024 | 754 | Joint Letter to The Honorable Stephanos Bibas from the Parties regarding 2025 Pretrial Dates. (Flynn, Michael) (Entered: 12/20/2024) |
| 12/20/2024 | 755 | [SEALED] Letter to The Honorable Stephanos Bibas from David E. Moore, Esq. regarding December 19th Oral Order (D.I. 753) - re 753 Oral Order,,, Set Deadlines,,. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Moore, David) (Entered: 12/20/2024) |
| 12/20/2024 | 756 | ORAL ORDER: I DIRECT the parties to reserve April 9, 2025, for a pretrial conference and May 8, 2025, for a subsequent pretrial check-in with the Court. Further details about the location and timing of both will be arranged when the dates get closer.. Ordered by Judge Stephanos Bibas on 12/20/2024. (jfm) (Entered: 12/23/2024) |
| 12/23/2024 | 757 | Letter to The Honorable Stephanos Bibas from Michael Flynn regarding Plaintiffs' response to ROSS's December 20, 2024 letter - re 755 Letter. (Flynn, Michael) (Entered: 12/23/2024) |
| 12/24/2024 | 758 | [SEALED] Letter to The Honorable Stephanos Bibas from David E. Moore, Esq. regarding Defendant's Response to December 20, 2024 Submission of the Annotated Excel and to Plaintiffs' December 23, 2024 Letter - re 753 Oral Order,,, Set Deadlines,, 755 Letter, 757 Letter. (Attachments: # 1 Exhibit A-B)(Moore, David) (Entered: 12/24/2024) |
| 12/24/2024 | 759 | NOTICE of filing the following Non-Paper material(s) in multi media format: Exhibit B to Letter to the Honorable Stephanos Bibas from David E. Moore, Esq. Regarding Defendants Response to December 20, 2024 Submission of the Annotated Excel and to Plaintiffs December 23, 2024 Letter [CONFIDENTIAL Excel Spreadsheet]. Original Non-paper material(s) to be filed with the Clerk's Office. Notice filed by David Ellis Moore on behalf of ROSS Intelligence Inc. (Moore, David) (Entered: 12/24/2024) |
| 12/30/2024 | 760 | REDACTED VERSION of 755 Letter by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-B)(Moore, David) (Entered: 12/30/2024) |
| 12/30/2024 | 761 | Letter to The Honorable Stephanos Bibas from Michael Flynn regarding ROSS's December 24, 2024 letter - re 758 Letter,. (Flynn, Michael) (Entered: 12/30/2024) |
| 12/31/2024 | 762 | ORAL ORDER: I previously asked the parties to hold May 8, 2025. D.I. 756 . I now release that date and reserve May 5, 2025, and May 6, 2025. Ordered by Judge Stephanos Bibas on 12/31/2024. (jfm) (Entered: 12/31/2024) |

A151

| 12/31/2024 | 763 | REDACTED VERSION of 758 Letter, by ROSS Intelligence Inc.. (Attachments: # 1 Exhibit A-B)(Moore, David) (Entered: 12/31/2024) |
| --- | --- | --- |
| 01/06/2025 | 764 | [SEALED] Letter to The Honorable Stephanos Bibas from David E. Moore, Esq. regarding Response to Plaintiff's Annotated Spreadsheet and December 30, 2024 Letter - re 761 Letter. (Moore, David) (Entered: 01/06/2025) |
| 01/06/2025 | 765 | [SEALED] NOTICE of filing the following Non-Paper material(s) in multi media format: Exhibit A - Confidential Excel Spreadsheet. Original Non-paper material(s) to be filed with the Clerk's Office. Notice filed by David Ellis Moore on behalf of ROSS Intelligence Inc. (Moore, David) (Entered: 01/06/2025) |
| 01/08/2025 | 766 | Letter to The Honorable Stephanos Bibas from Michael Flynn regarding ROSS's January 6, 2025 letter - re 764 Letter. (Flynn, Michael) (Entered: 01/08/2025) |
| 01/13/2025 | 767 | REDACTED VERSION of 764 Letter by ROSS Intelligence Inc.. (Moore, David) (Entered: 01/13/2025) |
| 01/13/2025 | 768 | REDACTED VERSION of 765 Notice of Filing Multi Media Materials, by ROSS Intelligence Inc.. (Moore, David) (Entered: 01/13/2025) |
| 02/07/2025 | 769 | Official Transcript of Summary Judgment Hearing held on 12/05/2024 before Judge Stephanos Bibas. Court Reporter/Transcriber Kim L. Haley, Email: Kim_Haley@paed.uscourts.gov. Transcript may be viewed at the court public terminal or order/purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER Redaction Request due 2/28/2025. Redacted Transcript Deadline set for 3/10/2025. Release of Transcript Restriction set for 5/8/2025. (jfm) (Entered: 02/10/2025) |
| 02/11/2025 | 770 | MEMORANDUM OPINION. Signed by Judge Stephanos Bibas on 2/11/2025. (jfm) (Entered: 02/11/2025) |
| 02/11/2025 | 771 | [SEALED] APPENDIX A to 770 Memorandum Opinion. (jfm) (Entered: 02/11/2025) |
| 02/11/2025 | 772 | ORDER: I GRANT IN PART Plaintiff's Motion for Partial Summary Judgment on Direct Copyright Infringement and Related Defenses (D.I. [674]. I GRANT Plaintiffs' Motion for Partial Summary Judgment on Fair Use (D.I. 672 ). I DENY Defendants' Motion for Summary Judgment on its Affirmative Defense of Fair Use (D.I. 676 ). I DENY Defendants' Motion for Summary Judgment as to Plaintiffs' Copyright Claims (D.I. 683 ). Signed by Judge Stephanos Bibas on 2/11/2025. (jfm) (Entered: 02/11/2025) |
| 02/20/2025 | 773 | ORAL ORDER: The April 9 pretrial conference will take place beginning at 9 a.m. EDT in Wilmington, Delaware. I order the parties to confer and propose a joint stipulation and order setting pretrial deadlines by March 6 at 5 p.m. EST. Signed by Judge Stephanos Bibas on 02/20/2025. (oam) (Entered: 02/20/2025) |
| 02/24/2025 | 774 | Remark: The Pretrial Conference that is scheduled for April 9, 2025 at 9:00 am will be in Courtroom 4A at the J. Caleb Boggs Federal Building in Wilmington Delaware. (mpb) Modified on 2/25/2025 (mpb). (Entered: 02/24/2025) |
| 02/25/2025 | | CORRECTING ENTRY: The Remark dated for 2/24/2025 has been modified to reflect the correct time of the April 9, 2024 Pretrial Conference. (mpb) (Entered: 02/25/2025) |
| 02/26/2025 | 775 | MOTION for Pro Hac Vice Appearance of Attorney Andy LeGolvan of White & Case LLP - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 02/26/2025) |
| 02/26/2025 | 776 | Pro Hac Vice Fee - Credit Card Payment received for Andy LeGolvan. ( re 775 MOTION for Pro Hac Vice Appearance of Attorney Andy LeGolvan of White & Case LLP )( |

A152

| | | |
|---|---|---|
| | | Payment of $ 50, receipt number ADEDC-4623281).(Moore, David) (Entered: 02/26/2025) |
| 02/27/2025 | 777 | SO ORDERED, granting 775 MOTION for Pro Hac Vice Appearance of Attorney Andy LeGolvan of White & Case LLP. Signed by Judge Stephanos Bibas on 02/27/2025. (jfm) (Entered: 02/27/2025) |
| 02/27/2025 | | Pro Hac Vice Attorney Andy J. LeGolvan for ROSS Intelligence Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (scs) (Entered: 02/27/2025) |
| 03/06/2025 | 778 | Joint Letter to The Honorable Stephanos Bibas from the Parties regarding 2025 Pretrial Deadlines. (Attachments: # 1 Ex. A, # 2 Ex. B)(Flynn, Michael) (Entered: 03/06/2025) |
| 03/10/2025 | 779 | ORAL ORDER: Having considered the joint letter regarding 2025 Pretrial Deadlines (D.I. 778 ), I ORDER the parties to follow the pretrial deadlines proposed by Thomson Reuters. I agree that my revised summary judgment opinion primarily narrowed the scope of the trial. But I recognize that Ross may have understandably shifted its trial strategy due to the fair-use part of my revised summary judgment decision. I thus allow Ross, as part of its submissions, to make individual requests to the Court to alter rather than merely narrow preexisting filings. I warn Ross to do so sparingly and to explain to the Court why each proposed addition is necessary. Ordered by Judge Stephanos Bibas on 03/07/2025. (jfm) (Entered: 03/10/2025) |
| 03/14/2025 | 780 | MOTION for Pro Hac Vice Appearance of Attorney Mark S. Davies, Anna B. Naydonov, Kufere Laing, and Yar R. Chaikovsky of White & Case LLP - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 03/14/2025) |
| 03/14/2025 | 781 | Pro Hac Vice Fee - Credit Card Payment received for Mark S. Davies, Anna B. Naydonov, Kufere Laing, and Yar R. Chaikovsky. ( re 780 MOTION for Pro Hac Vice Appearance of Attorney Mark S. Davies, Anna B. Naydonov, Kufere Laing, and Yar R. Chaikovsky of White & Case LLP )( Payment of $ 200, receipt number ADEDC-4636893).(Moore, David) (Entered: 03/14/2025) |
| 03/14/2025 | 782 | MOTION for Pro Hac Vice Appearance of Attorney Taylor Moore-Willis and Rosie Norwood-Kelly of White & Case LLP - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 03/14/2025) |
| 03/14/2025 | 783 | Pro Hac Vice Fee - Credit Card Payment received for Taylor Moore-Willis and Rosie Norwood-Kelly. ( re 782 MOTION for Pro Hac Vice Appearance of Attorney Taylor Moore-Willis and Rosie Norwood-Kelly of White & Case LLP )( Payment of $ 100, receipt number ADEDC-4636897).(Moore, David) (Entered: 03/14/2025) |
| 03/18/2025 | 784 | SO ORDERED: re 780 MOTION for Pro Hac Vice Appearance of Attorney Mark S. Davies, Anna B. Naydonov, Kufere Laing, and Yar R. Chaikovsky of White & Case LLP. Ordered by Judge Stephanos Bibas on 03/18/2025. (oam) (Entered: 03/18/2025) |
| 03/18/2025 | 785 | SO ORDERED: re 782 MOTION for Pro Hac Vice Appearance of Attorney Taylor Moore-Willis and Rosie Norwood-Kelly of White & Case LLP. Ordered by Judge Stephanos Bibas on 03/18/2025. (oam) (Entered: 03/18/2025) |
| 03/18/2025 | 786 | MOTION for Certification for Interlocutory Appeal Under 28 U.S.C. § 1292(B) and for Stay Pending Appeal - filed by ROSS Intelligence Inc.. (Attachments: # 1 Text of Proposed Order)(Moore, David) (Entered: 03/18/2025) |

A153

| 03/18/2025 | 787 | OPENING BRIEF in Support re 786 MOTION for Certification for Interlocutory Appeal Under 28 U.S.C. § 1292(B) and for Stay Pending Appeal filed by ROSS Intelligence Inc..Answering Brief/Response due date per Local Rules is 4/1/2025. (Moore, David) (Entered: 03/18/2025) |
|---|---|---|
| 03/20/2025 | | Pro Hac Vice Attorney Mark S. Davies for ROSS Intelligence Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mpb) (Entered: 03/20/2025) |
| 03/21/2025 | 788 | Letter to The Honorable Stephanos Bibas from David E. Moore regarding Request for Extension of Time. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Moore, David) (Entered: 03/21/2025) |
| 03/24/2025 | 789 | Letter to The Honorable Stephanos Bibas from Michael Flynn regarding ROSS Intelligence Inc.'s March 21, 2025 letter - re 788 Letter. (Flynn, Michael) (Entered: 03/24/2025) |
| 03/27/2025 | 790 | ORAL ORDER: Having considered the parties recent letters, D.I. 788 and D.I. 789 , it appears that both sides agree on the relevant deadlines and proposed extension but disagree about whether the other is submitting narrowed or expanded materials. The parties should move forward with the revised timeline to which both sides have agreed and present any lingering scope disputes at the pretrial conference. Signed by Judge Stephanos Bibas on 3/27/2025. (cdd) (Entered: 03/27/2025) |
| 04/01/2025 | 791 | ANSWERING BRIEF in Opposition re 786 MOTION for Certification for Interlocutory Appeal Under 28 U.S.C. § 1292(B) and for Stay Pending Appeal - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation.Reply Brief due date per Local Rules is 4/8/2025. (Flynn, Michael) (Entered: 04/01/2025) |
| 04/01/2025 | 792 | DECLARATION of Miranda D. Means re 791 Answering Brief in Opposition, - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 04/01/2025) |
| 04/01/2025 | 793 | Proposed Jury Instructions by ROSS Intelligence Inc. . (Moore, David) (Entered: 04/01/2025) |
| 04/01/2025 | 794 | VERDICT SHEET by ROSS Intelligence Inc. . (Moore, David) (Entered: 04/01/2025) |
| 04/01/2025 | 795 | Proposed Jury Instructions by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation *(and Proposed Verdict Form)*. (Attachments: # 1 Ex. A - Proposed Jury Instructions, # 2 Ex. B - Proposed Verdict Form)(Flynn, Michael) (Entered: 04/01/2025) |
| 04/01/2025 | 796 | Proposed Pretrial Order *(Joint Amended)* - by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Attachments: # 1 Ex. 1 - Amended Uncontested Facts, # 2 Ex. 2 - TR Amended Statement of Contested Facts, # 3 Ex. 3 - ROSS Amended Statement of Contested Facts, # 4 Ex. 4 - TR Amended Issues of Law, # 5 Ex. 5 - ROSS Amended Issues of Law, # 6 Ex. 6 - Joint Statement of Top Five Categories of Exhibit Objections, # 7 Ex. 7 - Plaintiffs' Exhibit List, # 8 Ex. 8 - ROSS Exhibit List, # 9 Ex. 9 - TR Amended Witness List, # 10 Ex. 10 - ROSS Amended Witness List, # 11 Ex. 11 - Joint Submission of Priority Objections to Deposition Testimony, # 12 Ex. 12 - TR Deposition Designations with ROSS Objections, # 13 Ex. 13 - ROSS Deposition Designations - TR Counters and Objections, # 14 Ex. 14 - TR Amended Statement of Proof, # 15 Ex. 15 - ROSS Amended Statement of Intended Proofs)(Flynn, Michael) (Entered: 04/01/2025) |
| 04/01/2025 | 797 | Letter to The Honorable Stephanos Bibas from David E. Moore regarding Pretrial Conference. (Moore, David) (Entered: 04/01/2025) |

A154

| 04/02/2025 | 798 | MOTION for Limited Exemption from the Standing Order Regarding Personal Electronic Devices - filed by Thomson Reuters Enterprise Centre GmbH, West Publishing Corporation. (Flynn, Michael) (Entered: 04/02/2025) |
|---|---|---|
| 04/04/2025 | 799 | ORDER: I GRANT Ross's motion for interlocutory appeal and stay pending appeal. D.I. 786 . Though I remain confident in my February 2025 summary judgment opinion, I recognize that there are substantial grounds for difference of opinion on controlling legal issues in this case. These issues have the potential to change the shape of the trial. I thus certify the following two questions to the Third Circuit: (1) whether the West headnotes and West Key Number System are original; and (2) whether Ross's use of the headnotes was fair use. A short opinion further explaining my reasoning will follow. Under the stay, the pretrial conference on April 9, 2025 and the trial the week of May 12, 2025 are postponed pending appeal. Ordered by Judge Stephanos Bibas on 04/03/2025. (jfm) (Entered: 04/04/2025) |
| 04/04/2025 | 800 | MOTION for Pro Hac Vice Appearance of Attorney Kayvan M. Ghaffari, Anne M. Voigts and Ranjini Acharya of Pillsbury Winthrop Shaw Pittman LLP - filed by ROSS Intelligence Inc.. (Moore, David) (Entered: 04/04/2025) |
| 04/04/2025 | 801 | Pro Hac Vice Fee - Credit Card Payment received for Kayvan M. Ghaffari, Anne M. Voigts, and Ranjini Acharya. ( re 800 MOTION for Pro Hac Vice Appearance of Attorney Kayvan M. Ghaffari, Anne M. Voigts and Ranjini Acharya of Pillsbury Winthrop Shaw Pittman LLP )( Payment of $ 150, receipt number ADEDC-4654569).(Moore, David) (Entered: 04/04/2025) |
| 04/04/2025 | | Pro Hac Vice Attorney Yar R. Chaikovsky for ROSS Intelligence Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (cdd) (Entered: 04/04/2025) |
| 04/07/2025 | 802 | SO ORDERED: re 800 MOTION for Pro Hac Vice Appearance of Attorney Kayvan M. Ghaffari, Anne M. Voigts and Ranjini Acharya of Pillsbury Winthrop Shaw Pittman LLP. Ordered by Judge Stephanos Bibas on 04/07/2025. (oam) (Entered: 04/07/2025) |
| 04/07/2025 | 803 | ORAL ORDER: I dismiss as moot D.I. 798 . Ordered by Judge Stephanos Bibas on 04/07/2025. (oam) (Entered: 04/07/2025) |
| 04/10/2025 | | Pro Hac Vice Attorney Anne M. Voigts, Ranjini Acharya, Kayvan M. Ghaffari for ROSS Intelligence Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (cdd) (Entered: 04/10/2025) |
| 05/23/2025 | 804 | MEMORANDUM OPINION. Signed by Judge Stephanos Bibas on 05/23/2025. (jfm) (Entered: 05/23/2025) |
| 06/17/2025 | 805 | ORDER of USCA granting Petition for Leave of Appeal. (sb2, ) (Entered: 06/17/2025) |
| 06/17/2025 | 807 | NOTICE OF APPEAL to the Third Circuit of 770 Memorandum Opinion, 772 Order,. Appeal filed by ROSS Intelligence Inc.. Filing fee $605, receipt number 4179. (rlr) (Entered: 06/20/2025) |
| 06/18/2025 | 806 | USCA Appeal Fees received: $605, receipt number 4179 re 805 USCA Order. (cdd) (Entered: 06/18/2025) |
| 06/26/2025 | 808 | TRANSCRIPT REQUEST by ROSS Intelligence Inc. for proceedings held on 12/05/2024 before Judge Stephanos Bibas, (Moore, David) (Entered: 06/26/2025) |

A155

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/17/2025 12:47:58 | | | |
| **PACER Login:** | cpnycpara16 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-00613-SB Start date: 1/1/1975 End date: 9/17/2025 |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

A156

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. _____ |
| v. | ) ) | **DEMAND FOR JURY TRIAL** |
| ROSS INTELLIGENCE INC., | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West") (collectively, "Plaintiffs"), for their Complaint, hereby allege against Defendant ROSS Intelligence Inc. ("ROSS") as follows:

## NATURE OF THE ACTION

1.     Plaintiffs created and nurtured their well-known Westlaw product since its inception, including without limitation its unique West Key Number System ("WKNS") and West Headnotes (collectively, "Westlaw Content"). ROSS is attempting to create a business by taking for itself critical features of Westlaw, without permission from or compensation to Plaintiffs. Upon information and belief, ROSS illicitly and surreptitiously used a then-Westlaw licensee to acquire access to and copy Plaintiffs' valuable content. ROSS did so, not for the purposes of legal research, but to rush out a competing product without having to spend the resources, creative energy, and time to create it itself. The net result is that Plaintiffs are now being put in the unfair position of having to compete with a product that they unknowingly helped create.

2.     This action seeks to recover damages that Plaintiffs have suffered and to prevent the irreparable harm that continues to threaten them as a result of ROSS's deceitful and willful copying of Plaintiffs' copyrighted content and organization, as well as ROSS's tortious interference with contract.

3.     Specifically, upon information and belief, ROSS intentionally and knowingly induced a third-party called LegalEase Solutions, LLC ("LegalEase")—a legal support services company—to breach its contract with West by engaging in the unlawful reproduction of Plaintiffs' copyrighted content and distribution of that content *en masse* to ROSS.  ROSS did so after asking for and explicitly being denied access to Westlaw by West on the basis that West does not give competitors access to its products.  Thus, ROSS induced LegalEase to engage in this unlawful activity, knowing that it violated the terms of LegalEase's contract with West and that West would not grant ROSS a license to use Plaintiffs' content to create a competing product.  ROSS committed direct copyright infringement by reproducing and creating a derivative work based on Plaintiffs' content, and is also secondarily liable for LegalEase's copyright infringement.

4.     In short, ROSS has engaged, and continues to engage, in a pattern and practice of knowingly, intentionally, and willfully infringing Plaintiffs' copyrights.  Further, it is obvious from the roundabout and deceitful tactics ROSS employed to gain access to Westlaw, , that it was aware what it was doing was improper, and without authorization or consent from the Plaintiffs.

5.     Hence, due to ROSS's blatant and willful infringement, Thomson Reuters and West file this lawsuit seeking injunctive relief and damages that they have suffered as a result of ROSS's direct, contributory, and vicarious copyright infringement under the Copyright Act of

A158

1976, 17 U.S.C. § 101 *et. seq.*, and intentional and tortious interference with contractual relations.

## PARTIES

6.      Plaintiff Thomson Reuters Enterprise Centre GmbH is a limited liability company having its principal place of business in Zug, Switzerland.  It is the owner of the copyrights in and to Westlaw Content.

7.      Plaintiff West Publishing Corporation is a Minnesota corporation having its principal place of business at 610 Opperman Drive, Eagan, Minnesota 55123.  West creates and authors Westlaw Content.

8.      Defendant ROSS Intelligence Inc. is a corporation organized and existing under the laws of the State of Delaware and having an office in San Francisco, California.

## JURISDICTION AND VENUE

9.      This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et. seq.* and Delaware law.  This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338 and 1367.

10.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### I.      Plaintiffs and the Creativity of Westlaw

11.      Plaintiffs are well-known as industry leaders in online legal research.  Westlaw, in particular, offers to West's subscribers access to a comprehensive collection of legal information that is easily searchable through keywords, natural language, and/or Boolean inquiries, backed by a rigorous editorial process that makes navigating the legal field simple.  Editorial enhancements, such as Plaintiffs' proprietary West Headnotes, notes of decisions, and the WKNS are but a few examples of the creative and original material authored by West's dedicated attorney-editors.  Westlaw makes legal research seamless through its well-designed

3

A159

structure, sequence, and organization.  Below is Westlaw's home page, which helps subscribers easily navigate to the exact information for which they are looking.

**Westlaw's Home Page**



12.     Integral to Westlaw is Plaintiffs' WKNS, which organizes U.S. law using a hierarchy that is unique to Plaintiffs.  The WKNS is the backbone through which thousands of lawyers conduct legal research.  The development of the WKNS, beginning in print and now in a digital format, has been and continues to be the result of Plaintiffs' numerous creative choices about how to organize cases and which cases to place in that classification, requiring substantial investments of time, technological and human resources, and money over the course of decades.  Below is the WKNS home page that can be navigated by Westlaw subscribers.

A160

**The WKNS Home Page**



13.     As an example of Plaintiffs' complex hierarchy, within the "Abandoned and Lost Property" topic are the Key Numbers "Nature and elements," "evidence and questions for jury," and "operation and effect."   Within the "Nature and elements" Key Number are Key Numbers assigned to the legal issues and points of law "In general," "Intent," and "Acts and omissions" topics.   The "In general" Key Number is delineated 1k1.1, and currently contains 603 cases. Nothing dictated the hierarchy that Plaintiffs created as cases, topics, legal issues, and points of law could be arranged in an unlimited number of combinations.

14.     As decisions are issued, West's attorney-editors—all of whom are bar-admitted— carefully review them and create original West Headnotes to describe the key concepts discussed in the case.   West's attorney-editors then integrate those West Headnotes into the WKNS so subscribers can easily find the latest decisions on any given topic or issue.   Moreover, West's attorney-editors regularly edit and revise the West Headnotes and the West Key Numbers of previously integrated cases so that subscribers can trust the accuracy and timeliness of the information that is offered.

5

A161

15.    Westlaw includes access to volumes of proprietary material (such as West Headnotes, case summaries, and other Westlaw-created content), databases, and compilations of case law, state and federal statutes, state and federal regulations, law journals, treatises, and other resources—all organized and curated by West's editorial team.  Westlaw incorporates decades of search and editorial intelligence with the latest technological innovations to bring its subscribers the most comprehensive legal research platform on the market.  Below is an example of West Headnotes describing the key concepts discussed in the *Harper & Row* case, as well as the manner in which subscribers can see and further navigate to corresponding West Key Numbers.



16.    The WKNS adds immeasurable value to Westlaw.  It is how thousands of professionals learn to navigate and conceptualize the legal field and is what helped position Westlaw as the leading legal research service.

17.    Plaintiffs take great care in deciding who they permit to access Westlaw and what those with access are allowed to do with it.  Plaintiffs have invested hundreds of millions of dollars in Westlaw and thus take measures, such as those limitations set forth in West's Subscriber Agreements, to protect the proprietary nature of Westlaw Content.

18.     Specifically, each of West's Subscriber Agreements with third parties—like the one it entered into with LegalEase (the "Service Agreement")—provides precisely what third parties are and are not allowed to do with Westlaw content.  Critically, the Service Agreement provides that a subscriber "may not sell, sublicense, distribute, display, store or transfer [West's] products or any data in [its] products in bulk or in any way that could be used to replace or substitute for [its] products in whole or in part or as a component of any material offered for sale, license or distribution to third parties."  Moreover, although a subscriber may "store, on a matter-by-matter basis, *insubstantial portions* of [Westlaw content]… in connection with an active matter being handled by Subscriber in its regular course of business," the amount stored must "(a) have no independent value other than as part of Subscriber's work product; and (b) c[an] not be used in any way in whole or in part as a substitute for any service or product provided by West."  Similarly, although a subscriber may **"**on *an occasional basis* and via *Product functionality*, direct West to transmit individual documents in electronic format to… individual third parties in connection with actual, ascertainable matters being handled by Subscriber…. [a]ll other direct transmission of electronic copies by Subscriber is *prohibited*."  Finally, the Service Agreement provides that a "Subscriber shall not copy, download, scrape, store, publish, post, transmit, retransmit, transfer, distribute, disseminate, broadcast, circulate, sell, resell, license, sublicense or otherwise use [Westlaw content], or any portion of [Westlaw content], in any form or by any means except as expressly permitted by [the License Grant], or as otherwise expressly permitted in writing by West."

19.     As these restrictions show, although Westlaw subscribers are permitted to use Westlaw in certain ways, they are expressly prohibited from using Westlaw Content to create a competitive product or to sell the Plaintiffs' proprietary content to others.  Westlaw, including

A163

Westlaw Content, is extremely valuable, and thus West is constantly monitoring user activity for behavior that would breach the terms of its subscriber agreement—which is precisely how West discovered ROSS's unlawful infringement and covert activity.

## II.     Plaintiffs' Valuable Intellectual Property Rights in Westlaw

20.     Plaintiffs have invested vast resources, including creativity, talent, time, effort, and money, to create Westlaw Content.  West employs attorney-editors whose sole responsibility is to review decisions, create original and creative West Headnotes summarizing key points of law, and organizing those cases and West Headnotes in the WKNS.  In addition, the editors are regularly reviewing existing West Headnotes and the WKNS to ensure the greatest accuracy in light of the countless new cases that are added every day.

21.     Cases, areas of law, legal topics, legal issues, subtopics, and subissues can all be summarized and organized in a variety of different ways—the structure, sequence, and organization of the WKNS is not something that has been achieved by accident or necessity; rather, it is the result of decades of human creativity and choices.

22.     To protect Westlaw, Thomson Reuters registers the database with the United States Copyright Office every three months.  For example, attached hereto as **Exhibit A**, and incorporated herein by reference, are true and correct copies of certificates of registration issued by the Copyright Office and other documents reflecting Westlaw's registrations.  They reflect the effective date of registration, as well as the assigned registration numbers.

23.     Thomson Reuters is the sole owner and proprietor of all right, title, and interest in and to the copyrights in Westlaw.  The copyrights in Westlaw are presently valid and subsisting and were valid and subsisting at all times affecting the matters complained of herein.

8

A164

### III.    ROSS Intelligence and Its Infringement of Westlaw

24.    Upon information and belief, ROSS was founded in 2015 and is engaged in the business of offering and providing to the public legal research services through its ROSS platform.

25.    Upon information and belief, ROSS first began by offering research services in both bankruptcy and intellectual property law, but now offers case law, statutes, and regulations across various practice areas and all 50 states.

26.    Upon information and belief, as the screenshot below illustrates, ROSS's users are able to search for relevant law by posing a question in natural language, as opposed to Boolean terms or key words.

**Results of Natural Language Search on ROSS**



27.    Upon information and belief, similar to Westlaw, the ROSS platform provides users with case summaries and treatments, as well as allows the user to use the initial search

A165

results as a jumping-off point to find additional cases with similar facts and/or procedural postures.

28.    Upon information and belief, to create a legal research platform that could compete with Westlaw, ROSS needed to acquire vast amounts of legal content, descriptions of that content, and a means by which to organize that legal content.  ROSS knew that it would not be granted access to Westlaw for such a purpose, so instead ROSS opted to gain access to Westlaw through deceitful and undisclosed tactics.

29.    Upon information and belief, to develop its platform, ROSS contracted with LegalEase—a legal research and writing support services company.  Because LegalEase only provides research and writing services, not a competing legal research product like ROSS does, it was able to obtain a limited license beginning in 2008 to use Westlaw to conduct legal research for customers.  The Service Agreement between LegalEase and West prohibited LegalEase from running or installing any computer software on West's products or network, as well as selling, sublicensing, distributing, displaying, storing, or transferring Westlaw information in bulk to third parties.

30.    For years, LegalEase's usage appeared to show that it abided by the terms of the Service Agreement.  That all changed in July 2017.

31.    Prior to July 2017, LegalEase had consistently averaged approximately 6,000 Westlaw transactions per month.[1]  Beginning in about July 2017, LegalEase's use of Westlaw spiked dramatically, eventually reaching approximately 236,000 transactions per month, which, as shown below, is nearly a forty-fold increase over LegalEase's historical usage pattern and

---

[1]    For the purposes of this complaint, a "transaction" refers to any executed search, as well as any viewing, printing, downloading, or emailing of a specific document.

A166

represents a usage rate of nearly five times greater than the average monthly usage of the "AmLaw 100" law firms.

**LegalEase's Westlaw Usage[2]**



Westlaw Transactions

32.    Further investigation revealed that users of certain Westlaw credentials assigned to LegalEase were exhibiting activity that indicated that computer software, or a "bot," was being used, and that it appeared as though content from Westlaw was being downloaded and stored in bulk by said those software tools in violation of the Service Agreement. West observed that LegalEase's software was systematically making its way through the WKNS to, upon information and belief, reproduce and store the manner in which the WKNS was organized.

33.    Upon information and belief, LegalEase implemented this automated software, materially breached its Service Agreement with West, and unlawfully reproduced and distributed the copyright-protected Westlaw Content at the direction of and to benefit ROSS. In a July 2017 interview—the same time LegalEase's Westlaw transactions began to skyrocket—LegalEase stated that it was working with "a machine learning legal research firm," later revealed to be ROSS, to help create a new legal research product. LegalEase explained that it was feeding

---

[2]    This graph is based on usage data West regularly tracks and records for its subscribers.

A167

ROSS with "tons and tons of legal research," which, upon information and belief, was copyrighted content from Westlaw, to help create ROSS's competing product.

34.    Upon information and belief, ROSS paid LegalEase to copy the Westlaw Content from Westlaw to build ROSS's competing platform, thereby knowingly and deliberately instructing LegalEase to breach its Service Agreement with West.  Upon information and belief, LegalEase and ROSS have been working together since at least October 2015.

35.    Upon information and belief, after LegalEase copied the Westlaw Content, it distributed that content to Ross.  Ross then copied that content and used it to create its platform.

36.    By letter dated January 4, 2018, West terminated LegalEase's Service Agreement due to LegalEase's material breach and violation of the Service Agreement.  The effective date of termination was January 17, 2018.

37.    It is clear that by copying the copyright-protected Westlaw Content—piggybacking off of the creativity, countless hours, and extraordinary expense that have gone into creating Westlaw—ROSS drastically sped up its development time and reduced the cost associated with the development of its competing platform.

38.    Upon information and belief, ROSS's copying has allowed it to forego the immense expenditure of resources—including creativity, talent, time, effort, and money—that otherwise would be required to create its competing platform as the algorithms comprising ROSS's platform function in a manner analogous to those of Westlaw.

39.    Upon information and belief, unless enjoined by this Court, ROSS intends to continue to infringe upon Plaintiffs' copyrights and otherwise to profit from Plaintiffs' works. Accordingly, Plaintiffs have suffered irreparable damage.  Plaintiffs have no adequate remedy at law to redress all of the injuries that ROSS has caused, and intends to cause, by its conduct.

Plaintiffs will continue to suffer irreparable damage until ROSS's actions alleged above are enjoined by this Court.

**CLAIMS FOR RELIEF**

**COUNT I**
**Copyright Infringement (17 U.S.C. § 101 *et seq.*)**

40.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

41.     Westlaw, including, without limitation, the Westlaw Content, is original and creative.  As a result, it constitutes copyrightable subject matter under the laws of the United States.

42.     Thomson Reuters is the owner of valid copyrights in Westlaw, and the Register of Copyrights has issued certificates of registration for it.  It has complied in all respects with 17 U.S.C. § 101, *et seq.*, and has secured the exclusive rights and privileges in and to the copyrights in Westlaw Content.

43.     By its actions, alleged above, ROSS has infringed and will continue to infringe the Westlaw Content's copyrights by, *inter alia*, reproducing and creating a derivative work using the Westlaw Content without any authorization or other permission from Plaintiffs. ROSS's direct infringement of Plaintiffs' copyrights has been deliberate, willful, and in utter disregard of Plaintiffs' rights.

44.     Moreover, as LegalEase clearly infringed Plaintiffs' copyrights by reproducing and distributing the Westlaw Content to ROSS, ROSS is contributorily liable for materially and knowingly contributing to LegalEase's infringement.  Upon information and belief, ROSS induced LegalEase to infringe Plaintiffs' copyrights by directly contracting with LegalEase to reproduce and distribute Westlaw content to ROSS.  Moreover, it knew that LegalEase was

13

A169

unlawfully reproducing and distributing the copyrighted Westlaw Content as ROSS received tens of thousands of documents from LegalEase containing the Westlaw Content or materials based thereon.

45.     Further, ROSS is vicariously liable for LegalEase's direct infringement.  Upon information and belief, ROSS had a financial interest in LegalEase's direct infringement, including, without limitation, significantly reducing the cost of development of its platform, procuring investments in ROSS to which ROSS was not entitled, and avoiding the cost that ROSS would have to pay to obtain this content.  LegalEase was an agent of ROSS, and ROSS exercised the requisite levels of control over the creation and distribution of the documents that LegalEase sent to ROSS to support a finding of vicarious liability.

46.     As a direct and proximate result of ROSS's wrongful conduct, Plaintiffs have been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, ROSS will cause further irreparable injury to Plaintiffs.

47.     Plaintiffs are entitled to injunctive relief preventing ROSS, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further infringement of Westlaw.

48.     Plaintiffs are further entitled to recover from ROSS the damages, including attorneys' fees and costs, they have sustained and will sustain, and any gains, profits, and advantages obtained by ROSS as a result of its acts of infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Plaintiffs, but will be established according to proof at trial.  Plaintiffs are also entitled to recover statutory damages for ROSS's willful infringement of its copyrights.

14

A170

## COUNT II
### Tortious Interference with Contract

49.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

50.     A valid contractual relationship between West and LegalEase existed for nearly ten years prior to ROSS's inducement of LegalEase to breach the Service Agreement.

51.     Upon information and belief, ROSS knew that LegalEase had a valid contract with West—as apparent from the fact ROSS contracted with LegalEase to obtain the password-protected and copyrighted content from Westlaw that ROSS was explicitly denied access to—and intentionally instructed LegalEase to act in breach of that contract without justification.

52.     Upon information and belief, ROSS knew that it would not be able to receive permission from Thomson Reuters or West to access Westlaw, that Westlaw was secured behind a paywall, and that LegalEase's Service Agreement did not permit the naked reproduction and distribution of copyrighted material from Westlaw.

53.     As a result of ROSS's intentional and tortious interference with West's contract with LegalEase, Plaintiffs have been damaged in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Thomson Reuters and West respectfully request judgment in their favor and against Defendant ROSS as follows:

A.     Finding that ROSS has directly and indirectly infringed Plaintiffs' copyrights in Westlaw;

B.     Finding that ROSS's infringement of Plaintiffs' copyrights was willful;

C.     Finding that ROSS has tortiously interfered with West's contract with LegalEase;

A171

D.    Finding that there is a substantial likelihood that ROSS will continue to infringe Plaintiffs' copyrights unless enjoined from doing so;

E.    Issuing a preliminary and permanent injunction enjoining ROSS, and its agents, servants, employees, attorneys, successors and assigns, and all persons, firms and corporations acting in concert with it, from directly or indirectly infringing Plaintiffs' copyrights, including, but not limited to, offering ROSS's legal research product;

F.    Ordering the removal and destruction of Westlaw Content from ROSS's legal research product;

G.    Ordering ROSS to render a full and complete accounting to Thomson Reuters and West for ROSS's profits, gains, advantages and the value of the business opportunities received from the foregoing acts of infringement;

H.    Entering judgment for Plaintiffs against ROSS for all damages suffered by Plaintiffs and for any profits or gain by ROSS attributable to infringement of Thomson Reuters' copyrights in amounts to be determined at trial;

I.    Entering judgment for Plaintiffs against ROSS for statutory damages based upon ROSS's willful acts of infringement pursuant to 17 U.S.C. § 504;

J.    Entering judgment for Plaintiffs against ROSS for punitive damages based on ROSS's tortious interference with the contractual relationship between LegalEase and West in amounts to be determined at trial;

K.    Awarding Plaintiffs the costs and disbursement of this action, including reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

A172

L.      Awarding Plaintiffs pre-judgment and post-judgment interest, to the fullest extent available, on the foregoing; and

M.      Granting such other, further and different relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Plaintiffs Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

May 6, 2020

A173

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) | C.A. No. 20-613-LPS |
| Plaintiffs, Counterdefendants, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant, Counterclaimant. | ) ) | |

**DEFENDANT AND COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S**
**AMENDED PARTIAL ANSWER AND DEFENSES AND AMENDED**
**COUNTERCLAIMS IN RESPONSE TO PLAINTIFFS' COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

**AMENDED ANSWER**

Defendant ROSS Intelligence, Inc. ("ROSS") hereby partially responds to the Complaint filed by Plaintiffs Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West") (collectively, "Plaintiffs"). Specifically, ROSS responds to Plaintiffs' second claim for tortious interference with contract. Plaintiffs' first claim for copyright infringement, and any allegation purporting to assert copyright protection over any content, is subject to ROSS's pending motion to dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b).

**NATURE OF THE ACTION[1]**

1.      ROSS denies it illicitly and surreptitiously used a then-Westlaw licensee to acquire access to and copy Plaintiff's content, and that it is attempting to create a business or

---

[1] The section headings in this Answer are provided solely for ease of reference, tracking those used in the Complaint, and do not constitute any part of ROSS's response to the allegations in the Complaint or any form of admission as to the truth of those allegations.

A174

competing product by taking for itself any features of Westlaw or "Westlaw Content," as defined and alleged by Plaintiffs. ROSS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and therefore denies them.

2.    ROSS denies the allegations in paragraph 2.

3.    ROSS admits West denied ROSS's direct access to Westlaw. Except as expressly admitted, ROSS denies the allegations in Paragraph 3.

4.    ROSS denies the allegations in paragraph 4.

5.    ROSS denies the allegations in paragraph 5.

**PARTIES**

6.    Paragraph 6 states a legal conclusion as to whether any "Westlaw Content" is subject to copyright protection, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time. Otherwise, ROSS admits the allegations in paragraph 6.

7.    Paragraph 7 states a legal conclusion as to whether there is any copyrightable creation or authorship in any "Westlaw Content," which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time. Otherwise, ROSS admits the allegations in paragraph 7.

8.    ROSS admits the allegations in paragraph 8.

**JURISDICTION AND VENUE**

9.    ROSS admits that the Complaint purports to assert claims arising under the copyright laws of the United States, specially, 17 U.S.C. § 101 *et. seq.* ROSS denies that this action arises under Delaware law. ROSS admits that the Complaint purports that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

A175

10.    ROSS admits that the Complaint purports that venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and 1400(a).

<u>**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**</u>

**I.    Plaintiffs and the Creativity of Westlaw**

11.    ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

12.    ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

13.    ROSS admits that the "Abandoned and Lost Property" topic contains the Key Numbers "Nature and elements," "evidence and questions for jury," and "operation and effect." ROSS admits that within the "Nature and elements" Key Number are Key Numbers assigned to the legal issues and points of law "In general," "Intent," and "Acts and omissions" topics. ROSS admits that the "In general" Key Number is delineated 1k1.1, and currently contains 603 cases. Except as expressly admitted, ROSS denies the allegations in Paragraph 13.

14.    ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

15.    ROSS admits Westlaw contains case law, state and federal statutes, state and federal regulations, law journals, and treatises.  ROSS admits that West Headnotes describe key concepts of a case.  ROSS admits that the Plaintiffs provide an example of West Headnotes and West Key Numbers from the *Harper & Row* case.  ROSS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and therefore denies them.

16.    ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

A176

17.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

18.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

19.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

**II.     Plaintiffs' Valuable Intellectual Property Rights in Westlaw**

20.     Paragraph 20 is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.  Otherwise, ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

21.     Paragraph 21 is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.  Otherwise, ROSS denies the allegations in paragraph 21.

22.     Paragraph 22 is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.  Otherwise, ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

23.     Paragraph 23 states a legal conclusion as to whether any "Westlaw Content" is subject to copyright protection, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time. Otherwise, ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

**III.     ROSS Intelligence and Its Infringement of Westlaw**

24.     ROSS admits it was founded in 2015 and is engaged in the business providing judicial opinions to the public through legal research services.

25.     ROSS admits it began by offering research services in bankruptcy and intellectual property law and currently offers research services on case law, statutes, and regulations across all practice areas and all 50 states.

26.     ROSS admits that ROSS's users are able to search for relevant law by posing a question in natural language, as opposed to Boolean terms or key words.  ROSS admits that Paragraph 26 reflects results of a natural language search on ROSS.

27.     ROSS denies the allegations in paragraph 27.

28.     ROSS admits it acquired judicial opinions to develop a legal research platform. Except as expressly admitted, ROSS denies the allegations in Paragraph 28.

29.     ROSS admits it contracted with LegalEase, a legal research and writing support services company.  Except as expressly admitted, ROSS denies the allegations in Paragraph 29.

30.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

31.     Paragraph 31 states a legal conclusion to the extent it states, characterizes, or refers to any action as infringing, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.  Otherwise, ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

32.     Paragraph 32 states a legal conclusion to the extent it states, characterizes, or refers to any action as infringing, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.  Otherwise, ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

33.     Paragraph 33 states a legal conclusion to the extent it states, characterizes, or refers to any action as infringing, which is subject to ROSS's motion to dismiss, and therefore no

response is appropriate at this time. Paragraph 33 states a legal conclusion as to whether any "Westlaw Content" is subject to copyright protection, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time. ROSS admits LegalEase provided ROSS with excerpts from judicial opinions. Except as expressly admitted, ROSS denies the allegations in Paragraph 33.

   34. Paragraph 34 states a legal conclusion to the extent it states, characterizes, or refers to any action as infringing, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time. Paragraph 34 states a legal conclusion as to whether any "Westlaw Content" is subject to copyright protection, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time. ROSS admits it has been working with LegalEase since October 2015. Except as expressly admitted, ROSS denies the allegations in Paragraph 34.

   35. Paragraph 35 states a legal conclusion to the extent it states, characterizes, or refers to any action as infringing, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time. Paragraph 35 states a legal conclusion as to whether any "Westlaw Content" is subject to copyright protection, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time. Paragraph 35 states a legal conclusion to the extent it states, characterizes, or refers to ROSS "copied" any purported copyrighted material, to which no response is required. Otherwise, ROSS denies the allegations in Paragraph 35.

   36. ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

37.     Paragraph 37 states a legal conclusion to the extent it states, characterizes, or refers to any action as infringing, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.  Paragraph 37 states a legal conclusion as to whether any "Westlaw Content" is subject to copyright protection, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.  Otherwise, ROSS denies the allegations in Paragraph 37.

38.     Paragraph 38 states a legal conclusion to the extent it states, characterizes, or refers to any action as infringing, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.  Paragraph 38 states a legal conclusion as to whether any content is subject to copyright protection, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.  Otherwise, ROSS denies the allegations in paragraph 38.

39.     Paragraph 39 states a legal conclusion to the extent it states, characterizes, or refers to any action as infringing, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.  Paragraph 39 states a legal conclusion as to whether any "Westlaw Content" is subject to copyright protection, which is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time. Otherwise, ROSS denies the allegations in Paragraph 39.

**<u>CLAIMS FOR RELIEF</u>**

**<u>COUNT I</u>**
**Copyright Infringement (17 U.S.C. *et seq.*)**

40.     ROSS incorporates by reference its responses to each and every allegation above as if fully set forth herein.

A180

41.     Paragraph 41 is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.

42.     Paragraph 42 is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.

43.     Paragraph 43 is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.

44.     Paragraph 44 is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.

45.     Paragraph 45 is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.

46.     Paragraph 46 is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.

47.     Paragraph 47 is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.

48.     Paragraph 48 is subject to ROSS's motion to dismiss, and therefore no response is appropriate at this time.

## <u>COUNT II</u>
### Tortious Interference with Contract

49.     ROSS incorporates by reference its responses to each and every allegation above as if fully set forth herein.

50.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

51.     ROSS denies the allegations in paragraph 51.

- 8 -

A181

52.     ROSS admits Plaintiffs denied ROSS direct access to Westlaw.   Except as expressly admitted, ROSS denies the allegations in Paragraph 52.

53.     ROSS denies the allegations in paragraph 53.

### PRAYER FOR RELIEF

ROSS denies that Plaintiffs are entitled to any relief whatsoever, specifically including the relief specified in its Prayer for Relief.

### JURY DEMAND

ROSS admits that Plaintiffs have demanded a jury trial on all issues triable to a jury.

### DEFENSES

ROSS sets forth its defenses below, and in doing so, ROSS does not allege or admit that it has the burden of proof and/or persuasion with respect to any of these matters, and does not assume the burden of proof and/or persuasion as to any matters to which Plaintiffs bear such a burden.  ROSS reserves its right to amend its Answer to assert other defenses as they may become known.

### FIRST DEFENSE
### (Failure to State a Claim for Tortious Interference with Contract)

Plaintiffs' tortious interference with contract claim fails to state a claim upon which relief can be granted.

### SECOND DEFENSE
### (Double Recovery)

Recovery on any alleged tortious interference by ROSS with the contract between LegalEase and Plaintiffs is barred due to the double recovery. Plaintiffs would receive, having already sued and entered in a consent judgment with LegalEase for LegalEase's alleged breach of its contract with Plaintiffs.

A182

**THIRD DEFENSE**
**(Statute of Limitations)**

Plaintiffs' tortious interference with contract claim is barred under California's two-year statute of limitations.

**FOURTH DEFENSE**
**(Good Faith)**

ROSS's actions were taken in good faith, in reliance upon information provided by LegalEase's representatives, agents, and/or employees, and with a reasonable belief that such actions were legal, appropriate and necessary.  The conduct alleged to be in violation of a statute, if any such conduct occurred, was purely unintentional, and occurred, if at all, despite ROSS's reasonable and appropriate efforts to avoid any such violation.

**FIFTH DEFENSE**
**(Equitable Doctrines – Consent, Waiver, Laches and Estoppel)**

Plaintiffs' tortious interference with contract claim is barred, in whole or in part, by equity and the doctrines of consent, waiver, laches, and estoppel.

**SIXTH DEFENSE**
**(Tort of Another)**

Without admitting any liability and without admitting that Plaintiffs have suffered any loss or damage whatsoever, Plaintiffs tortious interference with contract claim is barred, in whole or in part, by the intervening tort of a third-party, for which ROSS is not liable.

**SEVENTH DEFENSE**
**(Equitable Doctrines – No Injunction)**

Plaintiffs are not entitled to injunctive relief because any alleged injury to Plaintiffs is not immediate and irreparable, and Plaintiffs have an adequate remedy at law.

A183

### DEFENDANT ROSS INTELLIGENCE INC.'S AMENDED COUNTERCLAIMS

1.     This is a case about the public right of access to the rules of our democracy and Westlaw's anticompetitive tactics to keep "the public law" from most Americans and maintain its monopoly.

2.     "The public law" is the decisions of federal and state courts, the laws enacted, and the administrative guidance.  This is the material we the people reference when saying that ours is a government of laws, not of men.

3.     The right to access to the public law has been well-recognized by courts throughout the nation for hundreds of years.

4.     Nevertheless, as every judge, law clerk, professor, practicing lawyer, paralegal, law student, and other participant in the legal ecosystem knows, when it comes to accessing the public law, Westlaw is king.

5.     Counterdefendants market and sell Westlaw, which controls over 80% of the market for legal search platform products.  Westlaw's[2] status as king of legal search has been unchallenged for more than a century.  Westlaw's control over legal search is not only enduring, it is incredibly lucrative – Counterdefendants reap billions in revenue at supra-competitive prices.  As a result, most Americans have no way to credibly search the public law and are forced to rely on others to understand the rules of our democracy.

6.     Counterclaimant ROSS Intelligence Inc. ("ROSS") is a nascent competitor in the market.  ROSS built a robust and intuitive legal search engine that uses artificial intelligence and other technology with the goal of making the public law accessible to every American.  ROSS

---

[2] Counterdefendants Thomson Reuters Enterprise GmbH and West Publishing Corp. are herein referred to as "Counterdefendants" or "Westlaw."

A184

secured substantial investment to develop and launch its product. The legal technology community uniformly recognized that ROSS's product was poised to reshape the market.

7.     Ultimately – despite substantial venture capital investment, disruptive technology, and widespread enthusiasm – ROSS never really had a chance.  ROSS brings this antitrust case against Westlaw for engaging in an exclusionary and anticompetitive course of conduct to maintain its monopoly and restrain trade. This conduct both harmed ROSS and injured American consumers by depriving them of access to the public law.

8.     ROSS will show that Westlaw does not maintain its exalted status in legal search through innovation or procompetitive business practices.  To the contrary, at its essential core, the Westlaw platform has not kept up with technological advances and its search functionality is substantially behind the search functionality offered in other products.

9.     Instead, Counterdefendants use anticompetitive sales and licensing regimes supported by a web of sham copyrights and intimidation tactics to crush potential rivals like ROSS.  As a result, despite massive advances in technology, including the advent of the Internet and artificial intelligence, not a single credible threat to Westlaw dominance has emerged.

10.     To end those anticompetitive practices, bring competition to the market, increase consumer welfare, and make the public law really and truly available to the public, ROSS asserts the following amended counterclaims.

## NATURE OF THE ACTION

11.     ROSS seeks injunctive and monetary relief for Counterdefendants' exclusionary conduct to maintain monopoly control in violation of Section 2 of the Sherman Act.

12.     ROSS seeks injunctive and monetary relief for Counterdefendants' anticompetitive practices and agreements in violation of Section 1 of the Sherman Act.

13.     ROSS also seeks injunctive and monetary relief for Counterdefendants' unfair business practices in violation of the California Unfair Competition Law.

14.     Finally, ROSS seeks declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, preliminary and permanent injunctive relief, and other necessary and proper relief, enjoining Counterdefendants from impeding ROSS's publication of any public law, and from alleging that ROSS has tortiously interfered with any contract.

## PARTIES

15.     ROSS is a corporation organized under the laws of the State of Delaware, having a principal place of business at 650 California Street, San Francisco, California 94108.

16.     Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") is a limited liability company having its principal place of business in Zug, Switzerland.

17.     West Publishing Corp. ("West") is a Minnesota corporation having its principal place of business at 610 Opperman Drive, Eagan, Minnesota 55123.

## JURISDICTION AND VENUE

18.     Based on the allegations in Counterdefendants' complaint filed in this action (herein, the "Complaint"), *see* D.I. 1, there presently exists a justiciable controversy regarding the validity, copyrightability, and ownership of certain content purportedly owned by Counterdefendants.

19.     This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, and 1338(a), and because ROSS's claims arise under the Copyright Act 17 U.S.C. § 101 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*, and the Sherman Act, 15 U.S.C. § 1 *et seq.*

20.     Counterdefendants are subject to personal jurisdiction in this Court because they have submitted to jurisdiction of the Court by filing the Complaint.

21.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and/or 1400 at least because Counterdefendants have filed the Complaint in this District.

22.     Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental subject-matter jurisdiction over ROSS's state-law claim because this claim is so related to the copyright and antitrust claims herein that it forms part of the same case or controversy.

**GENERAL ALLEGATIONS**

**ROSS & Counterdefendants' Complaint**

23.     ROSS is a modern legal search company that has designed a product to provide consumers with simplified access to the public law at affordable prices.

24.     Over years of work, ROSS developed a powerful natural language search engine based on artificial intelligence.  Based on natural language search queries, ROSS's search engine can search through a database of public law and identify legal materials responsive to the query from within the database.

25.     ROSS sold access to its AI-based legal search product for less than $100 per month, a tiny fraction of what Westlaw charges.

26.     Westlaw controls the largest, most comprehensive, and most reliable public law database, but only makes that database available to those who also license its legal search tools through the Westlaw platform.

27.     Westlaw denied ROSS access to the Westlaw platform and thus also the public law database.  According to Westlaw, then, ROSS had to access the public law through smaller, less comprehensive, and less reliable databases.

- 14 -

A187

28.     ROSS looked for alternatives and eventually obtained a degree of access to the public law through small companies called Fastcase and Casemaker.  However, unlike Westlaw, Fastcase and Casemaker makes their public law database available to those who choose not to also license their legal search tools in a bundled product, even if the database purchaser is a competitor.[3]

29.     Once ROSS's AI search engine is connected to a public law database, it can identify cases from within the database after receiving a natural language search query.  ROSS's search engine only searches through the raw public law and not extraneous materials added by other content providers, like Westlaw's key numbers, headnotes, and page numbers.  Indeed, ROSS's training process was specifically designed to be incapable of digesting information that was added to the public law by third parties like Westlaw, including key numbers, headnotes, and page numbers.

30.     ROSS contracted with legal research companies for assistance in training the AI search algorithm, including a small company called LegalEase.  ROSS directed LegalEase to provide researcher-chosen quotes of case law directly from raw judicial opinions.

31.     ROSS explicitly told LegalEase that it did not want any third-party information beyond the LegalEase researcher-chosen quotes of case law from raw judicial opinions.

32.     According to Westlaw's Complaint, LegalEase used the Westlaw platform to conduct legal research and prepare its responses for ROSS.

33.     According to Westlaw's Complaint, when LegalEase accessed the public law through Westlaw in support of the ROSS contract, LegalEase breached its license agreement with Westlaw and was liable.  Also according to Westlaw, when ROSS received and used

---

[3] Fastcase and Casemaker have very recently merged into a single company.  The merger in no way impacts Westlaw's monopoly power.

LegalEase's work product quoting judicial opinions to train its AI technology, ROSS was liable for copyright infringement and tortious interference.

34.    The Westlaw license agreement is a contract of adhesion that must be and is accepted by licensees, including most major legal service providers.  It prohibits copying and distributing significant portions of materials found on Westlaw, even if none of the material is protected under a valid copyright.  The license also prohibits using any material found on Westlaw to support a competitor.

35.    West sued the much smaller LegalEase in Federal Court in Minnesota and extracted a settlement.  Through the lawsuit, West gained access to information from LegalEase and third-party ROSS under a protective order issued by the Minnesota Court.

36.    Westlaw believes that this information supports its Complaint.

37.    One day after the West-LegalEase action was dismissed, Westlaw sued ROSS, without obtaining relief from the Minnesota protective order.

**The Westlaw Platform**

38.    In paragraph 11 of the Complaint, Westlaw describes its platform as "a comprehensive collection of legal information that is easily searchable."  Based on this description and personal knowledge[4], the Westlaw platform bundles two products: (1) a comprehensive database (or digital collection) of the public law and (2) a legal search technology and functionality product – or, for brevity's sake, legal search tools.

---

[4] To the extent that Counterdefendants claim that ROSS's legal team violates the Westlaw license when it uses ROSS's or its own personal knowledge about the Westlaw platform to prepare the Amended Answer, this is, and should be treated as, further evidence that Westlaw is acting in a way that is anticompetitive and violates the public policy goals of the copyright law.

- 16 -

A189

39.     Westlaw has built up its comprehensive collection of public law since the 19th century.  On information and belief, this database is comprehensive because it includes at least every federal and state judicial opinion, statute, and regulation in United States history.

40.     While the opinions are written by judges, the statutes are written by legislatures, and the regulations are written by government agencies, Westlaw asserts a copyright interest in the comprehensive database.

41.     Westlaw asserts that its database is reliable because it is regularly updated with new opinions, legislation, and guidance, and is also regularly audited to confirm its accuracy.

42.     In the 19th Century, and for decades afterwards, Westlaw stored its collection of public law in volumes of hard copy books that could be purchased and updated when new volumes became available.  To the extent possible given physical limitations, Westlaw sought to include all the public law in its voluminous collections.  Today, the public law collection is stored virtually, and made available through a subscription to the Westlaw platform that can be accessed through the Internet.  As the physical limitations are now gone, the digital collection is truly comprehensive.

43.     The public law database made available through Westlaw is a highly valuable product because it is comprehensive and reliable, and because it can be accessed virtually and all at once.  On information and belief, some of the public law available in Westlaw's database is not available anywhere else.  For example, on information and belief, Westlaw had at least at one time, and likely still today, exclusive agreements with governmental agencies to retrieve and ultimately use their governmental edicts for licensing purposes.

44.     Just as importantly, consumers can feel confident when looking for cases in Westlaw's digital collection.  The Westlaw database has been the standard for collecting judicial

A190

opinions, legislation, and regulations since before any currently practicing lawyer was born.  Not only do users know that Westlaw's digital collection includes all the potentially relevant public law, but they also have (in many cases) years and years of experience knowing that Westlaw's collection of public law is complete and reliable.

45.     The Westlaw platform also incorporates a legal search technology and functionality product (the "legal search tools") that can be used to search the public law.  Westlaw legal search tools purport to help users search through large amounts of public law to find desired material.  Just as stock analysts need tools to search through the enormous amount of stock data, lawyers need tools to search through the enormous amount of public law.  According to the Complaint, Westlaw refers to this product as the "Westlaw Content."

46.     According to the Complaint, the "backbone" of the Westlaw legal search tools is the West Key Number System.  The West Key Number System is a "hierarchy" reflecting core concepts in the public law and used to organize the public law.  The Complaint contends that the West Key Number System "is the result of decades of human creativity and choices."

47.     Westlaw purports to maintain copyrights in the West Key Number System, which Westlaw asserts is incredibly valuable.

48.     In reality, the West Key Number System is not copyrightable, irrelevant to most users, and out of sync with how most users perform legal search.  In reality, the West Key Number System is a relic of another time.  The West key numbers have absolutely no creative value and are not novel.  Westlaw did not decide how the law is organized.  Westlaw did not determine the elements of legal claims.  Westlaw did not come up with the structure and organization of legal principles.  These ideas and concepts derive from the common law and the

A191

generations of public legal discourse and thought that are the building blocks of our public legal practice.  Westlaw has no copyright ownership in this.

49.     According to the Complaint, the Westlaw legal search tools also include the West Headnotes and notes of decision.

50.     Westlaw purports to maintain copyrights in the West Headnotes and notes of decision, which Westlaw also asserts are incredibly valuable.  In reality, the West Headnotes and notes of decision are not useful or copyrightable.

51.     In reality, the West Headnotes and notes of decision are hierarchical lists of basic legal concepts that no one owns, ranging in sophistication from verbatim recitations of the public law to simple phrases derived from and closely tracking the verbatim public law.

52.     Westlaw cites its two best examples of allegedly copyrightable headnotes in the Complaint.  Neither example, however, includes any creativity, expression, or interpretation. The examples are headnotes 7 and 8 for the Supreme Court decision *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985).  *See* D.I. 1 ¶ 15.  Headnote 7 is a condensed restatement of analysis within the opinion.  Headnote 8 is a verbatim quote from the opinion. There are literally thousands of West Headnotes and notes of decision nearly identical to these two.  Westlaw cannot seriously assert a copyright interest in these quotes, and doing so is a blatant violation of the policy interests behind the federal copyright laws.

53.     Westlaw purported at one time to maintain copyrights in the page numbers it added to the public law.  In reality, the Westlaw page numbers are not copyrightable but Westlaw fought that in court.  The Second Circuit affirmed that Westlaw's so-called "star pagination" notations embedded into judicial opinions are not copyright-eligible.  *See Matthew Bender & Co. v. W. Publ. Co.*, 158 F.3d 693 (2d Cir. 1998).

54.     On the same day, the Second Circuit affirmed the same district court's judgment that "additions of certain factual information to the text of [judicial] opinions, including parallel or alternative citations to cases, attorney information, and data on subsequent procedural history" are also not copyright-eligible.  *See Matthew Bender & Co. v. W. Publ. Co.*, 158 F.3d 674 (2d Cir. 1998); *see id.* at 677 ("All of West's alterations to judicial opinions involve the addition and arrangement of facts, or the rearrangement of data already included in the opinions, and therefore any creativity in these elements of West's case reports lies in West's selection and arrangement of this information.  In light of accepted legal conventions and other external constraining factors, West's choices on selection and arrangement can reasonably be viewed as obvious, typical, and lacking even minimal creativity.").

55.     In other words, despite the above and contrary legal decisions, Westlaw continues to maintain that every aspect of the so-called "Westlaw Content" is copyrightable and protected under the Copyright Act.

56.     Westlaw uses its alleged copyrights to restrict access to the public law, protect its monopoly power, stifle innovation, and charge supra-competitive prices.[5]

---

[5] Westlaw's abusive business conduct actually goes very far back – to its very first decades as a corporation.  In 1882, John B. West and his brother established the West Publishing Corporation, with laudable ambitions to provide frontier lawyers with a cheap and efficient means to learn about new cases.  For almost twenty years, West built his company into the nation's leader in legal publishing, in large part because of the method for classifying cases, called the key number system, that met lawyers' expectations, joined established modes of thinking about the law and, thus, had utility.  But in 1899, West suddenly left his company.  Though the reasons are not well known, it is known that in 1908 West gave a scathing speech about the state of legal publishing, and in particular derided the West Publishing Corporation's classification system and its abusive use of unofficial case reporters.  West sought to build a better and fairer publishing company after leaving his former corporation, the Keefe-Davidson Law Book Company, but the new business was never able to get off the ground.  ROSS, not Westlaw, is trying to realize West's laudable ambitions and make the public law truly accessible.  Westlaw instead is following the footsteps of its predecessor-in-interest, and pursuing abusive and exclusionary conduct to

**ROSS' Rise & Fall**

57.     ROSS started in 2014 when two computer scientists at the University of Toronto, a world-leading AI research institute, teamed up with a lawyer to invent a legal search product that makes legal research more intuitive, efficient, and accessible. The company built its prototype without any funding, and soon thereafter began seeking investors to further develop the product and enter the market.

58.     Investors quickly grew curious. Lawyers in the United States spend $8 billion on legal research software annually, and the demand for innovative legal search tools that are cheap, simple, reliable, and efficient remains very high.

59.     Owing to the expense and perceived inefficiency in legal services, interest in innovative legal technology has reached a fever pitch. The American Bar Association recommended in 2016 to establish the Center for Legal Innovation "to reshape the delivery of, and access to, legal services for the 21st century." *See* www.americanbar.org/groups/centers_commissions/center-for-innovation/AboutUs/. Since its enactment, the Center has partnered with lawyers, technologists, and innovators to "[e]ncourage and accelerate innovations that improve the affordability, effectiveness, efficiency, and accessibility of legal services." *Id.*

60.     The Center has pursued several creative lines for technology development and remains active. For example, the "Legal Tech for Change Project" is a project to expand access to cutting-edge technology for all members of the legal community. *See* www.americanbar.org/groups/centers_commissions/center-for-innovation/programs-and-projects/.[6]

_____

preserve its market power. *See* Robert M. Jarvis, John B. West: Founder of the West Publishing Company, 50 A.M. J. Legal Hist. 1 (2008).

[6] ROSS was actually a founding member of the Legal Tech for Change Initiative. The company has taken a leadership position in expanding the market for legal search platforms to tap into unmet consumer demand and close the legal representation gap.

- 21 -

A194

61.     Similarly, the state bars for New York, California, Illinois, and Texas all have committees or subsections that identify and promote new technology that improves access to the public law.  As just one example, the State Bar of Texas' Computer and Technology Council has an Emerging Technology working group.  *See* sbot.org/about/committees-and-working-groups/.

62.     Corporate clients and law firms across the country have also jumped with enthusiasm at the opportunity to identify and ultimately use innovative and powerful legal search products.  Corporate legal departments have, for example, established The Corporate Legal Operations Consortium ("CLOC") as a global community of experts focused on redefining the delivery of legal services and the business of law.  Law firms have also, for example, established technology committees to identify and evaluate new legal software to use for litigation, corporate, and regulatory matters.  These are just a few of the many developments that evidence growing demand for greater choice and innovation in products that support legal research.

63.     Moreover, these initiatives are not just passion projects.  The market for legal services is in desperate demand for better technology.  Since the Great Recession, law firms have been forced to tighten belts and justify costs.  Whereas in 2008 law firms recovered over 80% of legal research costs from clients, in 2020 they recovered less than 30%.  And over the same period of time, the percentage of law firms that have moved to relying on a single legal search product has increased from around 10% to over 50%.  Both trends are expected to continue.

64.     Access to adequate legal representation is also seriously deficient because the cost of the law is so high.  While Americans with the greatest ability to pay for legal services have options, Americans that have less ability to pay are substantially foreclosed from professional legal services.  These Americans have no less of a need for effective legal representation, but cannot pay the high costs.  A more competitive market for legal research tools would help to

- 22 -

A195

grow the market for affordable legal services, tap into unmet consumer demand, and significantly close the legal representation gap.

65.     Given the widespread interest in and need for a better, cheaper, and more efficient way to do legal research and ROSS's innovative AI-based approach to legal search, ROSS was offered an opportunity to present to the prestigious start-up incubator, Y Combinator.

66.     After the initial presentation, Y Combinator's leadership was very interested. They saw how ROSS's product could tap into the substantial demand for greater choice and flexibility in legal research tools – and the opportunity to invest in a product that makes legal research simple and intuitive was hard to ignore.  They also understood that a quality AI-based natural language search engine could overcome the training-based switching costs that protect Westlaw's market dominance. However, while they saw the market potential, they also understood the risk that Westlaw would move to protect its strangle grip on the market.

67.     Y Combinator ultimately invested in ROSS.   They recognized that the concentrated market for legal search products means unmet demand and inefficiencies in the legal services community.   And they believed in the extraordinarily valuable and disruptive potential of ROSS's product.   ROSS primarily used the significant financial investment to develop its AI technology for the legal search engine.

68.     As ROSS approached customers, there was widespread support for the company's innovative, AI-based legal search product, and equally strong recognition that such technology could make legal research easier, cheaper, and more accessible.  ROSS received similar praise from the media and major bar associations across the country as well – many hoping and predicting that ROSS would be on the leading-edge of significant market change for the better.

- 23 -

A196

69.     But then customers asked what digital public law collection was connected to the legal search engine.  And this proved to be a serious problem.  ROSS knew that it could not obtain access to Westlaw's database, despite its significant willingness to pay for that product. Westlaw has never offered to license its database separate from its search tools and, in any event, Westlaw had denied ROSS access to the platform as well.

70.     Moreover, there was no practical or reliable way for ROSS to obtain a digital collection of public law on its own.  There are no APIs for public law and no downloadable files to obtain large collections of the public law.  And to this day, government agencies do not generally offer their public law in a downloadable format for free or at market cost.  On information and belief, this is due, in part, to Westlaw having exclusive contracts with government agencies to be the exclusive provider of primary law in a digital format.

71.     So, ROSS instead built its public law database through other sources.  It purchased some cases from Casemaker, and other public law from Fastcase, starting only in bankruptcy, but steadily expanding out to intellectual property law, and labor/employment law as well.  The hope was that ROSS could first build interest from subject-matter-specific legal practitioners, and then with the initial wave of users grow its product until it could offer comprehensive access to the public law.  Given the widespread interest in better and cheaper legal research options, and ROSS's innovative technology, the company did have some success through this practice.  ROSS was able, for example, to secure a license with a large national labor/employment firm.

72.     But ultimately, the spliced-and-put-it-back-together approach to building its public law database just was not adequate.  Even after ROSS made a large investment to partner with Fastcase and fill the gaps in its digital collection, customers were still not convinced.

A197

73.     There was no doubt that ROSS's search engine was incredibly valuable.  The problem instead was that the database connected to the search engine lacked what the customer needed.  For example, some customers voiced concerns that a substitute database might not be sufficiently comprehensive.   Without access to Westlaw's database, they might miss an important older case or an unpublished opinion that would give the opposing counsel an advantage.  Or there might be a new decision that has not been added to the database yet.  Customers also feared relying on a database that was not viewed in the legal community as reliable and the well-known standard.

74.     These customers instead licensed Westlaw's legal search product solely because it includes Westlaw's well-known digital public law collection.  They acknowledged that ROSS's search engine is better than Westlaw's legal search tools, and some even indicated that combining ROSS's search engine with Westlaw's database would produce a better platform than anything available in the market.  But these customers, ultimately, were reluctantly willing to use Westlaw's ineffective legal search tools if it meant access to the high-quality database.

75.     ROSS faced this problem everywhere – from solo practitioners to full-service big law firms.  To many of these customers, it was not just about the fact that the database connected to ROSS's search engine had less public law, but also the fear of accessing and relying on a newly created digital public law collection.  These customers had confidence that Westlaw's database would have the materials they needed through years of using the database and seeing colleagues and classmates use it as well.  A new digital public law collection, pulled together by smaller and unknown companies, was too great a risk to bear.

76.     And given this concern, customers would always fall back on Westlaw.  They needed to license the Westlaw platform because that is the only way to access Westlaw's

database, and they needed to access Westlaw's database.  Even though they did not want to purchase Westlaw's legal search tools as well, they were forced to purchase them, as they had no way to access Westlaw's database without them.  And having already being forced to pay for the Westlaw legal search tools through licensing the Westlaw platform, these customers decided that it just did not make sense to license the ROSS product or any other alternative legal search product as well.  By making customers take the Westlaw legal search with its database, then, Westlaw keeps other legal search options out of the market.

**The Relevant Markets**

77.    There is a relevant market for legal search platform products ("legal search platforms").  A legal search platform combines a legal search functionality product with a database of public law.  The relevant geographic area is the United States.

78.    For some customers, there is currently no substitute for a legal search platform. These customers license legal search products to practice law or for educational purposes.  For these customers, if the database is not connected to a legal search tool, then it holds no value. There is too much public law to efficiently and effectively identify the relevant material without search functionality.   These customers prefer the convenience and reliability of a bundled platform product.

79.    For other customers, there is a growing interest in unbundled search products, or other flexible options for digital legal research.   This nascent demand includes customers like the ABA, state bars across the country, and major law firms, which have a desire to develop new technologies that can lower costs, improve efficiency, add greater flexibility, and tap into substantial unmet demand.  For these customers, legal search tools could be a valuable product

as long as the technology exists to allow the consumer to combine the tools with a public law database.

80.      Consequently, there are relevant markets for public law database products and legal search technologies in the United States.  Customers in these markets include both end-users like law firms, intermediate buyers like bar associations that seek to expand access to the law, and intermediate buyers like ROSS that need access to a database to develop, test and market their platform products.

81.      In the market for legal search platforms, Westlaw and ROSS are competitors.

**Monopoly Power**

82.      Westlaw has both market and monopoly power in the market for legal search platforms.

83.      In a 2020 trade survey, 83% of responding United States law firms reported having a Westlaw license.  Among AmLaw 100 firms, which account for well over 80% of legal revenue in the United States, this license-share rises to 95%.

84.      The extraordinarily strong license-share is also likely to maintain over time.  Only 1% of responding law firms reported that they are "extremely likely" to eliminate their Westlaw license once the contract expires, and only 4% more responded that they are "moderately likely" to do so.  Given that the share of law firms only using one legal search product has increased five-fold in the last decade, and given that this trend is predicted to continue, Westlaw can confidently expect that it will continue to be licensed by nearly every law firm across the country for years to come, even while those firms discard alternative products.

85.      Westlaw also accounts for the majority of legal information spending among U.S. law firms, and well more than double the closest rival.  These ratios have been the same since at

A200

least 2018, and also remain stable when law firms project three years into the future.  The survey also reports that Westlaw is considered "essential" by at least 43% of respondents.

86.    A 2020 trade report similarly states that Westlaw is the platform most often used by small, midsize, and big law firms, and that this dominant position has been stable since the earliest date where data is available.  The report also indicates that Westlaw has market dominance within law schools, where students are trained on how to use the platform.

87.    Westlaw's control over licenses and revenue has been stable despite consistently requiring customers to pay significantly higher prices than any of its rivals.  Westlaw charges AmLaw 100 law firms millions of dollars a year.  Each search on the platform for a mid-size or big law firm costs up to $172, which is almost double the cost-per-search for its closest rival. The price difference quickly expands as the number of lawyers at the firm, and the number of searches each lawyer completes, increases.  Moreover, this Westlaw price represents a 20% increase compared to what Westlaw charged in 2020.  Westlaw has been steadily increasing its prices even while the costs of cloud computing and storage have steadily fallen.

88.    The difference is present amongst small firms as well. Westlaw charges solo practitioners that accept a three-year subscription plan $396 per month, with 5% annual price increases, over twice the amount that the closest rival charges under a similar three-year plan.

89.    Given that the United States legal information market is $8 billion per year, Westlaw is reaping billions in revenue due to their monopoly position.

90.    Westlaw's power in the legal search platform market is protected by substantial barriers to entry and expansion.  Importantly, Westlaw's monopoly in legal search is protected by significant lock-in and high switching costs, network effects, and differential pricing practices for separate consumer bases.

91.     Westlaw offers its platform and training support to those entering the legal market like law students for free to "get them hooked."  Westlaw also expends significant resources to provide training and other support to licensees.  Once users have expended the energy and resources to build the skills to use a specific platform, it is highly unlikely that those users will make the choice to switch to another.  Indeed, this is one reason why it's so common to hear a lawyer say "I use Westlaw" and who has almost no experience with another platform.  Law schools hold classes where students learn how to use Westlaw because the platform has become a seeming prerequisite for every law job.

92.     Westlaw's dominant market position has also seeped into the judiciary.  The Local Rules for many courts (including this one) expressly refer to Westlaw when stating how to cite to cases.

93.     Westlaw's differential pricing for separate consumer bases facilitates the lock-in. Westlaw offers different prices for access to the same or substantially similar material.  Most notably, on information and belief, Westlaw licenses the platform to law schools and governments essentially for free, while Westlaw licenses the platform to large law firms on a very expensive pay-per-search basis.

94.     And network effects amplify the switching costs.  As more people use a particular legal search platform, its value to existing participants rises, incentivizing more to join.  The study and practice of law is collaborative.  Identifying and understanding the right cases or statutes to apply to a particular fact pattern is a complex task.  Often, the best way to figure out a problem is to work with others, which includes providing advice and suggestions on materials to search and how to complete a search.  These collaborative processes are made easier when the team members are using the same platform for research.  For example, it is easier to help a

colleague, co-clerk, or classmate find the right case when you know the search terms that work and have experience with the search tools.

95.    Together, these characteristics substantially increase the barriers to entry and expansion for actual and potential rivals in legal search platforms and protect Westlaw's market position.

96.    Westlaw also has significant and durable market and monopoly power in the market for public law database products.

97.    No other available public law database product is as comprehensive as Westlaw's product.  Westlaw can guarantee that its database has every judicial opinion, every statute, and every regulation that has ever been published, unlike anyone else.

98.    In addition, no other available public law database product is as reliable.  Westlaw has effective mechanisms in place that are not available to other competitors to ensure that all new public law is quickly added to its database, and to ensure that mistakes in the database are efficiently identified and corrected.

99.    Westlaw's database power is also protected by the Westlaw brand.  Consumers know that Westlaw has been building its public law collection for over one hundred years, and that it is comprehensive and reliable.  Consumers thus also know that if they pursue a legal research question for long enough – despite the fact that the research is probably taking longer than is needed because the legal search tools are just not that good – they eventually can find the right case.  This level of reassurance is unique to Westlaw.  In an industry where legal research can be the difference between keeping or losing a client, winning or losing a case, or even being sanctioned for failure to uphold professional responsibilities or not – people feel compelled to go with what everyone has used before (*i.e.*, Westlaw).

A203

100.    This level of reassurance is also extraordinarily powerful, and only Westlaw can offer it.

**The Exclusionary Conduct**

101.    Westlaw has not maintained its monopoly power in the market for legal search platforms by legitimately building on its historical advantage through product innovation and investment.  Instead, Westlaw has engaged in an intentional anticompetitive and exclusionary course of conduct to enhance entry barriers and raise costs to rivals.  This course of conduct has reduced consumer choice and competition and stifled innovation – depriving the public of efficient, convenient, and affordable access to the public law.

102.    Westlaw uses restrictive licensing conditions to foreclose rivals from access to the relevant markets.  Westlaw's exclusionary conduct is grounded in its anticompetitive business model, which only provides customers with access to its valuable database product through the integrated platform. This business model is akin to a tying scheme that raises entry barriers in the relevant markets and allows Westlaw to monopolize the distribution of public law.

103.    This restrictive condition is drafted into section 1(a) of the "Research Subscriber Agreement" (herein, the "Agreement"), which Westlaw states in the Complaint all platform users must follow.[7]  The Agreement is a contract of adhesion, and it defines "Data" to include "all information and representations of information, including but not limited to, graphical representations, and other content made available to [users] through the Product."

---

[7] Counterdefendants appended the Research Subscriber Agreement to their Brief in Opposition to ROSS's Motion to Dismiss the Complaint.  *See* D.I.s. 16, 16-1.  The Research Subscriber Agreement did not accompany the Complaint.

- 31 -

A204

104.   Moreover, on information and belief, Westlaw has never provided consumers with an option to only license the public law database, or to only license the legal search tools, and does not plan to ever provide such an option.

105.   Due to this licensing condition, customers that seek access to Westlaw's highly valuable public law database are forced to also license the significantly less valuable Westlaw legal search tools.   It is not possible to only license one and not the other.   Customers that strongly prefer the better legal search tools that competitors offer are forced to buy Westlaw's ineffective legal search tools to get access to Westlaw's database.   Given the significant cost to license Westlaw's platform, these customers are unwilling to spend on yet another product.

106.   These restrictive licensing conditions stifle innovation as well.   But-for Westlaw's refusal to separately license its digital public law collection, new companies would find ways to incorporate Westlaw's database into their products, or build technology that allows their search engines to be compatible with Westlaw's database.   The refusal thus seriously harms consumer welfare both by forcing customers to purchase products they do not want, as well as raising the price and reducing output in the relevant markets for legal search products.

107.   Westlaw also uses restrictive licensing conditions to exclude rivals from valuable research and development opportunities.   Westlaw blocks rivals from getting anywhere close to its Westlaw platform and the digital collection therein.   Westlaw admits this in paragraph 28 of the Complaint when it remarks that even if ROSS sought to license the Westlaw platform, Westlaw "would not [] grant" ROSS "access to Westlaw" and its "vast amounts of legal content."   This exclusion is also drafted into the Agreement's restrictive terms about how users may use, store, and disseminate material found on the platform.   Westlaw states this succinctly in

- 32 -

A205

paragraph 19 of the Complaint, which sums up these terms of the Agreement as together "expressly prohibit[ing] [licensees] from using [the platform] to create a competitive product."

108.    Due to these licensing conditions, rivals are not allowed to license Westlaw, and are also not allowed to contract with Westlaw platform licensees to perform legitimate business activities, including to develop or test their own products.  Westlaw denies rivals any path for access even if those rivals are willing to pay Westlaw's commercial rates for access.  This behavior has no procompetitive justification.  This exclusionary conduct reduces entry from high-quality products, deters legitimate business activities, and depresses the competitive pressure to innovate.  Though we have seen limited entry into the relevant markets from firms like Fastcase, Casemaker, and Casetext, these firms have struggled to gain traction or to constrain Westlaw's monopoly.[8]

109.    The general market impact of these restrictive conditions is just as severe. Indeed, a licensing agreement that "expressly prohibit[s] [licensees] from using [the platform] to create a competitive product" has the effect of prohibiting huge swaths of competitive activity in the legal business profession.  Practicing lawyers violate the Agreement when they help incorporate, finance, and defend through litigation market competitors; corporate counsel violate the Agreement when they rely on Westlaw to build state-surveys that include information already on the platform; law professors violate the Agreement when they rely on Westlaw to prepare material for an upcoming casebook.

110.    Westlaw's licensing conditions also illegitimately expose rivals to extraordinarily high professional and reputational risk.  The government edicts and public law database are so

---

[8] Due to advancements in information digitalization, it is curious – and, indeed, astonishing – that the legal industry is one of the last remaining spaces where consumers need to pay for access to information.

severely co-mingled with the Westlaw legal search tools that it is impossible for a licensee to use Westlaw materials in legitimate ways without also risking a copyright lawsuit. The key numbers and headnotes cannot be separated from the government edicts either when viewed on the platform or printed. When viewing or printing the government edicts, the key numbers and headnotes are only a small part of the overall content and, in that context, are superfluous and not reproduced or used in any manner that would impact demand for key numbers or headnotes. Yet, nonetheless, Westlaw leverages the key numbers and headnotes to wrongfully and unfairly extend its alleged copyrights in those materials to control the unprotectable government edicts. Westlaw makes it impossible to separate the public law from Westlaw add-ons, even when the user does not want the add-ons. And the design and layout of Westlaw creates material confusion and uncertainty about what is a government edict and what is not. Upon information and belief, this is by design, in order to provide Westlaw practical control over the full content of the public law, despite the fact that the public law is not owned by Westlaw and Westlaw has no right to control it. Given these licensing and technical conditions, it is not difficult for Westlaw to find a way to sue its rivals for copyright infringement. And in fact, on information and belief, Westlaw has a long practice of aggressively pursuing such claims.

111.   Importantly, though, Westlaw is not advancing a legitimate interest in intellectual property rights through such filings. Instead, these lawsuits are a complete sham, brought to police the exclusionary platform access policies. Westlaw knows that its copyright assertions and claims are objectively baseless, as there is no dispute that government edicts and a comprehensive database are not copyright-eligible. It pursues these claims to force rivals into unnecessary, expensive legal fights solely to raise entry barriers, particularly to destroy nascent rivals before they can gain a toehold in the relevant markets.

112.    This is exactly what happened to ROSS.    ROSS was beginning to build an enthusiastic user base in 2019 and become a market competitor.  The company had just put a significant investment into building its spliced-and-put-back-together digital public law collection, and was receiving enthusiasm from the media and consumers fed up with Westlaw's high prices and low-quality search tools.

113.    It was only a few months thereafter that Westlaw pounced.  In a sense, Westlaw's anticompetitive course of conduct has been successful.  To its own benefit, but everyone else's loss.

114.    There is no procompetitive justification for any of Westlaw's exclusionary acts. The only justifications for Westlaw's conduct are to maintain its monopoly control and to restrain trade.  As a result, consumer welfare is significantly harmed.  And just as importantly, access to justice is substantially denied.

115.    ROSS was ultimately forced to exit the market, becoming the latest victim of Westlaw's anticompetitive practices.  Its unfortunate experience illustrates how Westlaw uses exclusionary tactics to harm nascent rivals, deter investment and entry, and protect its market position.

## COUNT I
### (Declaratory Judgment of No Valid Copyrights in the Westlaw Content)

116.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 115 above.

117.    In its Complaint, Counterdefendants allege, *inter alia*, that ROSS directly and indirectly infringes the "Westlaw Content" by reproducing and creating a creative work based on Counterdefendants' content.

- 35 -

A208

118.    It is well established in American law that judicial opinions and federal and state laws, including administrative rules and regulations, are not copyrightable, and must remain public as a matter of due process. *See Wheaton v. Peters*, 33 U.S. (8 Pet.) 591 (1834); *Banks v. Manchester*, 128 U.S. 244 (1888); *Davidson v. Wheelock*, 27 F. 61 (C.C.D. Minn. 1866) (holding publisher cannot copyright state statutes, even if state purports to give exclusive publishing rights); *Howell v. Miller*, 91 F. 129 (6th Cir. 1898) ("no one can obtain the exclusive right to publish the laws of a state") (Harlan, J., sitting by designation); *Nash v. Lathrop*, 142 Mass. 29, 6 N.E. 559 (Mass. 1886) ("Every citizen is presumed to know the law thus declared, and it needs no argument to show that justice requires that all should have free access to the opinions, and that it is against sound public policy to prevent this, or to suppress and keep from the earliest knowledge of the public the statutes or the decisions and opinions of the justices."). *See generally* L. Ray Patterson & Craig Joyce, Monopolizing the Law: The Scope of Copyright Protection for Law Reports and Statutory Compilations, 36 UCLA L. Rev. 719 (1989), and cases cited therein.

119.    Indeed, "[a]s a matter of longstanding public policy, the U.S. Copyright Office will not register a government edict that has been issued by any state, local, or territorial government, including legislative enactments, judicial decisions, administrative rulings, public ordinances, or similar types of official legal materials." Compendium of U.S. Copyright Office Practices, Third Edition, Sec. 313.6(C)(2).

120.    ROSS is informed and believes, and on that basis alleges, that Counterdefendants have not contributed any original or creative authorship to the "Westlaw Content."  17 U.S.C. § 102(b); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991).  The judicial opinions

A209

and federal and state laws, including administrative rules and regulations, are written by government officials.

121.    ROSS is informed and believes, and on that basis alleges, that Counterdefendants' key number system is a method of operation. *See* 17 U.S.C. § 102(b); *Baker v. Selden*, 101 U.S. 99, 103 (1879).

122.    In view of the foregoing, Counterdefendants have no legal rights, in copyright or contract, exclusive or otherwise, to restrict access to or publication of the judicial opinions, notes on decisions, headnotes, federal and state laws, including administrative rules and regulations, or any aspect of the Westlaw Content.

123.    Thus, ROSS seeks declaratory judgment that Counterdefendants have no basis from which to prohibit ROSS from copyright, reproducing, or otherwise creating derivative works in the judicial opinions, notes on decisions, headnotes, federal and state laws, including administrative rules and regulations, or any aspect of the Westlaw Content, in its subscription legal research service.

124.    Accordingly, and as evidenced by the Complaint demanding ROSS cease reproduction, publication or any other use of certain content, an actual justiciable controversy exists as to the parties' respective rights in connection with judicial opinions, and with the laws, rules, and regulations of any other State or the Federal Government, and the Westlaw Content, as to which Counterdefendants now claim or might hereafter claim any exclusive right, including the rights to use, license, publish, and distribute such laws, rules, and regulations.

125.    To resolve the uncertainty raised by the Counterdefendants, and to afford ROSS relief from the uncertainty and controversy that the Counterdefendants' assertions have precipitated, ROSS seeks a declaratory judgment that Counterdefendants have no protectable

- 37 -

A210

exclusive rights in the judicial opinions, notes on decisions, headnotes, federal and state laws, including administrative rules and regulations, or any aspect of the Westlaw Content, in either contract or copyright.

## COUNT II
### (Declaratory Judgment of Non-Infringement)

126.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 125 above.

127.    ROSS's use of LegalEase researcher-chosen quotes of case law directly from raw judicial opinions does not infringe any copyrights that Counterdefendants claim to have in any "Westlaw Content," including because the judicial opinions and direct excerpts thereof are not entitled to copyright protection under the Copyright Act (17 U.S.C. § 101 *et. seq.*), government edicts doctrine, and the First Amendment of the United States Constitution.

128.    There is no basis upon which Counterdefendants can allege copying of copyrighted material in the "Westlaw Content," or any other act of infringement encompassed by the Copyright Act.

129.    There is no basis upon which Counterdefendants can allege indirect copyright infringement of copyrighted material in the "Westlaw Content," whether by inducing infringement, contributing to infringement or any other theory of indirect infringement encompassed by the Copyright Act.

130.    As evidenced by the allegations in the Complaint and in these Counterclaims, there is now an actual, substantial, and continuing justiciable controversy between ROSS and Counterdefendants with respect to the alleged infringement of any valid copyrights in the Westlaw Content.

A211

131.   To resolve the uncertainty raised by the Counterdefendants, and to afford ROSS relief from the uncertainty and controversy that the Counterdefendants' assertions have precipitated, ROSS seeks a declaratory judgment that ROSS has not infringed, directly or indirectly, upon any of the Counterdefendants alleged rights in the Westlaw Content.

<u>**COUNT III**</u>
<u>**(Declaratory Judgment of Fair Use)**</u>

132.   ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 131 above.

133.   ROSS's use of LegalEase researcher-chosen quotes of case law directly from raw judicial opinions constitutes a fair use under 17 U.S.C. § 107.

134.   To the extent Counterdefendants can allege copying of copyrighted material in the "Westlaw Content," or any other act of infringement encompassed by the Copyright Act, such constitutes a fair use under 17 U.S.C. § 107.

135.   There is no basis upon which Counterdefendants can establish that any alleged act of infringement is not barred by the doctrine of fair use pursuant to 17 U.S.C. § 107, in view of the nature of the works asserted by Counterdefendants and covered by the asserted copyrights, the amount (if any) and substantiality of the portions of such works used in relation to the works as a whole, the purpose and character of any use thereof, and the effect, if any, of such use on the potential market for the works.

136.   As evidenced by the allegations in the Complaint and in these Counterclaims, there is now an actual, substantial, and continuing justiciable controversy between ROSS and Counterdefendants with respect to the alleged infringement of any valid copyrights in the Westlaw Content.

- 39 -

A212

137.    To resolve the uncertainty raised by the Counterdefendants, and to afford ROSS relief from the uncertainty and controversy that the Counterdefendants' assertions have precipitated, ROSS seeks a declaratory judgment that any allegedly infringing act by ROSS or LegalEase constitutes fair use and, therefore, does not constitute direct or indirect infringement.

## COUNT IV
### (Declaratory Judgment of Copyright Misuse)

138.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 137 above.

139.    Copyright protection exists "to promote the Progress of Science and the useful Arts."

140.    Copyrights should not be enforced when such enforcement does not fulfill the Constitutional purpose of copyright protection.

141.    Counterdefendants have utilized the Westlaw Content and the asserted copyrights in the Westlaw Content in an anticompetitive, wrongful, unfair and exclusionary manner.

142.    The key numbers and headnotes cannot be separated from the government edicts either when viewed on the platform or printed.  In this way, and through their unfair licensing practices, Counterdefendants leverage the key numbers and headnotes of the Westlaw Content to wrongfully and unfairly extend their alleged copyrights in those materials to control the unprotectable government edicts.

143.    Counterdefendants' use of the Westlaw Content and the asserted copyrights in the Westlaw Content does not comport with the Constitutional purposes of copyright protection.

144.    As evidenced by the allegations in the Complaint and in these Counterclaims, there is now an actual, substantial, and continuing justiciable controversy between ROSS and

Counterdefendants with respect to the alleged infringement of any valid copyrights in the Westlaw Content.

145.    To resolve the uncertainty raised by the Counterdefendants, and to afford ROSS relief from the uncertainty and controversy that the Counterdefendants' assertions have precipitated, ROSS seeks a declaratory judgment that Counterdefendants' assertion of and practices regarding the Westlaw Content and the asserted copyrights in the Westlaw Content constitute copyright misuse.

146.    As a result of Counterdefendants' misuse of their copyrights, Counterdefendants' copyrights should be invalidated, and ROSS is entitled to appropriate attorneys' fees and costs.

### COUNT V
### (Declaratory Judgment of No Tortious Interference with Contract)

147.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 146 above.

148.    As evidenced by the allegations in the Complaint and in these Amended Counterclaims, there is an actual and ongoing controversy between ROSS and Counterdefendants as to whether ROSS tortiously interfered with LegalEase's contract with Counterdefendants.

149.    Counterdefendants' claim requires a showing that LegalEase had a contract with Counterdefendants, that ROSS knew of the existence of this contract, that ROSS intentionally instructed LegalEase to breach the contract without justification, that Counterdefendants were harmed, and that ROSS's conduct was a substantial factor in Counterdefendants' harm.

150.    ROSS did not direct or in any way encourage LegalEase to breach any third-party contract, including without limitation LegalEase's contract with Counterdefendants.  ROSS

- 41 -

A214

further did not direct or control LegalEase conduct in connection with researching and obtaining raw judicial opinions.

151.    For these reasons, ROSS maintains that it did not tortiously interfere with any contract between LegalEase and Counterdefendants.

152.    To resolve the uncertainty raised by the Counterdefendants, and to afford ROSS relief from the uncertainty and controversy that the Counterdefendants' assertions have precipitated, ROSS seeks a declaratory judgement that ROSS did not tortiously interfere with Counterdefendants' contract with LegalEase.

<u>**COUNT VI**</u>
**(Sherman Act § 2:  Unlawful Monopoly Maintenance in the**
<u>**Legal Search Platforms Market)**</u>

153.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 147 above.

154.    Counterdefendants' conduct violates Section 2 of the Sherman Act, which prohibits the "monopoliz[ation of] any part of the trade or commerce among the several States, or with foreign nations."  15 U.S.C. § 2.

155.    The market for legal search platforms is a valid antitrust market.

156.    Counterdefendants hold monopoly power in this market.

157.    Counterdefendants unlawfully maintain their monopoly power in this market through the exclusionary acts described herein.  These exclusionary acts serve no legitimate or procompetitive purpose that could justify their anticompetitive effects.

158.    Counterdefendants' conduct affects a substantial volume of interstate commerce.

159.    Counterdefendants' conduct has substantial anticompetitive effects, including increased prices and costs, lower output, and reduced innovation and quality of product options.

160.    As a nascent market competitor, ROSS has been harmed by Counterdefendants' anticompetitive conduct in a manner that the antitrust laws were intended to prevent.  ROSS has suffered and continues to suffer harm and irreparable injury, and such harm and injury will not abate until an injunction ending Counterdefendants' anticompetitive conduct issues.

161.    To prevent these ongoing harms, the Court should enjoin the anticompetitive conduct complained of herein, and should award ROSS monetary damages.

### COUNT VII
### (Sherman Act § 1:  Unreasonable Restraint of Trade in the
### Legal Search Platforms Market)

162.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 161 above.

163.    Counterdefendants' conduct violates Section 1 of the Sherman Act, which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations."  15 U.S.C. § 1.

164.    The market for legal search platforms is a valid antitrust market.

165.    Counterdefendants' unlawfully restrain trade in this market through the anticompetitive acts described herein.  These anticompetitive acts serve no legitimate or procompetitive purpose that could justify their anticompetitive effects.

166.    Counterdefendants' conduct and unlawful contractual restraints affect a substantial volume of interstate commerce.

167.    Counterdefendants' conduct has substantial anticompetitive effects, including increased prices and costs, lower output, reduced innovation, and reduced quality of product options.

168.    As a nascent market competitor, ROSS has been harmed by Counterdefendants' unlawful contractual restraints in a manner that the antitrust laws were intended to prevent.

- 43 -

A216

ROSS has suffered and continues to suffer harm and irreparable injury, and such harm and injury will not abate until an injunction ending Counterdefendants' anticompetitive restraints issues.

169.    To prevent these ongoing harms, the Court should enjoin the anticompetitive conduct complained of herein, and should award ROSS monetary damages.

### COUNT VIII
### (California Unfair Competition Law)

170.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 169 above.

171.    Counterdefendants and ROSS both pursue substantial volumes of interstate commerce as well as commerce within the State of California.

172.    Counterdefendants' actions described herein constitute unlawful, unfair, or fraudulent acts or practices in the conduct of business, in violation of California's Business and Professions Code Section 17200 et seq., including actions that are forbidden by other laws.

173.    Counterdefendants' conduct is unlawful, unfair, or fraudulent because it is in violation of Sections 1 and 2 of the Sherman Act, and also in violation of the policy or spirit of the Sherman Act.

174.    Counterdefendants' conduct is unlawful, unfair, or fraudulent because it is in violation of the Copyright Act, and also in violation of the policy or spirit of the Copyright Act.

175.    As a result of Defendants' various acts, ROSS has been harmed and has lost money and property in the form of, among other things, costs to defend itself against the Complaint, costs to bring these counterclaims, and costs to survive in the market in spite of the unfair market conditions.

A217

## COUNT IX
### (Delaware Common Law Unfair Competition)

176.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 175 above.

177.    As established by the facts pled *supra*, ROSS had a business expectancy to sell its legal search platform product in the market, having received encouragement in the industry and indications from customers that they would purchase access to the ROSS platform once it was tied to a reliable database.

178.    As discussed *supra*, Westlaw took unfair business actions to prevent ROSS from legitimately earning revenue in the relevant market.  These acts were taken with the intent to cause competitive harm and, in certain cases, disparage ROSS.

179.    But for Westlaw's unfair business actions, ROSS would have made sales of its product in the relevant market.

180.    Counterdefendants' actions described herein constitute unlawful, unfair, or fraudulent acts or practices in the conduct of business, in violation of common law unfair competition laws.

## RELIEF REQUESTED

WHEREFORE, ROSS respectfully requests the following relief:

A.    The entry of judgment on the Complaint in favor of ROSS, and against Counterdefendants, with Counterdefendants not being awarded any relief of any kind;

B.    The entry of judgment declaring that Counterdefendants do not have valid copyrights in the "Westlaw Content";

C.    The entry of judgment declaring that ROSS has not infringed, directly or indirectly, Counterdefendants' copyrights;

A218

D.      The entry of judgment declaring that any alleged use of Counterdefendants' copyrights constitutes fair use;

E.      The entry of judgment declaring that Counterdefendants have engaged in misuse of their copyrights and that Counterdefendants' copyrights are invalidated;

F.      The entry of judgment declaring that ROSS did not tortiously interfere with LegalEase's contract with West; and

G.      Enjoining Counterdefendants' acts in support of its unlawful monopoly maintenance in the market and its unreasonable restraint on trade in the market.

H.      Monetary relief, including all forms of available damages and monetary relief in equity.

I.      The entry of judgment declaring that ROSS is the prevailing party under 17 U.S.C. § 505.

J.      Appropriate attorneys' fees and costs.

K.      Such other and further relief, in law or equity, as this Court deems just and proper under the circumstances.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38.1, ROSS respectfully requests a trial by jury on Plaintiffs' Complaint and on ROSS's Amended Counterclaims for all issues so triable.

A219

                                        Respectfully submitted,

                                        POTTER ANDERSON & CORROON LLP

OF COUNSEL:
                                        By:   /s/ Stephanie E. O'Byrne
Gabriel M. Ramsey                             David E. Moore (#3983)
Kayvan M. Ghaffari                            Stephanie E. O'Byrne (#4446)
Jacob Canter                                  Hercules Plaza, 6th Floor
CROWELL & MORING LLP                          1313 N. Market Street
3 Embarcadero Center, 26th Floor              Wilmington, DE 19801
San Francisco, CA 94111                       Tel: (302) 984-6000
Tel: (415) 986-2800                           dmoore@potteranderson.com
                                              sobyrne@potteranderson.com
Mark A. Klapow
Joshua M. Rychlinski                    *Attorneys for Defendant ROSS Intelligence,*
Lisa Kimmel                             *Inc.*
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500

Dated: January 25, 2021
7013450 / 50241

A220

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

——

(302) 658-9200

MICHAEL J. FLYNN
(302) 351-9661
mflynn@morrisnichols.com

Originally Filed:  July 15, 2022
Redacted Version Filed:  July 22, 2022

The Honorable Stephanos Bibas
United States District Court
for the District of Delaware
844 North King Street
Wilmington, DE 19801-3570

REDACTED - PUBLIC VERSION

Re:   *Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence Inc.*,
       C.A. No. 20-613 (SB)

Dear Judge Bibas:

During the course of fact discovery, Plaintiffs Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation learned previously unknown facts regarding Defendant ROSS Intelligence Inc.'s ("ROSS") unlawful copying of Plaintiffs' content and tortious interference with Plaintiffs' contracts. Plaintiffs' Complaint already alleges copyright infringement and tortious interference with contract, and Plaintiffs believe it covers these newly uncovered facts, which they also identified in response to one of ROSS's interrogatories during fact discovery. Nonetheless, out of an abundance of caution, Plaintiffs respectfully request leave to file the First Amended Complaint to make these new facts explicit.[1]

### A.    Factual Background

On March 23, 2022, Plaintiffs sought ROSS's permission to amend the Complaint to reflect these new allegations. *See* Ex. C. ROSS declined, insisting on seeing a draft of the proposed amendment first. At that point, however, Plaintiffs had not yet deposed Mr. von Simson.

After weighing the facts uncovered during Mr. von Simson's deposition, Plaintiffs drafted the proposed Amended Complaint, which they sent to ROSS on June 3, 2022, again asking whether it would oppose amendment. ROSS indicated that it would oppose but refused to meet and confer until the parties were ready to meet and confer on various discovery issues. *See* Ex. E. The parties

---

[1]     The First Amended Complaint and a redline against the original Complaint are attached to the Motion to Amend as Exhibits 1 and 2, respectively.

[2]

A221

finally met and conferred on June 24, 2022, at which point ROSS again indicated it would oppose on the basis of, vaguely, "prejudice" and "futility."  Plaintiffs thus seek leave from the Court to file the Amended Complaint.

**B.    Legal Standard**

Federal Rule of Civil Procedure 15(a) contemplates that leave to amend a party's pleadings should be freely granted.  *ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009) (explaining that the Third Circuit has "a liberal policy favoring the amendment of pleadings") (citing *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir.1990)).  Courts routinely grant motions to amend where, as here, "the proposed amendments clarify and refine Plaintiffs' existing causes of action by including factual content allegedly adduced during discovery, rather than adding new claims or parties."  *Wainwright v. City of Sharon*, No. 14-1212, 2016 WL 110015, at *2 (W.D. Pa. Jan. 11, 2016); *see CenterForce Techs., Inc. v. Austin Logistics Inc.*, No. 99-243, 2000 WL 652943, at *6 (D. Del. Mar. 10, 2000); *see also John Wiley & Sons, Inc. v. Golden*, No. 14-942, 2015 WL 716880, at *1–2 (D.N.J. Feb. 19, 2015).

Further, where a party seeks to amend a pleading after the date set forth in the scheduling order, the party must show good cause for modifying the schedule under Rule 16(b).  *ICU Med.*, 674 F. Supp. 2d at 577.  Courts routinely find good cause where, as here, the information the amending party seeks to add was not confirmed until after the deadline for amendment.  *See id.* at 578; *Roquette Freres v. SPI Pharma, Inc.*, No. 06-540, 2009 WL 1444835, at *5 (D. Del. May 21, 2009); *Wainwright*, 2016 WL 110015, at *4.

**C.    Argument**

Plaintiffs have shown good cause because the factual allegations forming the basis for the amendment were not known until after the June 3, 2021 deadline for amendment set forth in the scheduling order. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See Roquette Freres*, 2009 WL 1444835, at *6 (finding good cause where the moving party needed to take certain depositions before moving to amend).

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Ex. D.  Thus, Plaintiffs have articulated a reasonable basis for any delay in seeking to amend the Complaint.  *See Le v. City of Wilmington*, No. 08-615, 2010 WL 2754253, at *3 (D. Del. July 12, 2010) (granting motion to amend where moving party provided "colorable excuse" for delay, namely that the information underpinning the amendment was difficult to discover); *see also Evonik Degussa GmbH v. Materia Inc.*, No. 09-636, 2011 WL 13152274, at *3 (D. Del. Dec. 13, 2011) ("Plaintiff should not be penalized because it prudently waited to obtain key deposition testimony before filing its proposed amendment.").  Plaintiffs were diligent in putting ROSS on notice that Mr. von Simson's conduct was part of their claim, including through their February 7, 2022 interrogatory response, and by conferring on whether ROSS would consent to amendment.

Further, Plaintiffs easily satisfy the permissive requirements for amending the Complaint because there is no undue delay, bad faith, or dilatory motive on Plaintiffs' part, and there is no prejudice to ROSS or futility of amendment.  *ICU Med.*, 674 F. Supp. 2d at 577.  *First*, Plaintiffs have been diligent in bringing this Motion.  Courts routinely find that there is no undue delay where the motion to amend is based on information uncovered during discovery.  *See Le*, 2010

The Honorable Stephanos Bibas                                                                    Page 3
July 15, 2022

WL 2754253, at *3; *Roquette Freres*, 2009 WL 1444835, at *1–2 (granting motion to amend based on facts discovered during depositions past cut-off date for amendments).

    *Second*, to prove undue prejudice, ROSS "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered." *ICU Med.*, 674 F. Supp. 2d at 578 (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)). ROSS cannot make such a showing. Indeed, during the meet and confer on June 24, 2022, ROSS could not identify any specific prejudice resulting from this amendment. ROSS "must do more than merely claim prejudice." It must demonstrate *undue* prejudice. *See Bechtel*, 886 F.2d at 652.

[black redaction bar]

    To be clear, Plaintiffs are not asserting new or different claims. Plaintiffs' amended allegations undergird the claims already asserted in this litigation. [black redaction bar] The same legal claims (*i.e.*, copyright infringement and tortious interference with contract) remain at issue. Accordingly, Plaintiffs' proposed amendment does not create undue prejudice. *See Trueposition, Inc. v. Allen Telecom, Inc.*, No. 01-823, 2002 WL 1558531, at *2 (D. Del. July 16, 2002) ("since [the amended claims] are substantially similar to the [claims] contained in the original complaint, it would be economically beneficial to the parties to resolve all the issues in a single proceeding"). Further, Plaintiffs are not seeking additional discovery. *See Adams v. Gould Inc.*, 739 F.2d 858, 869 (3d Cir. 1984) (non-movant not prejudiced where no additional discovery is required); *Wainwright*, 2016 WL 110015 at *2 (finding no undue prejudice where plaintiffs sought "merely to utilize facts adduced during discovery").

    *Third*, Plaintiffs seek to amend for the legitimate purpose of conforming their Complaint to the evidence uncovered during discovery. *See Le*, 2010 WL 2754253, at *3-4 (finding no bad faith or prejudice where "the proposed amendment does not add new allegations but, rather, conforms the pre-existing [] pleadings to the evidence that emerged in discovery"). As a result, Plaintiffs are not acting with "bad faith or dilatory motive." *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, … undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given.").

    *Fourth*, a proposed amendment is futile only if it would not survive a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). *ICU Med.*, 674 F. Supp. 2d at 579 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d. Cir. 1997)). Here, Plaintiffs' claims for copyright infringement claim and tortious inference with contract have *already* survived ROSS's motion to dismiss. As Plaintiffs only seek to add additional facts to support Plaintiffs' existing well-pleaded Complaint, this motion is not futile. That is, the addition of facts cannot make the Amended Complaint futile. *See Burlington*, 114 F.3d at 1434 ("no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim"). For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs leave to file the proposed First Amended Complaint.

The Honorable Stephanos Bibas                                                          Page 4
July 15, 2022

Sincerely,

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)

cc:    All Counsel of Record (via electronic mail)

# EXHIBITS A-D
# REDACTED IN THEIR ENTIRETY

Case 1:20-cv-00613-SB   Document 200   Filed 07/22/22   Page 6 of 8 PageID #: 6131

# EXHIBIT E

| | |
|---|---|
| **From:** | Steinberg, Joachim <JSteinberg@crowell.com> |
| **Sent:** | Friday, June 10, 2022 3:11 PM |
| **To:** | Means, Miranda |
| **Cc:** | ROSS Lit Team; #Thomson-Ross; Flynn, Michael J.; Blumenfeld, Jack; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com |
| **Subject:** | [EXT] RE: Thomson Reuters v. ROSS - Amended Complaint |

Miranda,

ROSS does not consent to the proposed amendment to the Complaint. We are willing to meet and confer with you on the amendment, however, as we have repeatedly requested meet and confers on several issues, ████████████ ████████████████████████, we believe that the parties should schedule those final meet and confer discussions, as well as any other issues still outstanding, for the same time that we meet and confer on Plaintiffs' proposed amendment.

Kind regards,
Joachim

**Joachim B. Steinberg**
Pronouns: he/him/his
Crowell & Moring LLP
jsteinberg@crowell.com
+1.415.365.7461 direct  |  +1.917.575.6244 mobile

**From:** Means, Miranda <miranda.means@kirkland.com>
**Sent:** Friday, June 3, 2022 4:25 PM
**To:** Steinberg, Joachim <JSteinberg@crowell.com>
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Thomson Reuters v. ROSS - Amended Complaint

External Email

Dear Joachim,

████████████████████, Plaintiffs intend to amend their complaint.  Attached is a redline of the proposed amended complaint.  Please let us know if ROSS will consent to Plaintiffs' request, or provide a time when you are available to meet and confer.

Best regards,
Miranda

**Miranda Means**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116

1

A227

**T** +1 617 385 7419
**M** +1 617 320 9248

miranda.means@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

2

A228

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) | C.A. No. 20-613-SB |
| Plaintiffs/Counterdefendants, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant/Counterclaimant. | ) | |

**DEFENDANT AND COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S SECOND AMENDED ANSWER AND DEFENSES AND AMENDED COUNTERCLAIMS IN RESPONSE TO PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

### AMENDED ANSWER

Defendant ROSS Intelligence, Inc. ("ROSS") hereby responds to the Complaint filed by Plaintiffs Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West") (collectively, "Plaintiffs").

### NATURE OF THE ACTION[1]

1.      ROSS denies it illicitly and surreptitiously used a then-Westlaw licensee to acquire access to and copy Plaintiff's content, and that it is attempting to create a business or competing product by taking for itself any features of Westlaw or "Westlaw Content," as defined and alleged by Plaintiffs.  ROSS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and therefore denies them.

2.      ROSS denies the allegations in paragraph 2.

---

[1] The section headings in this Answer are provided solely for ease of reference, tracking those used in the Complaint, and do not constitute any part of ROSS's response to the allegations in the Complaint or any form of admission as to the truth of those allegations.

3.    ROSS admits West denied ROSS's direct access to Westlaw.  Except as expressly admitted, ROSS denies the allegations in Paragraph 3.

4.    ROSS denies the allegations in paragraph 4.

5.    ROSS denies the allegations in paragraph 5.

## PARTIES

6.    ROSS denies that "Westlaw Content" is subject to copyright protection. ROSS lacks knowledge or information sufficient to form a belief as to the remaining allegations, and therefore denies them.

7.    ROSS denies that West has any copyrightable creation or authorship in any "Westlaw Content." ROSS lacks knowledge or information sufficient to form a belief as to the remaining allegations, and therefore denies them.

8.    ROSS admits the allegations in paragraph 8.

## JURISDICTION AND VENUE

9.    ROSS admits that the Complaint purports to assert claims arising under the copyright laws of the United States, specially, 17 U.S.C. § 101 *et. seq.*  ROSS denies that this action arises under Delaware law.  ROSS admits that the Complaint purports that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

10.    ROSS admits that the Complaint purports that venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and 1400(a).

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

I.    **Plaintiffs and the Creativity of Westlaw**

11.    ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

- 2 -

A230

12.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

13.     ROSS admits that the "Abandoned and Lost Property" topic contains the Key Numbers "Nature and elements," "evidence and questions for jury," and "operation and effect." ROSS admits that within the "Nature and elements" Key Number are Key Numbers assigned to the legal issues and points of law "In general," "Intent," and "Acts and omissions" topics. ROSS admits that the "In general" Key Number is delineated 1k1.1, and currently contains 603 cases. Except as expressly admitted, ROSS denies the allegations in Paragraph 13.

14.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

15.     ROSS admits Westlaw contains case law, state and federal statutes, state and federal regulations, law journals, and treatises.  ROSS admits that West Headnotes describe key concepts of a case.  ROSS admits that the Plaintiffs provide an example of West Headnotes and West Key Numbers from the *Harper & Row* case.  ROSS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and therefore denies them.

16.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

17.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

18.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

19.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

A231

II.    **Plaintiffs' Valuable Intellectual Property Rights in Westlaw**

20.    ROSS denies the West Headnotes are creative.  Otherwise, ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

21.    ROSS denies the allegations in paragraph 21.

22.    ROSS admits that Exhibit A purports to contain a list of copyright registrations with the United States Copyright Office, but denies that the material registered is copyrightable subject matter.  Otherwise, ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

23.    ROSS denies that the copyrights in Westlaw are valid, and were valid and subsisting at all times affecting the matters complained of herein.  Otherwise, ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

III.    **ROSS Intelligence and Its Infringement of Westlaw**

24.    ROSS admits it was founded in 2015 and is engaged in the business providing judicial opinions to the public through legal research services.

25.    ROSS admits it began by offering research services in bankruptcy and intellectual property law and currently offers research services on case law, statutes, and regulations across all practice areas and all 50 states.

26.    ROSS admits that ROSS's users are able to search for relevant law by posing a question in natural language, as opposed to Boolean terms or key words.  ROSS admits that Paragraph 26 reflects results of a natural language search on ROSS.

27.    ROSS denies the allegations in paragraph 27.

A232

28.     ROSS admits it acquired judicial opinions to develop a legal research platform. Except as expressly admitted, ROSS denies the allegations in Paragraph 28.

29.     ROSS admits it contracted with LegalEase, a legal research and writing support services company.  Except as expressly admitted, ROSS denies the allegations in Paragraph 29.

30.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

31.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

32.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

33.     ROSS admits LegalEase provided legal analysis to ROSS.  Except as expressly admitted, ROSS denies the allegations in Paragraph 33.

34.     ROSS admits it worked with LegalEase for a period starting in October 2015. Except as expressly admitted, ROSS denies the allegations in Paragraph 34.

35.      Paragraph 35 states a legal conclusion to the extent it states, characterizes, or refers to ROSS "copied" any purported copyrighted material, to which no response is required. Otherwise, ROSS denies the allegations in Paragraph 35.

36.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

37.     ROSS denies the allegations in Paragraph 37.

38.     ROSS denies the allegations in paragraph 38.

39.     ROSS denies the allegations in Paragraph 39.

A233

## CLAIMS FOR RELIEF

### COUNT I

**Copyright Infringement (17 U.S.C. *et seq.*)**

40.     ROSS incorporates by reference its responses to each and every allegation above as if fully set forth herein.

41.     ROSS denies the allegations in Paragraph 41.

42.     ROSS denies the allegations in Paragraph 42.

43.     ROSS denies the allegations in Paragraph 43.

44.     ROSS denies the allegations in Paragraph 44.

45.     ROSS denies the allegations in Paragraph 45.

46.     ROSS denies the allegations in Paragraph 46.

47.     ROSS denies the allegations in Paragraph 47.

48.     ROSS denies the allegations in Paragraph 48.

### COUNT II

**Tortious Interference with Contract**

49.     ROSS incorporates by reference its responses to each and every allegation above as if fully set forth herein.

50.     ROSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

51.     ROSS denies the allegations in paragraph 51.

52.     ROSS admits Plaintiffs denied ROSS direct access to Westlaw.  Except as expressly admitted, ROSS denies the allegations in Paragraph 52.

53.     ROSS denies the allegations in paragraph 53.

- 6 -

**PRAYER FOR RELIEF**

ROSS denies that Plaintiffs are entitled to any relief whatsoever, specifically including the relief specified in its Prayer for Relief.

**JURY DEMAND**

ROSS admits that Plaintiffs have demanded a jury trial on all issues triable to a jury.

**DEFENSES**

ROSS sets forth its defenses below, and in doing so, ROSS does not allege or admit that it has the burden of proof and/or persuasion with respect to any of these matters, and does not assume the burden of proof and/or persuasion as to any matters to which Plaintiffs bear such a burden.  ROSS reserves its right to amend its Answer to assert other defenses as they may become known.

**FIRST DEFENSE**
**(Failure to State a Claim for Tortious Interference with Contract)**

Plaintiffs' tortious interference with contract claim fails to state a claim upon which relief can be granted.

**SECOND DEFENSE**
**(Double Recovery)**

Recovery on any alleged tortious interference by ROSS with the contract between LegalEase and Plaintiffs is barred due to the double recovery. Plaintiffs would receive, having already sued and entered in a consent judgment with LegalEase for LegalEase's alleged breach of its contract with Plaintiffs.

**THIRD DEFENSE**
**(Statute of Limitations)**

Plaintiffs' tortious interference with contract claim is barred under California's two-year statute of limitations.

A235

### FOURTH DEFENSE
**(Good Faith)**

ROSS's actions were taken in good faith, in reliance upon information provided by LegalEase's representatives, agents, and/or employees, and with a reasonable belief that such actions were legal, appropriate and necessary.  The conduct alleged to be in violation of a statute, if any such conduct occurred, was purely unintentional, and occurred, if at all, despite ROSS's reasonable and appropriate efforts to avoid any such violation.

### FIFTH DEFENSE
**(Equitable Doctrines – Consent, Waiver, Laches and Estoppel)**

Plaintiffs' tortious interference with contract claim is barred, in whole or in part, by equity and the doctrines of consent, waiver, laches, and estoppel.

### SIXTH DEFENSE
**(Tort of Another)**

Without admitting any liability and without admitting that Plaintiffs have suffered any loss or damage whatsoever, Plaintiffs tortious interference with contract claim is barred, in whole or in part, by the intervening tort of a third-party, for which ROSS is not liable.

### SEVENTH DEFENSE
**(Equitable Doctrines – No Injunction)**

Plaintiffs are not entitled to injunctive relief because any alleged injury to Plaintiffs is not immediate and irreparable, and Plaintiffs have an adequate remedy at law.

### EIGHTH DEFENSE
**(Failure to State a Claim for Copyright Infringement)**

Plaintiffs' copyright infringement claim fails to state a claim upon which relief can be granted.

A236

**NINTH DEFENSE**
**(No Copyright Infringement)**

ROSS has not infringed, does not infringe (either directly or indirectly), and is not liable for any valid copyright or copyright rights of Plaintiffs', including without limitation, any copyright rights in the works that are the subject of the asserted copyrights.

**TENTH DEFENSE**
**(Fair Use – Copyright Act)**

ROSS' alleged conduct constitutes fair use pursuant to 17 U.S.C. § 107.

**ELEVENTH DEFENSE**
**(Invalidity or Unenforceability of Copyrights)**

Plaintiffs are not entitled to recover on their purported copyright claim because one or more of Plaintiffs' copyrights are invalid and/or unenforceable, including by reason of lack of originality.

**TWELFTH DEFENSE**
**(Invalidity or Unenforceability of Copyrights)**

Plaintiff's claims are barred since critical part or portions of their alleged protected copyrights are invalid due to consisting of un-protectable idea(s) or processes.

**THIRTEENTH DEFENSE**
**(Invalidity or Unenforceability of Copyrights)**

One or more of Plaintiffs' copyrights have elements taken from the public domain upon which a copyright infringement action cannot be maintained, including under the government edicts doctrine.

**FOURTEENTH DEFENSE**
**(Doctrine of Merger)**

One or more of Plaintiffs' copyrights is barred by the doctrine of Merger.

A237

### FIFTEENTH DEFENSE
### (Doctrine of *Scenes a Faire*)

One or more of Plaintiffs' copyrights is barred by the "scenes-a-faire" doctrine.

### SIXTEENTH DEFENSE
### (Copyright Misuse)

Plaintiffs have engaged in one or more acts that have misused their copyrights including but not limited to having wrongfully attempted to extend the scope of the limited monopoly granted by the Copyright Act. Defendants reserve the right to assert one or more antitrust related claims.

### SEVENTEENTH DEFENSE
### (Innocent Infringement)

Defendant's conduct was innocent, non-infringing, and not a willful infringement of copyright.

### EIGHTEENTH DEFENSE
### (Copyright Section 117 Limitations)

This action is barred by 17 U.S.C. §117 limitations on exclusive rights.

### NINETEENTH DEFENSE
### (Lack of Ownership)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs are not the owner of one or more Copyrights at issue.

### TWENTIETH DEFENSE
### (Authorized Use, License, Consent Acquiescence)

Plaintiffs' claims are barred, in whole or in part, by license or the doctrine of implied license because Plaintiffs impliedly or explicitly, directly, or indirectly, authorized, licensed, consented to, or acquiesced to ROSS's allegedly infringing use of Plaintiffs' works.

- 10 -

A238

**TWENTY FIRST DEFENSE**
**(First Sale Doctrine)**

This action may be barred by the "first sale doctrine" because if lawfully obtained and possessed one or more of Plaintiff's copyrighted works. 17 U.S.C. §109(a).

**TWENTY SECOND DEFENSE**
**(First Amendment)**

Plaintiffs' copyright claim is barred to the extent the "Westlaw Content" are protected by the First Amendment of the U.S. Constitution.

**TWENTY THIRD DEFENSE**
**(Copyright Preemption)**

Plaintiffs' tortious interference claims are preempted or otherwise barred by 17 U.S.C. § 301.

## DEFENDANT ROSS INTELLIGENCE INC.'S AMENDED COUNTERCLAIMS

1.      This is a case about the public right of access to the rules of our democracy and Westlaw's anticompetitive tactics to keep "the public law" from most Americans and maintain its monopoly.

2.      "The public law" is the decisions of federal and state courts, the laws enacted, and the administrative guidance.  This is the material we the people reference when saying that ours is a government of laws, not of men.

3.      The right to access to the public law has been well-recognized by courts throughout the nation for hundreds of years.

4.      Nevertheless, as every judge, law clerk, professor, practicing lawyer, paralegal, law student, and other participant in the legal ecosystem knows, when it comes to accessing the public law, Westlaw is king.

- 11 -

A239

5.      Counterdefendants market and sell Westlaw, which controls over 80% of the market for legal search platform products.  Westlaw's[2] status as king of legal search has been unchallenged for more than a century.  Westlaw's control over legal search is not only enduring, it is incredibly lucrative – Counterdefendants reap billions in revenue at supra-competitive prices. As a result, most Americans have no way to credibly search the public law and are forced to rely on others to understand the rules of our democracy.

6.      Counterclaimant ROSS Intelligence Inc. ("ROSS") is a nascent competitor in the market.  ROSS built a robust and intuitive legal search engine that uses artificial intelligence and other technology with the goal of making the public law accessible to every American.  ROSS secured substantial investment to develop and launch its product. The legal technology community uniformly recognized that ROSS's product was poised to reshape the market.

7.      Ultimately – despite substantial venture capital investment, disruptive technology, and widespread enthusiasm – ROSS never really had a chance.  ROSS brings this antitrust case against Westlaw for engaging in an exclusionary and anticompetitive course of conduct to maintain its monopoly and restrain trade. This conduct both harmed ROSS and injured American consumers by depriving them of access to the public law.

8.      ROSS will show that Westlaw does not maintain its exalted status in legal search through innovation or procompetitive business practices.  To the contrary, at its essential core, the Westlaw platform has not kept up with technological advances and its search functionality is substantially behind the search functionality offered in other products.

---

[2] Counterdefendants Thomson Reuters Enterprise GmbH and West Publishing Corp. are herein referred to as "Counterdefendants" or "Westlaw."

9.      Instead, Counterdefendants use anticompetitive sales and licensing regimes supported by a web of sham copyrights and intimidation tactics to crush potential rivals like ROSS. As a result, despite massive advances in technology, including the advent of the Internet and artificial intelligence, not a single credible threat to Westlaw dominance has emerged.

10.      To end those anticompetitive practices, bring competition to the market, increase consumer welfare, and make the public law really and truly available to the public, ROSS asserts the following amended counterclaims.

## NATURE OF THE ACTION

11.      ROSS seeks injunctive and monetary relief for Counterdefendants' exclusionary conduct to maintain monopoly control in violation of Section 2 of the Sherman Act.

12.      ROSS seeks injunctive and monetary relief for Counterdefendants' anticompetitive practices and agreements in violation of Section 1 of the Sherman Act.

13.      ROSS also seeks injunctive and monetary relief for Counterdefendants' unfair business practices in violation of the California Unfair Competition Law.

14.      Finally, ROSS seeks declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, preliminary and permanent injunctive relief, and other necessary and proper relief, enjoining Counterdefendants from impeding ROSS's publication of any public law, and from alleging that ROSS has tortiously interfered with any contract.

## PARTIES

15.      ROSS is a corporation organized under the laws of the State of Delaware, having a principal place of business at 650 California Street, San Francisco, California 94108.

16.      Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") is a limited liability company having its principal place of business in Zug, Switzerland.

A241

17.     West Publishing Corp. ("West") is a Minnesota corporation having its principal place of business at 610 Opperman Drive, Eagan, Minnesota 55123.

## JURISDICTION AND VENUE

18.     Based on the allegations in Counterdefendants' complaint filed in this action (herein, the "Complaint"), *see* D.I. 1, there presently exists a justiciable controversy regarding the validity, copyrightability, and ownership of certain content purportedly owned by Counterdefendants.

19.     This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, and 1338(a), and because ROSS's claims arise under the Copyright Act 17 U.S.C. § 101 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*, and the Sherman Act, 15 U.S.C. § 1 *et seq*.

20.     Counterdefendants are subject to personal jurisdiction in this Court because they have submitted to jurisdiction of the Court by filing the Complaint.

21.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and/or 1400 at least because Counterdefendants have filed the Complaint in this District.

22.     Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental subject-matter jurisdiction over ROSS's state-law claim because this claim is so related to the copyright and antitrust claims herein that it forms part of the same case or controversy.

## GENERAL ALLEGATIONS

**ROSS & Counterdefendants' Complaint**

23.     ROSS is a modern legal search company that has designed a product to provide consumers with simplified access to the public law at affordable prices.

- 14 -

A242

24.    Over years of work, ROSS developed a powerful natural language search engine based on artificial intelligence.  Based on natural language search queries, ROSS's search engine can search through a database of public law and identify legal materials responsive to the query from within the database.

25.    ROSS sold access to its AI-based legal search product for less than $100 per month, a tiny fraction of what Westlaw charges.

26.    Westlaw controls the largest, most comprehensive, and most reliable public law database, but only makes that database available to those who also license its legal search tools through the Westlaw platform.

27.    Westlaw denied ROSS access to the Westlaw platform and thus also the public law database.  According to Westlaw, then, ROSS had to access the public law through smaller, less comprehensive, and less reliable databases.

28.    ROSS looked for alternatives and eventually obtained a degree of access to the public law through small companies called Fastcase and Casemaker.  However, unlike Westlaw, Fastcase and Casemaker makes their public law database available to those who choose not to also license their legal search tools in a bundled product, even if the database purchaser is a competitor.[3]

29.    Once ROSS's AI search engine is connected to a public law database, it can identify cases from within the database after receiving a natural language search query.  ROSS's search engine only searches through the raw public law and not extraneous materials added by other content providers, like Westlaw's key numbers, headnotes, and page numbers.  Indeed, ROSS's training process was specifically designed to be incapable of digesting information that was added

---

[3] Fastcase and Casemaker have very recently merged into a single company.  The merger in no way impacts Westlaw's monopoly power.

A243

to the public law by third parties like Westlaw, including key numbers, headnotes, and page numbers.

30.    ROSS contracted with legal research companies for assistance in training the AI search algorithm, including a small company called LegalEase.  ROSS directed LegalEase to provide researcher-chosen quotes of case law directly from raw judicial opinions.

31.    ROSS explicitly told LegalEase that it did not want any third-party information beyond the LegalEase researcher-chosen quotes of case law from raw judicial opinions.

32.    According to Westlaw's Complaint, LegalEase used the Westlaw platform to conduct legal research and prepare its responses for ROSS.

33.    According to Westlaw's Complaint, when LegalEase accessed the public law through Westlaw in support of the ROSS contract, LegalEase breached its license agreement with Westlaw and was liable.  Also according to Westlaw, when ROSS received and used LegalEase's work product quoting judicial opinions to train its AI technology, ROSS was liable for copyright infringement and tortious interference.

34.    The Westlaw license agreement is a contract of adhesion that must be and is accepted by licensees, including most major legal service providers.  It prohibits copying and distributing significant portions of materials found on Westlaw, even if none of the material is protected under a valid copyright.  The license also prohibits using any material found on Westlaw to support a competitor.

35.    West sued the much smaller LegalEase in Federal Court in Minnesota and extracted a settlement.  Through the lawsuit, West gained access to information from LegalEase and third-party ROSS under a protective order issued by the Minnesota Court.

36.    Westlaw believes that this information supports its Complaint.

A244

37.     One day after the West-LegalEase action was dismissed, Westlaw sued ROSS, without obtaining relief from the Minnesota protective order.

**The Westlaw Platform**

38.     In paragraph 11 of the Complaint, Westlaw describes its platform as "a comprehensive collection of legal information that is easily searchable." Based on this description and personal knowledge[4], the Westlaw platform bundles two products: (1) a comprehensive database (or digital collection) of the public law and (2) a legal search technology and functionality product – or, for brevity's sake, legal search tools.

39.     Westlaw has built up its comprehensive collection of public law since the 19th century. On information and belief, this database is comprehensive because it includes at least every federal and state judicial opinion, statute, and regulation in United States history.

40.     While the opinions are written by judges, the statutes are written by legislatures, and the regulations are written by government agencies, Westlaw asserts a copyright interest in the comprehensive database.

41.     Westlaw asserts that its database is reliable because it is regularly updated with new opinions, legislation, and guidance, and is also regularly audited to confirm its accuracy.

42.     In the 19th Century, and for decades afterwards, Westlaw stored its collection of public law in volumes of hard copy books that could be purchased and updated when new volumes became available. To the extent possible given physical limitations, Westlaw sought to include all the public law in its voluminous collections. Today, the public law collection is stored virtually,

---

[4] To the extent that Counterdefendants claim that ROSS's legal team violates the Westlaw license when it uses ROSS's or its own personal knowledge about the Westlaw platform to prepare the Amended Answer, this is, and should be treated as, further evidence that Westlaw is acting in a way that is anticompetitive and violates the public policy goals of the copyright law.

- 17 -

A245

and made available through a subscription to the Westlaw platform that can be accessed through
the Internet.  As the physical limitations are now gone, the digital collection is truly
comprehensive.

43.    The public law database made available through Westlaw is a highly valuable
product because it is comprehensive and reliable, and because it can be accessed virtually and all
at once.  On information and belief, some of the public law available in Westlaw's database is not
available anywhere else.  For example, on information and belief, Westlaw had at least at one time,
and likely still today, exclusive agreements with governmental agencies to retrieve and ultimately
use their governmental edicts for licensing purposes.

44.    Just as importantly, consumers can feel confident when looking for cases in
Westlaw's digital collection.  The Westlaw database has been the standard for collecting judicial
opinions, legislation, and regulations since before any currently practicing lawyer was born.  Not
only do users know that Westlaw's digital collection includes all the potentially relevant public
law, but they also have (in many cases) years and years of experience knowing that Westlaw's
collection of public law is complete and reliable.

45.    The Westlaw platform also incorporates a legal search technology and functionality
product (the "legal search tools") that can be used to search the public law.  Westlaw legal search
tools purport to help users search through large amounts of public law to find desired material.
Just as stock analysts need tools to search through the enormous amount of stock data, lawyers
need tools to search through the enormous amount of public law.  According to the Complaint,
Westlaw refers to this product as the "Westlaw Content."

46.    According to the Complaint, the "backbone" of the Westlaw legal search tools is
the West Key Number System.  The West Key Number System is a "hierarchy" reflecting core

- 18 -

A246

concepts in the public law and used to organize the public law. The Complaint contends that the West Key Number System "is the result of decades of human creativity and choices."

47.      Westlaw purports to maintain copyrights in the West Key Number System, which Westlaw asserts is incredibly valuable.

48.      In reality, the West Key Number System is not copyrightable, irrelevant to most users, and out of sync with how most users perform legal search. In reality, the West Key Number System is a relic of another time. The West key numbers have absolutely no creative value and are not novel. Westlaw did not decide how the law is organized. Westlaw did not determine the elements of legal claims. Westlaw did not come up with the structure and organization of legal principles. These ideas and concepts derive from the common law and the generations of public legal discourse and thought that are the building blocks of our public legal practice. Westlaw has no copyright ownership in this.

49.      According to the Complaint, the Westlaw legal search tools also include the West Headnotes and notes of decision.

50.      Westlaw purports to maintain copyrights in the West Headnotes and notes of decision, which Westlaw also asserts are incredibly valuable. In reality, the West Headnotes and notes of decision are not useful or copyrightable.

51.      In reality, the West Headnotes and notes of decision are hierarchical lists of basic legal concepts that no one owns, ranging in sophistication from verbatim recitations of the public law to simple phrases derived from and closely tracking the verbatim public law.

52.      Westlaw cites its two best examples of allegedly copyrightable headnotes in the Complaint. Neither example, however, includes any creativity, expression, or interpretation. The examples are headnotes 7 and 8 for the Supreme Court decision *Harper & Row Publishers, Inc. v.*

*Nation Enterprises*, 471 U.S. 539 (1985). *See* D.I. 1 ¶ 15. Headnote 7 is a condensed restatement of analysis within the opinion. Headnote 8 is a verbatim quote from the opinion. There are literally thousands of West Headnotes and notes of decision nearly identical to these two. Westlaw cannot seriously assert a copyright interest in these quotes, and doing so is a blatant violation of the policy interests behind the federal copyright laws.

53.    Westlaw purported at one time to maintain copyrights in the page numbers it added to the public law. In reality, the Westlaw page numbers are not copyrightable but Westlaw fought that in court. The Second Circuit affirmed that Westlaw's so-called "star pagination" notations embedded into judicial opinions are not copyright-eligible. *See Matthew Bender & Co. v. W. Publ. Co.*, 158 F.3d 693 (2d Cir. 1998).

54.    On the same day, the Second Circuit affirmed the same district court's judgment that "additions of certain factual information to the text of [judicial] opinions, including parallel or alternative citations to cases, attorney information, and data on subsequent procedural history" are also not copyright-eligible. *See Matthew Bender & Co. v. W. Publ. Co.*, 158 F.3d 674 (2d Cir. 1998); *see id.* at 677 ("All of West's alterations to judicial opinions involve the addition and arrangement of facts, or the rearrangement of data already included in the opinions, and therefore any creativity in these elements of West's case reports lies in West's selection and arrangement of this information. In light of accepted legal conventions and other external constraining factors, West's choices on selection and arrangement can reasonably be viewed as obvious, typical, and lacking even minimal creativity.").

55.    In other words, despite the above and contrary legal decisions, Westlaw continues to maintain that every aspect of the so-called "Westlaw Content" is copyrightable and protected under the Copyright Act.

A248

56.    Westlaw uses its alleged copyrights to restrict access to the public law, protect its monopoly power, stifle innovation, and charge supra-competitive prices.[5]

**ROSS' Rise & Fall**

57.    ROSS started in 2014 when two computer scientists at the University of Toronto, a world-leading AI research institute, teamed up with a lawyer to invent a legal search product that makes legal research more intuitive, efficient, and accessible.  The company built its prototype without any funding, and soon thereafter began seeking investors to further develop the product and enter the market.

58.    Investors quickly grew curious.  Lawyers in the United States spend $8 billion on legal research software annually, and the demand for innovative legal search tools that are cheap, simple, reliable, and efficient remains very high.

59.    Owing to the expense and perceived inefficiency in legal services, interest in innovative legal technology has reached a fever pitch.  The American Bar Association recommended in 2016 to establish the Center for Legal Innovation "to reshape the delivery of, and

---

[5] Westlaw's abusive business conduct actually goes very far back – to its very first decades as a corporation.  In 1882, John B. West and his brother established the West Publishing Corporation, with laudable ambitions to provide frontier lawyers with a cheap and efficient means to learn about new cases.  For almost twenty years, West built his company into the nation's leader in legal publishing, in large part because of the method for classifying cases, called the key number system, that met lawyers' expectations, joined established modes of thinking about the law and, thus, had utility.  But in 1899, West suddenly left his company.  Though the reasons are not well known, it is known that in 1908 West gave a scathing speech about the state of legal publishing, and in particular derided the West Publishing Corporation's classification system and its abusive use of unofficial case reporters.  West sought to build a better and fairer publishing company after leaving his former corporation, the Keefe-Davidson Law Book Company, but the new business was never able to get off the ground.  ROSS, not Westlaw, is trying to realize West's laudable ambitions and make the public law truly accessible.  Westlaw instead is following the footsteps of its predecessor-in-interest, and pursuing abusive and exclusionary conduct to preserve its market power.  *See* Robert M. Jarvis, John B. West: Founder of the West Publishing Company, 50 A.M. J. Legal Hist. 1 (2008).

- 21 -

A249

access to, legal services for the 21st century." *See* www.americanbar.org/groups/centers_
commissions/center-for-innovation/AboutUs/. Since its enactment, the Center has partnered with
lawyers, technologists, and innovators to "[e]ncourage and accelerate innovations that improve the
affordability, effectiveness, efficiency, and accessibility of legal services." *Id*.

60.    The Center has pursued several creative lines for technology development and
remains active. For example, the "Legal Tech for Change Project" is a project to expand access
to cutting-edge technology for all members of the legal community. *See* www.americanbar.org/
groups/centers_commissions/center-for-innovation/programs-and-projects/.[6]

61.    Similarly, the state bars for New York, California, Illinois, and Texas all have
committees or subsections that identify and promote new technology that improves access to the
public law. As just one example, the State Bar of Texas' Computer and Technology Council has
an Emerging Technology working group. *See* sbot.org/about/committees-and-working-groups/.

62.    Corporate clients and law firms across the country have also jumped with
enthusiasm at the opportunity to identify and ultimately use innovative and powerful legal search
products. Corporate legal departments have, for example, established The Corporate Legal
Operations Consortium ("CLOC") as a global community of experts focused on redefining the
delivery of legal services and the business of law. Law firms have also, for example, established
technology committees to identify and evaluate new legal software to use for litigation, corporate,
and regulatory matters. These are just a few of the many developments that evidence growing
demand for greater choice and innovation in products that support legal research.

---

[6] ROSS was actually a founding member of the Legal Tech for Change Initiative. The company
has taken a leadership position in expanding the market for legal search platforms to tap into unmet
consumer demand and close the legal representation gap.

A250

63.    Moreover, these initiatives are not just passion projects.  The market for legal services is in desperate demand for better technology.  Since the Great Recession, law firms have been forced to tighten belts and justify costs.  Whereas in 2008 law firms recovered over 80% of legal research costs from clients, in 2020 they recovered less than 30%.  And over the same period of time, the percentage of law firms that have moved to relying on a single legal search product has increased from around 10% to over 50%.  Both trends are expected to continue.

64.    Access to adequate legal representation is also seriously deficient because the cost of the law is so high.  While Americans with the greatest ability to pay for legal services have options, Americans that have less ability to pay are substantially foreclosed from professional legal services.  These Americans have no less of a need for effective legal representation, but cannot pay the high costs.  A more competitive market for legal research tools would help to grow the market for affordable legal services, tap into unmet consumer demand, and significantly close the legal representation gap.

65.    Given the widespread interest in and need for a better, cheaper, and more efficient way to do legal research and ROSS's innovative AI-based approach to legal search, ROSS was offered an opportunity to present to the prestigious start-up incubator, Y Combinator.

66.    After the initial presentation, Y Combinator's leadership was very interested.  They saw how ROSS's product could tap into the substantial demand for greater choice and flexibility in legal research tools – and the opportunity to invest in a product that makes legal research simple and intuitive was hard to ignore.  They also understood that a quality AI-based natural language search engine could overcome the training-based switching costs that protect Westlaw's market dominance. However, while they saw the market potential, they also understood the risk that Westlaw would move to protect its strangle grip on the market.

- 23 -

A251

67.      Y Combinator ultimately invested in ROSS.  They recognized that the concentrated market for legal search products means unmet demand and inefficiencies in the legal services community.  And they believed in the extraordinarily valuable and disruptive potential of ROSS's product.  ROSS primarily used the significant financial investment to develop its AI technology for the legal search engine.

68.      As ROSS approached customers, there was widespread support for the company's innovative, AI-based legal search product, and equally strong recognition that such technology could make legal research easier, cheaper, and more accessible.  ROSS received similar praise from the media and major bar associations across the country as well – many hoping and predicting that ROSS would be on the leading-edge of significant market change for the better.

69.      But then customers asked what digital public law collection was connected to the legal search engine.  And this proved to be a serious problem.  ROSS knew that it could not obtain access to Westlaw's database, despite its significant willingness to pay for that product.  Westlaw has never offered to license its database separate from its search tools and, in any event, Westlaw had denied ROSS access to the platform as well.

70.      Moreover, there was no practical or reliable way for ROSS to obtain a digital collection of public law on its own.  There are no APIs for public law and no downloadable files to obtain large collections of the public law.  And to this day, government agencies do not generally offer their public law in a downloadable format for free or at market cost.  On information and belief, this is due, in part, to Westlaw having exclusive contracts with government agencies to be the exclusive provider of primary law in a digital format.

71.      So, ROSS instead built its public law database through other sources.  It purchased some cases from Casemaker, and other public law from Fastcase, starting only in bankruptcy, but

A252

steadily expanding out to intellectual property law, and labor/employment law as well.  The hope was that ROSS could first build interest from subject-matter-specific legal practitioners, and then with the initial wave of users grow its product until it could offer comprehensive access to the public law.  Given the widespread interest in better and cheaper legal research options, and ROSS's innovative technology, the company did have some success through this practice.  ROSS was able, for example, to secure a license with a large national labor/employment firm.

72.     But ultimately, the spliced-and-put-it-back-together approach to building its public law database just was not adequate.  Even after ROSS made a large investment to partner with Fastcase and fill the gaps in its digital collection, customers were still not convinced.

73.     There was no doubt that ROSS's search engine was incredibly valuable.  The problem instead was that the database connected to the search engine lacked what the customer needed.  For example, some customers voiced concerns that a substitute database might not be sufficiently comprehensive.  Without access to Westlaw's database, they might miss an important older case or an unpublished opinion that would give the opposing counsel an advantage.  Or there might be a new decision that has not been added to the database yet.  Customers also feared relying on a database that was not viewed in the legal community as reliable and the well-known standard.

74.     These customers instead licensed Westlaw's legal search product solely because it includes Westlaw's well-known digital public law collection.  They acknowledged that ROSS's search engine is better than Westlaw's legal search tools, and some even indicated that combining ROSS's search engine with Westlaw's database would produce a better platform than anything available in the market.  But these customers, ultimately, were reluctantly willing to use Westlaw's ineffective legal search tools if it meant access to the high-quality database.

- 25 -

A253

75.     ROSS faced this problem everywhere – from solo practitioners to full-service big law firms.  To many of these customers, it was not just about the fact that the database connected to ROSS's search engine had less public law, but also the fear of accessing and relying on a newly created digital public law collection.  These customers had confidence that Westlaw's database would have the materials they needed through years of using the database and seeing colleagues and classmates use it as well.  A new digital public law collection, pulled together by smaller and unknown companies, was too great a risk to bear.

76.     And given this concern, customers would always fall back on Westlaw.  They needed to license the Westlaw platform because that is the only way to access Westlaw's database, and they needed to access Westlaw's database.  Even though they did not want to purchase Westlaw's legal search tools as well, they were forced to purchase them, as they had no way to access Westlaw's database without them.  And having already being forced to pay for the Westlaw legal search tools through licensing the Westlaw platform, these customers decided that it just did not make sense to license the ROSS product or any other alternative legal search product as well.  By making customers take the Westlaw legal search with its database, then, Westlaw keeps other legal search options out of the market.

**The Relevant Markets**

77.     There is a relevant market for legal search platform products ("legal search platforms").  A legal search platform combines a legal search functionality product with a database of public law.  The relevant geographic area is the United States.

78.     For some customers, there is currently no substitute for a legal search platform.  These customers license legal search products to practice law or for educational purposes.  For these customers, if the database is not connected to a legal search tool, then it holds no value.

There is too much public law to efficiently and effectively identify the relevant material without search functionality. These customers prefer the convenience and reliability of a bundled platform product.

79.     For other customers, there is a growing interest in unbundled search products, or other flexible options for digital legal research. This nascent demand includes customers like the ABA, state bars across the country, and major law firms, which have a desire to develop new technologies that can lower costs, improve efficiency, add greater flexibility, and tap into substantial unmet demand. For these customers, legal search tools could be a valuable product as long as the technology exists to allow the consumer to combine the tools with a public law database.

80.     Consequently, there are relevant markets for public law database products and legal search technologies in the United States. Customers in these markets include both end-users like law firms, intermediate buyers like bar associations that seek to expand access to the law, and intermediate buyers like ROSS that need access to a database to develop, test and market their platform products.

81.     In the market for legal search platforms, Westlaw and ROSS are competitors.

**Monopoly Power**

82.     Westlaw has both market and monopoly power in the market for legal search platforms.

83.     In a 2020 trade survey, 83% of responding United States law firms reported having a Westlaw license. Among AmLaw 100 firms, which account for well over 80% of legal revenue in the United States, this license-share rises to 95%.

A255

84. The extraordinarily strong license-share is also likely to maintain over time. Only 1% of responding law firms reported that they are "extremely likely" to eliminate their Westlaw license once the contract expires, and only 4% more responded that they are "moderately likely" to do so. Given that the share of law firms only using one legal search product has increased five-fold in the last decade, and given that this trend is predicted to continue, Westlaw can confidently expect that it will continue to be licensed by nearly every law firm across the country for years to come, even while those firms discard alternative products.

85. Westlaw also accounts for the majority of legal information spending among U.S. law firms, and well more than double the closest rival. These ratios have been the same since at least 2018, and also remain stable when law firms project three years into the future. The survey also reports that Westlaw is considered "essential" by at least 43% of respondents.

86. A 2020 trade report similarly states that Westlaw is the platform most often used by small, midsize, and big law firms, and that this dominant position has been stable since the earliest date where data is available. The report also indicates that Westlaw has market dominance within law schools, where students are trained on how to use the platform.

87. Westlaw's control over licenses and revenue has been stable despite consistently requiring customers to pay significantly higher prices than any of its rivals. Westlaw charges AmLaw 100 law firms millions of dollars a year. Each search on the platform for a mid-size or big law firm costs up to $172, which is almost double the cost-per-search for its closest rival. The price difference quickly expands as the number of lawyers at the firm, and the number of searches each lawyer completes, increases. Moreover, this Westlaw price represents a 20% increase compared to what Westlaw charged in 2020. Westlaw has been steadily increasing its prices even while the costs of cloud computing and storage have steadily fallen.

88.    The difference is present amongst small firms as well. Westlaw charges solo practitioners that accept a three-year subscription plan $396 per month, with 5% annual price increases, over twice the amount that the closest rival charges under a similar three-year plan.

89.    Given that the United States legal information market is $8 billion per year, Westlaw is reaping billions in revenue due to their monopoly position.

90.    Westlaw's power in the legal search platform market is protected by substantial barriers to entry and expansion.  Importantly, Westlaw's monopoly in legal search is protected by significant lock-in and high switching costs, network effects, and differential pricing practices for separate consumer bases.

91.    Westlaw offers its platform and training support to those entering the legal market like law students for free to "get them hooked."  Westlaw also expends significant resources to provide training and other support to licensees.  Once users have expended the energy and resources to build the skills to use a specific platform, it is highly unlikely that those users will make the choice to switch to another.  Indeed, this is one reason why it's so common to hear a lawyer say "I use Westlaw" and who has almost no experience with another platform.  Law schools hold classes where students learn how to use Westlaw because the platform has become a seeming prerequisite for every law job.

92.    Westlaw's dominant market position has also seeped into the judiciary.  The Local Rules for many courts (including this one) expressly refer to Westlaw when stating how to cite to cases.

93.    Westlaw's differential pricing for separate consumer bases facilitates the lock-in. Westlaw offers different prices for access to the same or substantially similar material.  Most notably, on information and belief, Westlaw licenses the platform to law schools and governments

essentially for free, while Westlaw licenses the platform to large law firms on a very expensive pay-per-search basis.

94.     And network effects amplify the switching costs.  As more people use a particular legal search platform, its value to existing participants rises, incentivizing more to join.  The study and practice of law is collaborative.  Identifying and understanding the right cases or statutes to apply to a particular fact pattern is a complex task.  Often, the best way to figure out a problem is to work with others, which includes providing advice and suggestions on materials to search and how to complete a search.  These collaborative processes are made easier when the team members are using the same platform for research.  For example, it is easier to help a colleague, co-clerk, or classmate find the right case when you know the search terms that work and have experience with the search tools.

95.     Together, these characteristics substantially increase the barriers to entry and expansion for actual and potential rivals in legal search platforms and protect Westlaw's market position.

96.     Westlaw also has significant and durable market and monopoly power in the market for public law database products.

97.     No other available public law database product is as comprehensive as Westlaw's product.  Westlaw can guarantee that its database has every judicial opinion, every statute, and every regulation that has ever been published, unlike anyone else.

98.     In addition, no other available public law database product is as reliable.  Westlaw has effective mechanisms in place that are not available to other competitors to ensure that all new public law is quickly added to its database, and to ensure that mistakes in the database are efficiently identified and corrected.

99.    Westlaw's database power is also protected by the Westlaw brand.  Consumers know that Westlaw has been building its public law collection for over one hundred years, and that it is comprehensive and reliable.  Consumers thus also know that if they pursue a legal research question for long enough – despite the fact that the research is probably taking longer than is needed because the legal search tools are just not that good – they eventually can find the right case.  This level of reassurance is unique to Westlaw.  In an industry where legal research can be the difference between keeping or losing a client, winning or losing a case, or even being sanctioned for failure to uphold professional responsibilities or not – people feel compelled to go with what everyone has used before (*i.e.*, Westlaw).

100.    This level of reassurance is also extraordinarily powerful, and only Westlaw can offer it.

**The Exclusionary Conduct**

101.    Westlaw has not maintained its monopoly power in the market for legal search platforms by legitimately building on its historical advantage through product innovation and investment.  Instead, Westlaw has engaged in an intentional anticompetitive and exclusionary course of conduct to enhance entry barriers and raise costs to rivals.  This course of conduct has reduced consumer choice and competition and stifled innovation – depriving the public of efficient, convenient, and affordable access to the public law.

102.    Westlaw uses restrictive licensing conditions to foreclose rivals from access to the relevant markets.  Westlaw's exclusionary conduct is grounded in its anticompetitive business model, which only provides customers with access to its valuable database product through the integrated platform.  This business model is akin to a tying scheme that raises entry barriers in the relevant markets and allows Westlaw to monopolize the distribution of public law.

103.    This restrictive condition is drafted into section 1(a) of the "Research Subscriber Agreement" (herein, the "Agreement"), which Westlaw states in the Complaint all platform users must follow.[7]  The Agreement is a contract of adhesion, and it defines "Data" to include "all information and representations of information, including but not limited to, graphical representations, and other content made available to [users] through the Product."

104.    Moreover, on information and belief, Westlaw has never provided consumers with an option to only license the public law database, or to only license the legal search tools, and does not plan to ever provide such an option.

105.    Due to this licensing condition, customers that seek access to Westlaw's highly valuable public law database are forced to also license the significantly less valuable Westlaw legal search tools.  It is not possible to only license one and not the other.  Customers that strongly prefer the better legal search tools that competitors offer are forced to buy Westlaw's ineffective legal search tools to get access to Westlaw's database.  Given the significant cost to license Westlaw's platform, these customers are unwilling to spend on yet another product.

106.    These restrictive licensing conditions stifle innovation as well.  But-for Westlaw's refusal to separately license its digital public law collection, new companies would find ways to incorporate Westlaw's database into their products, or build technology that allows their search engines to be compatible with Westlaw's database.  The refusal thus seriously harms consumer welfare both by forcing customers to purchase products they do not want, as well as raising the price and reducing output in the relevant markets for legal search products.

---

[7] Counterdefendants appended the Research Subscriber Agreement to their Brief in Opposition to ROSS's Motion to Dismiss the Complaint.  *See* D.I.s. 16, 16-1.  The Research Subscriber Agreement did not accompany the Complaint.

107.    Westlaw also uses restrictive licensing conditions to exclude rivals from valuable research and development opportunities.  Westlaw blocks rivals from getting anywhere close to its Westlaw platform and the digital collection therein.  Westlaw admits this in paragraph 28 of the Complaint when it remarks that even if ROSS sought to license the Westlaw platform, Westlaw "would not [] grant" ROSS "access to Westlaw" and its "vast amounts of legal content."  This exclusion is also drafted into the Agreement's restrictive terms about how users may use, store, and disseminate material found on the platform.  Westlaw states this succinctly in paragraph 19 of the Complaint, which sums up these terms of the Agreement as together "expressly prohibit[ing] [licensees] from using [the platform] to create a competitive product."

108.    Due to these licensing conditions, rivals are not allowed to license Westlaw, and are also not allowed to contract with Westlaw platform licensees to perform legitimate business activities, including to develop or test their own products.  Westlaw denies rivals any path for access even if those rivals are willing to pay Westlaw's commercial rates for access.  This behavior has no procompetitive justification.  This exclusionary conduct reduces entry from high-quality products, deters legitimate business activities, and depresses the competitive pressure to innovate. Though we have seen limited entry into the relevant markets from firms like Fastcase, Casemaker, and Casetext, these firms have struggled to gain traction or to constrain Westlaw's monopoly.[8]

109.    The general market impact of these restrictive conditions is just as severe.  Indeed, a licensing agreement that "expressly prohibit[s] [licensees] from using [the platform] to create a competitive product" has the effect of prohibiting huge swaths of competitive activity in the legal business profession.  Practicing lawyers violate the Agreement when they help incorporate,

---

[8] Due to advancements in information digitalization, it is curious – and, indeed, astonishing – that the legal industry is one of the last remaining spaces where consumers need to pay for access to information.

finance, and defend through litigation market competitors; corporate counsel violate the Agreement when they rely on Westlaw to build state-surveys that include information already on the platform; law professors violate the Agreement when they rely on Westlaw to prepare material for an upcoming casebook.

110.    Westlaw's licensing conditions also illegitimately expose rivals to extraordinarily high professional and reputational risk.  The government edicts and public law database are so severely co-mingled with the Westlaw legal search tools that it is impossible for a licensee to use Westlaw materials in legitimate ways without also risking a copyright lawsuit.  The key numbers and headnotes cannot be separated from the government edicts either when viewed on the platform or printed.  When viewing or printing the government edicts, the key numbers and headnotes are only a small part of the overall content and, in that context, are superfluous and not reproduced or used in any manner that would impact demand for key numbers or headnotes.  Yet, nonetheless, Westlaw leverages the key numbers and headnotes to wrongfully and unfairly extend its alleged copyrights in those materials to control the unprotectable government edicts.  Westlaw makes it impossible to separate the public law from Westlaw add-ons, even when the user does not want the add-ons.  And the design and layout of Westlaw creates material confusion and uncertainty about what is a government edict and what is not.  Upon information and belief, this is by design, in order to provide Westlaw practical control over the full content of the public law, despite the fact that the public law is not owned by Westlaw and Westlaw has no right to control it.  Given these licensing and technical conditions, it is not difficult for Westlaw to find a way to sue its rivals for copyright infringement.  And in fact, on information and belief, Westlaw has a long practice of aggressively pursuing such claims.

111.    Importantly, though, Westlaw is not advancing a legitimate interest in intellectual property rights through such filings.  Instead, these lawsuits are a complete sham, brought to police the exclusionary platform access policies.  Westlaw knows that its copyright assertions and claims are objectively baseless, as there is no dispute that government edicts and a comprehensive database are not copyright-eligible.  It pursues these claims to force rivals into unnecessary, expensive legal fights solely to raise entry barriers, particularly to destroy nascent rivals before they can gain a toehold in the relevant markets.

112.    This is exactly what happened to ROSS.    ROSS was beginning to build an enthusiastic user base in 2019 and become a market competitor.  The company had just put a significant investment into building its spliced-and-put-back-together digital public law collection, and was receiving enthusiasm from the media and consumers fed up with Westlaw's high prices and low-quality search tools.

113.    It was only a few months thereafter that Westlaw pounced.  In a sense, Westlaw's anticompetitive course of conduct has been successful.  To its own benefit, but everyone else's loss.

114.    There is no procompetitive justification for any of Westlaw's exclusionary acts.  The only justifications for Westlaw's conduct are to maintain its monopoly control and to restrain trade.  As a result, consumer welfare is significantly harmed.  And just as importantly, access to justice is substantially denied.

115.    ROSS was ultimately forced to exit the market, becoming the latest victim of Westlaw's anticompetitive practices.  Its unfortunate experience illustrates how Westlaw uses exclusionary tactics to harm nascent rivals, deter investment and entry, and protect its market position.

A263

## COUNT I
### (Declaratory Judgment of No Valid Copyrights in the Westlaw Content)

116.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 115 above.

117.    In its Complaint, Counterdefendants allege, *inter alia*, that ROSS directly and indirectly infringes the "Westlaw Content" by reproducing and creating a creative work based on Counterdefendants' content.

118.    It is well established in American law that judicial opinions and federal and state laws, including administrative rules and regulations, are not copyrightable, and must remain public as a matter of due process. *See Wheaton v. Peters*, 33 U.S. (8 Pet.) 591 (1834); *Banks v. Manchester*, 128 U.S. 244 (1888); *Davidson v. Wheelock*, 27 F. 61 (C.C.D. Minn. 1866) (holding publisher cannot copyright state statutes, even if state purports to give exclusive publishing rights); *Howell v. Miller*, 91 F. 129 (6th Cir. 1898) ("no one can obtain the exclusive right to publish the laws of a state") (Harlan, J., sitting by designation); *Nash v. Lathrop*, 142 Mass. 29, 6 N.E. 559 (Mass. 1886) ("Every citizen is presumed to know the law thus declared, and it needs no argument to show that justice requires that all should have free access to the opinions, and that it is against sound public policy to prevent this, or to suppress and keep from the earliest knowledge of the public the statutes or the decisions and opinions of the justices."). *See generally* L. Ray Patterson & Craig Joyce, Monopolizing the Law: The Scope of Copyright Protection for Law Reports and Statutory Compilations, 36 UCLA L. Rev. 719 (1989), and cases cited therein.

119.    Indeed, "[a]s a matter of longstanding public policy, the U.S. Copyright Office will not register a government edict that has been issued by any state, local, or territorial government, including legislative enactments, judicial decisions, administrative rulings, public ordinances, or

A264

similar types of official legal materials." Compendium of U.S. Copyright Office Practices, Third Edition, Sec. 313.6(C)(2).

120.    ROSS is informed and believes, and on that basis alleges, that Counterdefendants have not contributed any original or creative authorship to the "Westlaw Content." 17 U.S.C. § 102(b); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). The judicial opinions and federal and state laws, including administrative rules and regulations, are written by government officials.

121.    ROSS is informed and believes, and on that basis alleges, that Counterdefendants' key number system is a method of operation. *See* 17 U.S.C. § 102(b); *Baker v. Selden*, 101 U.S. 99, 103 (1879).

122.    In view of the foregoing, Counterdefendants have no legal rights, in copyright or contract, exclusive or otherwise, to restrict access to or publication of the judicial opinions, notes on decisions, headnotes, federal and state laws, including administrative rules and regulations, or any aspect of the Westlaw Content.

123.    Thus, ROSS seeks declaratory judgment that Counterdefendants have no basis from which to prohibit ROSS from copyright, reproducing, or otherwise creating derivative works in the judicial opinions, notes on decisions, headnotes, federal and state laws, including administrative rules and regulations, or any aspect of the Westlaw Content, in its subscription legal research service.

124.    Accordingly, and as evidenced by the Complaint demanding ROSS cease reproduction, publication or any other use of certain content, an actual justiciable controversy exists as to the parties' respective rights in connection with judicial opinions, and with the laws, rules, and regulations of any other State or the Federal Government, and the Westlaw Content, as

A265

to which Counterdefendants now claim or might hereafter claim any exclusive right, including the rights to use, license, publish, and distribute such laws, rules, and regulations.

125.    To resolve the uncertainty raised by the Counterdefendants, and to afford ROSS relief from the uncertainty and controversy that the Counterdefendants' assertions have precipitated, ROSS seeks a declaratory judgment that Counterdefendants have no protectable exclusive rights in the judicial opinions, notes on decisions, headnotes, federal and state laws, including administrative rules and regulations, or any aspect of the Westlaw Content, in either contract or copyright.

## COUNT II
### (Declaratory Judgment of Non-Infringement)

126.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 125 above.

127.    ROSS's use of LegalEase researcher-chosen quotes of case law directly from raw judicial opinions does not infringe any copyrights that Counterdefendants claim to have in any "Westlaw Content," including because the judicial opinions and direct excerpts thereof are not entitled to copyright protection under the Copyright Act (17 U.S.C. § 101 *et. seq.*), government edicts doctrine, and the First Amendment of the United States Constitution.

128.    There is no basis upon which Counterdefendants can allege copying of copyrighted material in the "Westlaw Content," or any other act of infringement encompassed by the Copyright Act.

129.    There is no basis upon which Counterdefendants can allege indirect copyright infringement of copyrighted material in the "Westlaw Content," whether by inducing infringement, contributing to infringement or any other theory of indirect infringement encompassed by the Copyright Act.

A266

130.     As evidenced by the allegations in the Complaint and in these Counterclaims, there is now an actual, substantial, and continuing justiciable controversy between ROSS and Counterdefendants with respect to the alleged infringement of any valid copyrights in the Westlaw Content.

131.     To resolve the uncertainty raised by the Counterdefendants, and to afford ROSS relief from the uncertainty and controversy that the Counterdefendants' assertions have precipitated, ROSS seeks a declaratory judgment that ROSS has not infringed, directly or indirectly, upon any of the Counterdefendants alleged rights in the Westlaw Content.

## COUNT III
### (Declaratory Judgment of Fair Use)

132.     ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 131 above.

133.     ROSS's use of LegalEase researcher-chosen quotes of case law directly from raw judicial opinions constitutes a fair use under 17 U.S.C. § 107.

134.     To the extent Counterdefendants can allege copying of copyrighted material in the "Westlaw Content," or any other act of infringement encompassed by the Copyright Act, such constitutes a fair use under 17 U.S.C. § 107.

135.     There is no basis upon which Counterdefendants can establish that any alleged act of infringement is not barred by the doctrine of fair use pursuant to 17 U.S.C. § 107, in view of the nature of the works asserted by Counterdefendants and covered by the asserted copyrights, the amount (if any) and substantiality of the portions of such works used in relation to the works as a whole, the purpose and character of any use thereof, and the effect, if any, of such use on the potential market for the works.

A267

136.    As evidenced by the allegations in the Complaint and in these Counterclaims, there is now an actual, substantial, and continuing justiciable controversy between ROSS and Counterdefendants with respect to the alleged infringement of any valid copyrights in the Westlaw Content.

137.    To resolve the uncertainty raised by the Counterdefendants, and to afford ROSS relief from the uncertainty and controversy that the Counterdefendants' assertions have precipitated, ROSS seeks a declaratory judgment that any allegedly infringing act by ROSS or LegalEase constitutes fair use and, therefore, does not constitute direct or indirect infringement.

## COUNT IV
### (Declaratory Judgment of Copyright Misuse)

138.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 137 above.

139.    Copyright protection exists "to promote the Progress of Science and the useful Arts."

140.    Copyrights should not be enforced when such enforcement does not fulfill the Constitutional purpose of copyright protection.

141.    Counterdefendants have utilized the Westlaw Content and the asserted copyrights in the Westlaw Content in an anticompetitive, wrongful, unfair and exclusionary manner.

142.    The key numbers and headnotes cannot be separated from the government edicts either when viewed on the platform or printed.  In this way, and through their unfair licensing practices, Counterdefendants leverage the key numbers and headnotes of the Westlaw Content to wrongfully and unfairly extend their alleged copyrights in those materials to control the unprotectable government edicts.

- 40 -

143.    Counterdefendants' use of the Westlaw Content and the asserted copyrights in the Westlaw Content does not comport with the Constitutional purposes of copyright protection.

144.    As evidenced by the allegations in the Complaint and in these Counterclaims, there is now an actual, substantial, and continuing justiciable controversy between ROSS and Counterdefendants with respect to the alleged infringement of any valid copyrights in the Westlaw Content.

145.    To resolve the uncertainty raised by the Counterdefendants, and to afford ROSS relief from the uncertainty and controversy that the Counterdefendants' assertions have precipitated, ROSS seeks a declaratory judgment that Counterdefendants' assertion of and practices regarding the Westlaw Content and the asserted copyrights in the Westlaw Content constitute copyright misuse.

146.    As a result of Counterdefendants' misuse of their copyrights, Counterdefendants' copyrights should be invalidated, and ROSS is entitled to appropriate attorneys' fees and costs.

**COUNT V**
**(Declaratory Judgment of No Tortious Interference with Contract)**

147.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 146 above.

148.    As evidenced by the allegations in the Complaint and in these Amended Counterclaims, there is an actual and ongoing controversy between ROSS and Counterdefendants as to whether ROSS tortiously interfered with LegalEase's contract with Counterdefendants.

149.    Counterdefendants' claim requires a showing that LegalEase had a contract with Counterdefendants, that ROSS knew of the existence of this contract, that ROSS intentionally instructed LegalEase to breach the contract without justification, that Counterdefendants were harmed, and that ROSS's conduct was a substantial factor in Counterdefendants' harm.

- 41 -

A269

150.     ROSS did not direct or in any way encourage LegalEase to breach any third-party contract, including without limitation LegalEase's contract with Counterdefendants.  ROSS further did not direct or control LegalEase conduct in connection with researching and obtaining raw judicial opinions.

151.     For these reasons, ROSS maintains that it did not tortiously interfere with any contract between LegalEase and Counterdefendants.

152.     To resolve the uncertainty raised by the Counterdefendants, and to afford ROSS relief from the uncertainty and controversy that the Counterdefendants' assertions have precipitated, ROSS seeks a declaratory judgement that ROSS did not tortiously interfere with Counterdefendants' contract with LegalEase.

## COUNT VI
### (Sherman Act § 2:  Unlawful Monopoly Maintenance in the Legal Search Platforms Market)

153.     ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 147 above.

154.     Counterdefendants' conduct violates Section 2 of the Sherman Act, which prohibits the "monopoliz[ation of] any part of the trade or commerce among the several States, or with foreign nations."  15 U.S.C. § 2.

155.     The market for legal search platforms is a valid antitrust market.

156.     Counterdefendants hold monopoly power in this market.

157.     Counterdefendants unlawfully maintain their monopoly power in this market through the exclusionary acts described herein.  These exclusionary acts serve no legitimate or procompetitive purpose that could justify their anticompetitive effects.

158.     Counterdefendants' conduct affects a substantial volume of interstate commerce.

- 42 -

A270

159.    Counterdefendants' conduct has substantial anticompetitive effects, including increased prices and costs, lower output, and reduced innovation and quality of product options.

160.    As a nascent market competitor, ROSS has been harmed by Counterdefendants' anticompetitive conduct in a manner that the antitrust laws were intended to prevent.  ROSS has suffered and continues to suffer harm and irreparable injury, and such harm and injury will not abate until an injunction ending Counterdefendants' anticompetitive conduct issues.

161.    To prevent these ongoing harms, the Court should enjoin the anticompetitive conduct complained of herein, and should award ROSS monetary damages.

### COUNT VII
### (Sherman Act § 1:  Unreasonable Restraint of Trade in the
### Legal Search Platforms Market)

162.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 161 above.

163.    Counterdefendants' conduct violates Section 1 of the Sherman Act, which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations."  15 U.S.C. § 1.

164.    The market for legal search platforms is a valid antitrust market.

165.    Counterdefendants' unlawfully restrain trade in this market through the anticompetitive acts described herein.  These anticompetitive acts serve no legitimate or procompetitive purpose that could justify their anticompetitive effects.

166.    Counterdefendants' conduct and unlawful contractual restraints affect a substantial volume of interstate commerce.

167.    Counterdefendants' conduct has substantial anticompetitive effects, including increased prices and costs, lower output, reduced innovation, and reduced quality of product options.

- 43 -

A271

168.    As a nascent market competitor, ROSS has been harmed by Counterdefendants' unlawful contractual restraints in a manner that the antitrust laws were intended to prevent.  ROSS has suffered and continues to suffer harm and irreparable injury, and such harm and injury will not abate until an injunction ending Counterdefendants' anticompetitive restraints issues.

169.    To prevent these ongoing harms, the Court should enjoin the anticompetitive conduct complained of herein, and should award ROSS monetary damages.

### COUNT VIII
### (California Unfair Competition Law)

170.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 169 above.

171.    Counterdefendants and ROSS both pursue substantial volumes of interstate commerce as well as commerce within the State of California.

172.    Counterdefendants' actions described herein constitute unlawful, unfair, or fraudulent acts or practices in the conduct of business, in violation of California's Business and Professions Code Section 17200 et seq., including actions that are forbidden by other laws.

173.    Counterdefendants' conduct is unlawful, unfair, or fraudulent because it is in violation of Sections 1 and 2 of the Sherman Act, and also in violation of the policy or spirit of the Sherman Act.

174.    Counterdefendants' conduct is unlawful, unfair, or fraudulent because it is in violation of the Copyright Act, and also in violation of the policy or spirit of the Copyright Act.

175.    As a result of Defendants' various acts, ROSS has been harmed and has lost money and property in the form of, among other things, costs to defend itself against the Complaint, costs to bring these counterclaims, and costs to survive in the market in spite of the unfair market conditions.

- 44 -

A272

## COUNT IX
### (Delaware Common Law Unfair Competition)

176.    ROSS incorporates by reference each and every allegation contained in Paragraphs 1 through 175 above.

177.    As established by the facts pled *supra*, ROSS had a business expectancy to sell its legal search platform product in the market, having received encouragement in the industry and indications from customers that they would purchase access to the ROSS platform once it was tied to a reliable database.

178.    As discussed *supra*, Westlaw took unfair business actions to prevent ROSS from legitimately earning revenue in the relevant market.  These acts were taken with the intent to cause competitive harm and, in certain cases, disparage ROSS.

179.    But for Westlaw's unfair business actions, ROSS would have made sales of its product in the relevant market.

180.    Counterdefendants' actions described herein constitute unlawful, unfair, or fraudulent acts or practices in the conduct of business, in violation of common law unfair competition laws.

## RELIEF REQUESTED

WHEREFORE, ROSS respectfully requests the following relief:

A.    The entry of judgment on the Complaint in favor of ROSS, and against Counterdefendants, with Counterdefendants not being awarded any relief of any kind;

B.    The entry of judgment declaring that Counterdefendants do not have valid copyrights in the "Westlaw Content";

C.    The entry of judgment declaring that ROSS has not infringed, directly or indirectly, Counterdefendants' copyrights;

- 45 -

A273

     D.     The entry of judgment declaring that any alleged use of Counterdefendants' copyrights constitutes fair use;

     E.     The entry of judgment declaring that Counterdefendants have engaged in misuse of their copyrights and that Counterdefendants' copyrights are invalidated;

     F.     The entry of judgment declaring that ROSS did not tortiously interfere with LegalEase's contract with West; and

     G.     Enjoining Counterdefendants' acts in support of its unlawful monopoly maintenance in the market and its unreasonable restraint on trade in the market.

     H.     Monetary relief, including all forms of available damages and monetary relief in equity.

     I.     The entry of judgment declaring that ROSS is the prevailing party under 17 U.S.C. § 505.

     J.     Appropriate attorneys' fees and costs.

     K.     Such other and further relief, in law or equity, as this Court deems just and proper under the circumstances.

## <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38.1, ROSS respectfully requests a trial by jury on Plaintiffs' Complaint and on ROSS's Amended Counterclaims for all issues so triable.

A274

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

Mark A. Klapow
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

Dated:  September 14, 2022
10337976 / 20516.00001

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:   */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Carson R. Bartlett (#6750)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    cbartlett@potteranderson.com

*Attorneys for Defendant/Counterclaimant*
*ROSS Intelligence, Inc.*

A275

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (SB) |
| v. | ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant and Counterclaimant. | ) ) | |

## **PLAINTIFFS' NOTICE OF LODGING**

PLEASE TAKE NOTICE that a USB drive containing the native electronic versions of the following exhibits to the Declaration of Miranda D. Means In Support of Plaintiffs' Motions for Summary Judgment (Nos. 1-3) (D.I. 255) has been lodged under seal with the Court:

| Ex. ## | Description |
|---|---|
| 21 | Excerpted version of Frederiksen-Cross Exhibit P, Excel File |
| 48 | ROSS-003382388, Excel File |
| 86 | TR-0038826, Excel File |
| 102 | TR-0076478, Excel File |
| 103 | TR-0836004, Excel File |

A secure FTP link containing these files will be provided to ROSS Intelligence, Inc.

A276

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
Alyssa C. Kalisky
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

/s/ Michael J. Flynn
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counter-Defendants*
*Thomson Reuters Enterprise Centre GmbH and*
*West Publishing Corporation*

December 22, 2022

2

A277

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 22, 2022, upon the following in the manner indicated:

David E. Moore, Esquire                                          *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                          *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                                       *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
*Attorneys for Defendant and Counterclaimant*


                                        */s/ Michael J. Flynn*
                                        _____
                                        Michael J. Flynn (#5333)

A278

Case 1:20-cv-00613-SB    Document 298-1    Filed 01/09/23    Page 81 of 7202 PageID #: 78180

# EXHIBIT 6

Case 1:20-cv-00613-SB   Document 298-1   Filed 01/09/23   Page 82 of 7202 PageID #: 78181

THOMSON REUTERS ENTERPRISE CENTRE GMBH v
ROSS INTELLIGENCE INC.

Barbara Frederiksen-Cross
November 11, 2022

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF DELAWARE

 3

 4   THOMSON REUTERS ENTERPRISE     )
     CENTRE GMBH and WEST           )
 5   PUBLISHING CORPORATION,        )
                                    )
 6              Plaintiffs,         )
                                    )
 7        vs.                       )  No. 1:20-cv-00613-UNA
                                    )
 8   ROSS INTELLIGENCE INC.,        )
                                    )
 9              Defendant.          )
     _____)
10

11

12

13

14      VIDEO-RECORDED DEPOSITION OF

15      BARBARA FREDERIKSEN-CROSS, at Regus Center,

16      1050 SW Sixth Avenue, Suite 1100, Portland,

17      Oregon, commencing at 9:21 a.m. PST, on

18      Friday, November 11, 2022, before

19      Marla Sharp, RPR, CLR, CCRR, CA CSR 11924,

20      OR CSR 17-0446, WA CSR 3408.

21

22

23

24

25
```

A280

Case 1:20-cv-00613-SB   Document 298-1   Filed 01/09/23   Page 83 of 7202 PageID #: 78182





Case 1:20-cv-00613-SB    Document 298-1    Filed 01/09/23    Page 85 of 7202 PageID #: 78184



313

Case 1:20-cv-00613-SB    Document 298-1    Filed 01/09/23    Page 86 of 7202 PageID #: 78185



315





316

A286

Case 1:20-cv-00613-SB   Document 298-1   Filed 01/09/23   Page 89 of 7202 PageID #: 78188



317



319



Case 1:20-cv-00613-SB    Document 298-1    Filed 01/09/23    Page 92 of 7202 PageID #: 78191



THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (SB) REDACTED - PUBLIC VERSION |
| v. | ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant and Counterclaimant. | ) ) ) | |

**DECLARATION OF LAURIE OLIVER IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT (NOS. 1–3)**

A291

I, Laurie Oliver, declare as follows:

1.      I am a U.S. Cases Editorial Manager for Thomson Reuters where I have worked for the past twenty-nine years.    I submit this declaration in support of Plaintiffs' Motions for Summary Judgment.  The statements set forth in this declaration are based on my personal knowledge and my review of the contemporaneous documents referenced and attached hereto.

2.      Thomson Reuters and West Publishing Corporation ("West") (collectively, "Plaintiffs") offer a variety of products in the field of online legal research, including Westlaw, Plaintiffs' legal research platform.  West launched Westlaw in 1975 as a dial-up service requiring dedicated terminals.  In 1996, Thomson Reuters (then, the Thomson Corporation) acquired West, and has since invested significant effort, resources, and money into innovating the Westlaw platform.

3.      Westlaw is now an online legal research platform used by lawyers and other legal professionals across the world, and includes thousands of databases of case law, state and federal statutes, administrative codes, synopses, treatises, secondary sources, public records, and other documents.  The current version of Westlaw's legal research platform, Westlaw Edge, provides innovative, AI-powered search tools that allow users to search for relevant law using keywords, headnotes, natural language, and/or Boolean queries.

4.      West has a large team of attorney-editors responsible for creating original content for the Westlaw Platform.  Among other responsibilities, attorney-editors are tasked with writing "editorial enhancements" for Westlaw, which include synopses at the beginning of judicial opinions, as well as headnotes.  I am personally familiar with West's attorney-editors' original contributions to Westlaw.  I joined West in 1993 as an attorney-editor, and my current role

involves supervising a team of attorney-editors who write and select the headnotes (the "West Headnotes").

**A.    The West Headnotes**

5.    West Headnotes appear with one or more corresponding key numbers at the top of judicial opinions accessed in Westlaw. West's attorney-editors are responsible for writing the West Headnotes. These headnotes identify, summarize, and synthesize key take-aways from a judicial opinion. They include summaries of what the attorney-editor views as the most important facts of the case, key issues that the attorney-editor wants to highlight, and original descriptions of the holdings from the underlying opinion.

6.    The attorney-editors exercise creative discretion in determining both *what* to include in any given West Headnote and *how* to phrase that headnote. Because West Headnotes are written to be understood standing alone, West's attorney-editors write them to summarize only certain, selected facts, and explain the court's holding and parties' contentions in clear language.

7.    West constantly drafts new West Headnotes to keep up with the release of new judicial opinions, writing over 9,000 West Headnotes per week. Existing West Headnotes are also periodically revised and updated. To remain up-to-date, the Cases Editorial department alone has around 70 attorney-editors who draft the West Headnotes and other editorial enhancements.

**B.    The WKNS**

8.    When they draft the West Headnotes, West's attorney-editors also make an initial recommendation about which West Key Number topics should be assigned to a particular West Headnote for purposes of integrating the West Headnotes and related judicial opinions into Plaintiffs' original classification system, the West Key Number System (the "WKNS"). I have

A293

personal experience overseeing West's attorney-editors who classify West Headnotes and judicial opinions and have also personally classified West Headnotes and judicial opinions within this system.

9.      The WKNS is the result of Plaintiffs' original editorial choices about how to organize, classify, and structure the voluminous body of American law.  There is no single way to organize the law.  Accordingly, West's attorney-editors need to exercise creativity in selecting and arranging judicial opinions and West Headnotes within the WKNS.  The WKNS is constantly changing as new West Headnotes and judicial opinions are integrated into the system, and it takes a substantial investment of time, innovation, resources, and creativity to update the WKNS.

10.     After West's attorney-editors have created the West Headnotes and made initial recommendations of where they might be placed in the WKNS, the judicial opinion is assigned to one or more "classifiers"—attorney-editors who are responsible for classifying West Headnotes in the WKNS.  "Classifiers" also further evaluate Key Number topics suggested by the initial West Headnote attorney-editor and may send the case back to the original attorney-editor for further review if necessary.  Once the Classifier assigns one or more West Key Numbers to a West Headnote, the West Headnote and its associated case are officially added to the WKNS under the corresponding Key Number(s).

11.     To assist the Classifiers in this process, Plaintiffs developed a tool called the Classification and Recommendation Engine (CaRE).  This tool suggests five or more possible key numbers to the Classifier, who then decides whether to adopt any of the suggestions.  The decision on how to classify a West Headnote is always up to the Classifier.  CaRE does not assign Key Numbers to West Headnotes.

### C.    Competitive Advantage of Editorial Enhancements

12.    Creating these editorial enhancements requires the thought and creativity of many people at West, along with extensive time and resources that Plaintiffs have invested in creating this innovative content.

13.    Plaintiffs have a policy against selling this content to competitors for any purpose, including training artificial intelligence algorithms.  Plaintiffs view their proprietary editorial enhancements, including the West Headnotes and the WKNS, as giving Plaintiffs a competitive advantage over other legal research platforms.

I declare under penalty of perjury that the foregoing testimony is true and correct.

Dated: December 2 1, 2022

_____
Laurie Oliver

A295

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 22, 2022, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE 19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC 20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA 94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

*/s/ Michael J. Flynn*

_____

Michael J. Flynn (#5333)

A296

Case 1:20-cv-00613-SB   Document 544-1   Filed 09/14/23   Page 522 of 743 PageID #: 102599

# EXHIBIT 25

A297

```
                                                               1
 1                UNITED STATES DISTRICT COURT

 2                FOR THE DISTRICT OF DELAWARE

 3
     THOMSON REUTERS ENTERPRISE    )
 4   CENTRE GMBH and WEST          )
     PUBLISHING CORPORATION,       )
 5                                 )
             Plaintiffs and        )
 6           Counterdefendants,)
                                   )
 7                                 )
       vs.                         )    C.A. No. 20-613 (LPS)
 8                                 )
     ROSS INTELLIGENCE, INC.,      )
 9                                 )
             Defendant and         )
10           Counterplaintiff. )
                                   )
11   _____)

12                 **HIGHLY CONFIDENTIAL**

13

14

        VIDEOTAPED 30(b)(6) DEPOSITION OF DEFENDANT,
15
           by and through its corporate designee
16
                 TOMAS VAN DER HEIJDEN,
17
             (also in his individual capacity)
18

19

                London, England, United Kingdom
20
                  Thursday, March 17, 2022
21

22

23
     Pages: Pages 1 - 443
24
     Reported stenographically by:
25   LEAH M. WILLERSDORF, RPR-CRR-FBIVR-ACR-QRR2-CLR
```

A298

THOMSON REUTERS ENTERPRISE vs                                    Tomas van der Heijden
ROSS INTELLIGENCE              30(b)(6), Highly Confidential              March 17, 2022

2

```
 1
 2
 3
 4                    Thursday, March 17, 2022
 5
                            09:29 a.m.
 6                     (Greenwich Mean Time)
 7
 8
 9      Videotaped 30(b)(6) deposition of Defendant, by
10  and through its corporate representative Tomas van der
11  Heijden, as well as in his individual capacity, held
12  at the offices of Kirkland & Ellis International LLP,
13  30 St. Mary Axe, London EC3A 8AF, England, United
14  Kingdom, before Leah Willersdorf, Registered
15  Professional Reporter and Certified Realtime Reporter
16  with the US National Court Reporters Association,
17  and Accredited Court Reporter, Qualified Realtime
18  Reporter (Level 2) and Fellow of the British Institute
19  of Verbatim Reporters, and Certified LiveNote
20  Reporter.
21
22
23
24
25
```

A299

```
                                                                    3
 1                     A P P E A R A N C E S

 2

 3    On behalf of Plaintiffs and Counterdefendants:

 4         KIRKLAND & ELLIS, LLP

 5              601 Lexington Avenue
                New York, New York 10022
 6              (212) 446 4800

 7         BY:  JOSHUA L. SIMMONS, ESQ.
                JENNIFER GIBBINS, ESQ.
 8              joshua.simmons@kirkland.com
                jennifer.gibbins@kirkland.com
 9

10
      On behalf of Defendant and Counterplaintiff:
11
           CROWELL & MORING, LLP
12
                3 Embarcadero Center
13              26th Floor
                San Francisco, CA 94111
14              (415) 986 2800

15         BY:  KAYVAN M. GHAFFARI, ESQ.
                kghaffari@crowell.com
16

17
      ALSO PRESENT:
18

19         Linda Fleet   -   Videographer

20

21

22

23

24

25
```

A300

THOMSON REUTERS ENTERPRISE vs
ROSS INTELLIGENCE

30(b)(6), Highly Confidential

Tomas van der Heijden
March 17, 2022



A301

Case 1:20-cv-00613-SB   Document 544-1   Filed 09/14/23   Page 527 of 743 PageID #: 102604

THOMSON REUTERS ENTERPRISE vs
ROSS INTELLIGENCE                    30(b)(6), Highly Confidential

Tomas van der Heijden
March 17, 2022



A302

THOMSON REUTERS ENTERPRISE vs                                    Tomas van der Heijden
ROSS INTELLIGENCE                    30(b)(6)  Highly Confidential            March 17, 2022



A303

THOMSON REUTERS ENTERPRISE vs                                Tomas van der Heijden
ROSS INTELLIGENCE                30(b)(6), Highly Confidential              March 17, 2022



A304

Case 1:20-cv-00613-SB    Document 544-1    Filed 09/14/23    Page 530 of 743 PageID #: 102607

THOMSON REUTERS ENTERPRISE vs                                Tomas van der Heijden
ROSS INTELLIGENCE            30(b)(6), Highly Confidential              March 17, 2022



A305

THOMSON REUTERS ENTERPRISE vs
ROSS INTELLIGENCE                    30(b)(6), Highly Confidential

Tomas van der Heijden
March 17, 2022



A306

Case 1:20-cv-00613-SB   Document 544-1   Filed 09/14/23   Page 532 of 743 PageID #: 102609

THOMSON REUTERS ENTERPRISE vs                                    Tomas van der Heijden
ROSS INTELLIGENCE              30(b)(6)  Highly Confidential           March 17, 2022



A307

THOMSON REUTERS ENTERPRISE vs
ROSS INTELLIGENCE                    30(b)(6)  Highly Confidential

Tomas van der Heijden
March 17, 2022



A308

THOMSON REUTERS ENTERPRISE vs
ROSS INTELLIGENCE                 30(b)(6)  Highly Confidential

Tomas van der Heijden
March 17, 2022



A309

THOMSON REUTERS ENTERPRISE vs
ROSS INTELLIGENCE

Tomas van der Heijden
30(b)(6)  Highly Confidential
March 17, 2022



A310



THOMSON REUTERS ENTERPRISE vs
ROSS INTELLIGENCE

30(b)(6)  Highly Confidential

Tomas van der Heijden
March 17, 2022



A312

Case 1:20-cv-00613-SB   Document 545-1   Filed 09/14/23   Page 309 of 413 PageID #: 103132

# EXHIBIT 43

2/4/2024    Case 1:20-cv-00613-SB    Document 545-1    Filed 09/14/23    Page 310 of 413 PageID #: 103133

Scope of Coverage | ROSS Intelligence

ROSS                                                                 ≡

EXHIBIT

TVDH 12

# Scope of Coverage

All ROSS subscriptions include comprehensive coverage of United States law.

✓ **Federal case law**
  (published and unpublished)

✓ **State legislation**
  (all 50 states, statutes and regulations)

✓ **State case law**
  (all 50 states, published and unpublished)

✓ **Federal legislation**
  (statutes and regulations)

✓ **Specialty court, tribunal, and administrative decisions**

# Full Details of Coverage

**FEDERAL**

**STATUTORY COVERAGE**

Circuit Courts of Appeals      All since 1792*

Federal and all 50 state statutes, continually and regularly updated.

District Courts      All since 1783

Bankruptcy Courts      All since 1979

**REGULATORY COVERAGE**

Federal and state regulations (except

* The ROSS collection contains all decisions since the

2/4/202Case 1:20-cv-00613-SB   Document 545s1operOile0redge11.4/0SS InPage312e 311 of 413 PageID #: 103134

ROSS                                                                        ☰

period and the first decade after Independence.

### STATES + DC

| All States | Comprehensive set of decisions at the Supreme and Appellate court levels, starting from the first published reporter in each State. |

### ADMINISTRATIVE BOARD

| Trademark Trial & Appeal Board | All since 1996 |

| Patent Trial & Appeal Board | Since the inception of the Patent Trial & Appeal board in 2012, and coverage of predecessor agencies in 1997. |

| National Labor Relations Board | All since 1935 |

| Federal Labor Relations Authority | All since 1978 |

### UNPUBLISHED CASES

| Federal Circuit Courts of Appeals | Comprehensive Coverage Starting in 2009* |

| District Courts | Comprehensive Coverage Starting in 2009 |

| Bankruptcy Courts | Comprehensive Coverage Starting in 2009 |

| State Courts | Comprehensive Coverage for Most States Starting in 1995** |

** Coverage of unpublished decisions in the following states begins in 1995: VA.
** Coverage of unpublished decisions in the following states begins in 1996: MI, MN.
** Coverage of unpublished decisions in the following states begins in 1998: NJ.
** Coverage of unpublished decisions in the following states begins in 2008: MA, PA.
** Coverage of unpublished decisions in the following states begins in 2009: AK, AZ, CA, HI, ID, KY, LA, NV, NM, NY, NC, SC, TX, WA, WI.
** Coverage of unpublished decisions in the following states begins in 2011: IL.
** Coverage of unpublished decisions in the following states begins in 2016: KS.

### FEDERAL SPECIALTY COURTS

A315

2/4/202Case 1:20-cv-00613-SB    Document 545s1operFileded0g/14/03s Intelligen312 of 413 PageID #: 103135

ROSS ☰

| | |
|---|---|
| Court of Customs and Patent Appeals | 1929-1982 |
| United States Tax Court | Since 1936 |
| United States Court of Claims | Since 1905 |
| United States Customs Courts | 1949-1980 |
| Commerce Court | 1911-1913 |
| United States Court of Appeals for the Armed Forces | Since 1994 |
| Special Court, Regional Rail Reorganization Act | 1974-2001 |
| Temporary Emergency Court of Appeals | 1972-1992 |

ROSS

🐦 Twitter

**Company**

About Us

Careers

**Product**

Features

Coverage

**Resources**

Contact Us

FAQ + Support

A316

2/4/2024    Case 1:20-cv-00613-SB    Document 545-1    Filed 09/14/23    Page 313 of 413 PageID #: 103136
Scope of Coverage | ROSS Intelligence

# ROSS                                                                    ☰

LinkedIn

Why ROSS

© ROSS Intelligence, Inc. 2014–2020                          What is AI

A317

# EXHIBIT 44

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | C.A. No. 20-613-SB |
| Plaintiffs/Counterdefendants, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **HIGHLY CONFIDENTIAL-** |
| ROSS INTELLIGENCE INC., | ) | **ATTORNEYS' EYES ONLY** |
| | ) | |
| Defendant/Counterclaimant. | ) | |

**DEFENDANT AND COUNTERCLAIMANT ROSS INTELLIGENCE
INC.'S RESPONSE AND OBJECTION TO PLAINTIFFS'
FIFTH SET OF INTERROGATORIES**



1

A319

2

3

A321

4

A322

5

A323

6

A324

Case 1:20-cv-00613-SB   Document 545-1   Filed 09/14/23   Page 321 of 413 PageID #: 103144

7

A325

8

A326

9

A327

10

A328

Case 1:20-cv-00613-SB   Document 545-1   Filed 09/14/23   Page 325 of 413 PageID #: 103148

11

A329

12

A330

13

A331

14

15

A333

16

A334

Case 1:20-cv-00613-SB    Document 545-1    Filed 09/14/23    Page 331 of 413 PageID #: 103154

17

A335

# **EXHIBIT 50**

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Case 1:20-cv-00613-SB   Document 545-1   Filed 09/14/23   Page 350 of 413 PageID #: 103173

# **EXHIBIT 51**

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Case 1:20-cv-00613-SB   Document 545-1   Filed 09/14/23   Page 354 of 413 PageID #: 103177

# **EXHIBIT 53**

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# **EXHIBIT 54**

A342

**THIS EXHIBIT HAS BEEN
REDACTED IN ITS ENTIRETY**

Case 1:20-cv-00613-SB    Document 545-1    Filed 09/14/23    Page 358 of 413 PageID #: 103181

# **EXHIBIT 55**

A344

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Case 1:20-cv-00613-SB   Document 545-1   Filed 09/14/23   Page 364 of 413 PageID #: 103187

# **EXHIBIT 58**

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | |
| v. | ) ) | C.A. No. 20-613 (SB) |
| ROSS INTELLIGENCE INC., | ) ) | REDACTED – PUBLIC VERSION |
| Defendant and Counterclaimant. | ) ) ) | |

**DECLARATION OF MAX SAMELS IN SUPPORT OF THOMSON REUTERS'
MOTIONS FOR PARTIAL SUMMARY JUDGMENT (NOS. 1-6)**

**VOLUME 3 – EXHIBITS 83-104**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and
Counterdefendants Thomson Reuters
Enterprise Center GmbH and West
Publishing Corporation*

Original filing date: August 31, 2023
Redacted filing date: September 14, 2023

A348

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 31, 2023, upon the following in the manner indicated:

David E. Moore, Esquire                                  *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
Andrew L. Brown, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                  *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
Matthew J. McBurney, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                               *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
Margaux Poueymirou, Esquire
Anna Z. Saber, Esquire
Beatrice B. Nguyen, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

A349

Shira Liu, Esquire
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
*Attorneys for Defendant and Counterclaimant*

*VIA ELECTRONIC MAIL*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)

A350

# **EXHIBIT 83**

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# **EXHIBIT 84**

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Case 1:20-cv-00613-SB   Document 546-1   Filed 09/14/23   Page 5 of 67 PageID #: 103244

# **EXHIBIT 85**

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Case 1:20-cv-00613-SB   Document 546-1   Filed 09/14/23   Page 7 of 67 PageID #: 103246

# **EXHIBIT 86**

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 87

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Case 1:20-cv-00613-SB   Document 546-1   Filed 09/14/23   Page 11 of 67 PageID #: 103250

# EXHIBIT 88
**Intentionally Left Blank**

# **EXHIBIT 89**

Case 1:20-cv-00613-SB    Document 548-1    Filed 09/14/23    Page 13 of 67 PageID #: 103252



# 2022
# LEGAL
# TECHNOLOGY
## Survey Report

### COMBINED VOLUMES

| Vol. I | Online Research |
|---|---|
| Vol. II | Technology Basics & Security |
| Vol. III | Law Office Technology |
| Vol. IV | Marketing & Communication Technology |
| Vol. V | Litigation Technology & E-Discovery |

TRCC-00014349

# 2022
# American Bar Association
# Legal Technology Survey Report

## Combined Volumes:

Vol. I: Online Research

Vol. II: Technology Basics & Security

Vol. III: Law Office Technology

Vol. IV: Marketing & Communication Technology

Vol. V: Litigation Technology & E-Discovery

**Edited by:**

Taylor Young | ABA Legal Technology Resource Center

**Sponsored by:**


A division of Reed Elsevier Inc.


A Thomson Reuters business



CONFIDENTIAL

TRCC-00014350

## Disclaimer

The materials contained herein represent the opinions of the authors and editors and should not be construed to be those of either the American Bar Association or the ABA Legal Technology Resource Center unless adopted pursuant to the bylaws of the Association. Nothing contained herein is to be considered as the rendering of legal advice for specific cases, and readers are responsible for obtaining such advice from their own legal counsel. These materials and any forms and agreements herein are intended for educational and informational purposes only.

The products and services mentioned in this publication are under or may be under trademark or service mark protection. Product and service names and terms are used only for completeness of the survey report and with no intention of infringement. Use of a product or service name or term in this publication should not be regarded as affecting the validity of any trademark or service mark.

## Copyright Notice

© Copyright 2022 American Bar Association. All rights reserved. This report may not be reproduced in part or whole by any means without prior written permission of the publisher. For information, send your request by mail or email to:

> Alexis Hart McDowell, Director
> Copyrights & Contracts
> American Bar Association
> 321 N. Clark Street
> Chicago, IL 60654-7598
> Email: copyright@americanbar.org

This publication and its contents are protected by copyright law. In addition, reference to the results of this survey in marketing materials, without the full context, would be inherently misleading. Accordingly, use of the results or content of this survey is strictly prohibited without the prior written permission of the American Bar Association. The American Bar Association policy does not permit endorsement of commercial products and nothing herein is intended to be and should not be interpreted as an endorsement of any product mentioned.

*ISBN 978-1-61632-924-2*

## About the Survey Reports

*Methodology*

The American Bar Association Legal Technology Resource Center surveyed the legal profession from April through June 2022 on the use of technology in the profession. Staff of the Center developed a 289-question survey document which was divided into five separate survey questionnaires. The sample for the surveys was 35,615 ABA attorneys in private practice selected on a true $n_{th}$ name basis of ABA members in private practice.

An outside research firm distributed electronic invitations via email to $n_{th}$ selected ABA lawyer members in private practice for each the five questionnaires. The research firm received the following number of responses per questionnaire:

- Online Research: 318
- Technology Basics & Security: 311
- Law Office Technology: 331
- Marketing & Communication Technology: 322
- Litigation Technology & E-Discovery: 329

Specific results in the reports for which the total number of responses is less than 100 should be used with caution—and for informational purposes only.

*The Structure of the Report*

The 2022 ABA Legal Technology Survey Report is issued as a five-volume set of PDF files, with each PDF volume available for sale individually. They are also available as a combined version in a digital format. Each volume begins with a trend report, followed by charts and tables that appear in the same sequence as the questions appeared in the questionnaire.

This PDF contains the full contents of the five individual volumes. Volume numbers have been added to the page numbers at the bottom of each page and a combined index has been added at the end to aid in navigation.

*Additional Questions about the Survey*

If you have additional questions about the survey methodology, the exact wording of a specific question, availability of previous surveys, or other requests related to the survey, please email ltrc@americanbar.org. If you are interested in sponsoring future research by the Center, please email ltrc@americanbar.org.

CONFIDENTIAL

TRCC-00014352

*About the Legal Technology Resource Center*

The Legal Technology Resource Center is where legal professionals turn for technology information and resources. We educate the legal profession on technology use and trends through our research and educational outreach to law firms and bar associations.

We serve as a repository of technology resources and information through our website at www.lawtechnology.org and are at the forefront of emerging technology issues that impact the legal profession. The Center has performed research on the use of technology by the legal profession since the 1990s.

Taylor Young and the ABA Legal Technology Resource Center Board assisted in question development and other survey-related activities. Research USA prepared the trend reports and the executive summary and created the graphics and tables.

Email: ltrc@americanbar.org
Website: http://www.lawtechnology.org

CONFIDENTIAL

A367

TRCC-00014353

# Table of Contents – All Volumes

## Online Research (Volume I - Page 10)

Table of Contents ................................................................................. I-i

About the Survey Reports ...................................................................... I-ii

Trend Report ....................................................................................... I-iv

Demographics ...................................................................................... I-1

Demographics: Practice Areas ............................................................... I-5

Demographics: Location ........................................................................ I-9

Legal Research: Generally .................................................................... I-13

Legal Research: Formats ...................................................................... I-16

Use of Free Online Legal Research Resources ........................................ I-29

Use of Fee-Based Online Legal Research Resources ............................... I-40

Electronic Legal Research Away from the Office ..................................... I-51

Current Awareness .............................................................................. I-55

Legal Analytics ................................................................................... I-66

Artificial Intelligence ........................................................................... I-67

Index ................................................................................................. I-72

## Technology Basics & Security (Volume II - Page 129)

Table of Contents ................................................................................ II-i

About the Survey Reports ..................................................................... II-ii

Trend Report ...................................................................................... II-iv

Demographics ..................................................................................... II-1

Demographics: Practice Areas .............................................................. II-5

Demographics: Location ....................................................................... II-9

CONFIDENTIAL

TRCC-00014354

Technology Budget & Goals ............................................................ II-12

Technology Training & Support ..................................................... II-26

Technology Information & Influencers ........................................... II-37

Security: Technology Policies ....................................................... II-41

Security: Security Tools ............................................................... II-43

Security: Security Breaches ......................................................... II-51

Security: Viruses/Spyware/Malware ............................................. II-53

Security: Physical Security Measures ........................................... II-55

Security: Backup ......................................................................... II-60

Index ......................................................................................... II-65

## Law Office Technology (Volume III - Page 229)

Table of Contents ......................................................................... III-i

About the Survey Reports ............................................................ III-ii

Trend Report ............................................................................... III-iv

Demographics .............................................................................. III-1

Demographics: Practice Areas ....................................................... III-5

Demographics: Location ................................................................ III-9

Primary Computer ....................................................................... III-12

Hardware .................................................................................... III-15

E-books ...................................................................................... III-16

Software: Communications ........................................................... III-26

Software: Documents ................................................................... III-28

Software: General Office .............................................................. III-30

Software: Legal-Specific .............................................................. III-33

Software: Use .............................................................................. III-35

Software: Satisfaction .................................................................. III-39

Software: Product Brand Names ................................................................. III-40

Electronic Fax ........................................................................................... III-45

Software: Web-Based Software & Services/Cloud Computing ...................... III-48

APIs/Third-Party Data Integrations ............................................................ III-60

Extranets ................................................................................................... III-62

Index ........................................................................................................ III-67

## Marketing & Communication Technology (Volume IV - Page 343)

Table of Contents ........................................................................................IV-i

About the Survey Reports ......................................................................... IV-ii

Trend Report ............................................................................................ IV-iv

Demographics ........................................................................................... IV-1

Demographics: Practice Areas ................................................................... IV-5

Demographics: Location ............................................................................ IV-9

Websites ................................................................................................... IV-12

E-lawyering & Virtual Law Practices .......................................................... IV-26

Blogs......................................................................................................... IV-34

Social Media ............................................................................................. IV-40

Law Firm Marketing .................................................................................. IV-49

Email Use .................................................................................................. IV-70

Communication Technologies .................................................................... IV-75

Index ........................................................................................................ IV-85

## Litigation Technology & E-Discovery (Volume V - Page 476)

Table of Contents ....................................................................................... V-i

About the Survey Reports .......................................................................... V-ii

Trend Report ............................................................................................. V-iv

Demographics ................................................................ V-1

Demographics: Practice Areas ............................................. V-5

Demographics: Location .................................................... V-9

Courtroom Practice ........................................................ V-12

Use of Mobile Devices in the Courtroom .................................. V-14

Courtroom Training ........................................................ V-20

Litigation Software: Availability ......................................... V-24

Litigation Software: Use .................................................. V-26

Litigation Software: Product Brand Names ................................. V-27

Litigation Software: Purchasing ........................................... V-28

Litigation Software: Useful Features ..................................... V-31

Electronic Filing ......................................................... V-34

Electronic Discovery ...................................................... V-41

Index ..................................................................... V-56

CONFIDENTIAL

TRCC-00014357

A371

# 2022
# American Bar Association
# Legal Technology Survey Report

# Online Research

**Sponsored by**



a division of Reed Elsevier Inc.
www.lexisnexis.com





**Joshua Poje, Research Specialist**
**Taylor Young, Research Specialist**

age group (36%), followed by respondents age 70 and older (30%). Fifty-one percent of associates are from the 30-39 year old group, followed by respondents age 25-29 (20%).

Seventy percent of respondents are male, and 29% are female. In terms of age, the gender gap is largest for respondents age 60 and older, with 80% of respondents being male, and 19% female. Among respondents under age 40, 56% are female and 44% are male.

**Research in the Law Firm**

Overall, respondents report that an average of 18% of their work time is spent conducting legal research. The percentages are 20% for solo respondents, 18% for firms of 100 or more attorneys, and 17% each for firms of 2-9 and 10-49 attorneys.

Respondents admitted to the bar less than 10 years (26%), associates (24%), respondents under age 40 (24%), and in general practice (20%), on average, spend the most amount of work time conducting legal research.

Respondents are asked how often they request legal research (both legal materials and non-legal materials that are case-related) from various categories of individuals. The following table shows regular and occasional requests for legal research by respondents for survey years 2019-2022:

| | 2022 | | 2021 | | 2020 | | 2019 | |
|---|---|---|---|---|---|---|---|---|
| | Regularly | Occasionally | Regularly | Occasionally | Regularly | Occasionally | Regularly | Occasionally |
| Other firm lawyers | 37% | 25% | 32% | 27% | 34% | 23% | 31% | 27% |
| Firm law clerks/ summer associates | 19% | 26% | 14% | 25% | 13% | 24% | 16% | 24% |
| Firm paralegals | 8% | 26% | 7% | 21% | 9% | 21% | 10% | 17% |
| Firm librarians | 4% | 12% | 6% | 12% | 4% | 10% | 4% | 10% |
| Outside researchers | 2% | 8% | 2% | 9% | 2% | 8% | 2% | 10% |

Firms of 10-49 attorneys (51%, compared with 37% in 2021, 46% in 2020, and 52% in 2019) most often report regularly requesting legal research from other firm lawyers, followed by firms of 100 or more attorneys (40%, compared with 50% in 2021, 48% in 2020, and 54% in 2019), and 2-9 attorneys (30%, compared with 38% in 2021, 37% in 2020, and 28% in 2019), compared to 3% of solo firms.

Nineteen percent of respondents from all firm sizes report regularly requesting legal research from firm law clerks/summer associates: 26% from firms of 10-49 attorneys (compared with 13% in 2021, 21% in 2020, and 32% in 2019), 17% from firms of 2-9 attorneys (compared with 16% in 2021, 11% in 2020, and 14% in 2019), 16% from firms of 100 or more attorneys (compared with 22% in 2021, 14% in 2020, and 22% in 2019), and 3% of solo respondents.

CONFIDENTIAL                                                                                          TRCC-00014367

A373

Eight percent of respondents report regularly requesting legal research from firm paralegals: 9% from firms of 10-49 attorneys (compared with 8% in 2021, 10% in 2020, and 14% in 2019), 9% from firms of 100 or more attorneys (compared to 7% in 2021, 13% in 2020, and 12% in 2019, and 9% in 2018), 8% from firms of 2-9 attorneys (compared with 7% in 2021, 8% in 2020, and 10% in 2019), in contrast with 0% of solo respondents (compared with 7% in 2021, 6% in 2020, and 3% in 2019).

Overall, 4% of respondents report regularly requesting legal research from firm librarians. Fifteen percent of respondents from firms of 100 or more attorneys regularly request legal research from firm librarians in contrast with 0% each from firms of 2-9 and 10-49 attorneys, and 3% of solo respondents.

Solo respondents are the most likely to report *occasionally* requesting legal research from outside researchers (22%, compared with 17% in 2021, 15% in 2020, and 16% in 2019), followed by 12% of respondents from firms of 2-9 attorneys, and 3% each of respondents from firms of 10-49 and 100 or more attorneys.

**Research Formats**
Respondents were asked how often they use particular formats for legal research. Respondents most frequently report using fee-based Internet/online services, followed by free Internet/online services, and print materials regularly for legal research. The following table shows respondents' regular and occasional usage of specific formats for their legal research for survey years 2019-2022:

| | 2022 | | 2021 | | 2020 | | 2019 | |
|---|---|---|---|---|---|---|---|---|
| | Regularly | Occasionally | Regularly | Occasionally | Regularly | Occasionally | Regularly | Occasionally |
| Fee-based Internet/ online services | 65% | 17% | 60% | 16% | 56% | 19% | 57% | 17% |
| Free Internet/ online services | 56% | 29% | 59% | 31% | 59% | 29% | 65% | 25% |
| Print materials | 35% | 33% | 37% | 34% | 40% | 31% | 44% | 32% |
| E-book[1] | 9% | 20% | 8% | 28% | 6% | 20% | * | * |
| Removable media | 5% | 15% | 8% | 19% | 7% | 18% | 6% | 17% |

[1] E-book reader was added to the 2020 questionnaire as a format for legal research.

CONFIDENTIAL                                    TRCC-00014368

A374

Sixty-five percent of all respondents regularly use fee-based Internet/online services for legal research and 17% occasionally use this resource. Seven percent of respondents report that they never use fee-based online services for legal research.



Respondents from firms of 2-9 attorneys are the most likely to report that they regularly use fee-based Internet/online services for legal research (77%), and solo respondents are the least likely (45%). Out of the leading primary practice areas, respondents who report the following as primary practice areas are the most likely to report regularly using Internet/online services that are fee-based: commercial litigation (88%), real estate litigation (86%), general practice (83%), litigation (82%), and personal injury (80%).

Respondents age 40-49 years old (87%, compared with 76% in 2021, 74% in 2020, and 75% in 2019) are the most likely to report regularly using fee-based online services for legal research, followed by 71% who are under age 40 (compared with 68% in 2021, 80% in 2020, and 74% in 2019), 70% of respondents age 50-59 years old (compared with 71% in 2021, 51% in 2020, and 57% in 2019), and 60% of respondents 60 years old and over (compared with 52% in 2021, 49% in 2020, and 51% in 2019).

CONFIDENTIAL                                                                      TRCC-00014369

A375

**2022 ABA Legal Technology Survey Report**                                    **Online Research**

Seven percent of respondents from firms of 2-9 attorneys report using print materials first when starting a research project, followed by 6% from firms of 10-49, 4% of solo attorneys, and 2% from firms of 100 or more attorneys.

**Use of Free Online Legal Research Resources**

Ninety-one percent of all respondents report that they use free online resources to conduct legal research.



Respondents were asked how satisfied they are with particular features or characteristics of free online legal research resources.  The following table shows respondents' level of satisfaction ("very" and "somewhat") with particular features or characteristics of free online legal research resources for years 2019-2022:

| | **2022** | | **2021** | | **2020** | | **2019** | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Very satisfied | Somewhat satisfied | Very satisfied | Somewhat satisfied | Very satisfied | Somewhat satisfied | Very satisfied | Somewhat satisfied |
| Ability to ascertain credentials of author or publisher | 19% | 66% | 17% | 64% | 13% | 68% | 16% | 66% |
| Availability of advanced search options | 10% | 52% | 11% | 49% | 11% | 49% | 13% | 52% |
| Depth of coverage | 12% | 56% | 12% | 62% | 10% | 62% | 11% | 63% |
| Ability to search multiple databases simultaneously | 10% | 42% | 9% | 45% | 10% | 43% | 13% | 39% |
| User-friendliness | 19% | 59% | 18% | 61% | 16% | 59% | 19% | 57% |
| Citator system to verify if a case is still good law | 7% | 30% | 7% | 27% | 6% | 29% | 8% | 28% |

CONFIDENTIAL                                                                                      TRCC-00014379

A376

The highest responses for five of the six characteristics are in the "somewhat satisfied" category: 66% with the ability to ascertain the credentials of the author or publisher, 59% are somewhat satisfied with user-friendliness, 56% with depth of coverage, 52% with the availability of advanced search options, and 42% with the ability to search multiple databases simultaneously.

Solo respondents are most likely to report being very satisfied with the following characteristic of free online legal research resources: ability to ascertain credentials of author or publisher (25%). Respondents from firms of 2-9 attorneys are most likely to report being very satisfied with the user-friendliness of free online legal research resources (32%), depth of coverage and ability to search multiple databases simultaneously (19% each), availability of advanced search options (17%), and citator system to verify if a case is still good law (12%).

Respondents who use free online resources were asked which free websites they use for legal research:

**Free Websites Used for Legal Research**



The following table shows the percentage of respondents who use the leading free websites for legal research by firm size for years 2021 and 2022:

| | Solo | | 2-9 attorneys | | 10-49 attorneys | | 100 or more attorneys | |
|---|---|---|---|---|---|---|---|---|
| | 2022 | 2021 | 2022 | 2021 | 2022 | 2021 | 2022 | 2021 |
| Government website | 63% | 68% | 57% | 61% | 62% | 68% | 68% | 63% |
| FindLaw | 67% | 49% | 55% | 67% | 59% | 59% | 52% | 55% |
| Cornell's Legal Information Institute | 50% | 43% | 52% | 44% | 53% | 70% | 59% | 69% |
| Google Scholar | 46% | 41% | 33% | 34% | 32% | 36% | 52% | 31% |
| Fastcase | 67% | 41% | 40% | 39% | 32% | 17% | 20% | 19% |
| Casetext | 13% | 13% | 15% | 30% | 24% | 15% | 29% | 21% |
| Casemaker | 38% | 21% | 10% | 20% | 14% | 17% | 5% | 3% |

Respondents who use free online resources to conduct legal research were asked which one free website they use most often for legal research.   The following chart shows the leading websites reported by respondents as used most often for legal research for years 2019-2022:



Thirty-three percent of respondents from firms of 2-9 attorneys report using government websites as the free website they use most often for legal research, followed by 30% from firms of 100 or more attorneys, and 19% from firms of 10-49 attorneys, in contrast with 0% of solo firms.

Twenty-nine percent of solo attorneys report Cornell's Legal Information Institute as the free website they use most often for legal research, followed by 25% from firms of 10-49 attorneys, 22% from firms of 2-9 attorneys, and 20% from firms of 100 or more attorneys.

Thirty-three percent of solo attorneys report FindLaw as the free website they use most often for legal research, followed by 21% from firms of 10-49 attorneys, 17% from firms of 100 or more, and 14% from firms of 2-9 attorneys.

Fifteen percent of attorneys from firms of 100 or more report Google Scholar as the free website they use most often for legal research, followed by 13% from firms of 10-49 attorneys, 9% from firms of 2-9 attorneys, and 8% of solo attorneys.

Twenty-five percent of respondents from solo firms report Fastcase as the free website they use most often for legal research, followed by 14% of respondents from firms of 2-9 attorneys, 11% of respondents from firms of 10-49, and 4% from firms of 100 or more attorneys.

Thirty-five percent of respondents report accessing free websites for legal research via a bar association (compared with 41% in 2021, and 47% in 2020 and 2019).  Solo firms are most likely to access free websites via a bar association (67%, compared with 58% in 2021, 64% in 2020, and 65% in 2019), followed by 40% from firms of 10-49 attorneys (compared with 32% in 2021, 34% in 2020, and 29% in 2019), 38% from firms of 2-9 attorneys (compared with 48% in 2021, 54% in 2020, and 51% in 2019), in contrast with 17% from firms of 100 or more attorneys.

CONFIDENTIAL                                                                 TRCC-00014381

A378

# **EXHIBIT 90**

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Case 1:20-cv-00613-SB   Document 546-1   Filed 09/14/23   Page 31 of 67 PageID #: 103270

# **EXHIBIT 91**

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# **EXHIBIT 92**

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# **EXHIBIT 93**

Case 1:20-cv-00613-SB   Document 546-1   Filed 09/14/23   Page 36 of 67 PageID #: 103275

# The real impact of using artificial intelligence in legal research

A study conducted by the attorneys of the
National Legal Research Group, Inc.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TRCC-00699600

A386

# Executive Summary

- This study explores the effect that using artificial intelligence (A.I.)-powered legal research platforms has on the efficiency and quality of research results.

- The study compared attorneys using a traditional legal research platform, LexisNexis®, and Casetext CARA A.I. to complete actual legal research exercises.

- The study was conducted by 20 lawyers from the National Legal Research Group, the country's premier provider of legal research and writing services for law firms and attorneys. The attorney participants from the National Legal Research Group focus almost exclusively on legal research. These attorneys had an average of 25 years in practice.

- Attorneys using Casetext CARA A.I. search finished research projects on average 24.5% faster than attorneys using traditional legal research. For the average attorney, switching to Casetext and using CARA A.I. would save them 132-210 hours of legal research per year.

- Attorneys using Casetext CARA A.I. to search also found that their results were on average 21% more relevant than those found doing traditional legal research. Indeed, results found on Casetext were on average better in every dimension of relevance judged in the study, including legal relevance, factual relevance, similar parties, jurisdiction, and procedural posture.

- Nearly half (45%) of the attorneys believed they would have missed important or critical precedents if they had only done traditional legal research instead of also using Casetext CARA A.I. to find cases.

- Three quarters (75%) of the attorneys preferred their research experience on Casetext over LexisNexis®, even though it was only their first experience researching with Casetext.

- Every attorney in the study (100%) believed that, if they were to use another research system as their primary research tool, having access to Casetext as well would be helpful.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                                    TRCC-00699601

A387

**Table of contents**

| | |
|---|---|
| Executive Summary | 1 |
| Introduction | 2 |
| Methodology | 3 |
| Results | 4 |
| 1. Attorneys complete their research 24.5% faster using Casetext CARA A.I. compared to LexisNexis® | 4 |
| A. Attorneys with fewer years of experience showed even greater efficiency gains by using Casetext CARA A.I. compared to those with 20+ years in practice | |
| B. Attorneys who use CARA A.I. will save between 132 to 210 hours a year on legal research | 5 |
| 2. Attorneys using Casetext CARA A.I. ran 4.4x fewer searches | 6 |
| 3. Attorneys using Casetext CARA A.I. rated search results 20.8% more relevant than those on LexisNexis® | 6 |
| 4. Nearly half of the attorneys (45%) believed they would miss important cases if they didn't use Casetext CARA A.I. | 7 |
| 5. Overall, most attorneys preferred their experience researching with Casetext CARA A.I. over LexisNexis® | 8 |
| 6. Attorneys who already use LexisNexis® or Westlaw would want to have access to Casetext CARA A.I. as well | 9 |
| Conclusion | 9 |

# Introduction

Conducting legal research online is a central and important task to most attorneys' everyday lives. The average lawyer spends somewhere between 16% to 35% of his or her time at work doing legal research.[i]

However, online legal research has changed little since its appearance more than two and a half decades ago. Today, as then, attorneys search for relevant case law and other authorities using keyword-driven search, whether through "natural language" searches or by using "terms and connectors" that add more specificity to one's searching. Moreover, while legal research platforms vary in some specifics of their algorithms, they all rely on some form of "wisdom of the crowd" to "boost" popular cases — those that have been cited to or downloaded the most. The limitations with this type of search are well known to the countless attorneys who have spent hours crafting long boolean strings in an attempt to find cases that, while less popular, are most relevant to the specific litigation at hand.

With the emergence of artificial intelligence (A.I.) technologies, including natural language processing and machine learning, it is now possible to search for and rank information in dramatically different ways. Instead of using only keywords to find results, computer systems can now read entire documents from a litigation record (like the complaint or a brief), and take into account the information therein to create a more targeted search. The results of such searches are also not ranked by "wisdom of the crowd," but instead by the "wisdom of your matter" — information extracted from a complaint or brief is used to rank search results

[i] American Bar Association, 2017 Legal Technology Survey Report, Vol. V: Online Research; Steven A. Lastres, Rebooting Legal Research in a Digital Age (2013), http://www.lexisnexis.com/documents/pdf/20130806061418_large.pdf

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    TRCC-00699602

A388

by similarity to the facts, legal issues, and jurisdiction of the specific matter an attorney is working on.

This is precisely how Casetext CARA A.I., a matter-based legal research system, works. A researcher uploads a legal document to CARA A.I. and then enters a simple search query. CARA A.I. uses the information in the document to provide tailored search results, ranked by their relevance to the specific matter addressed in the document.

This study by the attorneys of the National Legal Research Group, Inc., tests whether and to what extent this new form of legal research makes a difference. In short, the answer is "yes": attorneys who used Casetext CARA A.I. performed their research tasks 24.5% faster and rated the relevance of their results 20.8% higher than their research on a traditional, keyword-driven legal research system (LexisNexis®). These results imply that, by using "wisdom of your matter" search technology instead of traditional "wisdom of the crowd," most attorneys will spend somewhere between 132 to 210 hours less a year on legal research, while also finding more relevant cases and providing better outcomes for clients.

## Methodology

The study was conducted by 20 attorneys from the National Legal Research Group (NLRG), the nation's leading provider of legal research and writing services to law firms big and small. The majority of the attorneys were very experienced, having on average 25.3 years in the legal profession. Because these attorneys focus exclusively on legal research in their roles at NLRG, they are specifically skilled at that task. The methodology for this study was originally designed by Casetext in consultation with NLRG.

Each attorney performed three diverse research exercises, covering a copyright dispute, an employment law issue, and an insurance coverage question. With each research exercise, the attorneys were given litigation materials from a real litigation (complaints or briefs), and were asked to review those materials to familiarize themselves with the litigation. They were then given a research task, such as "find ten cases that help address the application of the efficient proximate cause rule discussed in the memorandum in support of the motion for summary judgment."

Participants using CARA A.I. were able to upload the litigation materials they were given to CARA A.I. as part of their matter-based search. Some participants using Casetext CARA A.I. were given sample search terms (specifically, "copyright" for the copyright case, "employee independent contractor" for the employment case, and "proximate cause" for the insurance case), but most participants formulated their own search terms.

The attorneys involved were given a brief, 20-minute live or pre-recorded training, which provided instructions for conducting the study as well as how to use Casetext CARA A.I. for legal research. A brief introduction to LexisNexis® was provided; a basic familiarity with LexisNexis® was presumed although the participants had different levels of actual experience using that platform.

The attorneys completed each of the three research exercises, doing one or two using Casetext and the remaining one or two in LexisNexis®. The assignments were randomly distributed, so roughly the same number of research assignments of each type were completed using each tool. As a result, 60 distinct research assignments were completed

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    TRCC-00699603

A389

over the course of this study, approximately thirty using Casetext and thirty using LexisNexis®.

During the research task, each attorney was asked to

- keep time of how long it took to complete each research task,

- record how relevant they believed each case result they found to be, both based on the case result's overall relevance and specifically on the result's relevance on the legal issues, factual issues, the similarities of the party to the dispute, the jurisdiction, and the procedural posture, and

- download their research histories from each platform.

Additionally, the participants were asked survey questions about their overall impressions of their research experiences on each tool immediately after they completed their research tasks. After all the responses were collected, Castext compiled the data and prepared this report.

## Results

### 1. Attorneys complete their research 24.5% faster using Casetext CARA A.I. compared to LexisNexis®

Across all three research exercises, researchers using Casetext CARA A.I. completed their research tasks on average 24.5% faster than on LexisNexis®. Although there was some slight variation between research projects, this result was consistent across research projects (the insurance topic was 20.5% faster on Casetext, while the employment topic was 28.7% faster on Casetext).





HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                        TRCC-00699604

A390

## A. Attorneys with fewer years of experience showed even greater efficiency gains by using Casetext CARA A.I. compared to those with 20+ years in practice

The attorneys participating in the study had an overall average of 25.3 years of experience. Researchers with fewer years in practice tended to have a larger efficiency gain (researching 29.1% faster using Casetext CARA A.I. than on LexisNexis®) compared to those with more than twenty years legal experience (16.62%).





## B. Attorneys who use CARA A.I. will save between 132 to 210 hours a year on legal research

The impact of researching 24.5% faster is substantial for most attorneys. According to the American Bar Association's 2017 Legal Technology Survey, attorneys spend an average of 16.3% of their working hours conducting legal research; solo attorneys, 18.1%; younger attorneys, with 10 or fewer years of experience, 26%. According to a separate study, young associates (with less than two years of practice) at bigger firms spend 35% of their time conducting legal research.[2] Given that the average lawyer works for 66 hours a week for 50 weeks a year, attorneys switching to Casetext CARA A.I. could expect to save between 132 to 210 hours every year in legal research time.

**Number of hours saved per year, depending on percent of time doing legal research and average hours worked per year**

| | Average hours worked each week over 50-week year (billable and non-billable) | | | | |
|---|---|---|---|---|---|
| | 30 hours a week (1500 a year) | 40 hours a week (2000 a year) | 50 hours a week (2500 a year) | 60 hours a week (3000 a year) | 70 hours a week (3500 a year) |
| 10% | 37 | 49 | 61 | 73 | 86 |
| 15% | 55 | 73 | 92 | 110 | 129 |
| 20% | 73 | 98 | 122 | 147 | 171 |
| 25% | 92 | 122 | 153 | 184 | 214 |
| 30% | 110 | 147 | 184 | 220 | 257 |
| 35% | 129 | 171 | 214 | 257 | 300 |
| 40% | 147 | 196 | 245 | 294 | 343 |
| 45% | 165 | 220 | 276 | 331 | 386 |

% time legal researching

[2] American Bar Association, 2017 Legal Technology Survey Report, Vol. V: Online Research.
[3] Steven A. Lastres, Rebooting Legal Research in a Digital Age (2013), http://www.lxisnexis.com/documents/pdf/20130806061418_large.pdf
[4] See, e.g. Career Igniter, How Many Hours A Week Does A Lawyer Work? (2018) (citing to survey of New York attorneys), https://www.careerigniter.com/questions/how-many-hours-a-week-does-a-lawyer-work/

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

A391

## 2. Attorneys using Casetext CARA A.I. ran 4.4x fewer searches

To complete the research task of finding ten relevant cases, attorneys using LexisNexis® needed to run an average of 6.55 searches. By contrast, attorneys using Casetext CARA A.I. needed only an average of 1.5 searches to complete their research task. Attorneys using LexisNexis® thus required 337% more searches (or 4.4 times more searches) than attorneys using Casetext CARA A.I.



**Average number of searches to complete a research assignment**

LexisNexis®: 6.55
Casetext: 1.5

Comparing the search histories of the research assignments using Casetext CARA A.I. and LexisNexis® sheds light on why researchers using LexisNexis® needed to run more searches on LexisNexis®. Researchers using Casetext started by uploading the relevant legal document to CARA A.I. and adding simple searches (like "efficient proximate cause"), and usually found everything they needed with their first search. By contrast, attorneys using LexisNexis® ran increasingly complex searches throughout their research sessions in an attempt to find relevant results. Examples of these searches include:

- "efficient proximate cause" "chain of causation" /10 weather /10 wind or wind-driven /10 rain and Construction /5 defect defective

- copyright w/5 infringe or infringement or infringing w/20 song w/7 lyrics w/30 theme or syntax unique or phraseology or original

## 3. Attorneys using Casetext CARA A.I. rated search results 20.8% more relevant than those on LexisNexis®

The attorneys in the study rated the relevance of each of the cases they discovered through traditional searching on LexisNexis® and through searching with Casetext CARA A.I. The attorneys assigned an overall relevance score between 1 (not very relevant) to 5 (extremely relevant), as well as rating specific attributes of relevance (factual background, legal issues, similar parties, jurisdiction, and procedural posture) each on a scale of 1 to 5.

Overall, the attorney participants rated their Casetext CARA A.I. results on average 20.8% better than the ones obtained through searching on LexisNexis®. The attorneys also preferred the Casetext CARA A.I. results across every dimension of relevance.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    TRCC-00699606

A392



## 4. Nearly half of the attorneys (45%) believed they would miss important cases if they didn't use Casetext CARA A.I.

The attorneys were surveyed afterwards about whether they would have "missed important cases had [they] only researched with LexisNexis®." Nine of the 20 survey participants chose "yes."



Some attorneys added comments that give color as to why they believe they might have missed cases without using CARA A.I.'s functionality. Most of the comments focused on the inefficiencies and other challenges with traditional Boolean searching. One attorney noted that "the A.I. function helped me to zero in on 10 relevant cases more quickly that when I just did straight Boolean searches for cases." Similarly, another participant noted that "Casetext places the researcher with a closer starting point to find relevant material because it allows instant entry into the authority on point, so that locating relevant decisions is not delayed by inefficient or non-optimal search strings."

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    TRCC-00699607

A393

That said, the majority of attorneys (11/20, or 55%) felt that they would not have missed important cases on LexisNexis®. One attorney explained that "[s]everal of my results with Lexis were certainly different than what came up with Casetext, but the most relevant cases appeared in both searches."

## 5. Overall, most attorneys preferred their experience researching with Casetext CARA A.I. over LexisNexis®

After completing their research exercises, the attorney participants were asked which research experience they preferred overall. Three quarters (75%) of the attorneys surveyed responded that they preferred the Casetext CARA A.I. experience.



**Which research experience did you prefer overall?**

- Casetext CARA A.I.
- LexisNexis®

Among the factors listed for why researchers preferred Casetext CARA A.I., there were a few consistent themes:

- **Ease of use and simplicity**
  "The search query was much more simple given the AI component"
  "It was easier to use and listed relevant cases"

- **Quality of search results**
  "The A.I. function on Casetext produced better lists of ranked relevant cases, thereby lessening the time it took to carry out [the research assignment]"
  "[Casetext] was much better. I was impressed with the cases that Casetext turned up."

- **Speed to finding relevant results**
  "Casetext required less search terms, less time, and less filtering than LexisNexis®. The material was comprehensible and well-formatted. It also took half the time to find relevant cases that were extremely relevant."
  "Nothing is more frustrating than expending a lot of time trying to find the relevant law"
  "Casetext was faster"

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    TRCC-00699608

A394

For those attorneys who chose LexisNexis®, the reasons listed were:

- "Familiarity with site; easier to toggle from case back to the search result list"
- "Easier to use and to know where I was"
- "Easier to go to the part of the case I was interested in"

## 6. Attorneys who already use LexisNexis® or Westlaw would want to have access to Casetext CARA A.I. as well

The attorneys at NLRG all use Westlaw primarily and LexisNexis® sometimes as their primary research tools. When asked whether they believed "that having access to Casetext as well as your primary research tool would be helpful," every attorney participant (100%) responded "yes."

One of the attorneys noted that he would want more than one tool for "cross-referencing"; "Casetext can help me find relevant cases more quickly, and CARA A.I. also helps me develop better search filters quickly to find the results I need if necessary." Other attorneys had similar comments, noting that Casetext CARA A.I. "seems to better focus the research," "does a really great job of finding relevant cases," would be "very useful for finding factually similar cases," is "a great tool to use to quickly zero in on the most relevant cases," and "was faster than Lexis and thus saved time and provided interesting additional information."

At least some attorneys are not ready to give up their current primary research tool entirely. One attorney noted that although Casetext CARA A.I. "would be helpful to have," he "know[s] Westlaw and it would be my primary tool at this point."

## Conclusion

Artificial intelligence, and specifically the ability to harness the information in the litigation record and tailor the search experience accordingly, substantially improves the efficacy and efficiency of legal research. Currently, Casetext CARA A.I. is the only legal research technology with that ability. In this study, lawyers leveraging A.I. technology were able to complete their research tasks 24.5% faster, receive results they believed to be 21% more accurate, and do so with 4.4 times fewer searches. These researchers were also able to do so with just twenty minutes of training and no previous research experience with Casetext CARA A.I. This demonstrates the substantial impact that leveraging advanced (but easy-to-use) artificial intelligence technology will have on attorney research quality.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                                        TRCC-00699609

A395

# **EXHIBIT 94**

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# **EXHIBIT 95**

**THIS EXHIBIT HAS BEEN
REDACTED IN ITS ENTIRETY**

A399

Case 1:20-cv-00613-SB    Document 546-1    Filed 09/14/23    Page 50 of 67 PageID #: 103289

# EXHIBIT 96

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Case 1:20-cv-00613-SB    Document 546-1    Filed 09/14/23    Page 52 of 67 PageID #: 103291

# EXHIBIT 97

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 98

A404

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Case 1:20-cv-00613-SB Document 546-1 Filed 09/14/23 Page 56 of 67 PageID #: 103295

# **EXHIBIT 99**

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

Case 1:20-cv-00613-SB   Document 546-1   Filed 09/14/23   Page 58 of 67 PageID #: 103297

# **EXHIBIT 100**

**THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY**

Case 1:20-cv-00613-SB   Document 546-1   Filed 09/14/23   Page 60 of 67 PageID #: 103299

# EXHIBIT 101

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# **EXHIBIT 102**

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Case 1:20-cv-00613-SB   Document 546-1   Filed 09/14/23   Page 64 of 67 PageID #: 103303

# EXHIBIT 103

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Case 1:20-cv-00613-SB Document 546-1 Filed 09/14/23 Page 66 of 67 PageID #: 103305

# EXHIBIT 104

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE
CENTRE GMBH and WEST PUBLISH-
ING CORP.,

          *Plaintiffs*,

      v.

ROSS INTELLIGENCE INC.,

          *Defendant*.

No. 1:20-cv-613-SB

---

Jack B. Blumenfeld, Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Dale M. Cendali, Eric A. Loverro, Joshua L. Simmons, KIRKLAND & ELLIS LLP, New York, New York.

*Counsel for Plaintiffs*

David E. Moore, Bindu A. Palapura, Andrew L. Brown, POTTER ANDERSON & COR-ROON LLP, Wilmington, Delaware; Gabriel M. Ramsey, Warrington Parker, Joachim B. Steinberg, Jacob Canter, Christopher J. Banks, Shira Liu, Margaux Poueymirou, Anna Z. Saber, CROWELL & MORING LLP, San Francisco, California; Mark A. Klapow, Lisa Kimmel, Crinesha B. Berry, CROWELL & MORING LLP, Washington, D.C.

*Counsel for Defendant*

---

**MEMORANDUM OPINION**

September 25, 2023

---

A418

BIBAS, *Circuit Judge*, sitting by designation.

Facts can be messy even when parties wish they were not. But summary judgment is proper only if factual messes have been tidied. Courts cannot clean them up.

Thomson Reuters, a media company, owns a well-known legal research platform, Westlaw. It alleges that Ross, an artificial intelligence startup, illegally copied important content from Westlaw. Thomson Reuters thus seeks to recover from Ross. Both sides move for summary judgment on a variety of claims and defenses. But many of the critical facts in this case remain genuinely disputed. So I largely deny Thomson Reuters's and Ross's motions for summary judgment.

## I. BACKGROUND

Many facts are disputed, but the basic story is not. Thomson Reuters's Westlaw platform compiles judicial opinions according to its Key Number System. That system organizes opinions by the type of law. Westlaw also adds "headnotes": short summaries of points of law that appear in the opinion. Each headnote is tied to a key number. Clicking on the headnote takes the user to the corresponding passage in the opinion. Clicking on the key number takes the user to a list of cases that make the same legal point. Westlaw has a registered copyright on its "original and revised text and compilation of legal material," which includes its headnotes and Key Number System. D.I. 255-7, at 8.

Ross Intelligence is a legal-research industry upstart. It sought to create a "natural language search engine" using machine learning and artificial intelligence. D.I. 310, at 4. It wanted to "avoid human intermediated materials." *Id.* Users would enter

A419

questions and its search engine would spit out quotations from judicial opinions—no commentary necessary.

To leverage machine learning, Ross needed legal material to train the machine. At first, it tried to get a license to use Westlaw, but Thomson Reuters does not let users use Westlaw to develop a competing platform. So Ross turned to a third-party legal-research company, LegalEase Solutions. (LegalEase, in turn, hired a subcontractor, Morae Global. But the parties do not distinguish between LegalEase's and Morae's conduct, so I will refer only to LegalEase.)

Ross told LegalEase to create memos with legal questions and answers. The questions were meant to be those "that a lawyer would ask," and the answers were direct quotations from legal opinions. D.I. 310, at 4. The so-called Bulk Memo Project produced about 25,000 question-and-answer sets. Each memo had one question plus four to six answers and rated each answer's relevance. LegalEase created the memos both manually and, for a time, with the help of a text-scraping bot.

Ross says it converted the LegalEase memos into usable machine-learning training data. That involved first encoding the written language as numerical data and then running the data through a "Featurizer" that "performed various mathematical … calculations on the text." D.I. 272, at 8.

The core of this suit stems from the Bulk Memo Project. Thomson Reuters says the questions were essentially headnotes with question marks at the end. Ross admits that the headnotes "influence[d]" the questions but says lawyers ultimately drafted them, instead of copying them. D.I. 272, at 4–5. Though Thomson Reuters

A420

contends that all 25,000 are copies, it has moved for summary judgment on just 2,830. It says LegalEase's copying of those 2,830 is undisputed because Ross's own expert admitted it.

Beyond the Bulk Memo Project, LegalEase provided Ross with two other relevant services. First, LegalEase sent Ross a list of 91 legal topics from Westlaw's Key Number System. Ross admits that it "considered" these topics when creating its own set of 38 topics that were used in an experimental "Classifier Project." D.I. 272, at 9–10. But it ultimately abandoned the Project. LegalEase also sent Ross 500 judicial opinions, including Westlaw's headnotes, key numbers, and other annotations. Ross says it did nothing with these opinions.

In this opinion, I address five summary-judgment motions. Thomson Reuters has moved for summary judgment on its copyright-infringement claim (limited to the 2,830 memos mentioned), and both sides have moved for summary judgment on Ross's fair-use defense. Thomson Reuters has also moved for summary judgment on its tortious-interference-with-contract claim, and Ross has counter-moved on its preemption defense to that claim.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could resolve it in favor of either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). And a fact is "material" if it "could affect the outcome." *Lamont v. New Jersey*,

A421

637 F.3d 177, 181 (3d Cir. 2011). I view the facts in the light most favorable to the nonmovant. *Id.* at 179 n.1.

## II. COPYRIGHT INFRINGEMENT

A copyright-infringement claim has three elements: ownership of a valid copyright, actual copying, and substantial similarity. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 561–62 (3d Cir. 2002). Here, all three elements are at least partly disputed. But the dispute over the second element is legal, so I can decide it now. And because Ross hired LegalEase to do the copying (if there was any), Thomson Reuters also couches its argument in terms of direct, contributory, and vicarious liability. So after addressing the three infringement elements, I will consider each of these liability theories as well.

### A. The parties still dispute breadth and validity of Westlaw's copyright

Ross bets a good chunk of its infringement defense on Westlaw's being registered as a compilation. Ross's theory is this: because Westlaw has just one copyright registration, comprising hundreds of thousands of headnotes and key numbers, copying a mere few thousand is not enough for infringement.

Ross's gamble does not pay off. A copyright in a compilation extends to the copyrightable pieces of that compilation. *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 538–39 (3d Cir. 1986) (abrogated on other grounds) ("The fact that a registrant denominates the material as a compilation does not in itself signify that the constituent material is not also covered by the copyright."). And when the author of a compilation presents facts through his own original words, "[o]thers may copy the underlying facts

5

A422

from the publication, but not the precise words used to present them." *Feist*, 499 U.S. at 348. Plus, though a plaintiff must have a registration to bring a federal suit for infringement, it can sue on all protected components of that one registration. 2 David Nimmer, *Nimmer on Copyright* § 7.16(B)(5)(c) (2023).

The cases Ross cites are the exceptions that prove the rule. In those cases, the copyright holder owned *only* the compilation. In one case cited, the plaintiff had a compilation copyright in the organization and selection of state legal forms. *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Grp.*, 463 F.3d 478, 480 (6th Cir. 2006). Though the underlying entries were in the public domain, the organizer's exact selection and arrangement were copyrightable. *Id.* Even though the defendant copied and compiled 61% of the forms from the plaintiff's compilation, there was no infringement because the defendant's compilation was not the "same selection." *Id.* at 483. So in these cases, the plaintiffs owned "thin" copyrights: other than their selection and arrangement choices, none of their compilations' components were protectable.

Here, only the Key Number System aligns with the compilation caselaw: It is Westlaw's method of organizing and arranging judicial opinions. So Thomson Reuters could have a valid copyright in this method of arrangement but not in the underlying opinions. That said, to qualify for copyright protection, "the manner of rearranging" and organizing the unprotectable underlying works "must constitute more than a minimal contribution." Nimmer, *supra*, § 3.03(A). This "threshold for originality is low," but the parties dispute facts needed to figure out if the System clears the bar. *Id.* § 3.04(B)(2)(a).

6

A423

Thomson Reuters alleges that employees make creative organizing decisions to update and maintain the System and that the System is unique among its competition. But Ross replies that the System is unoriginal because most of the organization decisions are made by a rote computer program and the high-level topics largely track "common doctrinal topics taught as law school courses." D.I. 310, at 3. And although Thomson Reuters's registered copyright could protect its Key Number System, the jury needs to decide its originality, whether it is in fact protected, and how far that protection extends.

By contrast, the headnotes are not aptly described by the compilation caselaw. Headnotes are just short written works, authored by Thomson Reuters, so they could receive standalone, individual copyright protection. *See* 17 U.S.C. § 103. This distinguishes Thomson Reuters's copyright in its headnotes from the "thin," compilation-only copyrights in Ross's examples. So I must consider the alleged headnote copyright infringement at the level of each individual headnote, rather than at the level of the entire Westlaw compilation.

That said, Thomson Reuters's allegedly original expression in its headnotes still reflects uncopyrightable judicial opinions. So the strength of its copyright depends on how much the headnotes overlap with the opinions. Closely hewing differs from copying: If a headnote merely copies a judicial opinion, it is uncopyrightable. But if it varies more than "trivial[ly]," then Westlaw owns a valid copyright. *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976).

The parties dispute how Thomson Reuters develops its headnotes and how closely those headnotes resemble uncopyrightable opinions. Thomson Reuters points to evidence that its headnotes are original representations of its attorney-editors' views—summarizing the most important case facts, highlighting key issues, and describing the holdings. Ross, though, presents evidence that Thomson Reuters's protocols required headnotes to "follow or closely mirror the language of judicial opinions." D.I. 272, at 13. This leaves a genuine factual dispute about how original the headnotes are. And this fact will serve double duty: it affects the strength and extent of Thomson Reuters's copyright, and it also goes to whether Ross was copying the headnotes or the opinions themselves.

In sum, I cannot decide the first element of Thomson Reuters's copyright infringement claim at summary judgment.

### B. As a matter of law, Ross actually copied at least portions of the Bulk Memos

Next, Thomson Reuters must show that Ross (or LegalEase) "actually copied" its copyrighted work. "Actual copying focuses on whether the defendant did, in fact, use the copyrighted work in creating his own." *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018). If Ross "truly created [its] work independently, then no infringement has occurred, irrespective of similarity." *Id.* There are two ways to show actual copying: Thomson Reuters can present direct evidence. Or it can present circumstantial evidence demonstrating that Ross or LegalEase had access to the copyrighted work and that their work contains similarities probative of copying. *See id.*

Thomson Reuters presents both. LegalEase admitted to copying at least portions of the headnotes directly. As for circumstantial evidence, Ross does not dispute that LegalEase had access to Westlaw, which included access to headnotes. Though the similarities between Thomson Reuters's and Ross's work might not be substantial (that is a jury question), no reasonable jury could say that the similarities are not at least probative of some copying. And while Ross argues that any copying that occurred was miniscule in the grand scheme of the compilation, that framing misses the mark for the reasons given above. So Thomson Reuters has satisfied the actual-copying element as a matter of law.

### C. Substantial similarity must go to the jury

The last element of direct infringement is substantial similarity. Substantial similarity asks whether "the ordinary observer, unless he set out to detect the disparities [in the two works], would be disposed to overlook them, and regard their aesthetic appeal as the same." *Id.* at 174 (alteration in original) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (Hand, J.)). In other words, I ask whether an ordinary person would view the two works as basically the same.

This case features several wrinkles in the substantial-similarity analysis. First, the Bulk Memos could appear similar to Thomson Reuters's headnotes because they share an underlying source: uncopyrightable judicial opinions. But I must determine whether Ross's work is substantially similar to Thomson Reuters's *protected* expression, not just the opinions. Second, we contextualize the ordinary-observer test. *See id.* at 172 n.3. And here, the ordinary consumers of both parties' products are lawyers.

9

A426

So I should be attuned to differences a lawyer might notice that a layperson might not. Finally, the Third Circuit "has [generally] rejected the usefulness of experts in answering" the substantial-similarity question. *Id.* at 172. I thus do not give much weight to the parties' dueling expert reports on this issue.

Substantial similarity "is usually an extremely close question of fact, which is why … summary judgment has traditionally been disfavored in copyright litigation." *Id.* at 171 (internal quotation marks omitted). Thomson Reuters argues that it can overcome this presumption because Ross's expert allegedly made an "admission." But this so-called admission does not get Thomson Reuters over the summary-judgment line.

The "admission" goes as follows: Ross's expert compiled the 25,000-plus Bulk Memo questions. She then paired each question with the Westlaw headnote most like it and paired each headnote with the judicial opinion passage most like the headnote. Next, on a scale of one to five, she rated two things: the similarity between the question and the headnote and the similarity between the headnote and the judicial opinion passage. The "admission" Thomson Reuters refers to is the 2,830 instances in which a question was rated as a close match to a post-1927 headnote, but that headnote was rated as not a verbatim or near-verbatim copy of judicial opinion text. (Copyrighted works created before 1927 are in the public domain and are not protected.)

Ross disagrees, breaking the headnotes into three groups. First, it says Thomson Reuters did not identify 1,623 of these 2,830 headnotes in its supplemental response, so they are not part of the case. Second, and more substantively, Ross says 1,019 questions are nearly identical to judicial opinions. Finally, it says nothing about

the remaining 188 entries, other than that they make up a tiny fraction of Westlaw's compilation. I take each group in turn.

First, I agree that Thomson Reuters did not identify the 1,623 headnotes. In an earlier Order, I reminded Thomson Reuters of its burden to show infringement and told it to identify "what, precisely, was copied." D.I. 201, at 1. Its response identified thousands of allegedly copied headnotes. But these 1,623 headnotes were not among those specifically identified. Thomson Reuters argues that it identified the Bulk Memos in which these headnotes were copied and that they incorporate by reference the cases in which the headnotes appear. But that is not precise enough. Producing the cases with the allegedly copied headnotes was what prompted Ross's objection and my Order to be more specific in the first place. So Thomson Reuters is limited (for purposes of summary judgment) to the 1,207 headnotes specifically identified.

There are genuine factual disputes over the second group. In her report, the Ross expert said each of these 1,019 questions overlapped a great deal with a headnote and that the headnote was not identical to opinion text. But she did not—and could not—take a position on whether the headnotes and questions were "substantially similar" under the ordinary-observer test. And more specifically, the report does not pinpoint how much similarity came solely from Thomson Reuters's protected expression.

Plus, Ross offers contrary evidence for these 1,019 entries. It shows that either the judicial opinion text is identical to the headnote or that the opinion text is more similar to the Bulk Memo question than the headnote is to the question. This supports the contention that similarity between Ross's and Thomson Reuters's work

11

A428

stems from uncopyrightable judicial opinions, rather than from Thomson Reuters's original expression.

Thomson Reuters objects that Ross did not disclose its expert's methodology. But substantial similarity is not especially scientific: the question boils down to "good eyes and common sense." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684 (2014). This makes Ross's mode of argument valid. Because both sides have lobbed conflicting expert reports (which I give little weight anyways) at each other and because a reasonable jury could agree with either side, I must send the question of substantial similarity for these 1,019 entries to the jury, where it typically belongs.

Finally, Ross does not object to the remaining 188 entries. Though substantial similarity is usually a close factual question, I will not review each of the 188 entries and make arguments for Ross. And for the reasons above, its reliance on Westlaw's copyright being solely in a compilation is misplaced. So each of these headnotes is substantially similar to its associated Bulk Memo question. But as noted above, whether this copying constitutes infringement depends on whether these headnotes are protected expression. And that rests on factual determinations the jury still must make. Plus, to recover from Ross, Thomson Reuters must win on one of its theories of liability and defeat Ross's fair-use defense.

### D. All of Thomson Reuters's theories of infringement liability must go to trial

*1. Direct liability.* Thomson Reuters's theory of Ross's direct liability is uncontested: Ross hosted copies of the Bulk Memos on its servers, copied the content into its machine-learning "portal," transmitted another copy to a different server, created

12

A429

more copies on employees' computers, then processed and labeled them by copying parts into another document. D.I. 250, at 13. Simply hosting a copy on a server might not seem like copying, but it is. *See MAI Sys. Corp. v. Peak Comput. Inc.*, 991 F.2d 511 (9th Cir. 1993); Nimmer, *supra*, § 8.08(A).

The unstated premise of this theory is that Ross violated Westlaw's reproduction right by making copies of the Bulk Memos. So for Thomson Reuters to succeed on direct liability, LegalEase's Bulk Memos must be unauthorized copies of protected expression. For making a copy of a non-copy is not copyright infringement. But because whether the Bulk Memos copied protected expression depends on factual determinations the jury must make, I cannot resolve direct liability at summary judgment.

*2. Contributory liability.* For Ross to be contributorily liable, Thomson Reuters must show that Ross (1) knew LegalEase was infringing and (2) materially contributed to or induced that infringement. *See Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 387 (3d Cir. 2016). The parties dispute both prongs.

At best, Thomson Reuters has strong evidence that Ross knew LegalEase was using Westlaw. But knowledge or even encouragement to use Westlaw is not enough. One might expect a legal-research project to be completed using Westlaw, but merely using the service is not infringement. Plus, Ross points to evidence that it did not know LegalEase was infringing and never specifically instructed LegalEase to use Westlaw. Thomson Reuters has not done enough to prove that Ross knew about and

13

materially contributed to LegalEase's infringement. So this is not proper for summary judgment.

Thomson Reuters tries to bridge the gap between use and infringement by arguing that LegalEase breached its Westlaw license and Ross knew it. Once LegalEase breached the license, Thomson Reuters says, everything it did on Westlaw was copyright infringement. So Ross's knowledge of LegalEase's breach confers on Ross knowledge of the infringement. This argument mangles the interaction between licenses and copyright infringement.

In many copyright cases, licenses are used as a defense. In cases involving a license defense, one party claims infringement, and the other side claims they had permission through the license. But if the side claiming permission exceeded the scope of the license, it can be liable for infringement. *MacLean Assocs, Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 779 (3d Cir. 1991). That said, the copyright owner's rights must still be infringed by the specific activity that exceeds the scope of the license. Otherwise, the owner must litigate the license violations as breach-of-contract claims. *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088–90 (9th Cir. 1989).

Here, there is no real dispute that LegalEase and Ross's alleged copying was not protected by a license. Rather, the issue is whether their actions constitute infringement of Thomson Reuters's copyright protections. And the license issue is irrelevant to proving Ross's contributory liability for LegalEase's infringement. So I deny summary judgment on the contributory-liability theory.

14

A431

*3. Vicarious liability.* For vicarious liability, Thomson Reuters must show that Ross had "(1) the right and ability to supervise or control the infringing activity; and (2) a direct financial interest in such activities." *Leonard*, 834 F.3d at 388. Taking the elements in reverse, Ross does not contest that it had a financial interest in the alleged copies—it used the Bulk Memos to train AI, its core product. But it does contest whether it could supervise LegalEase. The control element is a matter of "practical ability." *Id.* at 389. So the determination is often fact-intensive. Evidence needs to support a finding that the defendant was "in a position to police the direct infringer[]." *Id.* at 388 (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262–63 (9th Cir. 1996)). Thomson Reuters has testimony saying that Ross dictated LegalEase's practices. But Ross pushes back with evidence that LegalEase was secretive and resisted micromanagement. Thus, whether Ross had the "practical ability" to control LegalEase's "infringing activity" remains a disputed factual question for the jury to resolve.

### III. FAIR USE MUST GO TO A JURY

The parties have cross-moved on Ross's fair-use defense. Fair use balances four factors: (1) the purpose and character of the use, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (4) the effect of the use upon the potential market for the copyrighted work. 17 U.S.C. § 107. The first and fourth factors are most important. *See Authors Guild v. Google, Inc.*, 804 F.3d 202, 213–14 (3d Cir. 2015).

Fair use is a mixed question of law and fact. Though applying the test "primarily involves legal work," it requires "determination of subsidiary factual questions" about

15

the copying or the marketplace. *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199–200 (2021). Here, all of this must go to a jury.

### A. The purpose and character of the use will be determined by contested facts

This first factor has two subparts: commerciality and transformativeness. *See Authors Guild*, 804 F.3d at 214, 218–19. (Bad faith is a minor subpart, also typically filed under this factor, and I will address it at the end.) Commercial use weighs against finding fair use, while transformative use weighs in favor. *Id*. at 218–20. And these considerations interact. "The more transformative the new work, the less will be the significance of … commercialism…." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Commerciality is straightforward: it asks whether the use was for profit. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). Transformativeness is less so: "a transformative use is one that communicates something new and different from the original or expands its utility, thus serving copyright's overall objective of contributing to public knowledge." *Authors Guild*, 804 F.3d at 214.

Ross's uses were undoubtedly commercial. And one of its goals was to compete with Westlaw. Thomson Reuters contends that this commercial use weighs heavily against finding fair use. In support of this claim, it cites the Supreme Court's recent decision in *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258 (2023). There, the Court determined that the use in question was not fair largely by emphasizing its commercial nature. *See id.* at 1279–80. But I decline to overread one decision, especially because the Court recognized that "use's transformativeness

16

may outweigh its commercial character" and that in *Warhol*, "both elements point[ed] in the same direction." *Id.* at 1280. Plus, just two terms ago, in a technological context much more like this one, the Court placed much more weight on transformation than commercialism. *Google*, 141 S. Ct. at 1204 ("[A] finding that copying was not commercial in nature tips the scales in favor of fair use. But the inverse is not necessarily true, as many common fair uses are indisputably commercial."). So I focus on transformativeness.

Thomson Reuters paints a black-and-white picture on transformativeness: Westlaw is a legal-research platform that synthesizes the law; Ross used Westlaw's syntheses to build a legal-research platform that also synthesizes the law. Ross, on the other hand, presents a more nuanced account: Westlaw headnotes and key numbers annotate opinions for users. Ross wanted to build a search engine that "avoids human intermediated materials," meaning a user would simply enter a query and get a responsive quotation from a judicial opinion, no clicking around or commentary needed. D.I. 272, at 1–3. Though Ross and Westlaw both help answer legal questions, Ross says it transformed the Westlaw headnotes beyond recognition.

Ross describes its process of transforming the Bulk Memos like this: First, it receives the Bulk Memos in its database. Then, it converts the plain-language entries into numerical data. Next, it feeds that data into its machine-learning algorithm to teach the artificial intelligence about legal language. The idea is that the artificial intelligence will be able to recognize patterns in the question-and-answer pairs. It

17

A434

can then use those patterns to find answers not just to the exact questions fed into it, but to all sorts of legal questions users might ask.

Ross says that the caselaw on "intermediate copying" most appropriately reflects its use. In those cases, the users copied material to discover unprotectable information or as a minor step towards developing an entirely new product. So the final output—despite using copied material as an input—was transformative. In *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992), the defendant copied Sega's copyrighted software. But it did so only to figure out the functional requirements to make games compatible with Sega's gaming console. *Id.* at 1522. That functional information was unprotected, so the copying was fair use. *Id.* at 1522–23.

Similarly, in *Sony Computer Entertainment Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000), the defendant used a copy of Sony's software to reverse engineer it and create a new gaming platform on which users could play games designed for Sony's gaming system. *Id.* at 601. The court concluded that this was fair use for two reasons: the defendant created "a wholly new product, notwithstanding the similarity of uses and functions" between it and Sony's system, and the "final product [did] not itself contain infringing material." *Id.* at 606. The Supreme Court has cited these intermediate copying cases favorably, particularly in the context of "adapt[ing] the doctrine of fair use … in light of rapid technological change." *Google*, 141 S. Ct. at 1198 (cleaned up).

18

A435

Thomson Reuters says the intermediate-copying cases are inapt. It argues that whereas in those cases, the copiers sought to "study functionality or create compatibility," here Ross simply sought to "train[] its AI" by "cop[ying] the creative decisions of West[law]'s attorney-editors precisely because it wanted to replicate them." D.I. 317, at 11. And it contends that Ross merely translated the headnotes into numerical data and that translation is "paradigmatic derivative work[]." D.I. 317, at 10.

But Ross says its AI studied the headnotes and opinion quotations only to analyze language patterns, not to replicate Westlaw's expression. So the translation was only a minor step in a broader, transformative use. *See Sega*, 977 F.2d at 1514–15, 1518–19 (holding that, though programmers wrote down and translated Sega's object code, these acts were a minor step towards a transformative use). If Ross's characterization of its activities is accurate, it translated human language into something understandable by a computer as a step in the process of trying to develop a "wholly new," albeit competing, product—a search tool that would produce highly relevant quotations from judicial opinions in response to natural language questions. This also means that Ross's final product would not contain or output infringing material. Under *Sega* and *Sony*, this is transformative intermediate copying.

So whether the intermediate-copying caselaw tells us that Ross's use was transformative depends on the precise nature of Ross's actions. It was transformative intermediate copying if Ross's AI only studied the language patterns in the headnotes to learn how to produce judicial opinion quotations. But if Thomson Reuters is right that Ross used the untransformed text of headnotes to get its AI to replicate and

19

A436

reproduce the creative drafting done by Westlaw's attorney-editors, then Ross's comparisons to cases like *Sega* and *Sony* are not apt. Again, this is a material question of fact that the jury needs to decide.

Finally, the parties clash over whether Ross's use was in bad faith. But bad faith is at most a minor consideration in the fair use analysis. Indeed, the Supreme Court has expressed skepticism about whether it has any role to play at all. *Google*, 141 S. Ct. at 1204. And bad faith is particularly unimportant here. Thomson Reuters argues that Ross demonstrated bad faith by initially asking to license Westlaw, being denied, and then hiring LegalEase to illicitly gain access to it. But the Supreme Court has foreclosed this line of reasoning, explaining that "[i]f the use is otherwise fair, then no permission need be sought or granted. Thus, being denied permission to use a work does not weigh against a finding of fair use." *Campbell*, 510 U.S. at 585 n.18. So I can ignore bad faith. And the first fair use factor comes down to the jury's finding of transformativeness.

### B. The nature of the copyrighted work favors fair use, but factual questions remain

The second factor asks about the nature of the copyrighted work. The work gets more protection, and copies are less likely to be fair, if it is near the "core of intended copyright protection." *Id.* at 586. But "[t]he scope of fair use is greater when 'informational' as opposed to more 'creative' works are involved." *Hustler Mag. Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1153–54 (9th Cir. 1986). So although judges should not act as critics, we consider "whether the work was creative, imaginative, and original." *MCA, Inc. v. Wilson*, 677 F.2d 180, 182 (2d Cir. 1981). That said, "[t]he second factor

has rarely played a significant role in the determination of a fair use dispute." *Authors Guild*, 804 F.3d at 220.

The analysis for this factor mirrors much of my earlier discussion of the validity and strength of Thomson Reuters's copyright. As explained above, this depends largely on factual questions that the jury must decide, so I cannot resolve this factor at summary judgment.

But I note here that the Key Number System is far from the core of copyright. Even if the system involves making creative decisions about how to organize opinions and other material and is an original method of organization, it is merely a way to arrange "informational" material. So the system inherently involves significantly less creative or original expression than traditionally protected materials, such as literary works or visual art, and is much less "imaginative."

The headnotes are closer, but still not especially close to the core. "The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper*, 471 U.S. at 563. And though editors may have made creative choices about which points of law to summarize, how to summarize them, and where to attach the headnote, those choices are constrained. In general, the headnotes will flag the most salient points of law, largely track the language of the opinion, and be placed at the beginning of a paragraph. This approach is akin to news reporting, which, though protected, must be carefully separated from the unprotected underlying facts. *See Author's Guild*, 804 F.3d at 220. So, although a jury must decide how closely headnotes reflect the language of judicial opinions and, in turn, precisely how much

21

protection they are afforded, they are not at the core of intended copyright protection. Thus, although an ultimate decision on factor two must wait until trial, this factor seems to favor fair use.

### C. The amount and substantiality of the copying depends on the nature of Ross's AI outputs

Third, I consider the amount of copying as well as whether the copying took the original work's "heart." *Campbell*, 510 U.S. at 589.

Defining the work at issue matters in determining the amount of copying done. If we define it at the level of each headnote, the copying was allegedly completed for some 25,000 headnotes. If we define it at the level of the compilation, however, the copying was less substantial, though headnotes likely represent the "heart" of Westlaw's expression.

And defining the use is again important because "even a small amount of copying may fall outside of the scope of fair use where the excerpt copied consists of the heart of the original work's creative expression." *Google*, 141 S. Ct. at 1205 (internal quotation marks omitted). Conversely, "copying a larger amount" can still be fair use "where the material copied captures little of the material's creative expression." *Id.* Plus, "[t]he 'substantiality' factor will generally weigh in favor of fair use where … the amount of copying was tethered to a valid, and transformative, purpose." *Id.* In particular, verbatim intermediate copying has consistently been upheld as fair use if the copy is "not reveal[ed] … to the public." *Authors Guild*, 804 F.3d at 221; *see also A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 638–640, 642 (4th Cir. 2009).

A439

Here, the best definition is at the level of each headnote. As mentioned, the compilation registration also covers individually copyrightable materials. And each headnote counts. But the heart of each headnote is its original expression, not its link to the part of the opinion it summarizes. So if Ross's AI works the way that it says, it is likely fair use because it produces only the opinion, not the original expression. "It cannot be said that a revelation is 'substantial' in the sense intended by the statute's third factor if the revelation is in a form that communicates little of the sense of the original." *Authors Guild*, 804 F.3d at 223.

Yet this factor also requires jury fact-finding. How Ross's AI works and what output it produces remain disputed. The parties also fight over whether the use was "tethered to a valid … purpose." Westlaw says Ross copied far more than it needed. Ross says it needed a vast, diverse set of material to train its AI effectively. Though Ross need not prove that each headnote was strictly necessary, it must show that the scale of copying (if any) was practically necessary and furthered its transformative goals. So the third factor hinges on the answers to these disputed factual questions which the jury needs to resolve.

### D. I cannot yet determine the effect of the use upon the market for the work

Finally, factor four asks whether the use had a "meaningful or significant effect" on the value of the original or its potential market. *Authors Guild*, 804 F.3d at 224. And "[t]his inquiry must take account not only of harm to the original but also of harm to the market for derivative works." *Harper*, 471 U.S. at 568. Yet not all losses are created equal. I must also consider the "source of the loss." *Google*, 141 S. Ct. at

23

A440

1206. Again, we come back to the fundamental premise that copyright protects expression. If the source of the loss is not that the original's expression is being appropriated, "the type of loss of sale envisioned above will generally occur in relation to interests that are not protected by the copyright." *Authors Guild*, 804 F.3d at 224.

And transformativeness feeds into this factor as well. "[T]he more the copying is done to achieve a purpose that differs from the purpose of the original, the less likely it is that the copy will serve as a satisfactory substitute for the original." *Id.* at 223 (citing *Campbell*, 510 U.S. at 591). Finally, in evaluating market impact, courts must pay special attention to "the realities of how technological works are created and disseminated." *Google*, 141 S. Ct. at 1199.

Here, those "realities" are disputed. Thomson Reuters claims three potential markets, but they boil down to two: the market for Westlaw itself as a legal research platform and the market for its data. It says Ross's plan all along was to create a substitute for Westlaw. And it says that this plan worked, as some Ross customers cancelled their Westlaw subscriptions. As for the market for its data, Thomson Reuters says there is a traditional licensing market and a burgeoning one for AI training data. It argues that it lost traditional licensing revenue because Ross obtained Westlaw content through LegalEase. And it suggests that there is a potential market for Westlaw's training data; after all, Ross paid LegalEase over a million dollars for the Bulk Memos. That burgeoning market would be harmed by copying like Ross's.

One fact is undisputed here: Ross and Thomson Reuters both compete in the market for legal research platforms. But that alone does not reveal whether Ross's AI

24

A441

product is a substitute for Westlaw. Ross's use might be transformative, creating a brand-new research platform that serves a different purpose than Westlaw. If so, it is not a market substitute. Ross also argues that Thomson Reuters has never participated—and would never participate—in this market for its training data. Because a reasonable jury could find for either side on these factual market-impact questions, I cannot resolve them at summary judgment.

Finally, "we must take into account the public benefits the copying will likely produce." *Google*, 141 S. Ct. at 1206. And "we are free to consider the public benefit resulting from a particular use notwithstanding the fact that the alleged infringer may gain commercially." *Sega*, 977 F.2d at 1523. This "[p]ublic benefit need not be direct or tangible, but may arise because the challenged use serves a public interest." *Id.*

The parties provide competing narratives of public benefit. Ross's research platform might increase access to the law at a lower cost. Or it might just reduce the incentives for Thomson Reuters, and similarly situated entities, to create content like headnotes in the future.

Deciding whether the public's interest is better served by protecting a creator or a copier is perilous, and an uncomfortable position for a court. Copyright tries to encourage creative expression by protecting both. Here, we run into a hotly debated question: Is it in the public benefit to allow AI to be trained with copyrighted material?

The value of any given AI is likely to be reflected in the traditional factors: How transformative is it? Can the public use it for free? Does it discourage other creators

A442

by swallowing up their markets? So an independent evaluation of the benefits of AI is unlikely to be useful yet, even though both the potential benefits and risks are huge. Suffice it to say, each side presents a plausible and powerful account of the public benefit that would result from ruling for it. So a jury must decide the fourth factor—and the ultimate conclusion on fair use.

## IV. TORTIOUS INTERFERENCE

Thomson Reuters's second claim is tortious interference with contract. It says Ross induced LegalEase to breach three contract provisions by (1) using Westlaw to build a competing product, (2) using a bot to scrape Westlaw content, and (3) sharing passwords.

Ross says these claims are preempted. Federal copyright law preempts "all legal … rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 … and come within the subject matter of copyright." 17 U.S.C. § 301(a). Section 106 protects the author's rights in reproduction, distribution for sale, public performance and display, and derivative works. *See id.* § 106.

Although preemption is an affirmative defense, I address it first. If any of the contract claims are preempted by copyright, I need not address their merits.

### A. Thomson Reuters's first tortious-interference claim is preempted, but the other two survive

As quoted above, federal copyright law preempts state claims that are "equivalent to" § 106 rights. The most common test—and the one I must apply—to determine equivalency is the "extra element" test. *See Dun & Bradstreet Software Servs., Inc. v.*

26

A443

*Grace Consulting*, 307 F.3d 197, 217–18 (3d Cir. 2002). As its name suggests, that test asks whether the state-law claim has an element that a §106 claim would not. *Id.* at 217.

The test is easy to say but hard to apply. In some sense, every claim other than a state copyright claim has some extra element. For example, although almost every common law claim requires damages, §106 does not because federal law supplies statutory damages. But that alone does not make the claims meaningfully different. So courts have modified the test, asking whether the extra element makes the claim qualitatively different. *Id.* To avoid preemption, the "gravam[e]n" of the state claim must differ from one of the §106 rights. *Id.* at 218 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992)).

Ross says tortious-interference claims are almost always preempted. Though it cites good authority for that argument, it takes that authority out of context. A tortious-interference claim that says something like, "You copied our work, thus interfering with our contracts to license that work" is preempted because it merely identifies one of the consequences of a §106 violation. But some of Thomson Reuters's claims are different. It brings some of its claims as tortious-interference claims—rather than as standard breach-of-contracts claims—solely because it seeks to hold Ross liable for the acts of a third party, LegalEase. So the preemption analysis should look more like it would with a typical breach-of-contract claim than with a claim that just identifies a consequence of copyright infringement.

A444

To sum up, a claim is preempted if (1) the material is within the subject matter of copyright and (2) the gravamen of the claim is equivalent to a § 106 right.

*The anti-competition claim is preempted*. Thomson Reuters's first tortious-interference claim concerns this provision:

> You may not sell, sublicense, distribute, display, store or transfer [West's] products or any data in [its] products in bulk or in any way that could be used to replace or substitute for [its] products in whole or in part or as a component of any material offered for sale, license or distribution to third parties.

D.I. 316, at 4 (alterations in original).

Thomson Reuters says Ross induced LegalEase to breach this provision by hiring it to create the Bulk Memos and other materials sent to Ross. Thomson Reuters does not contest that this covers material that is within the subject matter of copyright. But it says the rights implicated are different. Not so.

The gravamen of this claim is the same as that of Thomson Reuters's copyright claim. And the contract provision itself secures equivalent—indeed, sometimes identical—rights: The rights to sell, sublicense, distribute, and transfer are covered by § 106(3). The right to display is covered by § 106(5). The "in bulk" and "in any way that could be used to replace or substitute" phrases are incorporated in the fair-use analysis. And the "as a component of" language also tracks fair use and the derivative-work right under § 106(2).

Though this contract provision is framed in terms of competition, it is focused on one potential competitive threat: copying. That concern is the domain of federal law. So this first claim is preempted by the Copyright Act.

28

A445

Thomson Reuters tries to analogize its provision to the ones at issue in cases like *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005), and *Wellness Publishing v. Barefoot*, No. 02–3773, 2008 WL 108889 (D.N.J. Jan. 9, 2008). But those cases involved restrictions on use. Restricting a user's use of copyrighted material is different from limiting the user's ability to copy it. The latter is covered, and thus preempted, by the Copyright Act.

*The anti-bot and password sharing claims are not preempted.* The two other tortious-interference claims involve Westlaw's anti-bot and password-sharing provisions:

> You may not run or install any computer software or hardware on [West's] products or network or introduce any spyware, malware, viruses, Trojan horses, backdoors or other software exploits.

> Your access to certain products is password protected. You are responsible for assigning the passwords and maintaining password security. Sharing passwords is strictly prohibited.

D.I. 316, at 4–5 (alteration in original).

These provisions are not equivalent to § 106 rights. Unlike the competition provision, they govern use and manipulation of the site. Using a bot to scrape content might copy material in bulk. And a claim based on the harm from that copying itself would be preempted. But a claim based on simply introducing malware, independent of that malware's goals, is not equivalent to any right in § 106. Likewise, a site might ban password sharing because they want to limit copying risk. But putting limits on access to the site is a separate restriction. Whether the material behind the password protection is copyrighted or not, the creator can protect the material for which it

29

charges users. Section 106 has nothing to say about that limit. So Thomson Reuters's second and third tortious-interference claims survive preemption.

## B. Thomson Reuters's two remaining tortious-interference claims are partially disputed

I now consider the two surviving tortious-interference claims on the merits. Thomson Reuters must prove five elements: (1) there was a contract between LegalEase and Westlaw, (2) Ross knew about the contract and its terms, (3) Ross's intentional act was a significant factor causing the breach, (4) Ross had no justification, and (5) the breach harmed Thomson Reuters. *See WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012). (Earlier in this case, the parties disputed whether Minnesota or Delaware law applied. But I need not address this choice-of-law question because Minnesota's tortious-interference elements are the same as Delaware's. So I address each element below under Delaware law.)

*1. There was a contract.* For both claims, there is no dispute that the first element is met—there was a contract between Westlaw and LegalEase. But three of the four remaining elements involve genuine factual disputes that remain for trial.

*2. It is unclear how much Ross knew.* To satisfy the second element, Ross must have had actual or imputed knowledge of the substance of the contract rights, even if it did not know about the exact terms. *WaveDivision*, 49 A.3d at 1176. There is substantial record evidence that Ross knew at least something about Westlaw's contracting practices: Ross itself tried to enter a contract with Westlaw. An investor sent Ross a copy of the Westlaw terms and conditions. A Ross executive posed as an individual

30

A447

practitioner to see the terms of use. And there are email exchanges in which Ross executives discuss specific provisions of the contract.

But Ross's evidence introduces some ambiguity. It disputes the timeline, saying that much of Thomson Reuters's evidence comes from well after Ross dealt with LegalEase. And it says that although it saw the contracts Westlaw offered it, it never saw Westlaw's contract with LegalEase. Westlaw's agreements can be tailored, Ross says, and it only ever saw the Canadian, not United States, agreement. Thomson Reuters counters that the agreements are materially the same, publicly disclosed, and seldom if ever altered. Whether this evidence, taken together, rises to the level of knowledge of the substance of the anti-bot and password-sharing provisions is a jury question.

*3. Ross may have intentionally caused a breach*. Ross met the third element if it (1) intended to interfere or (2) intended to reach a result with knowledge that it would interfere with the contract, even if interference was not the main purpose. Restatement (Second) of Torts § 766 cmt. j (Am. L. Inst. 1965). Ross intended for LegalEase to produce the Bulk Memos. And it was likely aware that LegalEase was using Westlaw. But whether Ross knew LegalEase was breaching or going to breach by using a bot or sharing passwords is far less clear. As explained in the discussion of indirect liability, each side has evidence suggesting different levels of Ross's involvement, control, and knowledge. So this element too is unfit for summary judgment.

*4. Whether Ross acted without justification is a factual question*. Courts commonly refer to the fourth element as doing something "not … sanctioned by the rules of the

31

A448

game." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 383 (3d Cir 2016) (internal quotations omitted). Thomson Reuters said Ross did that. According to Thomson Reuters, Ross first sought a license from Westlaw, but when that rule-abiding approach failed, it hired LegalEase to end-run Thomson Reuters's terms. Yet end-running or exploiting a loophole is not necessarily the same as violating the rules of the game. And whether Ross acted without justification largely depends on how it acted—which is a matter of dispute under the second and third elements. Plus, this element is typically a question of fact: Delaware law considers no less than seven factors, nearly all of which involve some underlying question of fact. *See WaveDivision*, 49 A.3d at 1174. So this element remains for trial.

5. *Thomson Reuters has shown harm.* The fifth element requires harm. Thomson Reuters says it lost subscription fees when LegalEase used a bot and shared passwords. If LegalEase did not have the help of a bot or multiple employees sharing one account, it would have had to buy more subscriptions or keep its subscriptions open for longer periods. This harm is distinct from the harm from copying: assuming copying was going to happen, Westlaw at least wanted to get paid while LegalEase did it. The bot and password sharing made the copying more efficient and cheaper, depriving Westlaw of fees. Ross does not contest this element, other than arguing that Thomson Reuters's damages here are the same as the damages it would get for its copyright infringement claim. That misses the mark, so there is no genuine dispute.

In sum, Thomson Reuters is entitled to partial summary judgment on the first and fifth elements of tortious interference by using a bot and sharing passwords, but elements two through four remain for trial.

### V. OTHER DEFENSES FAIL

Ross throws several other defenses at the wall, but none sticks. First, it no longer presses its First Amendment or first-sale defenses. Second, it raises laches. But laches does not apply to the copyright claim. *See Petrella*, 572 U.S. at 679. Plus, Thomson Reuters brought its tortious-interference claim promptly. Ross says that Thomson Reuters sat on its right to sue for years, but this is unsupported, and Ross cites no law saying that was too long.

Third, for its defenses of consent, waiver, estoppel, acquiescence, and license, Ross points to a fair-use provision in Westlaw's terms of use. That provision just begs the fair-use question but does not provide an independent defense. Fourth, Ross alleges tort of another, saying it was not a "substantial factor" in the harm that LegalEase allegedly caused. D.I. 318, at 20. But again that argument is the same as its argument against the elements of the tortious-interference claim. And it has presented no evidence specifically for this defense, so I will not repackage other evidence for it. Instead, Ross can focus on defeating the tortious-interference claim's elements directly.

Finally, Ross alleges lack of ownership because the headnotes are identical to public law. But Thomson Reuters has provided its registrations, and the extent of its expression is fully explored under the infringement and fair-use claims. Indeed, whether "lack of ownership" is even an affirmative defense is dubious—it seems to go to the first element of an infringement claim (ownership of a valid copyright). So I

A450

grant summary judgment to Thomson Reuters on these miscellaneous affirmative defenses.

* * * * *

Thomson Reuters alleges that Ross copied protected aspects of Westlaw, both directly and indirectly through LegalEase. And Ross disputes almost all of Thomson Reuters's story. But it is not my role at summary judgment to sort through the evidence and tidy these factual messes. It is the jury's role at trial. So, with the small exceptions noted throughout this opinion, I deny both Ross's and Thomson Reuters's motions for summary judgment.

34

A451

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE
CENTRE GMBH and WEST PUBLISH-
ING CORP.,

        *Plaintiffs*,

      v.

ROSS INTELLIGENCE INC.,

        *Defendant*.

No. 1:20-cv-613-SB

---

Jack B. Blumenfeld, Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Dale M. Cendali, Eric A. Loverro, Joshua L. Simmons, KIRKLAND & ELLIS LLP, New York, New York.

*Counsel for Plaintiffs.*

David E. Moore, Andrew L. Brown, Bindu A. Palapura, POTTER ANDERSON & COR-ROON LLP, Wilmington, Delaware; Warrington Parker, Christopher J. Banks, Joachim B. Steinberg, Jacob Canter, Anna Z. Saber, CROWELL & MORING LLP, San Francisco, California; Emily T. Kuwahara, Jordan Ludwig, CROWELL & MORING LLP, Los Angeles, California; Mark A. Klapow, Keith J. Harrison, Lisa Kimmel, Crinesha B. Berry, CROWELL & MORING LLP, Washington, D.C.; Ryan H. Seewald, CROWELL & MORING LLP, Denver, Colorado.

*Counsel for Defendant.*

---

**MEMORANDUM OPINION**

September 27, 2024

---

BIBAS, *Circuit Judge*, sitting by designation.

To make it to trial, litigants must substantiate their claims. Ross contends that Thomson Reuters violated and still violates antitrust laws, but Ross has not backed up its allegations with enough evidence. So I grant summary judgment to Thomson Reuters on those counterclaims.

## I. BACKGROUND

The antitrust issues here are just one part of a larger case. Thomson Reuters's Westlaw platform has an extensive collection of legal sources (including judicial opinions) and accompanying search tools to navigate them. D.I. 170 at 1–2. Ross tried to build a better legal search tool using artificial intelligence. *Id.* Thomson Reuters sued Ross for copyright infringement, alleging that Ross had used Thomson Reuters's intellectual property to build its search tool. Compl., D.I. 1 at 2–3. The copyright lawsuit is pending before me. D.I. 667.

Ross then brought these antitrust counterclaims. D.I. 24 at 42–44. This Court dismissed some of these claims, D.I. 170, but three counts survived to discovery on a theory that Westlaw ties its caselaw database to its search tools. Those counts now return on summary judgment: Count VI, 15 U.S.C. § 2 (Sherman Act), Count VII, 15 U.S.C. § 1 (Sherman Act), and Count VIII, California's Business and Professions Code § 17200 *et seq.* D.I. 24 at 42–44; D.I. 170 at 9, 12, 15; D.I. 519, 521, 523, 525, 527. The parties do not distinguish among the three counts in their summary-judgment briefing because all rise and fall on the same issues.

A453

In this opinion, I resolve five summary-judgment motions and two motions to pre-clude or exclude expert opinions and testimony relevant only to the antitrust coun-terclaims. Thomson Reuters moved for summary judgment on five issues: separate products, market definition and power, statute of limitations, injunctive relief, and damages relating to testimony from Dr. Alan Cox. D.I. 519, 521, 523, 525, 527. Thom-son Reuters also moved to preclude certain opinions of Ross's experts Dr. James Rat-liff and Dr. Gillian Hadfield. D.I. 529. And Ross moved to exclude certain opinions of Thomson Reuters's expert Dr. Chad Syverson. D.I. 516.

I will grant summary judgment if there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). I view facts in the light most favorable to Ross, the non-movant. *Lamont v. New Jersey*, 637 F.3d 177, 179 n.1 (3d Cir. 2011). I must enter summary judgment "against a party who fails to make a showing sufficient to estab-lish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II. ROSS HAS FAILED TO SHOW THAT THOMSON REUTERS IS TYING SEPARATE PRODUCTS AND HAS FAILED TO DEFINE THE MARKETS FOR THEM

Ross's remaining antitrust counterclaims are all based on tying theories. Some tying arrangements violate antitrust law. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461–62, 464 (1992). Tying occurs when a party will "sell one prod-uct but only on the condition that the buyer also purchases a different (or tied) prod-uct." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958). Ross's theory is that Westlaw's caselaw database ("the public law database") is a product that many con-sumers want (the tying product), so Thomson Reuters decided to sell it only packaged

A454

with the Westlaw search tools (the tied product) to ensure that those products also sell. D.I. 24 at 31–32. In other words, Ross claims that Thomson Reuters forces people to buy its Westlaw search tools if they want to use its caselaw database. Ross contends that this arrangement is both per se illegal under the Sherman Act and illegal under a rule-of-reason theory of liability. D.I. 554 at 7, 23; *see Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 475, 481–82 (3d Cir. 1992).

Under either theory, Ross must make two threshold showings before it may proceed with its arguments that Thomson Reuters violated antitrust law. First, Ross must show that the two products are separate. *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 397 (3d Cir. 2016). Products that are not separate cannot be tied together. Second, Ross must define the relevant market before it can hope to show an improper use of power in that market. The relevant markets are different for per se and rule-of-reason claims. For a per se tying claim, Ross must define the tying product market. *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 513 (3d Cir. 1998). And for Ross's rule-of-reason arguments, it must define the tied product market. *Id.* at 519. Ross does neither.

**A. Ross has not shown that the two products are separate**

*(i) Legal principles*

To show that a seller is illegally tying two products, one must first show that the two products are separate. *Avaya*, 838 F.3d at 397. Whether products are separate is typically an issue of law to be resolved by a judge. Phillip E. Areeda & Herbert J. Hovenkamp, *Antitrust Law* (Lexis Online 2024) ¶ 1743c. The test for whether the two

A455

products are distinct is whether there is "sufficient consumer demand so that it is efficient for a firm to [sell them separately]." *Eastman Kodak*, 504 U.S. at 462. "[N]o tying arrangement can exist unless there is a sufficient demand for the purchase of" the products separately. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984). The sufficient-demand requirement has teeth. "Idiosyncratic buyers" are not enough; we must look at what consumers generally want. Areeda & Hovenkamp ¶ 1744d. And, when looking at analogous markets, "if less than 20 percent of the tying item is sold unbundled in the competitive market analogue, then the items are a single product." *Id.*

The parties dispute what Ross must do to show sufficient consumer demand. Ross argues that it need not prove that people *actually* buy the products separately, only that independent markets *could* exist. D.I. 555 at 5. Ross points out the danger of "perversely immuniz[ing] the worst-case scenario of a successful tie by which a monopolist successfully leverages a monopoly in the tying product into a monopoly in the tied product." *Id.* at 8 (quoting Areeda & Hovenkamp ¶ 1745d). To avoid this unfair outcome, Ross says, I must "assess[] … what consumer demand would be at the costs and quality that would prevail if the items were separately provided." *Id.* at 9 (citing Areeda & Hovenkamp ¶ 1745d). To support its view, Ross also cites the ABA Model Jury Instructions in Civil Antitrust Cases on separate and distinct products. *Id.* at 9. But the Model Jury Instructions are not binding on courts. And though they do instruct the jury to "consider whether there would be separate demand for each [product] if they were offered separately," they further explain that "[t]he relevant issue is

5

A456

whether there is sufficient demand from customers to induce sellers to provide them separately." D.I. 558-1, Ex. B at 26. So they do not make Ross's point.

Unsurprisingly, Thomson Reuters seeks a more concrete standard than Ross. It argues that Ross must show that consumers either "bought the items separately" or "requested or wanted the items separated." D.I. 583 at 5 (quoting Areeda & Hovenkamp ¶ 1743a). Thomson Reuters is mostly right.

I conclude that Ross must show at least one of three things to meet its burden on separate products: (1) that consumers "bought the items separately," (2) that consumers "requested or wanted the items separated," or (3) "that some customers would have requested or wanted the items separated but for" the fact that they were "intimidated not to make such requests or were deprived of the information that would have made them want the items separated." Areeda & Hovenkamp ¶ 1743a. So Ross must show (1), (2), or (3) to establish that "independent markets could exist." Areeda & Hovenkamp ¶ 1745d. But it has not.

### *(ii) Ross fails to show separate products*

The facts, taken in the light most favorable to Ross, do not make any of these three showings. Ross submits the following facts and arguments to attempt to show separate products.

### 1. *Demand for public law separately*

**Books.** Ross notes that Thomson Reuters used to sell its public-law database in books (rather than online) without the legal search tools that are now packaged with Westlaw. *Id.* at 12–13. True, historical market analogues can support a separate-

6

A457

products finding. *See* Areeda & Hovenkamp ¶ 1744c2; *see also Kaufman v. Time Warner*, 836 F.3d 137, 142 (2d Cir. 2016) ("Relevant evidence of separate and distinct consumer demand for the tying product and the tied product is, *inter alia*, the history of the products being, or not being, sold separately … or the sale of products separately in similar markets."). And this is one reason why the previous judge in this case, Judge Stark, did not dismiss the tying claim. As he noted, "Plaintiffs' public law database was effectively sold as a stand-alone product in the form of books for decades before modern technology allowed plaintiffs to develop an online legal search tool." D.I. 170 at 8. But this is just one possible data point, and the bar is higher at summary judgment.

The idea behind historical market analogues is that they are evidence of consumer preferences from a time when the markets were competitive. *See* Areeda & Hovenkamp ¶ 1744c2. But the analogy to books suffers from two flaws. First, Ross is wrong that books were sold without search tools. True, books were sold without Westlaw's current technological capacity. But if we can analogize online legal databases to printed legal databases, we can also analogize online search tools to printed search tools: tables of contents, indices, and page numbers. So its database was not sold unbundled from search tools.

Second, "consumer preferences, production costs, and quality concerns … vary over time." *Id.* The evolution from book search tools (say, a table of contents) to Westlaw's digital search tools (say, Boolean search terms) is like how the horse-drawn carriage market evolved into the car market. Just as we no longer use horse-drawn

7

carriages for transportation (except for fun), few consumers want caselaw separated from the sophisticated search tools that make it digestible. A market for public law in book form used to exist, but that does not mean that a market for separate caselaw still exists in a world with more sophisticated search tools. Ross has not done enough to show that this market is a helpful analogue.

**Consumer requests for public-law databases.** Ross says that consumers asked to buy Westlaw's public-law database separately. D.I. 555 at 15. But that smidge of consumer demand is not enough. There must be "sufficient consumer demand so that it is efficient for a firm to" sell the two products separately. *Eastman Kodak*, 504 U.S. at 462. Ross cites emails from two law firms, Baker Hostetler and Skadden. D.I. 558-1, Ex. Q at 280–82; D.I. 558-1, Ex. R at 283–84. But the Baker Hostetler email chain does not ask about buying public law separately. D.I. 558-1, Ex. Q at 280–82. And the Skadden email alone is not enough to infer "sufficient consumer demand." *Eastman Kodak*, 504 U.S. at 462; D.I. 558-1, Ex. R at 283–84. Ross could have done more to try to develop the record during discovery, perhaps subpoenaing Skadden representatives. But it did not.

**APIs.** Ross also argues that Thomson Reuters's decision to make some Westlaw content available via application programming interfaces shows separate consumer demand for public law. D.I. 555 at 18–20. This also fails. These interfaces are "another method that customers use to access Thomson Reuters' platforms." D.I. 520 at 23. Some of them let customers search internal firm data and external Westlaw data through a single search. D.I. 555 at 19. But Ross admits that these are just interfaces;

8

they do not allow "independent access to [Thomson Reuters's] full U.S. public law database." *Id.* So this is not an example of selling public law separately. Ross submits evidence that Thomson Reuters is considering offering data products that include the public law. D.I. 558-2, Ex. EE at 83. But Thomson Reuters is not doing this yet, so it is unclear what, if any, demand there would be for this data.

### 2. *Demand for search tools separately*

**Consumer requests for Ross's search tool.** As evidence that consumers wanted to buy its search tool on its own, Ross points to an interrogatory response and depositions of its own employees. D.I. 558-1, Ex. S at 291; Ex. T at 309–11 (transcript 100:24–102:15); Ex. U at 323–37 (transcript 14:18–18:2); Ex. V. at 342–43 (transcript 155:5–156:22) (irrelevant because it discusses buying Ross as the company, not Ross's products); and Ex. W at 360–6 (transcript 269:23–271:11). But careful review of these transcripts shows that, at best, most employees gestured toward unspecified "customers" who wanted to buy Ross's search product without the public law. *See, e.g.*, D.I. 558-1, Ex. T. at 310–11 (transcript 101–02) (a former Ross employee acknowledging that he never actually sold the search tool separately and responding to a question about who wanted to buy Ross's search tool separately from the public law database with, "[t]here was a customer that came into the chat. There were customers that would come into the chat.").

These statements do not suggest many interested buyers nor allege a specific number of consumers, and the only one they name specifically is the U.S. Department of Justice. So even taking these statements as true, they do not show "sufficient consumer demand so that it is efficient for a firm to" sell the two products separately.

9

A460

*Eastman Kodak*, 504 U.S. at 462. And Ross's argument that its "legal search tool received significant attention and praise" is irrelevant. D.I. 555 at 13.

**Westlaw's product tiers.** Ross also tries to find evidence of separate products in Westlaw's own sales. Ross argues that Westlaw's choice to offer different levels of search plans shows demand for buying the public law database and accompanying search tools separately. *Id.* at 17. But it does not matter that Westlaw offers three plans, each bundling its public-law collection with a different search tool. This shows demand for different levels of search-tool sophistication, not demand for a public-law database with no search tool at all or for a search tool on its own.

**West KM.** Ross's last point is that Thomson Reuters sells West KM separately, but that argument fails too. *Id.* at 21. As Ross itself explains, "West KM uses Westlaw's search technology to review the [customer] organization's own documents, promising an experience that mimics searching for public law on Westlaw." *Id.* So West KM is not a search tool for public law that is being sold separately from public law itself.

To sum up, Ross has failed to satisfy any of the three standards for showing distinct products. It has not shown any consumers "bought the items separately." Areeda & Hovenkamp ¶ 1743a. Nor has Ross adduced enough evidence that consumers "requested or wanted the items separate." *Id.* And Ross has made no effort to show that consumers would have asked for the items separated if they were not "intimidated not to make such requests or were deprived of the information that would have made them want the items separated." *Id.*

10

I thus grant Plaintiffs' Motion for Summary Judgment on Ross's Antitrust Counterclaims (No. 1) Separate Products [D.I. 519]. Without showing separate products, none of Ross's remaining antitrust counterclaims can proceed.

### B. Ross has not defined the markets

Even if Ross's allegation of tying had not failed on separate products, it would still fail because Ross has not properly defined the market in which Thomson Reuters allegedly exercises excessive power, either on a per se tying theory or on a rule-of-reason theory.

#### (i) Legal principles

At a minimum, Ross must define either the tying market or the tied market. For per se tying, Ross must show two threshold things about the market. First, it must "properly define[]" the tying product market. *Brokerage Concepts*, 140 F.3d at 513. That means defining both the product and the geography of the market. *Id.* Second, Ross must show that Thomson Reuters "possesses market power in the tying product market." *Town Sound*, 959 F.2d at 477. One cannot determine market power until after one defines the market. So a successful per se claim defines the tying market.

For a rule-of-reason tying theory, Ross need define only the market for the tied product. A rule-of-reason theory is more flexible than a per se theory, letting Ross "state some plausible theory of antitrust harm that does not depend implicitly on power leveraging." *Town Sound*, 959 F.2d at 486. To support a rule-of-reason theory, Ross must be able to show that the alleged tie affected "competition in the tied market." *Brokerage Concepts*, 140 F.3d at 511. So under this theory of liability, Ross need

11

A462

not define the tying market. But it does need to define the *tied* market. "Before we can determine whether there was harm to competition in the tied market, that market must be defined." *Id.* at 519.

This requirement holds especially true for Ross's specific arguments. The "tying injury" alleged "depend[s] on a careful definition of the tied good market." *United States v. Microsoft Corp.*, 253 F.3d 34, 95 (D.C. Cir. 2001). Ross argues that it "has offered evidence of cognizable harm in the tied product market in the form of reduced innovation." D.I. 554 at 24. But I cannot assess that injury if it "takes place in a market that has not been defined." *Microsoft*, 253 F.3d at 95 (quoting *Jefferson Parish*, 466 U.S. at 29). Ross also argues that there was "foreclosure in the legal search tools market." D.I. 554 at 24. When "the theory is one of market foreclosure, [I] must examine the structure of the market supposedly foreclosed." *Town Sound*, 959 F.2d at 493.

Defining a market requires, at a minimum, "describing those groups of producers which, because of the similarity of their products, have the ability … to take significant amounts of business away from each other." *SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1063 (3d Cir. 1978). "The outer boundaries of a product market are determined by evaluating which products would be reasonably interchangeable by consumers for the same purpose." *Brokerage Concepts*, 140 F.3d at 513.

To recap, Ross had to define the market for both its per se and rule-of-reason theory. The per se tying theory requires defining the tying market—the market for public law. And here, the rule-of-reason tying theory requires defining the tied market—the market for legal search tools.

12

A463

### (ii) Ross failed to define either market

Ross failed to define either the tying or tied product market. It tried to do that by relying on the expert opinion of Dr. Ratliff. But he spent just three short paragraphs defining the market for electronically searchable collections of U.S. law and six short paragraphs defining the market for legal search tools. D.I. 532-1, Ex. 33 at 73, 80–82. In these short paragraphs, he fails to analyze in any depth companies or products that are interchangeable with the products here. *Brokerage Concepts*, 140 F.3d at 513. This makes it difficult to understand the scope of the market he is attempting to interact with. His analysis is not enough.

In fact, his analysis is so lacking that I grant in part Plaintiffs' Motion to Preclude Dr. James Ratliff and Dr. Gillian Hadfield. D.I. 529. I exclude the section of Dr. Ratliff's opinion devoted to market definition under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). To be admissible, qualified experts' opinions must be based on reliable methodology and must fit the facts of the case. *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). Here, Dr. Ratliff essentially has no methodology for defining the relevant markets. He includes no math or economic modeling. He never analyzes potential competitors in any depth. All he does is make brief, conclusory assertions. That is not enough.

Ross fails to define the relevant product markets. Without defining them adequately, it cannot reach the issue of market power. So I grant Plaintiffs' Motion for Summary Judgment on Ross's Antitrust Counterclaims (No. 2) Market Definition and Market Power. D.I. 521.

### III. OTHER OUTSTANDING MOTIONS RELEVANT TO THE
### ANTITRUST COUNTERCLAIMS ARE MOOT

I need not reach Thomson Reuters's other summary-judgment motions, because granting summary judgment on either separate products or market definition alone resolves the outstanding antitrust counterclaims.

Turning to the expert motions, the portions of Plaintiffs' Motion to Preclude Dr. James Ratliff and Dr. Gillian Hadfield that I did not already exclude for failing to meet *Daubert* are moot. D.I. 529. These expert reports were submitted to further the antitrust counterclaims and no longer matter now that those counterclaims are resolved. For the same reason, Defendant's Motion to Exclude Certain Opinions of Plaintiffs and Counter Defendants' Expert Chad Syverson is moot too. D.I. 516. If either party tries to use these expert opinions in the copyright portion of this case, the parties may resubmit motions to exclude them.

\* \* \* \* \*

For all these reasons, I grant summary judgment to Thomson Reuters on its motions on separate products and market definition and market power. I dismiss as moot the other motions on the antitrust counterclaims.

14

A465

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE
CENTRE GMBH and WEST PUBLISH-
ING CORP.,

        *Plaintiffs*,

       v.

ROSS INTELLIGENCE INC.,

        *Defendant*.

No. 1:20-cv-613-SB

---

### ORDER

For the reasons given in the accompanying opinion,

1. **I GRANT** Plaintiffs' Motion for Summary Judgment on Ross's Antitrust Counterclaims (No. 1) Separate Products (D.I. 519).

2. **I GRANT** Plaintiffs' Motion for Summary Judgment on Ross's Antitrust Counterclaims (No. 2) Market Definition and Power (D.I. 521).

3. Because I am granting summary judgment on Motions 1 and 2, **I DISMISS AS MOOT** Plaintiffs' Motion for Summary Judgment on Ross's Antitrust Counterclaims (No. 3) Statute of Limitations (D.I. 523).

4. Because I am granting summary judgment on Motions 1 and 2, **I DISMISS AS MOOT** Plaintiffs' Motion for Summary Judgment on Ross' Antitrust Counterclaims (No. 4) Injunctive Relief (D.I. 525).

5. Because I am granting summary judgment on Motions 1 and 2, **I DISMISS AS MOOT** Plaintiffs' Motion to Preclude Dr. Alan Cox and Motion for Summary Judgment on Ross's Antitrust Counterclaims (No. 5) Comcast (D.I. 527).

6. **I GRANT IN PART** Plaintiffs' Motion to Preclude Dr. James Ratliff and Dr. Gillian Hadfield. I exclude the portion of Dr. Ratliff's report that addresses market definition. **I DISMISS AS MOOT** the remainder of the motion because these experts are relevant only to the antitrust counterclaims which are now all resolved at summary judgment (D.I. 529).

A466

7. Because the antitrust counterclaims are now all resolved at summary judg-
ment, **I DISMISS AS MOOT** Defendant's Motion to Exclude Certain Opinions
of Plaintiffs and Counter Defendants' Expert Chad Syverson (D.I. 516).

Dated: September 27, 2024

_____
UNITED STATES CIRCUIT JUDGE

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (SB) |
| v. | ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant and Counterclaimant. | ) ) ) | |

**SECOND DECLARATION OF LAURIE OLIVER IN SUPPORT OF PLAINTIFFS'
RENEWED MOTIONS FOR SUMMARY JUDGMENT**

A468

I, Laurie Oliver, declare as follows:

1.      I am a lawyer and a U.S. Cases Editorial Manager for Thomson Reuters Holdings Inc., where I have worked for the past 31 years.   I submit this declaration to supplement the previous declaration I made in support of Plaintiffs' Motions for Summary Judgment.  The statements set forth in this declaration are based on my personal knowledge and my review of the contemporaneous documents referenced and attached hereto.

2.      During my time at Thomson Reuters, I have served as an attorney editor and have managed the creation of editorial enhancements, including West Headnotes and synopses, and the classification of West Headnotes within the West Key Number System ("Westlaw Content"). The team is comprised of 70 attorney-editors who summarize judicial opinions and 24 attorney-editors who are case classifiers, all of whom are lawyers and require extensive training to create Westlaw Content.

**A.      West Headnotes**

3.      The West Headnotes identify and synthesize key issues and holdings in judicial opinions.  Creating the West Headnotes requires numerous creative decisions by Thomson Reuters' attorney-editors.

4.      For instance, the attorney-editor decides whether to editorially enhance a judicial opinion in the first place, out of thousands of opinions decided each year.  The attorney-editor then needs to decide how many West Headnotes to write for which case passages.   To do that, attorney-editors must carefully read the underlying judicial opinion to figure out what the court meant and what West Headnotes would be most helpful to assist researchers in understanding the decision and rules of law.  The most important parts of an opinion or case passage are not always obvious, and there is discretion about which parts of the opinion to make into a West Headnote.

A469

Moreover, the attorney-editor may look at a section of a judicial opinion and decide to make one headnote, several, or none. It is up to the judgment of the attorney-editor.

5.      The attorney-editor also has to decide *how* to write the West Headnote in a clear and concise way. To do that, they need to decide the specific wording of the West Headnote and which concepts to include or not include. As part of that decision, the attorney-editor may consider whether an analogous concept of law has been addressed in other judicial opinions using different language, and whether or how that affects the creation of a West Headnote in a different decision. There is no one way to do this, and different attorney-editors could draft the same West Headnote differently. The attorney-editor also has to decide where to link the West Headnote in the judicial opinion. Finally, an attorney-editor has to decide how to classify the West Headnote within the West Key Number System, as I describe in more detail below.

**B.      The West Key Number System**

6.      The West Key Number System indexes cases across hundreds of legal topics and, within those topics, specific legal issues. Each West Headnote is assigned one or more topics and a Key Number that corresponds to a legal issue within the case.

7.      The West Key Number System is constantly updated, with new editions being published each year. The hundreds of topics and subtopics in the West Key Number System have changed over time, as new topics are added or condensed. For example, issues involving summary judgment motions used to be classified under the topic, "Judgment." However, the procedural mechanism of summary judgment and related issues has grown big enough in recent years that Thomson Reuters' attorney-editors decided that it warranted its own topic, released last year. As new technologies or areas of the law develop, Thomson Reuters updates and adapts the West Key Number System. The process and development of the law is not exact, and there is no one way to organize it. Deciding how to organize the many topics and subtopics in the West

Key Number System and adapt them to the changing technological and legal landscape thus requires creativity and judgment.

8.      In particular, the process for creating the West Key Number System involves looking at where the law has expanded or stagnated and considering whether certain topics or subtopics currently cover multiple concepts that would be better treated separately, or whether we can combine concepts under a single topics.  We also consider West Headnotes that do not fit cleanly into the existing West Key Number System to determine if new issues should be included.

###      C.      Classification within the West Key Number System

9.      After West Headnotes are written, the attorney-editor writing them preliminarily assigns them to one or more West Key Numbers.  After that, specialized attorney-editors called "case classifiers" review the headnote-writer's suggestion and assign West Key Numbers, which are the lowest subtopic within the West Key Number System hierarchy, to the West Headnotes.

10.      There are many different ways a West Headnote could be classified and sometimes multiple topics may be suitable.  Deciding how to classify the West Headnote within the West Key Number System is up to the judgment of the individual case classifier, who may base his or her decision in part on the initial recommendation based on the judgment of the attorney-editor.

Dated: October 1, 2024

_____
Laurie Oliver

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 1, 2024, upon the following in the manner indicated:

David E. Moore, Esquire                                    *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
Andrew L. Brown, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                    *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
Matthew J. McBurney, Esquire
Keith J. Harrison, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Jacob Canter, Esquire                                      *VIA ELECTRONIC MAIL*
Warrington Parker, Esquire
Anna Z. Saber, Esquire
Beatrice B. Nguyen, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

A472

Emily T. Kuwahara, Esquire                          *VIA ELECTRONIC MAIL*
Jordan Ludwig, Esquire
CROWELL & MORING LLP
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
*Attorneys for Defendant and Counterclaimant*

Ryan Henry Seewald, Esquire                         *VIA ELECTRONIC MAIL*
CROWELL & MORING LLP
1601 Wewatta Street, Suite 815
Denver, CO 80202
*Attorneys for Defendant and Counterclaimant*


                            */s/ Michael J. Flynn*
                            _____
                            Michael J. Flynn (#5333)

A473

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (SB) |
| | ) | **REDACTED - PUBLIC VERSION** |
| v. | ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant and Counterclaimant. | ) ) ) | |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RENEWED MOTION
FOR PARTIAL SUMMARY JUDGMENT ON FAIR USE**

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
Jeremy King
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Yungmoon Chang
Allyn Belusko
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
(310) 552-4200

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mflynn@morrisnichols.com

*Attorneys for Plaintiffs Thomson Reuters
Enterprise Center GmbH and West Publishing
Corporation*

Original filing date: October 1, 2024
Redacted filing date: October 8, 2024

A474



Accordingly, this Court already found that ROSS actually copied Westlaw Content. Op. 8–9.

## ARGUMENT

Summary judgment is proper where there is "no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant informs the court "of the basis for its motion" and the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the non-moving party must present evidence establishing disputed issues as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

As fair use is "an affirmative defense," ROSS "bears the burden of proof." *See Video Pipeline, Inc. v. Buena Vista Home Ent.*, 342 F.3d 191, 197 (3d Cir. 2003); *see also Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020) (same). Courts routinely decide summary judgment in favor of the copyright holder where a defendant cannot meet this burden as a matter of law. *See, e.g., TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (commercial use of work that hurt market for the original was not fair use as a matter of law); *Wall Data Inc. v.*

11

# EXHIBITS 1-18

## Redacted in their Entirety

# EXHIBIT 19

Case 1:20-cv-00613-SB  Document 635-1  Filed 11/08/24  Page 3 of 80 PageID #: 53743

THOMSON REUTERS
**WESTLAW EDGE** ○

23575-003      History   Folders   My links   Notifications        Sign out

All content    | In New York, what is secondary liability with respect to |    All Federal         Search Tips
                                                                                      Advanced

| Content types | Filters | ○ | **Cases** (76) |
|---|---|---|---|

Set default

WestSearch includes documents with concepts related to your terms for more
thorough research.
To modify these results to just documents that include your precise terms, **click here** .

| Overview | 15 |
|---|---|
| **Cases** | **76** |
| Trial Court Orders | 20 |
| Statutes & Court Rules | 38 |
| Secondary Sources | 96 |
| Practical Law | 896 |
| Regulations | 38 |
| Public Records | |
| Administrative Decisions & Guidance | 10,000 |
| Arbitration Materials | 9,812 |
| Briefs | 86 |
| Expert Materials | 3,076 |
| Forms | 0 |
| Jury Verdicts & Settlements | 1,346 |
| Key Numbers | 10 |
| Proposed & Adopted Regulations | 1,148 |
| Proposed & Enacted Legislation | 672 |
| Trial Court Documents | 95 |
| All results | 27,399 |

1 - 20            Relevance

☐ Select all items  •  No items selected                    Related documents

☐   1.   **Arista Records LLC v. Lime Group LLC**
         United States District Court, S.D. New York.  •  May 02, 2011  •  784 F.Supp.2d 398  •
         2011 WL 1742029

         E-COMMERCE - Intellectual Property. Business distributing file-sharing software
         induced **copyright infringement** of sound recordings.

         Show synopsis

         ☐   1 - 3 of 390 snippets

         ...Holdings: The District Court, Kimba M. Wood, J., held that: (1)  record
         companies' collaboration with statistical expert did not render inadmissible
         expert's opinions regarding what percentage of shared files were not authorized
         for free distribution; (2)  under **New York** law, entire declaration of businesses's
         employee to record companies' counsel would not be stricken as arising out of
         improper ex parte communication; (3)  e-mail chains and Internet forum
         postings written in whole or part by business's employees were admissions by
         opponent constituting admissible non-hearsay; (4)  business induced
         **copyright**...

         ...Plaintiffs raise the following claims against LW, Lime Group, and Gorton: (1)
         inducement of **copyright infringement**; (2)  contributory **copyright**
         **infringement**; (3)  vicarious **copyright infringement**; and (4) state common law
         **copyright infringement**...

         ...General principles that persons and corporations who participate in, exercise
         control over, or benefit from **copyright infringement** are jointly and severally
         **liable** as **copyright infringers** and that individuals with ability to supervise
         **infringing** activity or who personally participate in the activity are personally
         **liable** for **infringement**...

☐   2.   **Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.**
         Supreme Court of the United States  •  June 27, 2005  •  545 U.S. 913  •  125 S.Ct. 2764

         COPYRIGHTS - Software. Distributors of peer-to-peer file sharing software may be
         **liable** for users' **copyright infringement**

         Show synopsis

         ☐   1 - 3 of 282 snippets

         ...Although **secondary liability** for **copyright infringement** may not be imposed
         by presuming or imputing intent to cause **infringement** solely from the design or

COX
EXHIBIT 1

A478

distribution of a product capable of substantial lawful use, which the distributor
knows is in fact used for **infringement**, this bar does not mean that a producer
can never be held contributorily **liable**...

...Inducement **liability** for **copyright infringement** goes beyond encouraging a
particular consumer to **infringe** a **copyright**, and the distribution of a product
can itself give rise to **liability** where evidence shows that the distributor
intended and encouraged the product to be used to **infringe**; in such a case, the
culpable act is not merely the encouragement of **infringement**...

...Mere knowledge of **infringing** potential or of actual **infringing** uses would not
be enough to subject to **copyright infringement liability** a distributor of a
product capable of **infringing** uses, nor would ordinary acts incident to product
distribution, such as offering customers technical support or product updates,
support **liability** in themselves; instead, **liability**...

---

☐   3.   **A&M Records, Inc. v. Napster, Inc.**

United States Court of Appeals, Ninth Circuit.   •   February 12, 2001   •   239 F.3d 1004   •
2001 WL 115033

INTELLECTUAL PROPERTY - Computers and Online Services. Transmission of
digital audio files over Internet was not fair use of **copyrighted** musical works.

**Show synopsis**

☐   1 - 3 of 246 snippets   ☐

...  Accordingly, we next address whether Napster is **secondarily liable** for the
direct **infringement** under two doctrines of **copyright** law:  contributory
**copyright infringement** and vicarious **copyright infringement**....

...Traditionally, one who, with knowledge of the **infringing** activity, induces,
causes, or materially contributes to the **infringing** conduct of another, may be
held **liable** as a contributory **copyright infringer**; **liability** exists if the defendant
engages in personal conduct that encourages or assists the **infringement**....

...  See S. Rep. 105–190, at 40 (1998) ( "The limitations in subsections (a) through
(d) protect qualifying service providers from **liability** for all monetary relief for
direct, vicarious, and contributory **infringement**."), reprinted in Melville B.
Nimmer & David Nimmer, Nimmer on **Copyright**:  Congressional Committee
Reports on the Digital Millennium **Copyright** Act and Concurrent Amendments
(2000;  see also Charles S. Wright, Actual Versus Legal Control:  Reading
Vicarious **Liability**...

---

☐   4.   **Arista Records LLC v. Usenet.com, Inc.**

United States District Court, S.D. New York.   •   June 30, 2009   •   633 F.Supp.2d 124   •
2009 WL 1873589

E-COMMERCE - Computers and Online Services. Operators of file distribution
service engaged in conduct which allowed direct **infringement** of music
**copyrights**.

**Show synopsis**

☐   1 - 3 of 267 snippets   ☐

...Background:  Recording companies brought action against operators of file
distribution service that made music available for download, alleging direct
**infringement** of exclusive right of distribution, inducement of **copyright**

infringement, contributory **copyright** infringement, and vicarious **copyright** infringement...

...Holdings:  The District Court, Harold Baer, Jr., J., held that: (1)  imposition of sanction precluding operators from asserting affirmative defense of protection under Digital Millennium **Copyright** Act's (DMCA) safe harbor provision was warranted for discovery abuse;  (2)  operators actively engaged in conduct which allowed direct **infringement** of recording companies' **copyrights**;  (3)  operators intended to induce or foster **copyright infringement** by its users on its services, as required for inducement of **infringement**...

...  Specifically, Plaintiffs brought this action alleging (1) direct **infringement** of the Plaintiffs' exclusive right of distribution under 17 U.S.C. §  106(3);  2  (2) inducement of **copyright infringement**;  (3) contributory **copyright** infringement;  and (4) vicarious **copyright** infringement...

---

☐    5.    **Perfect 10, Inc. v. Amazon.com, Inc.**

United States Court of Appeals, Ninth Circuit.  •  December 03, 2007  •  508 F.3d 1146  •  2007 WL 4225819

E-COMMERCE - Computers and Online Services. Search engine's display of thumbnail images of **copyrighted** photographs on third-party websites was fair use.

Show synopsis

☐    1 - 3 of 322 snippets    ☐

...Although the lines between direct **copyright infringement**, contributory **infringement**, and vicarious **liability** are not clearly drawn, in general, contributory **liability** is based on the defendant's failure to stop its own actions which facilitate third-party **infringement**, while vicarious **liability** is based on the defendant's failure to cause a third party to stop its directly **infringing**...

...Within the general rule that one **infringes** a **copyright** contributorily by intentionally inducing or encouraging direct **infringement**, there are two categories of contributory **liability**:  **liability** may be predicated on actively encouraging or inducing **infringement** through specific acts or on distributing a product distributees use to **infringe copyrights**...

...Operator of Internet search engine that indexed and organized third-party webpages substantially assisted third-party websites in distributing their **infringing** copies of **copyrighted** photographs to a worldwide market and assisted worldwide audience of users to access **infringing** materials, for purpose of **copyright** owner's contributory **infringement** claim, even if operator did not undertake any substantial promotional or advertising efforts to encourage visits to **infringing**...

---

☐    6.    **Wolk v. Kodak Imaging Network, Inc.**

United States District Court, S.D. New York.  •  January 03, 2012  •  840 F.Supp.2d 724  •  2012 WL 11270

COPYRIGHTS - Internet. Internet service provider was shielded from **liability** under Digital Millennium **Copyright** Act (DMCA) safe harbor provision.

Show synopsis

☐    1 - 3 of 236 snippets    ☐

...To **establish** a claim of **copyright infringement** violative of **Copyright** Act, a plaintiff must **establish**: (1) ownership of a valid **copyright**, and (2) unauthorized copying or a violation of one of the other exclusive rights afforded **copyright** owners pursuant to the **Copyright** Act.   17 U.S.C.A. § 101 et seq....

...  While "[t]he **Copyright** Act does not expressly render anyone **liable** for **infringement** committed by another," it "does not preclude the imposition of **liability** for **copyright infringements** on certain parties who have not themselves engaged in the **infringing** activity."  ...

...There are five counts in the Complaint applicable to Photobucket:  Count I requesting a declaratory judgment that Photobucket has **infringed** on Wolk's **copyrights**, Count II requesting a permanent injunction preventing Photobucket from continuing to **infringe**, Count III alleging contributory **copyright infringement**, Count IV alleging vicarious **copyright infringement**...

☐   7.   **VHT, Inc. v. Zillow Group, Inc.**
United States Court of Appeals, Ninth Circuit.  •  March 15, 2019  •  918 F.3d 723  •  2019 WL 1216206

**COPYRIGHTS —** Online Services. Owner of real estate marketplace website did not directly **infringe copyrighted** photos that were displayed after property had sold.
Show synopsis

☐   1 - 3 of 272 snippets   ☐

...Holdings:  The Court of Appeals, McKeown, Circuit Judge, held that: (1) owner did not directly **infringe** photos that were displayed on its real property listing platform; (2)   owner did not directly **infringe** photos that were not displayed on its home design webpages; (3)   owner did not directly **infringe** non-searchable photos that were displayed on its home design webpages; (4) searchable functionality that was added to **copyrighted** photos displayed on home design webpages did not constitute fair use; (5)   owner was not **liable**...

...Owner of real estate marketplace website was not **liable** for **secondary copyright infringement** based on induced **infringement** with **respect** to photos displayed on its home design webpages, since website's generally applicable tools and messages for users to save more photos from its listing platform to home design webpages did not promote use of home design webpages specifically to **infringe**...

...Owner of real estate marketplace website was not **liable** for **secondary copyright infringement** based on vicarious **liability** theory with **respect** to photos displayed on its home design webpages, since owner did not have technical ability to screen out or identify allegedly **infringing** photos among many photos that users saved or uploaded daily to home design webpages....

☐   8.   **Capitol Records, LLC v. ReDigi Inc.**
United States District Court, S.D. New York.  •  March 30, 2013  •  934 F.Supp.2d 640  •  2013 WL 1286134

**COPYRIGHTS -** Music. First sale doctrine did not protect website operator's distribution of record company's **copyrighted** works.
Show synopsis

☐   1 - 3 of 212 snippets   ☐

A481

...In its Complaint, Capitol alleges multiple violations of the **Copyright** Act, 17 U.S.C. § 101, et seq., including direct **copyright infringement**, inducement of **copyright infringement**, contributory and vicarious **copyright infringement**, and common law **copyright**...

...Holdings:  The District Court, Richard J. Sullivan, J., held that: (1)   operator's unauthorized transfer of digital music files over internet was reproduction within meaning of **Copyright** Act; (2)   operator's use of company's **copyrighted** music was fell outside fair use defense to **infringement**; (3)   first sale doctrine did not protect operator's distribution of company's **copyrighted** works; (4)   operator directly **infringed** company's distribution and reproduction rights;...

...To be **liable** for direct **copyright infringement**, a defendant must have engaged in some volitional conduct sufficient to show that it actively violated one of the plaintiff's exclusive rights; in other words, to **establish** direct **liability** under the **Copyright** Act, something more must be shown than mere ownership of a machine used by others to make illegal copies, and there must be actual **infringing**...

---

☐   9.   **Capitol Records, Inc. v. MP3tunes, LLC**

United States District Court, S.D. New York.  •  October 25, 2011  •  821 F.Supp.2d 627  •  2011 WL 5104616

**COPYRIGHTS -** Music. Online music service provider satisfied threshold requirements to qualify for safe harbor under DMCA.

Show synopsis

| 1 - 3 of 282 snippets |

...A party is contributorily **liable** for **copyright infringement** only if it (1) knew or had reason to know of the **infringement** and (2) materially contributed to the **infringement**....

...Digital Millennium **Copyright** Act (DMCA) seeks to balance the interests of **copyright** owners and online service providers by promoting cooperation, minimizing **copyright infringement**, and providing a higher degree of certainty to service providers on the question of **copyright infringement**.   17 U.S.C.A. § 512....

...To **establish** direct **copyright infringement**, a plaintiff must prove (1) ownership of a valid **copyright** and (2) unauthorized copying by a third party; additionally, a plaintiff must demonstrate compliance with provision of **Copyright** Act requiring preregistration or registration for United States **copyrights** as a prerequisite for suit.   17 U.S.C.A. §  411(a)....

---

☐   10.   **Capitol Records, LLC v. Escape Media Group, Inc.**

United States District Court, S.D. New York.  •  March 25, 2015  •  Not Reported in F.Supp.3d  •  2015 WL 1402049

Before the Court is the report and recommendation ("Report" or "R & R") of Magistrate Judge Sarah Netburn dated May 28, 2014, Dkt. No. 90, regarding Plaintiff EMI Music North America ("EMI")'s motion for summary judgment. EMI moved for summary judgment as to its First and Sixth Claims for federal and common law **copyright infringement**. By...

| 1 - 3 of 425 snippets |

..." **Secondary liability** for **copyright infringement** may be imposed on a party that has not directly **infringed** a **copyright**, but has played a significant role in direct **infringement** committed by others, for example by providing direct **infringers** with a product that enables **infringement**...

...Specifically, the Court recommends finding that Escape, as a matter of law, is not entitled to an affirmative defense under the Digital Millennium **Copyright** Act, and that summary judgment should be granted in favor of EMI on its claims for direct **infringement** of the right of performance under federal law, **secondary infringement** under federal law for both contributory and vicarious **infringement**, and direct and **secondary infringement**...

...While the elements of contributory and vicarious **copyright infringement** under **New York** common law are not explicitly delineated, the case law indicates that theories of **secondary liability** generally mirror federal law....

---

11.  **UMG Recordings, Inc. v. Shelter Capital Partners LLC**

United States Court of Appeals, Ninth Circuit.  •  March 14, 2013  •  718 F.3d 1006  • 2013 WL 1092793

**COPYRIGHTS** - Music. Operator of a video-sharing website was entitled to safe harbor protection under the Digital Millennium **Copyright** Act.

Show synopsis

1 - 3 of 240 snippets

...Operator of publicly accessible website that enabled users to share videos with other users did not have necessary right and ability to control **infringing** activity, and thus remained eligible for safe harbor protection from **copyright infringement** claims under Digital Millennium **Copyright** Act; although parties agreed that at times there was **infringing** material available on website, website operator promptly removed **infringing** material when it became aware of specific instances of **infringement**...

...13   Congress made a considered policy determination that the "DMCA notification procedures [would] place the burden of policing **copyright infringement** —identifying the potentially **infringing** material and adequately documenting **infringement** —squarely on the owners of the **copyright**."   ...

...General knowledge of operator of publicly accessible website that enabled users to share videos with other users, that it hosted **copyrightable** material and that its services could be used for **infringement**, was insufficient to constitute a red flag providing actual notice of **infringing** activity, as required for website operator's safe harbor protection under Digital Millennium **Copyright** Act from recording company's **copyright infringement**...

---

12.  **Krisko v. Marvel Entertainment, LLC**

United States District Court, S.D. New York.  •  July 21, 2020  •  473 F.Supp.3d 288  • 2020 WL 4194940

Show synopsis

Did complaint sufficiently allege that there was any injury in the forum to support specific personal jurisdiction? **No**

Legal issue: Personal Jurisdiction > Relates to or A…    More cases on this issue

11/1/22, 5:58 AM    Search Results - New Document secondary liability with respect to copyright infringement and how is it established | Westlaw...

**Material Facts**                                                           Headnote 15
- Television theme was distributed all over world, including New York
- Copyright owner lived in Florida and did not allege non-speculative and direct New York-based injury to his intellectual property rights other than pure economic losses

**Causes of Action**
Copyright Infringement

**Motion Type**
Motion to Transfer or Change Venue > Denied  •  Motion to Dismiss for Lack of Personal Jurisdiction > Granted  •  Motion to Dismiss for Failure to State a Claim > …

1 - 3 of 156 snippets

...Holdings:  The District Court, Gregory H. Woods, J., held that: (1)   theme composer did not "transact business" in **New York** within meaning of **New York** long-arm statute; (2)   composer was never physically present in **New York**, and companies which distributed his theme through the airing of the show in **New**...

...**Copyright** owner, who alleged that composer of television show's theme music plagiarized his **copyright**, failed to allege that any **infringement** caused injury to person or property within **New York**, for purposes of **New York** long-arm statute; although television theme was distributed all over world, including **New**...

...Composer of television show's musical theme was never physically present in **New York**, and **New York** media companies which distributed his theme through the airing of the show in **New York** did not act as composer's agent, for purposes of **New York** long-arm statute, where composer's work was sold by his employer to **New**...

13.   **Sony Corp. of America v. Universal City Studios, Inc.**
Supreme Court of the United States  •  January 17, 1984  •  464 U.S. 417  •  104 S.Ct. 774

Owners of **copyrights** on television programs brought **copyright infringement** action against manufacturers of home videotape recorders.   The United States District Court for the Central District of California, 480 F.Supp. 429, denied all relief sought by **copyright** owners and entered judgment for manufacturers, and owners appealed.   The...

Show synopsis

1 - 3 of 493 snippets

...Anyone who trespasses into **copyright** owner's exclusive domain by using or authorizing use of the **copyrighted** work in one of the five ways set forth in the statute is an **infringer** of the **copyright**; conversely, anyone who is authorized by **copyright** owner to use the **copyrighted** work in a way specified in the statute or who makes a fair use of the work is not an **infringer**...

...Decision in Kalem Co. v. Harper Brothers, which held that producer of an unauthorized film dramatization of a **copyrighted** book was **liable** for his sale of the motion picture to jobbers who in turn arranged for the commercial exhibition of the film did not **establish** a basis upon which to hold manufacturers of home videotape recorders **liable** to owners of **copyrights** on television programs for **copyright infringement**...

...Respondents argue that Kalem stands for the proposition that supplying the "means" to accomplish an **infringing** activity and encouraging that activity

A484

11/1/22, 7:55 PM                  In New York, what is secondary liability with respect to copyright infringement and how is ... - Westlaw...

through advertisement are sufficient to **establish liability** for copyright
**infringement**....

Missing: ~~secondary liability~~ | Must include: secondary liability

---

☐     14.     **Gershwin Pub. Corp. v. Columbia Artists Management, Inc.**

United States Court of Appeals, Second Circuit.   ·   May 24, 1971   ·   443 F.2d 1159   ·   14
A.L.R. Fed. 819

Appeal from an order of the United States District Court for the Southern District of
New York, Gus J. Solomon, J., 312 F.Supp. 581, granting summary judgment for
the plaintiff and enjoining defendant from any future **infringement** of plaintiff's
**copyright** in the musical composition 'Bess, You Is My Woman Now.' The Court of
Appeals,...

Show synopsis

┌──────────────────────────────────────────────────────────────┐
│  ☐     1 - 3 of 45 snippets     ☐                              │
│                                                                │
│  ...One who, with knowledge of **copyright infringing** activity, induces, causes or │
│  materially contributes to **infringing** conduct of another may be held **liable** as a │
│  "contributory" **infringer**.   17 U.S.C.A. §§ 1(e), 101....  │
│                                                                │
│  ...[1][2][3] Section 1(e) of the **Copyright** Act bestows upon the **copyright** │
│  proprietor 'the exclusive right * * * to perform the **copyrighted** work publicly for │
│  profit,' an interest which is protected by § 101 of the Act which holds accountable │
│  'any person (who) shall **infringe** the **copyright**.'... │
│                                                                │
│  ...Even in absence of employer-employee relationship one may be vicariously │
│  **liable** for **copyright infringement** if he has right and ability to supervise │
│  **infringing** activity and also has direct financial interest in such activities.   17 │
│  U.S.C.A. §§ 1(e), 101....                                     │
└──────────────────────────────────────────────────────────────┘

Missing: ~~respect~~ , ~~established~~ and ~~secondary liability~~ | Must include: respect,
established, secondary liability, or all search terms

---

☐     15.     **Arista Records LLC v. Lime Group LLC**

United States District Court, S.D. New York.   ·   May 25, 2010   ·   715 F.Supp.2d 481   ·
2010 WL 2291485

E-COMMERCE - Intellectual Property. Business distributing file-sharing software
induced **copyright infringement** of sound recordings.

Show synopsis

┌──────────────────────────────────────────────────────────────┐
│  ☐     1 - 3 of 293 snippets     ☐                             │
│                                                                │
│  ...Holdings:   The District Court, Kimba M. Wood, J., held that: (1)   record │
│  companies' collaboration with statistical expert did not render inadmissible │
│  expert's opinions regarding what percentage of shared files were not authorized │
│  for free distribution; (2)   under **New York** law, entire declaration of businesses's │
│  employee to record companies' counsel would not be stricken as arising out of │
│  improper ex parte communication; (3)   e-mail chains and Internet forum │
│  postings written in whole or part by business's employees were admissions by │
│  opponent constituting admissible non-hearsay; (4)   business induced │
│  **copyright**...                                             │
│                                                                │
│  ...Plaintiffs raise the following claims against LW, Lime Group, and Gorton (1) │
│  inducement of **copyright infringement**;  (2) contributory **copyright** │
└──────────────────────────────────────────────────────────────┘

A485

infringement;  (3) vicarious **copyright infringement**;  and (4) state common law **copyright infringement**...

...For the reasons stated below, the Court:  (1) DENIES Defendants' motions to exclude evidence;  4  (2) GRANTS Plaintiffs' motion for summary judgment on the claim against LW of inducement of **copyright infringement**, and DENIES LW's motion for summary judgment on the claim;  (3) DENIES the parties' cross-motions for summary judgment on the claim against LW of contributory **copyright infringement**;  (4) DENIES LW's motion for summary judgment on the claim of vicarious **copyright**...

☐  16.  **Warner Records Inc. v. Charter Communications, Inc.**

United States District Court, D. Colorado.  •  April 15, 2020  •  454 F.Supp.3d 1069  •  2020 WL 1872387

**COPYRIGHTS —** Online Services. **Copyright** owners stated claim against ISP for vicarious **liability** for **copyright infringement**.

Show synopsis

☐  1 - 3 of 192 snippets  ☐

...Financial benefit, as element of claim for vicarious **liability** for **copyright infringement**, may be **established** by showing that users of **copyrighted** materials are attracted to a defendant's product because it enables **infringement**, and that use of the product for **infringement** financially benefits defendant; it exists when the availability of **infringing**...

...Record companies and music publishers that produced and distributed **copyrighted** commercial sound recordings and musical compositions sufficiently alleged Internet service provider's (ISP) direct financial interest in its customers' **infringing** activities, as required to state claim for vicarious **liability** for **copyright infringement**; allegations included that ISP drew **infringers** to its service by touting specific features of its service that were attractive to **copyright**...

...Record companies and music publishers that produced and distributed **copyrighted** commercial sound recordings and musical compositions sufficiently alleged Internet service provider (ISP) had both a legal right to stop or limit directly **infringing** conduct, as well as the practical ability to do so, as required to state claim for vicarious **liability** for **copyright infringement**; allegations included that ISP's own terms of service and policies expressly prohibited users from engaging in **copyright**...

☐  17.  **Sony Music Entertainment v. Cox Communications, Inc.**

United States District Court, E.D. Virginia, Alexandria Division.  •  June 02, 2020  •  464 F.Supp.3d 795  •  2020 WL 3121306

**COPYRIGHTS —** Music. Jury's award of statutory damages of $99,830.29 for each work **infringed** was not miscarriage of justice in record companies' **copyright infringement** action against ISP.

Show synopsis

☐  1 - 3 of 497 snippets  ☐

...Holdings:  The District Court, Liam O'Grady, Senior District Judge, held that: (1) evidence of operators' direct **infringement liability** from distribution under **Copyright** Act presented question for jury; (2)  evidence of operators' direct **infringement liability** from reproduction presented question for jury; (3)

evidence of operators' right and ability to supervise **infringing** activity presented question for jury on claim of vicarious **liability**.

...The number of awards of statutory damages that a plaintiff may recover in any given **copyright infringement** action against a single defendant depends on the number of works that are **infringed**, not the number of **infringements**, and the number of individually **liable infringers** and is unaffected by the number of **infringements** of those works.   17 U.S.C.A. § 504(c)(1)....

...[39] Then, to solidify the idea that the number of **infringers** is also measured by the work **infringed**, Congress specifies that the " **infringer** is **liable** individually, or [ ] any two or more **infringers** are **liable** jointly and severally." § 504(c)(1)....

---

☐    18.    **Ellison v. Robertson**

United States Court of Appeals, Ninth Circuit.   •   February 10, 2004   •   357 F.3d 1072   •   2004 WL 235466

**COPYRIGHTS -** Internet. Fact issue existed as to whether ISP was eligible for **Copyright** Act's safe-harbor provisions.

Show synopsis

☐    1 - 3 of 128 snippets    ☐

...The court found that:  (1) the evidence failed to **establish** Ellison's claims of direct and vicarious **copyright infringement**;  (2) whether AOL was **liable** for contributory **copyright infringement** presented a triable issue of fact;  (3) the evidence showed that AOL met the threshold eligibility requirements of 17 U.S.C. § 512(i) for the safe harbor limitations from **liability**...

...One who, with actual or implied knowledge of **copyright infringing** activity, induces, causes, or materially contributes to **infringing** conduct of another may be **liable** as contributory **infringer**....

...  A defendant is vicariously **liable** for **copyright infringement** if he enjoys a direct financial benefit from another's **infringing** activity and "has the right and ability to supervise" the **infringing** activity....

Missing: ~~New York,~~ | Must include: New York,

---

☐    19.    **Perfect 10, Inc. v. Visa Intern. Service Ass'n**

United States Court of Appeals, Ninth Circuit.   •   July 03, 2007   •   494 F.3d 788   •   2007 WL 1892885

**COPYRIGHTS -** Internet. Payment processing by credit card companies did not constitute material contribution to **infringement**.

Show synopsis

☐    1 - 3 of 400 snippets    ☐

...Holdings:  The Court of Appeals, Milan D. Smith, Jr., Circuit Judge, held that: (1) payment processing by credit card companies did not constitute material contribution to **infringement** by competing Internet websites that stemmed from failure to obtain license to distribute; (2)   payment processing by credit card companies did not induce competing Internet websites to **infringe copyrights**; (3)   credit card companies had not vicariously **infringed copyrights**...

A487

...[12][13]   To be **liable** for contributory trademark **infringement**, a defendant must have (1) "intentionally induced" the primary **infringer** to **infringe**, or (2) continued to supply an **infringing** product to an **infringer** with knowledge that the **infringer** is mislabeling the particular product supplied....

...To be **liable** for contributory trademark **infringement** under Lanham Act, a defendant must have (1) intentionally induced the primary **infringer** to **infringe**, or (2) continued to supply an **infringing** product to an **infringer** with knowledge that the **infringer** is mislabeling the particular product supplied.   Lanham Act, § 32(1)(a), 15 U.S.C.A. § 1114(1)(a)....

Missing: ~~New York,~~ | Must include: New York,

---

20.   **Levine v. Landy**

United States District Court, N.D. New York.   •   December 30, 2011   •   832 F.Supp.2d 176   •   2011 WL 6845886

**COPYRIGHTS** - Art and Architecture. Allegations by photographer stated contributory **copyright infringement** claim against defendant-publisher.

Show synopsis

1 - 3 of 173 snippets

...Holdings:  The District Court, David N. Hurd, J., held that: (1)   allegations stated claim for violation of the **Copyright** Act; (2)   photographer was prohibited from claiming statutory damages and attorney fees in connection with certain **infringement** claims under the **Copyright** Act; (3)   allegations stated contributory **copyright infringement** claim against publisher; (4)   unjust enrichment claim was preempted by **Copyright**...

...Although the **Copyright** Act does not expressly render anyone **liable** for **infringement** committed by another, the doctrines of **secondary liability** emerged from common law principles and are well **established** in copyright **infringement** law.   17 U.S.C.A. § 106....

...Photographer's claim for an accounting against publisher, under **New York** law, was preempted by the **Copyright** Act, with **respect** to photographs that were allegedly **copyrighted** and **infringed** by publisher, as claim was premised primarily on **copyright infringement**.   17 U.S.C.A. § 301(a)...

---

1 2 3 4                     20 per page ⌄

## Documents related to your search

**Secondary Sources**     Briefs     Trial Court Documents

Liability as "vicarious" or "contributory" infringer under Federal Copyright Act

American Law Reports ALR Federal

...A person **infringes** on **copyright** contributorily by inducing or encouraging direct **infringement**, and **infringes** vicariously by profiting from direct **infringement** while declining to exercise a right to stop or limit it; without a showing of a direct **copyright infringement**, **secondary liability**...

---

### 4.11[5][B]Individual Liability for the Conduct of Business Entities (Including the Potential Liability of Investors, Venture Capitalists, Officers, Directors and Owners)

E-Commerce and Internet Law

...54] The court further rejected Robertson's argument that he could not be held **secondarily liable** for MP3Tunes' **secondary liability**, noting other cases where individuals were held **secondarily liable** for their companies' **secondary liability**...

---

### 4.11[4][C]Right and Ability to Control and the Potential Applicability of the Sony Safe Harbor

E-Commerce and Internet Law

...Similarly, in UMG Recording, Inc. v. Escape Media Group, Inc.,[ 23] Judge Thomas Griesa of the Southern District of **New York** granted summary judgment for the record company plaintiffs in that case, holding that the entity that owned the online music service Grooveshark, whose employees had uploaded over 4,000 **infringing** sound recordings, had the ability to control its employees' **infringing** activity where internal emails **established** that senior executives directed employees to upload music files to "seed" the Grooveshark service and various employees testified that they were directed to and did upload **infringing**...

Contact us   •   Live chat   •   Training and support   •   Improve Westlaw Edge/Report an error   •   Transfer My Data   •   Pricing guide   •   Sign out

1-800-REF-ATTY (1-800-733-2889)



THOMSON REUTERS

Westlaw Edge. © 2022 Thomson Reuters     Accessibility   •   Privacy   •   Supplier terms          *Thomson Reuters is not providing professional advice*

A489

Case 1:20-cv-00613-SB   Document 695-1   Filed 10/08/24   Page 15 of 80 PageID #: 152760

# EXHIBIT 20



COX
EXHIBIT 2

# EXHIBITS 21-39
## Redacted in their Entirety

# EXHIBIT 40

STATEMENT OF WORK II
FOR ROSS BULK MEMOS

This Statement of Work II incorporates and is made pursuant to the October 15, 2015 Master
Services Agreement ("MSA") by and between ROSS Intelligence, Inc. ("ROSS"), a Delaware
corporation and LegalEase Solutions, LLC ("Contractor") a Michigan limited liability company.

1. Definitions:  Terms and expressions not expressly defined in this Statement of Work,
   shall have the following meanings:

   1.1. "Case Law" means judicial decisions originating from a judicial or
        administrative body in the United States of America, or as otherwise
        prescribed in writing by ROSS and sent to Contractor.
   1.2. "Legal Research Question" means a question grounded in legal principles.
   1.3. "Memorandum or Memo" means a memorandum of law that answers a
        Legal Research Question.
   1.4. "Quote" means an independent paragraph excerpt from Case Law.
   1.5. "Reference List" means the list of Case Law included in the Memo.
   1.6. "Deficiency" means a reference quote that does not directly answer the
        ROSS question.

2. Additional Terms and Expressions: Additional capitalized terms and expressions have the
   meanings ascribed to them in the MSA.

3. Currency: Unless stated otherwise, all dollar figures in this Statement of Work are in United
   States dollars.

4. Term: Subject to the termination provisions of this Agreement, the term of this Statement
   of Work shall be for a period of three months commencing on September 19, 2017 and
   expiring on December 19, 2017 ("Initial Term"). Upon the expiration of the Initial Term,
   this Statement of Work shall renew with the prior written mutual consent of ROSS for
   successive three month periods ("Renewal Terms"), unless terminated pursuant to the terms
   of the Agreement. The terms Initial and Renewal Terms shall be collectively referred to as
   the "Term".

5. Description of Service:

5.1. Contractor agrees to provide ROSS with bulk Memos. Contractor agrees to meet the
     expectations for performance as set forth in this Statement of Work. Contractor's attorneys
     will research topics and Legal Research Questions from any Federal or State jurisdiction in
     the United States, without regard to any legal decisions, draft Memos, and compile the
     Memos in the format approved by ROSS.

5.2. Each Memo shall include a Legal Research Question and a Reference list with a target of at
     least four (4) and no more than six (6) Quotes.

5.3. Two (2) to four (4) Quotes in each Memo shall contain either a "great" or "good" independent
     answer to the Legal Research Question. A "great" Quote is one that contains an answer to
     all essential elements of the Legal Research Question while a "good" Quote is one that
     contains an answer to most essential elements of the Legal Research Question. The
     Contractor shall strive for four (4) "good" or "great" Quotes per question. However, if

ROSS-000175054

A494

Contractor is only able to find 2 or 3 "good" or "great" Quotes, they shall only provide 2 or 3 "good" or "great" Quotes. Contractor shall strive to have more "great" than "good" Quotes.

5.4. One (1) Quote in each Memo shall contain a "topical" independent response to the Legal Research Question. A "topical" response is a response that answers and/or references limited components of a Legal Research Question but does not answer the essential elements of such Legal Research Question.

5.5. One (1) Quote in each Memo shall contain an "irrelevant" independent response to the Legal Research Question. An "irrelevant" response is a response that contains one or more keywords from the Legal Research Question but does answer and/or reference any elements of the Legal Research Question, either limited or essential.

5.6. Contractor shall label whether a Quote contains a response that is "great", "good", "topical" or "irrelevant" and double bracket and bold the specific component(s) of each such Quote that is "great", "good", "topical" or "irrelevant." Contractor shall also label which legal practice area each Quote falls under.

6. Changes: ROSS reserves the right to request changes, deletions, or additions as deemed necessary by ROSS and Contractor. ROSS' proposed changes shall become effective only by written agreement of Contractor.

7. Production/Delivery Schedule: Contractor agrees to draft ROSS questions and Memos pursuant to the Production Run schedule below. In the First Production Run of Memos, Contractor shall commence providing deliverables on October 19, 2017 and conclude on December 19, 2017, as outlined below. For the Subsequent Production Runs of Memos, Contractor shall provide 20,000 Memos in subsequent months to ROSS.

First Production Run

| Delivery Date | Amount of Memos |
|---|---|
| October 19, 2017 | 5,000 |
| November 19, 2017 | 10,000 |
| December 19, 2017 | 10,000 |

Subsequent Production Run

| Delivery Date | Amount of Memos |
|---|---|
| Month 1 | 20,000 |
| Month 2 | 20,000 |
| Month 3 | 20,000 |
| Month 4 | 15,000 |

8. Fee: ROSS shall pay Contractor pursuant to the schedule below:

| Reference Quotes | Price per Memo |
|---|---|

ROSS-000175055

| 4 Quotes + 1 topical and 1 irrelevant Quote | $26.17 |
| 3 Quotes + 1 topical and 1 irrelevant Quote | $24.55 |
| 2 Quotes + 1 topical and 1 irrelevant Quote | $21.00 |

Contractor shall provide a 5% volume discount to ROSS for any Memo purchase over 25,000 and a 15% volume discount for a total order of 100,000 Memos.

9. Payment: ROSS shall pay Contractor in advance at the beginning of each month for the following 30 days of expected output at a minimum $21.00 price per Memo (each, an "Advance Payment"). For clarity, the Advance Payment for the (i) first 5,000 Memos of the First Production Run due October 19, 2017 shall be $105,000 and shall be made on September 19, 2017; (ii) subsequent 10,000 Memos of the First Production Run due November 19, 2017 shall be $210,000 and shall be made on October 19, 2017 and (iii) final 10,000 Memos of the First Production Run due December 19, 2017 shall be $210,000 and shall be made on November 20, 2017. For any Subsequent Production Run, the Advance Payment shall be $420,000. If there is a difference between an Advance Payment amount and aggregate Memo cost during a Production Run pursuant to the Section 8 Fee schedule (the "Cost Difference"), Contractor shall provide ROSS a detailed accounting of such Cost Difference in a timely manner and ROSS shall pay such Cost Difference within seven (7) days receipt of such detailed accounting.

10. Delivery: Contractor shall deliver batched Memos via e-mail or FTP to ross@rossintelligence.com and via the ROSS Memo upload portal (the "Portal"). The Portal shall meet necessary specifications of speed and capacity to process daily batched Memo uploads.

11. Quality Assurance: Contractor shall ensure the Memos submitted follow the (i) quality control processes detailed in the LegalEase Solutions Quality Control Guide ("QCG") provided in Schedule A to this Statement of Work and the (ii) Quality Control Checklist provided in Schedule B to this Statement of Work. Contractor shall follow a staged quality control process. There will be 100% quality control for the first 2000 Memos, 75% for the next 10,000 Memos and 25% for the remaining Memos. If any of the Memos submitted do not meet the parameters prescribed in the QCG, ROSS shall inform Contractor of such Deficiencies within 14 days of receipt of the applicable Memos. If no such notice is received within the prescribed 14 days, the applicable Memos shall be deemed fully accepted by ROSS. A 15% penalty shall be charged to any Memo and/or batch of Memos that fail to meet the QCG requirements.

12. Reporting: Contractor shall email daily reports to ROSS which include the production totals, QCG results, and other requested information from ROSS.

13. Destruction of Memos: Contractor acknowledges that the Memos constitute Confidential Information and shall remove and destroy all Memos and copies of Memos in its

possession within sixty (60) days of each Production Run and shall concurrently confirm to ROSS that such removal and destruction has occurred.

14. <u>Existing Agreements</u>: This Statement of Work is ancillary to existing agreements, including, but not limited to the MSA and prior Statements of Work.

Date: September _____15_____, 2017

ROSS INTELLIGENCE, INC.

By: _____

Name: Andrew Arruda
Title: Chief Executive Officer

LEGALEASE LLC

By: _____

Name: Tariq Hafeez
Title: President

ROSS-000175057

A497

Schedule A

# Quality Control Guide for ROSS Intelligence

Drafting Questions, Preparing Responsive
Memorandum, and Quality Control
Procedures

LegalEase Solutions LLC

ROSS-000175058

A498



## TABLE OF CONTENTS

Overview ............................................................................................. 2
   Introduction ................................................................................... 2
   Audience ......................................................................................... 2
   Objectives ....................................................................................... 2
Legal Disclaimer .............................................................................. 3
The LegalEase Ross Team and Process ......................................... 4
   Attorneys ........................................................................................ 4
   Quality Control Attorneys............................................................. 4
   Staged Quality Control Process .................................................. 4
   Production Expeditors ................................................................. 5
   India and US Project Managers .................................................. 5
   ROSS Operations .......................................................................... 5
The LegalEase ROSS Process Flowchart ....................................... 6

Private and Confidential - Page 1 of 6

ROSS-000175059

A499



## Overview

### Introduction

The LegalEase Solutions Quality Control Guide ("QCG") is the primary quality assurance resource and playbook for our attorneys.  This QCG provides all the tools and resources needed for the drafting and delivery of ROSS Intelligence memos.

### Audience

The intended audience for this guide is our attorneys who prepare Ross memos. Additionally, this guide may be utilized by ROSS to review our internal process.

### Objectives

This guide:

- Identifies clear guidelines for attorneys to follow when designing, developing, and researching, drafting, and delivering ROSS memos.
- Describes quality control standards for ROSS memos.
- Describes quality control procedures and processes set in place for ROSS memo production.

ROSS-000175060

A500



**Legal Disclaimer**

This Quality Control Guide includes proprietary, confidential, and/or trade secret information.
LegalEase considers this information to be a trade secret not subject to disclosure.

ROSS-000175061

A501



**The LegalEase ROSS Team and Process**

We have organized a comprehensive team for this project. Leading the team for ROSS operations are Teri Whitehead, VP of Global Strategy and Gayathri Rajeev, Director of Operations in India. Teri and Gayathri will oversee operations and are available anytime to address and resolve any potential concerns.

**Attorneys.** Our team of attorneys will research topics and questions, draft the memos, and compile the memos in the ROSS approved format. We will ensure that our attorneys follow this QCG for drafting memos and utilize our internal associate work product checklists. The steps include:

    i.     Using our LegalEase's creative process, to produce ROSS questions.
    ii.    Research answers to questions.
    iii.   Draft ROSS memorandum.

**Quality Control Attorneys.** We have allocated a minimum of 5 separate QC attorneys to independently review memos, ensuring that ROSS standards are met. These attorneys have a minimum of 3 years' experience in these positions. The QC team will be expanded as needed per the scope and requirements of this project. The QC team will follow the QC checklist setting out the steps to be followed in completing the process. These steps include:

    i.     Review and confirm the grammar, question format, and citations.
    ii.    Confirm and review short answer and legal analysis.
    iii.   Review reference quotes for relevancy.
    iv.   Confirm case law.
    v.    Advise associates of errors and design action plan to avoid future errors.

**Staged Quality Control Process.** Our QC attorneys will follow LegalEase's staged quality control process. We have used this process with success on other large accounts with over 50,000 documents.

First Stage:
    100% QC of 2000 Memos. Our QC attorneys will QC 100% of the first 2000 memos.
Second Stage:
    75% for the next 10,000 memos. Our QC attorneys will QC 75% of the next 10,000 memos.
Third Stage:
    25% for the remaining memos. Our QC attorneys will QC 25% or more of the remaining memos.

Private and Confidential - Page 4 of 6

A502

ROSS-000175062



**Production Expeditors.** Our dedicated ROSS production expeditors will comply and follow ROSS' process on delivery, including the portal upload, data tracking, and logistics. These steps include:

    i.    Validate question originality.
    ii.   Upload memorandum to ROSS dedicated portal.
    iii.  Update internal LE production tracking sheet.
    iv.  Email production totals of attorneys and QC attorneys to Project Managers.
    v.   Update internal exception error tracking sheet.
    vi.  Update ROSS' completion tracking sheet.

**India and US Project Managers.** We have assigned to ROSS, three project managers. Our project managers will guarantee and ensure ROSS quality and processes. Having project managers in different time zones will provide round the clock attention and access.

The role of the PM's include:

    i.    Review production of attorneys, QC attorneys, production expeditors.
    ii.   Daily review protocol and process for efficiencies following LE model theory of constraints.
    iii.  Address any concerns.
    iv.  Email daily reports to LegalEase Operations detailing production, legal topics addressed, upload process production, improved efficiencies, and QC results.

**Ross Operations.** Teri Whitehead and Gayathri Rajeev will oversee all aspects of this project. Teri and Gayathri's role includes the following:

    i.    Address any concerns.
    ii.   Email daily reports to the ROSS team providing production totals, QC results, and other requested information.
    iii.  Host daily conference status calls with the ROSS Production team.

ROSS-000175063

A503



**The LegalEase ROSS Process Flowchart**



| Attorneys - Research, Review, Compile |
|---|
| 50+ attorneys |

| Quality Control Attorneys |
|---|
| 5 |

| Production Expeditors |
|---|
| 3 |

| India Project Manager |
|---|
| Merin Sony |

| US Project Managers |
|---|
| Chris Schmidt and Moon Thompson |

| ROSS Operations |
|---|
| Gayathri Rajeev and Teri Whitehead |

ROSS-000175064

A504

Schedule 8

Document ID       : ROSS Bulk QCC
Date of Issue     : 07.08.2017
Periodic Review   : 09.15.2017
Revision No       :

# Quality Control Checklist for ROSS Intelligence

## LegalEase Solutions LLC

1

ROSS-000175065

A505

Schedule B

| Document ID | : ROSS Bulk QCC |
|---|---|
| Date of Issue | : 07.08.2017 |
| Periodic Review | : 09.15.2017 |
| Revision No | : |

## QUALITY CONTROL CHECKLIST FOR ROSS BULK MEMOS

### Attorney – ROSS Intelligence Checklist

| Description | Completed |
|---|---|
| 1. Draft ROSS questions following LegalEase Creative Process. | |
| 2. Research questions using online resources and accounts. | |
| 3. Label cases as great, good, topical, and irrelevant. | |
| 4. Confirm that great, and good quotes answer the question directly. | |
| 5. Add topical and irrelevant cases. | |
| 6. Confirm that the topical and irrelevant cases meet the criteria. | |
| 7. Confirm grammar correct throughout memo. | |
| 8. Confirm the font and space of the memo. | |
| 9. Follow file name convention. | |

### Review Attorney – ROSS Intelligence Checklist

| Description | QC 1 | QC 2 |
|---|---|---|
| Question should not be state specific. | | |
| Grammar check of question. | | |
| Quotes to be labeled correctly. GREAT – must contain **all** essential elements of the question. GOOD – contains **most** of the essential elements of the question. | | |

2

A506

ROSS-000175066

Schedule B

Document ID      : ROSS Bulk QCC
Date of Issue    : 07.08.2017
Periodic Review  : 09.15.2017
Revision No      :

| | | |
|---|---|---|
| TOPICAL – foundation quote, background information.<br><br>IRRELEVANT – has no reference or relevance. | | |
| Should label as Great Case 1, Great Case 2, and not Great Quote. | | |
| Bracketed language **must** answer question.<br><br>Bracketed language may be up to a paragraph.<br><br>If necessary, you can double bracket separate sentences.<br><br>Bracketed language must be a sentence. Not just two words. | | |
| Double Brackets, and Content in Bold. | | |
| No red squiggly line. | | |
| Confirm reference quote.  Ensure Topical quote and Irrelevant quotes are added. | | |
| Smartsheet updates. | | |
| Double check the Form - Double Brackets for Quotes.  No highlights. | | |
| Memo number. | | |
| Memo saved in correct format – naming convention. | | |

3

ROSS-000175067

A507

# EXHIBITS 41-42
## Redacted in their Entirety

# EXHIBIT 43

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

148 Wash.2d 451
Supreme Court of Washington,
En Banc.

HJS DEVELOPMENT, INC., Respondent,
v.
PIERCE COUNTY, acting through its
DEPARTMENT OF PLANNING AND LAND
SERVICES, Appellant.

No. 71430−4.
|
Argued Oct. 15, 2002.
|
Decided Jan. 23, 2003.

Subdivision developer sought review of county hearing examiner's decision to revoke site plan and preliminary plat approval. The Superior Court, Thurston County, Daniel J. Berschauer, J., reversed. County sought review. The Supreme Court, Smith, J. Pro Tem., held that: (1) preliminary subdivision plat is a "use" within the meaning of former county ordinance permitting hearing examiner to revoke or modify any permit, use, or activity; (2) statute which states that the process for dividing land is a matter of state concern and should be administered in a uniform manner by cities, towns, and counties throughout the state did not preempt the ordinance; (3) the ordinance did not conflict with statute requiring developer to submit final plat for approval within five years of the preliminary plat approval; and (4) revocation of plat was the only proper remedy for removal of trees and vegetation in violation of conditions of preliminary plat approval.

So ordered.

Madsen, J., dissented and filed opinion in which Sanders, J., joined.

West Headnotes (30)

**[1]** **Zoning and Planning**
⟜Record

A petition for review by the superior court constitutes appellate review on the administrative record before the local jurisdiction's body or officer with the highest level of authority to make the final land use determination. West's RCWA 36.70C.020(1), 36.70C.130(1).

23 Cases that cite this headnote

**[2]** **Zoning and Planning**
⟜Review of local authority or lower court

When reviewing a superior court's decision on a land use petition, the appellate court stands in the shoes of the superior court and reviews the administrative decision on the record of the administrative tribunal, not of the superior court.

31 Cases that cite this headnote

**[3]** **Zoning and Planning**
⟜De novo review

On appeal of superior court decision overturning county hearing examiner's revocation of preliminary plat, the Supreme Court would review the record before the hearing examiner and review questions of law de novo to determine whether the land use decision was supported by fact and law.

42 Cases that cite this headnote

**[4]** **Constitutional Law**
⟜Resolution of non-constitutional questions before constitutional questions

If a case can be decided on nonconstitutional grounds, an appellate court should decline to consider the constitutional issues.

8 Cases that cite this headnote

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.                    1

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)
61 P.3d 1141

[5]     **Zoning and Planning**
        ⟡Tentative or preliminary approval

A preliminary subdivision plat was not a "site plan" or "permit" within the meaning of former county ordinance permitting hearing examiner to revoke or modify any site plan approval or permit; thus, the ordinance did not grant the hearing officer authority to revoke a preliminary plat.

Cases that cite this headnote

[6]     **Zoning and Planning**
        ⟡Nature of power

An administrative tribunal, such as a county hearing examiner for subdivision plat applications, has only the authority granted it by statute or ordinance.

Cases that cite this headnote

[7]     **Municipal Corporations**
        ⟡Construction and operation

Interpretation of local ordinances is governed by the same rules of construction as state statutes.

1 Cases that cite this headnote

[8]     **Statutes**
        ⟡Construing together; harmony

In considering an undefined term, the court considers the statute as a whole to give meaning to the term in harmony with other statutory provisions.

1 Cases that cite this headnote

[9]     **Municipal Corporations**
        ⟡Construction and operation
        **Statutes**
        ⟡Absence of Ambiguity;  Application of Clear or Unambiguous Statute or Language

Rules of construction do not apply when the language of a statute or ordinance is clear and explicit.

3 Cases that cite this headnote

[10]    **Municipal Corporations**
        ⟡Construction and operation
        **Statutes**
        ⟡Defined terms;  definitional provisions

Definitions contained within a statute or ordinance control the meaning of words used in that act.

3 Cases that cite this headnote

[11]    **Municipal Corporations**
        ⟡Construction and operation

Courts must reasonably construe ordinances with reference to their purpose.

1 Cases that cite this headnote

[12]    **Zoning and Planning**
        ⟡Maps, plats, or plans;  subdivisions

Preliminary subdivision plat is a not a "permit" or "activity" within the meaning of former county ordinance permitting hearing examiner to revoke or modify any permit, use, or activity granted pursuant to the county zoning code; a preliminary plat does not impact the land.

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.                    2

Confidential                                                                                      ROSS-000179469

A511

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

Cases that cite this headnote

[13]     **Statutes**
⟠⟠Conjunctive and disjunctive words

Ordinarily, the word "or" does not mean "and"
unless there is clear legislative intent to the
contrary.

6 Cases that cite this headnote

[14]     **Statutes**
⟠⟠Conjunctive and disjunctive words

Statutory phrases separated by the word "and"
generally should be construed in the
conjunctive.

1 Cases that cite this headnote

[15]     **Zoning and Planning**
⟠⟠Maps, plats, or plans; subdivisions

Preliminary subdivision plat is a "use" within
the meaning of former county ordinance
permitting hearing examiner to revoke or
modify any permit, use, or activity granted
pursuant to the county zoning code; although the
right to subdivide land arises from final plat
approval, approval of a preliminary plat begins
the plat subdivision process, and without a
preliminary plat, final plat approval may never
be achieved.

2 Cases that cite this headnote

[16]     **Counties**
⟠⟠Legislative control of acts, rights, and
liabilities

Counties have plenary police power to enact
ordinances, but the power ceases when in
conflict with general state law or when the
legislature intended state law to be exclusive,
unless there is room for concurrent jurisdiction.
West's RCWA Const. Art. 11, § 11.

Cases that cite this headnote

[17]     **Counties**
⟠⟠Legislative control of acts, rights, and
liabilities

Whether there is room for county to exercise
concurrent jurisdiction with state depends on
legislative intent which is derived from analysis
of the statute.

Cases that cite this headnote

[18]     **Counties**
⟠⟠Legislative control of acts, rights, and
liabilities

Preemption of a county ordinance arises when
the legislature has expressed its intent to
preempt the field or that intent is manifest from
necessary implication.

3 Cases that cite this headnote

[19]     **Counties**
⟠⟠Legislative control of acts, rights, and
liabilities

If the legislature is silent on its intent to occupy
a given field, courts ruling on preemption of a
county ordinance may refer to the purposes of
the particular legislative enactment and to facts
and circumstances upon which the statute was
intended to operate.

3 Cases that cite this headnote

Confidential

A512

ROSS-000179470

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

[20]    **Municipal Corporations**
        🔑 Presumptions and burden of proof

A heavy burden rests upon the party challenging the constitutionality of an ordinance.

2 Cases that cite this headnote

[21]    **Municipal Corporations**
        🔑 Presumptions and burden of proof

Every presumption is in favor of constitutionality of an ordinance.

2 Cases that cite this headnote

[22]    **Zoning and Planning**
        🔑 Maps, plats, or plans; subdivisions

Statute which states that the process for dividing land is a matter of state concern and should be administered in a uniform manner by cities, towns, and counties throughout the state did not preempt former county ordinance permitting hearing examiner to revoke a preliminary subdivision plat; state platting laws are silent on revocation of a preliminary plat, the statute serves only as a guide to the intended effect of the operative sections, and local jurisdictions are solely responsible for preliminary plat and final plat approvals, and may adopt regulations or condition such approvals to mitigate problems caused by a development. West's RCWA 58.17.010, 58.17.100.

1 Cases that cite this headnote

[23]    **Zoning and Planning**
        🔑 Maps, plats, or plans; subdivisions

Former county ordinance permitting hearing examiner to revoke subdivision plat does not conflict with statute requiring developer to submit final plat for approval within five years of the preliminary plat approval. West's RCWA 58.17.140.

Cases that cite this headnote

[24]    **Municipal Corporations**
        🔑 Concurrent and Conflicting Exercise of Power by State and Municipality

Local jurisdictions may enact ordinances upon subjects already covered by state legislation if their enactment does not conflict with state legislation.

4 Cases that cite this headnote

[25]    **Municipal Corporations**
        🔑 Conformity to constitutional and statutory provisions in general

An ordinance is constitutionally invalid on grounds of conflict with state law if the ordinance directly and irreconcilably conflicts with the statute. West's RCWA Const. Art. 11, § 11.

3 Cases that cite this headnote

[26]    **Municipal Corporations**
        🔑 Conformity to constitutional and statutory provisions in general

If a local ordinance and statute can be harmonized, no conflict will be found with state law.

3 Cases that cite this headnote

Confidential

A513

ROSS-000179471

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)
61 P.3d 1141

[27]    **Municipal Corporations**
◇ Concurrent and Conflicting Exercise of Power by State and Municipality
**Municipal Corporations**
◇ Ordinances permitting acts which state law prohibits

Unconstitutional conflict occurs when an ordinance permits what is forbidden by state law or prohibits what state law permits. West's RCWA Const. Art. 11, § 11.

3 Cases that cite this headnote

[28]    **Zoning and Planning**
◇ Tentative or preliminary approval

Statute requiring developer to submit final plat for approval within five years of the preliminary plat approval does not grant an unqualified right to develop property without limitation for five years after preliminary plat approval, but sets a time limit for preliminary plats and still requires full compliance with conditions and requirements of preliminary plat approval before a final plat can be submitted for review and approval. West's RCWA 58.17.140.

2 Cases that cite this headnote

[29]    **Zoning and Planning**
◇ Tentative or preliminary approval

A county ordinance revoking a preliminary subdivision plat may be reconciled with state platting laws in circumstances under which revocation is necessary to protect the public health, safety and welfare; revocation of a preliminary plat is appropriate in those cases in which it is impossible to satisfy the conditions of approval because of knowing and deliberate violations of conditions.

1 Cases that cite this headnote

[30]    **Zoning and Planning**
◇ Tentative or preliminary approval

Revocation of preliminary subdivision plat was the only proper remedy for removal of trees and vegetation in violation of conditions of preliminary plat approval; the conditions imposed contemplated the public safety and welfare, the violation could not be remedied, and the developer could never comply with the conditions.

1 Cases that cite this headnote

**Attorneys and Law Firms**

**1143 *456 Bertha Fitzer, Jill Guernsey, Tacoma, Hillis Clark Martin & Peterson, George Kresovich, Seattle, for Appellant.

Davis, Wright, Tremaine, Stephen Rummage, Jessica Goldman, Seattle, James Kelly, Fox Island, for Respondent.

**Opinion**

SMITH, J.*

Appellant Pierce County seeks direct review of a Thurston County Superior Court **1144 judgment in favor of Respondent HJS Development, Inc., overturning a decision *457 of a Pierce County hearing examiner which revoked a preliminary plat under a local ordinance, former Pierce County Code 18.50.970 and 18.50.975. The Superior Court reasoned that the hearing examiner did not have authority to revoke Respondent's preliminary plat approval because state platting laws, chapter 58.17 RCW, preempt revocation powers of local jurisdictions on preliminary plat approvals.

*QUESTIONS PRESENTED*

The questions presented in this case are (1) whether the

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.    5

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

Pierce County hearing examiner had the authority to revoke a preliminary plat approval under former Pierce County Code 18.50.970 and 18.50.975; (2) whether state laws, chapter 58.17 RCW—establishing procedures for approving subdivision plats—preempt local ordinances which permit a hearing examiner to revoke a preliminary plat approval; (3) whether revocation powers under the Pierce County Code conflict with RCW 58.17.140, which provides that a final plat meeting all requirements shall be submitted for approval within five years of preliminary plat approval; and (4) whether the decision by the Pierce County hearing examiner was clearly erroneous because he did not consider less harsh sanctions in enforcing conditions of the preliminary plat approval.

### STATEMENT OF FACTS

On December 30, 1994 Respondent Fox Ridge Investments[1] filed a complete application[2] for approval of preliminary plat and site plan for a 71–acre parcel on Fox Island in **458** unincorporated Pierce County.[3] In its proposal, Respondent requested permission to divide the parcel into a subdivision of 63 single-family residential lots to be served by private roads, on-site septic, and public water. Division I consisted of 42 lots. Division II consisted of 21 lots.[4] The plat is bisected by a road, Island Boulevard, and a substantial portion of Division I contains steep slopes, a mixture of coniferous and deciduous vegetation, and forests containing protected trees. Single-family residential homes are located below a portion of the steep slopes and near the proposed development site.[5]

At the time the plat application was filed on December 30, 1994 and prior to the effective date of the County's Comprehensive Plan, the local zoning laws, Rural–Residential Environment,[6] permitted one dwelling unit per acre.[7] On January 1, 1995 the property was rezoned R–10, which allowed a maximum residential density of .25 dwelling unit per acre.[8] Also in existence at the time of filing were local regulations, Gig Harbor Peninsula Development Regulations 18.50.970 and 18.50.990 which granted the hearing examiner the power to *revoke or modify any permit, use or activity granted pursuant to the Pierce County Code or allowed pursuant to the Underlying Zone ....*[9]

**1145** In the review process for the proposal, Respondent was required to submit a geotechnical report to the Development **459** Engineering Section.[10] In June 1997 Respondent submitted a report prepared by David Evans and Associates, Inc., which included a description of the topography in Division I.[11] The report indicated the property contained steep slopes, with the steepest slopes occurring across the southern boundary with grades ranging from 30 percent to 87 percent, approximately 100 to 150 feet in height.[12] The geotechnical report also indicated that landslide and erosion hazards were moderate to severe where slopes exceeded 30 percent.[13] It therefore recommended a 50–foot setback and buffers from the top of the slopes and only allowing selective clearing.[14]

On December 3, 1997 the Pierce County environmental official, Charles F. Kleeberg, issued a mitigated determination of nonsignificance (MDNS).[15] No appeal was filed. In its findings of fact, the responsible official found that the project came within a landslide and erosion hazard area, as defined and regulated by Pierce County Code, chapter 21.14, "Geologically Hazardous Areas," and that relevant local ordinances[16] allowed approval of the proposal subject to conditions in order to mitigate any probable significant **460** adverse environmental impacts.[17] The responsible official concluded that Respondent's "proposal [did] not have a probable significant impact on the environment, and an Environmental Impact Statement (EIS) [was] not required under RCW 43.21C.030(2)(c), *only if the following conditions [were] met."* [18] Of the 12 conditions specified in the MDNS, the following conditions are relevant to this appeal:

Condition (1) stated in part:[19]

The [Oregon White Oak Preservation] plan shall cause the preservation of not less than 80% of the Oregon White Oaks....

Condition (6)(a) stated:[20]

The proposal shall comply with all recommendations contained with the June 1997 geotechnical report prepared for the development with the following modification:

a. Clearing within the building setback area shall be limited to removal of dead and dangerous trees and reasonable topping, clearing, and limbing for the purposes of creating view areas. Clearing below the top of the steep slope located on Lots 3 through 29 shall be prohibited, except that the applicant may selectively top, limb, or remove trees within this area to enhance view. Prior to the removal of any vegetation within this area, the applicant shall submit a clearing plan for the area to the Resource Management Development Engineering Sections of the Pierce County

Confidential

A515

ROSS-000179473

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)
61 P.3d 1141

Planning and Land Services Department for review **1146 and approval. The purpose of the review shall be to ensure that vegetation removal in this area is strictly limited to only that reasonably necessary to provide for view areas within the lots and the removal of hazardous trees. Vegetation removal beyond this shall be prohibited.

....
*461 Condition (4) stated:[21]

The edge of the Oregon White Oak Preservation Area shall be clearly staked and flagged prior to and through the completion of site development and construction. Prior to final plat approval, signage denoting the Oak Preservation Area shall be erected along the boundary of the area. The type of spacing of the signage shall be determined by the Pierce County Planning and Land Services Department.

....
Condition (8) stated:[22]

The steep slope and building setback area shall be clearly shown and labeled on the face of the preliminary and final plat as "Slope Protection Area Easement."
Condition (9) stated:[23]

The following shall be placed on the face of the final plat:

"The Slope Protection Area Easement appearing on this plat shall remain in its natural state. The intent of this area is to protect slope stability and prevent erosion. There shall be no clearing, grading, filling, or construction of any kind within this area, except as shown on plans or documents approved by the Director of Pierce County Planning and Land Services, and contained in the official files for this project. Removal of dead or dangerous trees may be permitted upon receiving written approval from the Pierce County Planning and Land Services Department."

....

Condition (11) stated in part:

In order to minimize erosion, changes in surface water runoff characteristics, and minimize impacts to aesthetics and the rural character of the site, vegetation removal from the site during site development phase of the proposal, shall be limited to those areas necessary for the construction of roads and utilities, creation of building pads, and view shed creation approved by the Pierce County Planning and Land Services Department. Except for the clearing discussed above, all lots *462 shall remain in their natural, vegetated state until the time of building permit issuance.

....
The Peninsula Advisory Commission (PAC) considered the proposed preliminary plat and heard public testimony at its January 14, 1998 meeting.[24] It recommended denial, citing concerns of storm water control, slope stability, and an incomplete application. However, it proposed two conditions in the event the hearing examiner approved the proposal.[25] The first condition required the applicant to conduct a study for frontage road improvements along Island Boulevard. The second required a 25–foot–wide perimeter buffer along the lot lines to act as a barrier to visibility, airborne particles, glare and noise impacts.

On February 5, 1998 a public hearing was held before Hearing Examiner Stephen K. Causseaux, Jr.[26] Fox Island residents raised concern about landslides in the area and submitted a geological report prepared by James P. Brazil, engineering geologist, on October 21, 1981, recommending against further tree or vegetation removal. The Pierce County Planning and Land Services Department (PALS), Hugh Taylor, presented a staff report on the proposed preliminary plat.[27] He described the proposal and discussed its restrictions on clearing, testifying that "the **1147 slopes, themselves are intended to stay in a natural, undisturbed state," and barring limbing for view enhancement and removing dangerous and dead trees, "the slope is off limits for development."[28] He further noted that the Oregon white oaks within the development area were protected under the county critical areas ordinance, and detailed the *463 plans for preservation of those trees.[29] In response, Joseph Quinn, attorney for Respondent, testified that clearing would stay within the limits and clearing and development would be done in accordance with the county's regulations and under the county's supervision.[30] He acknowledged the restrictions on development, stating that the developer would act responsibly and comply with conditions.[31]

On September 2, 1998 the hearing examiner issued a

Confidential

ROSS-000179474

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)
61 P.3d 1141

report and decision approving the preliminary plat, subject to specified conditions, including those recommended by the PAC and Planning Staff and all those required by the MDNS.[32]

Respondent applied for a site development permit for clearing in preparation for road construction in Division I on March 24, 1999.[33] On May 20, 1999 Pierce County approved the site development permit consistent with the conditions announced by the hearing examiner. The plan noted that the Oregon White Oak Preservation Area would be flagged and clearing would proceed in the designated areas. A provision in the site development plan required Respondent to notify the county 48 hours prior to beginning any construction at the site and prior to initiation of clearing.[34] Respondent and a county inspector conducted a preconstruction meeting reviewing requirements of the site development permit.

On April 18, 2000, Ray Clark, a county inspector, conducted an unscheduled site inspection.[35] He discovered that significant clearing had occurred. He believed the clearing did not comply with the limitations specified in the site **464** development plans.[36] He reported that many of the clearing limits had been disregarded, as evidenced by removal of trees from the steep slopes, buffer areas, and the oak protection areas. He testified that an estimated 150 trees were logged outside the approved plan, and stumps on the slopes measured from 18 inches to 2 ½ feet in diameter.[37] A subsequent investigation substantiated the report of violations, revealing that more than 200 stumps had been cut from the steep slope areas, many stumps had been burned and removed, and there were not sufficient erosion control methods.[38] With these reported violations, the PALS posted a stop work order and contacted the Department of Natural Resources (DNR).[39]

The DNR inspected the site and ultimately concluded that a forest practices permit was required for the west slope, but not for the other areas outside of this slope. Based upon this, the DNR issued a stop work order on May 8, 2000.[40] Pursuant to local development regulations and state law, PALS imposed a six-year Forest Practices Act of 1974 development moratorium.[41]

On May 17, 2000 PALS notified Respondent it would take action to revoke the preliminary plat because of the violations of site development regulations and the preliminary plat conditions.[42] On May 26, 2000 Respondent **1148** filed a request to the hearing examiner to lift the moratorium. A public hearing on the revocation action and moratorium rescission was held on October 4, 2000.[43]

**465** At the hearing, County Planner Taylor and County Inspector Clark presented exhibits and photographs detailing the extent of the violations of conditions.[44] Mr. Taylor noted that the original conditions allowed some limbing and tree removal, but did not allow a clear-cut of the buffer or slope.[45] He concluded that approximately seven acres were removed from the top of the slopes. Respondent's attorney, Mr. Quinn, conceded in testimony that trees within the White Oak Preservation Area and trees on the steep slope were cut, but he disputed the extent and exact number of trees cut.[46] He asserted that, despite the fact that prohibited cutting occurred, removal of the trees did not violate the conditions because the approvals allowed for selective cutting and removal which did not negatively impact the stability of the present slope.

On November 13, 2000 the hearing examiner revoked the site plan and preliminary plat approvals and denied the request to rescind the moratorium.[47] In his decision, the hearing examiner concluded that[48]

> [t]he clearing of the 50-foot landslide and erosion hazard area buffer and the removal of numerous significant trees on the steep slopes below the top of the bank constitute intentional and flagrant violations of conditions of approval and mitigating measures set froth in the Mitigated Determination of Nonsignificance issued pursuant to SEPA [State Environmental Policy Act of 1971, chapter 43.21C RCW] review.... *These violations are especially egregious because the most significant issues associated with site plan and preliminary plat approval were concerned with protection of the steep slopes, the proper handling of storm water runoff, and the protection of homes below the slopes near the shoreline. The environmental official also imposed a number of mitigating measures addressing the preservation of vegetation on the slope and establishing an Oregon White Oak Preservation Area, all of which were agreed to by the applicant to avoid issuance of a Determination of **466** Significance and preparation of an Environmental Impact Statement.*
> (Emphasis added.)

Respondent filed a timely request for reconsideration on November 22, 2000.[49] In addition, Respondent requested that the hearing examiner reopen the proceedings or allow a rehearing pursuant to a local law and rule.[50] The hearing examiner denied the request on January 4, 2001.[51]

On January 24, 2001 Respondent filed an appeal in the Thurston County Superior Court under the Land Use Petition Act (LUPA), chapter 36.70C RCW, challenging the revocation and the moratorium.[52] Its appeal reiterated

Confidential

ROSS-000179475

A517

the same arguments considered in the administrative hearing, and raised a new argument contending the hearing examiner exceeded his authority in revoking the preliminary plat.[53]

The Thurston County Superior Court, the Honorable Daniel J. Berschauer, granted the LUPA petition and presided over the bench trial on June 7, 2001.[54] He decided in favor of Respondent HJS Development, Inc., reversing the hearing examiner's decision revoking **1149 the preliminary plat.[55] The court reasoned that state statutes governing plats and subdivision of land preempted the local revocation ordinance under which Hearing Examiner Taylor proceeded in revoking Respondent's preliminary plat.[56] The *467 court invalidated the ordinance, ruling that it conflicts with state law, reasoning that if the Legislature intended to allow revocation of a preliminary plat, it would have expressly done so.[57] The court ruled, in the alternative, that the hearing examiner's decision was clearly erroneous because he did not consider other viable and less harsh legal options to enforce the conditions and require compliance.[58]

Appellant filed a notice of direct appeal with this court on August 7, 2001.[59] Review was granted on July 1, 2002.[60]

### DISCUSSION

### STANDARD OF REVIEW

[1] Judicial review of a land use decision proceeds under the Land Use Petition Act (LUPA).[61] A petition for review by the superior court constitutes appellate review on the administrative record before the local jurisdiction's body or officer with the highest level of authority to make the final determination.[62] Relief may be granted when the following standards set forth in LUPA are met:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

....

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

*468 d) The land use decision is a clearly erroneous

application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates constitutional rights of the party seeking relief.[63]

[2] [3] "When reviewing a superior court's decision on a land use petition, the appellate court stands in the shoes of the superior court."[64] "An appellate court reviews administrative decisions on the record of the administrative tribunal, not of the superior court."[65] We therefore review the record before the Pierce County hearing examiner and review questions of law de novo to determine whether the land use decision was supported by fact and law.[66]

### STATE AND LOCAL PLATTING AND SUBDIVISION PROCESSES

Development of real property in this state implicates both state statutes and local ordinances that impose subdivision and platting controls. The state statute, chapter 58.17 **1150 RCW, provides a general statutory scheme for regulating subdivision of land to ensure the orderly development of new areas for which new streets, sewers, drainage, and utilities will be needed.[67] The owner or developer initiates the subdivision process by filing a preliminary plat and a complete application for approval by the legislative *469 body of the city, town, or county.[68] A preliminary plat is a "neat and approximate drawing of a proposed subdivision showing the general layout of streets and alleys, lots, blocks, and other elements of a subdivision consistent with the requirements of [chapter 58.17 RCW]."[69] The local planning agency or designated official then considers whether the proposed plat complies with the local comprehensive plan and adopted specifications and standards, and makes recommendations to the local legislative body.[70]

Upon receipt of the recommendation, the legislative body conducts a public hearing on the plat application. In Pierce County the legislative body by ordinance has delegated to the hearing examiner the authority to review and decide plat applications.[71] Approval of a preliminary plat may be subject to conditions imposed by the hearing examiner.[72] Once approved, the owner or developer may begin development to prepare the final plat in compliance with the preliminary plat.[73]

Confidential

ROSS-000179476

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

### AUTHORITY TO REVOKE GRANTED BY LOCAL ORDINANCES

[4] [5] Respondent contends the dispositive issue in this case is whether the hearing examiner possessed the power to revoke the preliminary plat.[74] It argues that the local revocation ordinances under which the hearing examiner proceeded, former PCC 18.50.970 and .975, did not grant him authority to revoke the preliminary plat. Respondent asserts that the local ordinances, former PCC 18.50.970 stating that "[t]he Examiner may revoke or modify any *site* **470** *plan approval or permit*, and former PCC 18.50.975 providing that [t]he Examiner may revoke or modify any *permit, use or activity* granted pursuant to the Pierce County Zoning Code .... " do not include preliminary plats within their purview.[75]

Although the distinction between *site plan approval* and *preliminary plat approval* has been blurred with at least one Court of Appeals decision using the two terms interchangeably,[76] Respondent correctly notes **1151** that the county code treats the two as distinctly separate processes.

Former PCC 18.50.960 read in part: "*Plats are exempt from all procedural requirements of the site plan review process;* however, a plat when being reviewed during the preliminary plat review and approval process, shall be reviewed for consistency with the Gig Harbor Development Plan.... *A plat is exempt from [the] site plan approval process* .... "[77] This distinction is further supported by two proceedings: one in which the county hearing examiner in the revocation proceedings revoked "Division I of the Fox **471** Ridge site plan approval and preliminary plat,"[78] and the other in which the Court of Appeals, Division Two, vacated and voided rezone ordinances, site plan approval, and plat approval adopted by the City of Tacoma....[79] RCW 58.17.070 also treats the two terms distinctly, allowing processing of a preliminary plat application simultaneously with site plan applications.

[6] An administrative tribunal, such as the hearing examiner in this case, has only the authority granted it by statute or ordinance.[80] Based upon distinct treatment of the two processes, a site plan or permit is not a preliminary plat.[81] In this case, the local ordinance allowing revocation of site plans and permits did not grant the hearing officer authority to revoke a preliminary plat. Without more, the purported revocation of the preliminary plat would not be valid under former PCC 18.50.970.

[7] [8] [9] [10] [11] Interpretation of local ordinances is governed by the same rules of construction as state statutes.[82] In considering an undefined term, the court considers the statute as a whole to give meaning to the term in harmony with other statutory provisions.[83] Rules of construction do **472** not apply when the language is clear and explicit.[84] In interpreting statutes and ordinances, definitions contained within the act control the meaning of words used in that act.[85] Courts must reasonably construe ordinances with reference to their purpose.[86]

[12] Former PCC 18.50.975 provided for revocation of any *permit, use or activity* granted under the Pierce County Zoning Code. However, it did not expressly include preliminary plats as one of the three revocable categories. Respondent distinguishes preliminary plats from the three categories by reference to the definitions and derived meanings contained in former chapter 18.50 PCC.

In interpreting the three categories (permit, use or activity) listed in former PCC **1152** 18.50.975, this court examines the definitions and meanings of those terms contained in the regulations.[87] The definition of "preliminary plat" (a representation of the proposed general layout) is not included in the meaning of "permit or activity." "Activity" is defined as any use conducted on a lot, tract or parcel of land,[88] and from the local development regulations, "permit[s]" take effect during the developmental phase of the property where some physical activity is involved.[89] In the context of zoning, "activity" has been used to characterize the types of **473** conduct or business occurring on the land,[90] while "permit[s]" under the county code relate to a governmentally approved activity such as a nonconforming use permit or a building permit.[91] A preliminary plat (a tentative representation of the details of a project) thus does not come within the meaning of an "activity" or "permit."

Former chapter 18.50 PCC defined "use" as follows:
> "Use" of property is the purpose or activity for which the land, or building thereon, is designed, arranged or intended, or for which it is occupied or maintained and shall include any manner of performance of such activity with respect to the performance standards of this Regulation. The word "use" also means the word "development."[92]

[13] [14] Under the first definition, a broad reading of "use" includes the definition of a preliminary plat. Construed broadly, "use" can be read to mean "the purpose ... for which the land, ... is designed, arranged, or intended.... "[93]

Confidential

A519

ROSS-000179477

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)
61 P.3d 1141

A rough sketch of the proposed alleys, blocks, and streets would fit within such a reading. However, a further reading of the same sentence following the disjunctive clauses with the conjunctive "and" indicates that the definition of "use" "shall include any manner of performance of such activity with respect to the performance standards of this Regulation."[94] This last element of the definition contemplates involvement of some type of "activity" impacting the land. A preliminary plat does not impact *474 the land in a similar manner as does "use" under the regulations.

The Pierce County Code further clarifies the meaning of the word by providing a second definition of "use."[95] Under the county code "development" or "use" shall mean:

A. Any activity, other than normal agricultural activity which materially affect the existing condition of land or improvements, such as:

1. Clear cutting of trees ...

2. Substantial excavation of deposits of earth ...

3. Construction, reconstruction or alteration of any improvement ...

4. Dumping or parking of any objects ...

**1153 5. Commencement of any primary or substantial use of land and every change in its type of intensity.

B. Any change in the legal relationship of persons to land which materially affects development, such as: the division of land into two or more parcels or units to facilitate separate transfer of title to each parcel unit.[96]

Under this definition, an activity materially affecting the condition of land is one that physically impacts it. Examples of "uses" listed in the definition—*cutting, excavation, construction, dumping,* and *parking*—represent physical actions occurring on the land. A preliminary plat, which is merely a drawing, does not physically impact the land in a similar manner as does a specific land use applied in this context.[97] This definition restricts the term "activity" to a physical activity to or upon the land. Part (B), however, departs from this limitation and expands the meaning of "use" to include conduct which is not physical.

[15] *475 Part (B) of the definition becomes operative when a change in the legal relationship of persons to land

materially affects development, such as division of land. Respondent argues there was no such change in this case. A preliminary plat, it asserts, does not affect the division of land.[98] Subdivision of land occurs upon final plat approval, which is not guaranteed by approval of a preliminary plat.[99] It contends a preliminary plat has no effect on the legal relationship of developer to land which materially affects development. It asserts that preliminary plat approval is not a "use."

This argument is somewhat shortsighted in that it assumes preliminary plat approval and final plat approval are separate and distinct processes. The initial and essential step in obtaining final plat approval is receiving preliminary plat approval.[100] A preliminary plat application notifies the local government of the applicant's intention to follow plat subdivision procedures to gain final plat approval. Once receiving preliminary plat approval, an owner or developer may proceed to prepare detailed engineering drawings, construct improvements, and prepare the final plat in compliance with the terms and conditions of the approved preliminary plat.[101] Approval (with terms and conditions) of that application by the local government acknowledges the developer's reliance on that approval in undertaking the plat subdivision process. This approval creates a change in the legal relationship of the owner or developer to the land which materially affects development.[102] Although the right to subdivide land arises from final plat approval, approval of a preliminary plat begins the plat subdivision process. The right to subdivide land arises out of preliminary plat approval. Without a preliminary *476 plat, final plat approval may never be achieved.[103] As indicated in the definition section of the ordinance, a preliminary plat approval for a subdivision is a "use."

This conclusion is consistent with the revocation ordinance. Former PCC 18.50.975 permits revocation of a *use,* but only when *granted pursuant to the Pierce County Zoning Code or Underlying Zoning.*[104] In this case, the applicable local zoning law was the Rural–Residential Environment, which specified the particular developments and uses permitted.[105] The zoning code divided permitted **1154 developments and uses into three categories.[106] Like the statutory definition, Category (C)(1) expressly considered a subdivision a permitted "use" under the zoning code.[107]

We conclude that a preliminary plat is within the definition of a "use" and that the revocation ordinance granted the hearing examiner authority to revoke a preliminary plat. The Pierce County hearing examiner had the authority to revoke Appellant's preliminary plat.

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.    11

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

### PREEMPTION

[16] [17] Our state constitution, article XI, section 11, allows a county, city or town to "make and enforce within its limits all such local police, sanitary, and other regulations *477 as are not in conflict with general laws."[108] Within this authority counties have plenary police power to enact ordinances, which ceases when in conflict with general state law or when the Legislature intended state law to be exclusive, unless there is room for concurrent jurisdiction.[109] Whether there is room for exercise of concurrent jurisdiction depends on legislative intent which is derived from analysis of the statute.[110]

[18] [19] Preemption arises when the Legislature has expressed its intent to preempt the field or that intent is manifest from necessary implication.[111] If the Legislature is silent on its intent to occupy a given field, we may refer to the purposes of the particular legislative enactment and to facts and circumstances upon which the statute was intended to operate.[112]

[20] [21] [22] In establishing the constitutional invalidity of an ordinance, a heavy burden rests upon the party challenging its constitutionality.[113] "Every presumption will be in favor of constitutionality."[114] This appeal places at issue the constitutional validity of a local ordinance, former PCC 18.50.975, which granted the Pierce County hearing examiner authority to revoke an approved preliminary plat. Former PCC 18.50.975 allowed revocation of permits, uses, and activities.[115] Respondent contends that grant of such authority impinges upon and violates the state platting laws, chapter 58.17 RCW, which call for land to be divided *478 in a uniform manner. The Thurston County Superior Court, Judge Berschauer, agreed, finding that RCW 58.17.010 expressly evidenced the Legislature's intent to preempt local jurisdictions from enacting conflicting legislation.[116] In support of a preemption conclusion, both Judge Berschauer and Respondent cited the following language in RCW 58.17.010 which sets out the purpose of the chapter: "The legislature finds the process by which land is divided is a matter of state concern and should be administered in a *uniform manner* **1155 by cities, towns, and counties throughout the state."[117]

Similar uniformity language was discussed in *City of Seattle v. Williams,* a case challenging a local traffic law. *Williams* provides some guidance in interpreting the word "uniform" in the preemption context and applied the concept of uniformity to a given field.[118] The question in *Williams* was whether two general statutes requiring

uniformity of traffic laws preempted a city ordinance criminalizing driving under the influence (DUI) at a blood alcohol concentration (BAC) of .08 grams.[119] RCW 46.08.020 stated:

> The provisions of this title [Title 46 Motor Vehicles] relating to vehicles *shall be applicable and uniform* throughout this state and in all incorporated cities and towns and all political subdivisions therein and no local authority shall enact or enforce any law, ordinance, rule or regulation in conflict with the provisions of this title except and unless expressly authorized by law to do so and any laws, ordinances, rules or regulations in conflict with the provisions of this title are hereby declared to be invalid and of no effect. Local authorities may, however, adopt additional vehicle and traffic regulations which are not in conflict with the provisions of this title.

(Emphasis added.)

*479 RCW 46.08.030 provided:

> The provisions of this title relating to the operation of vehicles *shall be applicable and uniform* upon all persons operating vehicles upon the public highways of this state, except as otherwise specifically provided.

(Emphasis added.)

Without a statutory definition of "uniform," in interpreting the statutes we employed the dictionary definition of the word, defining it to mean "marked by lack of variation, diversity, and marked by complete conformity to a rule or pattern or by similarity in salient detail or practice."[120] Incorporating this definition, we concluded the statutory scheme relating to motor vehicles must "lack variation," and that the Legislature intended the provisions of Title 46 to be uniformly applied throughout the state.[121] We additionally considered how the challenged ordinance establishing the offense at 0.08 grams of alcohol disrupted the uniform statewide application of state DUI laws which criminalized DUI at the 0.10 percent BAC level. We found that the ordinance, varying in salient detail from the state law on DUI, significantly undermined the uniformity requirement of both RCW 46.08.020 and RCW 46.08.030.

In *Williams* we concluded that the "uniform" language found in the statutes evidenced the Legislature's intent to create a statutory scheme with the same standards consistently applicable throughout the state. In this

Confidential

ROSS-000179479

A521

respect, the uniformity requirement preempted local legislative bodies from enacting ordinances inconsistent with the standards set out in state traffic laws. Because the challenged ordinance departed from the state DUI standard of .10 percent BAC, we concluded that the ordinance violated the statutory uniformity requirement, but we were "not saying that a municipality may never enact traffic laws for which there *480 is a statutory provision on the same subject,"[122] rejecting Respondent Williams' argument that the uniformity requirement of the state statutes preempts all ordinances directed against DUI.

Although *Williams* provides some guidance on the preemption issue in this case, it is, however, distinguishable. Unlike *Williams*, this case does not involve an ordinance that varied in detail from standards established by state laws. Relying on *Williams*, Respondent argues that state platting laws, specifically RCW 58.17.100, requiring only approval or disapproval of a **1156 preliminary plat,[123] preempts the revocation ordinance because it departs from the statutory scheme. Reliance on *Williams* for this proposition is misplaced.[124] In this case, the revocation ordinance does not depart from the state statutory scheme of uniformity. State platting laws are silent on revocation of a preliminary plat.

Located in the purpose section and having no operative force, the "uniform" language in RCW 58.17.010 serves only as a guide to the intended effect of the operative sections.[125] This means the process of dividing land in one county should "not vary" from another in which all local governments must follow the procedures specified in chapter 58.17 RCW. Because RCW 58.17.010 does not contain the "exclusivity" language identified in the *Williams* case, no meaning of "uniform" can be ascertained to preempt the entire field of dividing property. This court "will not interpret a statute to deprive a municipality of the power to legislate on a particular subject unless that clearly is the legislative intent." We do not interpret the purpose section of chapter 58.17 RCW to deprive a county of the power to revoke a preliminary plat because it is not clear under the *481 statute whether the Legislature intended such deprivation.[126]

Respondent's uniformity requirement argument is also undercut by the fact that local jurisdictions are solely responsible for preliminary plat and final plat approvals, and may adopt regulations or condition such approvals to mitigate problems caused by a development.[127] This court in *Isla Verde International Holdings v. City of Camas* and the Court of Appeals in *Norco Construction v. King County* have acknowledged the authority of local

governments to supplement state platting laws for the public health, safety, and welfare.[128] Under this authority, the challenged ordinance in this case was appropriately enacted to allow revocation of an approved "use" when that use is exercised against the public health, safety or general welfare.[129] The statutory scheme of chapter 58.17 RCW is designed to protect the public health, safety and general welfare. In recognition of this, the Legislature has left room for concurrent jurisdiction in matters relating to these interests.[130] Former PCC 18.50.975 providing for revocation of a preliminary plat was not preempted by RCW 58.17.010.

## CONFLICT

[23] [24] [25] [26] [27] We must decide whether there is a conflict between former PCC 18.50.975, allowing revocation of a preliminary plat, and RCW 58.17.140, providing that a final plat meeting all requirements of the chapter shall be submitted for approval within five years of the preliminary *482 plat approval. Local jurisdictions may enact ordinances upon subjects already covered by state legislation if their enactment does not conflict with state legislation.[131] This court will consider an ordinance to be constitutionally invalid on grounds of conflict if the ordinance "directly and irreconcilably conflicts with the statute."[132] If, however, the ordinance and statute can be harmonized, no conflict will be found.[133] Unconstitutional conflict occurs **1157 when an ordinance permits what is forbidden by state law or prohibits what state law permits.[134]

[28] Respondent interprets RCW 58.17.140 to unconditionally allow it five years following preliminary plat approval to comply with conditions and requirements. It asserts the Legislature chose this policy to bring preliminary plats within the arena of vested rights to instill certainty of the rules governing land development. Its vested right, Respondent contends, may only be extinguished upon a finding that the final plat as submitted does not conform to preliminary plat conditions or operative development regulations, and that revocation of the preliminary plat before five years has expired violates its vested right.[135]

Respondent misconstrues RCW 58.17.140. Its contention assumes that the provision grants it an unqualified right to develop its property without limitation for five years after preliminary plat approval. RCW 58.17.140 does not support such an assumption. The provision sets a time limit for preliminary plats.[136] It still requires full compliance with conditions and requirements of

Confidential

ROSS-000179480

A522

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

preliminary plat approval before a final plat can be submitted for review and *483 approval.[137]

Respondent also misunderstands the concept of vested rights in the preliminary plat review and approval context. Its argument assumes that the doctrine confers without limitations or conditions a right to develop the land for five years after preliminary plat approval. The vesting doctrine has generally been applied in the preliminary plat context merely to confer the right to have an application for preliminary plat considered under ordinances and laws in effect at the time a completed application is filed.[138] Chapter 58.17 RCW is silent on revocation.

[29] Subdivision of land is both a local and statewide concern. State platting laws expressly charge local governments with the duty to ensure that the public interest is best served by approval of preliminary plats and final plats.[139] The Legislature has provided that local governments may adopt regulations for the public health, safety, and general welfare[140] in considering plat approval. When conditions of approval of a preliminary plat cannot be satisfied or are deliberately violated, remedial action, such as revocation, may be the only remedy. A revocation ordinance may be reconciled with state platting laws in circumstances under which revocation is necessary to protect the public health, safety and welfare. Revocation of a preliminary plat is appropriate in those cases in which it is impossible to satisfy the conditions of approval because of knowing and deliberate violations of conditions.

### DECISION BY HEARING EXAMINER

When reviewing a superior court's decision on a land use petition, we review the record of the administrative tribunal *484 and not the record of the superior court.[141] In this case we review the record before the Pierce County hearing examiner de novo to determine whether there was evidence to support the land use decision.[142]

[30] Respondent contends the hearing examiner's decision was erroneous because he did not consider whether Respondent could satisfy the requirements for final plat approval within the statutory time period of five years, and that less drastic remedial **1158 methods than revocation were available to enforce the violated or unfulfilled conditions. It argues that despite its removal of trees in the preservation area and on the steep slopes, the hearing examiner committed error by not determining whether removal of those trees jeopardized the public interest by negatively impacting the stability of the

slope.[143]

Respondent, however, cannot satisfy the requirements for final plat approval because it cannot meet the conditions of preliminary plat approval which specifically prohibited removal of trees and vegetation in specified areas. The conditions imposed contemplated the public safety and welfare. It is clear from the record that Respondent knowingly and deliberately violated conditions of preliminary plat approval which cannot be remedied. Respondent can never comply with the specified conditions of the plat approval because, among other reasons, the removed white oak trees cannot be restored to their original state. Monetary fines and remediation methods cannot correct the violations committed by Respondent. Revocation was the only proper remedy.

### *485 SUMMARY AND CONCLUSIONS

At issue in this case is the revocation of a preliminary plat under former Pierce County Code (PCC) 18.50.970 and 18.50.975. Respondent contends the Pierce County hearing examiner exceeded his authority in revoking its preliminary plat because the local revocation ordinance, allowing revocation of any *site plan permit or approval, permit, use,* or *activity,* did not include preliminary plats.

Site plans, permits, and activities do not come within the definition of a preliminary plat (a drawing of the proposed subdivision showing the general layout of streets and alleys, lots, and blocks). The definition of *use* under the ordinance, however, includes subdivisions. Because preliminary plat approval initiates the subdivision process, approval of a preliminary plat for a subdivision is a "use." The ordinance therefore granted the hearing examiner authority to revoke a preliminary plat.

Respondent contends that state platting laws, chapter 58.17 RCW, preempted enactment of any ordinance allowing revocation of preliminary plats. It erroneously relies on *City of Seattle v. Williams* to support its argument that the language in RCW 58.17.010, calling for land to be divided in a uniform manner, evidences the intent of the Legislature to preempt the field. *Williams* is distinguishable. Legislative intent is clear from the provisions at issue in that case, but not clear from the provision at issue in this case.

Respondent's uniformity requirement argument is also undercut by the fact that local jurisdictions are solely responsible for preliminary plat and final plat approvals, and may adopt regulations or conditions for those

Confidential

ROSS-000179481

A523

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)
61 P.3d 1141

approvals. This court in *Isla Verde International Holdings v. City of Camas* and the Court of Appeals in *Norco Construction v. King County* have acknowledged the authority of local governments to supplement state platting laws for the public health, safety, and welfare. Under this authority the revocation ordinance, **\*486** former PCC 18.50.975, was properly enacted and not preempted by state platting laws.

Respondent claims there is a conflict between the revocation ordinance and RCW 58.17.140, which provides that a final plat meeting all requirements of the chapter shall be submitted for approval within five years of preliminary plat approval. Respondent misinterprets this provision as granting it an unqualified right to develop its property without limitation for five years after preliminary plat approval. The provision does nothing more than set a time limit for preliminary plats. No direct conflict exists because RCW 58.17.140 is silent on revocation.

The hearing examiner correctly decided revocation was the only remedy in this case because Respondent can never satisfy the conditions for final plat approval and conditions of preliminary plat approval. Respondent knowingly and deliberately violated conditions of preliminary plat approval which **\*\*1159** cannot be remedied. This particularly involved violation of prohibitions against removal of irreplaceable trees and vegetation in specified areas. Monetary fines and remediation methods cannot correct the violations committed by Respondent because the trees removed from the Oregon White Oak Preservation Area can never be restored to their original state.

We determine that the Pierce County Hearing Examiner had authority to revoke Respondent's preliminary plat under former PCC 18.50.975; that state platting laws do not preempt Pierce County from enacting the challenged revocation ordinance; that the revocation ordinance did not conflict with state platting laws; and that the hearing examiner correctly decided revocation was the only remedy.

ALEXANDER, C.J., IRELAND, OWENS, CHAMBERS, JJ., and BECKER J. Pro Tem., concur.

MADSEN, J. (dissenting).

The majority concludes that former Pierce County Code (PCC) 18.50.975 authorized revocation of HJS Development's preliminary plat approval **\*487** on the grounds that the developer failed to comply with conditions of preliminary plat approval. However, the county's former land use regulations applicable to this case contain no such authority, and therefore I respectfully dissent.

The majority first concludes, and I agree, that former PCC 18.50.970, concerning revocation of "any site plan approval or permit" did not apply to preliminary plats because under the county code neither of these terms encompasses preliminary plat approval.

Former PCC 18.50.975 provided for revocation or modification of "any permit, use or activity granted pursuant to the Pierce County Zoning Code or allowed pursuant to the Underlying Zoning which shall include, but not necessarily be limited to, site plans related to special zones or unclassified use permits." The majority says, and again I agree, that former PCC 18.50.975, insofar as it concerns revocation of any "permit" or any "activity," did not apply to preliminary plats. The majority then reasons, however, that the term "use" in former PCC 18.50.975 did encompass preliminary plat approval. Majority at 1152. The majority notes that former PCC 18.50.145U.1 defined " 'use' " as meaning " 'development,' " among other things. *Id.* at 1152. "Development," in turn, was defined in part as "[a]ny change in the legal relationship of persons to land which materially affects development, such as: the division of land into two or more parcels or units to facilitate separate transfer of title to each parcel or unit." Former PCC 18.50.145D.3(B). The majority says that preliminary plat approval creates a change in the legal relationship of the owner or developer to the land that materially affects development, and thus preliminary plat approval is a "use" within the meaning of former PCC 18.50.975. Majority at 1153. I disagree.

Until a final plat is approved and filed, it is illegal to transfer or sell, or advertise for transfer or sale, any lot, tract, or parcel. RCW 58.17.200 (providing that prosecuting attorney "shall commence an action to restrain and enjoin **\*488** further subdivisions or sales, or transfers, or offers of sale or transfer and compel compliance with all provisions of" chapter 58.17 RCW).[1] The majority itself acknowledges that the right to subdivide arises from final plat approval. Majority at 1153; *see* RCW 58.17.170 ("[w]hen the legislative body of the city, town or county finds that the subdivision proposed for final plat approval conforms to all terms of the preliminary plat approval, ... other applicable state

Confidential

A524

ROSS-000179482

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

laws, and any [applicable] local ordinances," then it shall given final written approval "on the face of the plat"). And, "[f]inal approval *cannot* be granted if [the conditions to preliminary plat approval] are not met." *Friends of the Law v. King County,* 123 Wash.2d 518, 528, 869 P.2d 1056 (1994); *see also, e.g.,* 18 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 5.4, at 271 (1995) (an applicant's inability or unwillingness to meet conditions for dedications or public improvements appear to be causes for denial of plat approval).

**\*\*1160** Preliminary plat approval does not authorize subdivision of land. As the majority says, "approval of a preliminary plat *begins* the plat subdivision process." Majority at 1153 (emphasis added). The majority also says that "the right to subdivide land arises from *final plat approval.*" *Id.* (emphasis added). Thus, although preliminary plat approval is a significant stage in plat approval, in that it involves the actual decisions as to the terms and conditions of final plat approval, the majority itself necessarily recognizes that preliminary plat approval does not authorize subdivision.

Since there is no right to subdivide land merely upon preliminary plat approval, preliminary plat approval does not, and cannot, change the legal relationship of the owner or the developer to the land that materially affects development. Therefore, while preliminary plat approval is an important part of the approval process, it does not come **\*489** within the definition of "development" in former PCC 18.50.145D.3(B), and thus it not within the meaning of "use" in former PCC 18.50.145U.1. Preliminary plat approval therefore does not fall within the revocation authority stated in former PCC 18.50.975.

The majority's statement that its conclusion is consistent with former PCC § 18.50.975's limitation on revocation, i.e., that a use may be revoked only when granted pursuant to the county zoning code or underlying zoning, is also unfounded. The majority refers to the applicable zoning law specifying developments and uses permitted, noting that former PCC 18.50.185 divided them into three

categories. Majority at 1153. The majority then says that former PCC 18.50.185(C)(1)² expressly considered a subdivision a permitted use under the zoning code, "[l]ike the statutory definition." Majority at 1153–1154.

However, while a subdivision may be a permitted use under the zoning code, the majority's equation of preliminary plat approval to a subdivision as the term is used in former PCC 18.50.185 suffers from the same flaw as its main analysis. That is, while a subdivision can involve land that has been divided into parcels for the transfer of title to each parcel, as the statutory definition of "development" in former PCC 18.50.145(D).3(B) contemplates, a preliminary plat cannot. Therefore, I do not find persuasive the majority's attempt to reinforce its conclusion by equating the zoning code to the ordinance's definition of "development."

Finally, I note that Pierce County maintains, in an argument directed at whether state law preempts any local ordinances respecting revocation, that the authority to revoke is implied in state law. It is not necessary to reach **\*490** the question of preemption, since the local ordinances did not, in any event, purport to authorize revocation of preliminary plat approval.

In contrast to the majority, I would hold that none of the express revocation provisions in Pierce County's former land use regulations applies to authorize revocation of HJS Development's preliminary plat approval. Accordingly, the superior court's decision should be affirmed.

SANDERS, J., concurs.

**All Citations**

148 Wash.2d 451, 61 P.3d 1141

Footnotes

\*    Judge Charles Z. Smith is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a).

1    Fox Ridge Investments filed the preliminary plat and site plan application. Respondent HJS Development, Inc., is the property owner. Both entities are the same party Respondent on this appeal.

2    Under RCW 58.17.033(2), [t]he requirements for a fully completed application shall be defined by local ordinance. Appellant acknowledges Respondent filed a complete application for plat approval.

3    Clerk's Papers at 37. The Gig Harbor Peninsula Development Regulations, which regulated development of all

Confidential                                                                ROSS-000179483

A525

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

property on the Gig Harbor Peninsula in unincorporated Pierce County, former chapter 18.50 of the Pierce County Code, required proposed plats to be processed with a site plan in the Rural–Residential Environment.

4       *Id.*

5       Clerk's Papers at 181.

6       In 1989 the Pierce County Council amended the comprehensive plan and the Gig Harbor Peninsula Development Regulations and adopted the Rural–Residential Environment of the Gig Harbor Peninsula Comprehensive Plan which included essentially all of Fox Island.

7       The Pierce County Comprehensive Plan became effective on January 1, 1995.

8       Clerk's Papers at 37.

9       *Id.* at 249–50 (emphasis added).

10      *Id.* at 140, 198. Former PCC 21.14.030(c)(2), "Geologically Hazardous Areas" Ordinance states: "The development proposal may be approved, approved with conditions or denied based [upon] the Department's evaluation of the ability of the proposed mitigation measures to reduce risks associated with the erosion and landslide hazard area."

11      *Id.* (citing Administrative Record at 819).

12      *Id.*

13      *Id.* (citing Administrative Record at 822–23).

14      *Id.* (citing Administrative Record at 826–28). Appellant's brief cites the report in stating "Selective clearing is considered to be acceptable with the 50 foot BSBL [building setback and buffer line] for the purpose of creating lawns and landscaped areas. Selective clearing is defined herein to mean the removal of small trees, bushes and other low-lying vegetation and the removal of dead, diseased or dangerous trees. No trees greater than 36 inches in diameter at breast height (dbh) occurring within the BSBL or upon adjacent steep slopes shall be removed with the exception of dead, diseased or dangerous trees."

15      Clerk's Papers at 198.

16      *See id.* (noting former § PCC 21.14.030(c)(2)) "Geologically Hazardous Areas" and former PCC 21.20.080.D "Critical Areas and Natural Resource Land Authority and Purpose."

17      *Id.*

18      *Id.* at 201.

19      *Id.*

20      *Id.* at 202 (emphasis added).

21      *Id.*

22      *Id.*

Confidential                                                                                    ROSS-000179484

A526

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

23    *Id.* at 203–04.

24    *Id.* at 175.

25    *Id.* at 175–76.

26    *Id.* at 174–95.

27    Verbatim Report of Proceedings (VRP) of Recorded Hearing Before Hearing Examiner Stephen K. Causseaux, Jr. (Feb. 5, 1998) at 3–8.

28    VRP at 5.

29    *Id.*

30    *Id.* at 9–18.

31    *Id.*

32    Clerk's Papers at 174–95. The hearing examiner's decision adopted all of the MDNS mitigated measures as conditions of approval.

33    VRP (Oct. 4, 2000) at 6.

34    *Id.;* Clerk's Papers at 208.

35    Clerk's Papers at 208.

36    VRP (Oct. 4, 2000) at 6.

37    *Id.* at 128.

38    *Id.* at 18, App. C.

39    Clerk's Papers at 208.

40    *Id.*

41    *See* Title 18(h) PCC and chapter 76.09 RCW.

42    Clerk's Papers at 208. Two Fox Island residents also filed a petition for revocation of the preliminary plat.

43    *See* VRP (Oct. 4, 2000).

44    Clerk's Papers at 209.

45    *Id.*

Confidential

ROSS-000179485

A527

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

46    Clerk's Papers at 212.

47    *Id.* at 231.

48    *Id.*

49    *Id.* at 64.

50    PCC 1.22.130 authorizes the examiner to "take such further action as is deemed proper"; Rule 1.11 of the Rules of Procedure for Hearings authorizes reopening of a hearing "for good cause shown" or in the "interest of justice."

51    Clerk's Papers at 70.

52    *Id.* at 4.

53    *Id.* at 79–124.

54    VRP (June 7, 2001).

55    The court did not address the moratorium issue. VRP (June 7, 2001) at 25–28.

56    VRP (June 7, 2001) at 104–06.

57    *Id.* at 106.

58    *Id.* at 109.

59    Notice of Appeal to Washington State Supreme Court, Number 71430–4 (Aug. 2, 2001).

60    Order Granting Review (July 1, 2002).

61    *See* RCW 36.70C.030 which provides specific exceptions; *Chelan County v. Nykreim,* 146 Wash.2d 904, 916–17, 52 P.3d 1 (2002).

62    *See Citizens to Preserve Pioneer Park v. City of Mercer Island,* 106 Wash.App. 461, 470, 24 P.3d 1079 (2001); RCW 36.70C.130(1), .020(1).

63    RCW 36.70C.130(1).

64    *Citizens,* 106 Wash.App. at 470, 24 P.3d 1079.

65    *King County v. Boundary Review Bd.,* 122 Wash.2d 648, 672, 860 P.2d 1024 (1993) (citing *Sherman v. Moloney,* 106 Wash.2d 873, 881, 725 P.2d 966 (1986); *Farm Supply Distribs., Inc. v. Wash. Utils. & Transp. Comm'n,* 83 Wash.2d 446, 448, 518 P.2d 1237 (1974); *Schmitt v. Cape George Sewer Dist. 1,* 61 Wash.App. 1, 4, 809 P.2d 217 (1991)).

66    *See City of Univ. Place v. McGuire,* 144 Wash.2d 640, 647, 30 P.3d 453 (2001); *Girton v. City of Seattle,* 97 Wash.App. 360, 363, 983 P.2d 1135 (1999) (citing *Boundary Review Bd.,* 122 Wash.2d at 672, 860 P.2d 1024; *Hilltop Terrace Homeowner's Ass'n v. Island County,* 126 Wash.2d 22, 29, 891 P.2d 29 (1995)).

Confidential                                ROSS-000179486

A528

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

67    *See* RCW 58.17.010; *Norco Const. Inc. v. King County,* 29 Wash.App. 179, 180, 627 P.2d 988 (1981).

68    *See* RCW 58.17.030, .070.

69    RCW 58.17.020(4).

70    RCW 58.17.100; *Norco Const. Inc.,* 29 Wash.App. at 180, 627 P.2d 988.

71    *See* RCW 58.17.100; PCC 16.08.020.

72    PCC 16.08.020.

73    *Norco Const. Inc.,* 29 Wash.App. at 181, 627 P.2d 988.

74    It is well established that if a case can be decided on nonconstitutional grounds, an appellate court should decline to consider the constitutional issues. *See Isla Verde Int'l Holdings, Inc. v. City of Camas,* 146 Wash.2d 740, 49 P.3d 867, 874 (2002); *State v. Speaks,* 119 Wash.2d 204, 207, 829 P.2d 1096 (1992).

75    Former PCC 18.50.970 and 18.50.975 (emphasis added). Standards for revocation established in the ordinance, former PCC 18.50.995, stated in part:
       Such revocation or modification shall be made on any one or more of the following grounds:
       ....
       D. That the permit or variance granted is being, or recently has been, exercised contrary to the terms or conditions of such approval, or in violation of any Statute, Resolution, Cod, Law or Regulation;
       E. That the use for which the approval was granted was so exercised as to be detrimental to the public health or safety, or so as to constitute a nuisance.

76    *See Burley Lagoon Improvement Ass'n v. Pierce County,* 38 Wash.App. 534, 540, 686 P.2d 503 (1984). In the city of Seattle, site plan permits are master use permits (MUPs) employed to streamline the regulatory review process. MUPs include a number or regulatory components such as environmental impact review, comprehensive plan review, and other use inquires. *See, e.g., Erickson & Assocs., Inc. v. McLerran,* 123 Wash.2d 864, 872 P.2d 1090 (1994). In the revocation hearing, the Pierce County Planning and Land Services Department requested the hearing examiner to consider revocation of the site plan for violations of the plat's conditions of approval. Clerk's Papers at 36.

77    Br. of Resp't (citing former PCC 18.50.960) (emphasis added).

78    Clerk's Papers at 231.

79    *Brister v. Council of Tacoma,* 27 Wash.App. 474, 476, 619 P.2d 982 (1980) (treating site plan and plat approval as separate processes). Although neither party defines site plan, it is unlikely to be confused with binding site plan. As defined by statute, a binding site plan is an alternative method in dividing land and exempted from the platting requirements of chapter 58.17 RCW. It is similar to a preliminary plat in that it requires a drawing to scale to subdivide land, but it is only applicable in three types of land uses: (1) commercially or industrially zoned property; (2) mobile home or travel trailer sites; and (3) condominium development. This case, involving single-family dwellings in a rural-residential zone, does not come within this definition.

80    *Lejeune v. Clallam County,* 64 Wash.App. 257, 270, 823 P.2d 1144 (1992).

81    *See McTavish v. City of Bellevue,* 89 Wash.App. 561, 565, 949 P.2d 837 (1998); *Brister,* 27 Wash.App. at 476, 619 P.2d 982.

82    *World Wide Video, Inc. v. City of Tukwila,* 117 Wash.2d 382, 392, 816 P.2d 18 (1991), *cert. denied,* 503 U.S. 986, 112 S.Ct. 1672, 118 L.Ed.2d 391 (1992).

---

Confidential

ROSS-000179487

A529

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

83    *Heinsma v. City of Vancouver,* 144 Wash.2d 556, 563, 29 P.3d 709 (2001).

84    *State v. Villarreal,* 97 Wash.App. 636, 641, 642, 984 P.2d 1064 (1999); *McTavish v. City of Bellevue,* 89 Wash.App. 561, 565, 949 P.2d 837 (1998).

85    *Burley Lagoon Improvement Ass'n,* 38 Wash.App. at 536, 686 P.2d 503 (citing *N. Pac. Coast Freight Bureau v. State,* 12 Wash.2d 563, 122 P.2d 467 (1942)).

86    *Burley Lagoon Improvement Ass'n,* 38 Wash.App. at 537, 686 P.2d 503 (citing *State ex rel. Spokane United Rys. v. Dep't of Pub. Serv.,* 191 Wash. 595, 71 P.2d 661 (1937)).

87    *Burley Lagoon Improvement Ass'n,* 38 Wash.App. at 538, 686 P.2d 503.

88    Former PCC 18.50.145A.2.

89    Respondent contends "permits" under the code does not refer to or make mention of preliminary plats. Instead the code specifies "use permits" for "conditional use," "unclassified use," and "nonconforming use" of the property and "building permits" and "site development permits" for development of the property, citing former PCC 18.203.050, 18.10.221.010, 18.10.610(I, N), .630(C, D), .680(B), .700(A)(1), .145U.2; PCC 17A.10.070).

90    *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.,* 142 Wash.2d 543, 554, 14 P.3d 133 (2000) ("preventing interference with agricultural activities by nearby non-agricultural land uses.").

91    *See* former PCC 18.203.050, 18.10.221.010, 18.10.610(I, N), .630(C, D), .680(B), .700(A)(1), .145U.2; PCC 17A.10.070.

92    Former PCC 18.50.145U.1, .145D.3.

93    *See id.*

94    Ordinarily, the word "or" does not mean "and" unless there is clear legislative intent to the contrary. *See State v. Tiffany,* 44 Wash. 602, 87 P. 932 (1906). Statutory phrases separated by the word "and" generally should be construed in the conjunctive. *See* 1A Norman J. Singer, *Statutes and Statutory Construction* § 21:14, at 179–81 (6th ed.2002).

95    Former PCC 18.50.145D.3.

96    *See id.*

97    *See, e.g., King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.,* 142 Wash.2d 543, 550, 14 P.3d 133 (2000); *Citizens for Mount Vernon v. City of Mount Vernon,* 133 Wash.2d 861, 947 P.2d 1208 (1997); *Christianson v. Snohomish Health Dist.,* 133 Wash.2d 647, 946 P.2d 768 (1997).

98    Br. of Resp't at 24.

99    *See* RCW 58.17.140, .150, .160, .170.

100    *See* RCW 58.17.170.

101    6 WASH. STATE BAR ASS'N, REAL PROPERTY DESKBOOK § 89.5(2) (1996).

102    *See Loveless v. Yantis,* 82 Wash.2d 754, 763, 513 P.2d 1023 (1973) (a preliminary plat approval constitutes a major action significantly affecting the environment, necessitating an environmental impact statement).

Confidential

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

103    *See* RCW 58.17.170.

104    Former PCC 18.50.975 (emphasis added).

105    Clerk's Papers at 36; former PCC 18.50.180, .185.

106    "(A) Developments or uses permitted outright; (B) Development or uses permitted after administrative review and approval of a site plan by the Planning Department; and (C) Development or uses permitted after review and approval of a site plan by the Examiner after at least one public hearing." Former PCC 18.50.185.

107    Former PCC 18.50.185(C)(1) stated in part:
        1. Any use or activity which requires a public hearing or public meeting.... In the event any use or activity requires approval over and beyond the requirements of this Regulation and the Examiner has the authority to review the matter under the other Regulations or Code, the Examiner may consider the separate applications concurrently.... This Section shall be applicable, but not necessarily limited to, subdivisions....

108    CONST. art. XI, § 11.

109    *See Rabon v. City of Seattle,* 135 Wash.2d 278, 287, 957 P.2d 621 (1998); *Brown v. City of Yakima,* 116 Wash.2d 556, 559, 807 P.2d 353 (1991).

110    *Lenci v. City of Seattle,* 63 Wash.2d 664, 667–68, 388 P.2d 926 (1964) (citing *In re Iverson,* 199 Cal. 582, 250 P. 681 (1926)).

111    *Rabon,* 135 Wash.2d at 289, 957 P.2d 621; *Brown,* 116 Wash.2d at 560, 807 P.2d 353.

112    *Brown,* 116 Wash.2d at 560, 807 P.2d 353; *Lenci,* 63 Wash.2d at 669–70, 388 P.2d 926.

113    *Lenci,* 63 Wash.2d at 667–68, 388 P.2d 926 (citing *Letterman v. City of Tacoma,* 53 Wash.2d 294, 333 P.2d 650 (1958)).

114    *Id.* (citing *Winkenwerder v. City of Yakima,* 52 Wash.2d 617, 328 P.2d 873 (1958)).

115    Former PCC 18.50.975.

116    *See* VRP at 104 (June 7, 2001).

117    RCW 58.17.010 (emphasis added).

118    *City of Seattle v. Williams,* 128 Wash.2d 341, 359–60, 908 P.2d 359 (1995).

119    *Id.* at 347–48, 908 P.2d 359.

120    *Id.* at 349–50, 908 P.2d 359.

121    *Id.* at 363, 908 P.2d 359.

122    *Id.* at 353, 908 P.2d 359.

123    *See* RCW 58.17.100.

Confidential

ROSS-000179489

HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)

61 P.3d 1141

124    Br. of Resp't at 27.

125    *See Oliver v. Harborview Med. Ctr.,* 94 Wash.2d 559, 565, 618 P.2d 76 (1980).

126    *Trimen Dev. Co. v. King County,* 124 Wash.2d 261, 270, 877 P.2d 187 (1994); *Rabon v. City of Seattle,* 135 Wash.2d 278, 291, 957 P.2d 621 (1998).

127    *See* RCW 58.17.100, .110. *See also Isla Verde Int'l Holdings v. City of Camas,* 146 Wash.2d 740, 49 P.3d 867, 880 (2002) ( " [L]ocal governments have the authority to adopt regulations or to withhold plat approval if appropriate provisions have not been made ... "); *Norco Constr.,* 29 Wash.App. at 180, 627 P.2d 988.

128    *Id.*

129    Former PCC 18.50.995.

130    *See* RCW 58.17.100, .110 (allowing enactment of regulations for the public health, safety, and general welfare).

131    *Lenci,* 63 Wash.2d at 670, 388 P.2d 926.

132    *Heinsma,* 144 Wash.2d at 565, 29 P.3d 709 (citing *Brown,* 116 Wash.2d at 561, 807 P.2d 353).

133    *Heinsma,* 144 Wash.2d at 565, 29 P.3d 709.

134    *Rabon,* 135 Wash.2d at 292, 957 P.2d 621 (citing *Trimen Dev. Co.,* 124 Wash.2d at 269, 877 P.2d 187; *City of Bellingham v. Schampera,* 57 Wash.2d 106, 110–111, 356 P.2d 292 (1960)).

135    Br. of Resp't at 31, 32.

136    *See* RCW 58.17.140.

137    *Id.*

138    *Friends of the Law,* 123 Wash.2d at 522, 869 P.2d 1056; RCW 58.17.030.

139    *See* RCW 58.17.100, .110.

140    *See* RCW 58.17.110.

141    *Boundary Review Bd.,* 122 Wash.2d at 672, 860 P.2d 1024.

142    *See McGuire,* 144 Wash.2d at 647, 30 P.3d 453; *Girton,* 97 Wash.App. at 363, 983 P.2d 1135 (citing *Boundary Review Bd.,* 122 Wash.2d at 672, 860 P.2d 1024; *Hilltop Terrace Homeowner's Ass'n,* 126 Wash.2d at 29, 891 P.2d 29).

143    Clerk's Papers at 212–13.

1      Under RCW 58.17.205, an offer or agreement to sell, lease, or transfer a lot, tract, or parcel of land that is expressly conditioned on recording of the final plat is not subject to RCW 58.17.200's injunctive action.

Confidential                                                                                      ROSS-000179490

A532

**HJS Development, Inc. v. Pierce County ex rel. Dept. of..., 148 Wash.2d 451 (2003)**

61 P.3d 1141

2  That code provision states in relevant part:
   "Developments or uses permitted after review and approval of a site plan by the Examiner after at least one public hearing are as follows:
   "1. Any use ... which requires a public hearing or public meeting according to any other law, ordinance, regulation, or Code.... This Section shall be applicable, but not necessarily limited to ... subdivisions...."
   Former PCC 18.50.185(C)(1).

---

**End of Document**               © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Confidential              ROSS-000179491

A533

# EXHIBITS 44-76

## Redacted in their Entirety