No. 25-2153

# In The United States Court of Appeals For the Third Circuit

THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,
Plaintiffs-Appellees,

v.

ROSS INTELLIGENCE, INC.,
Defendant-Appellant.

*On Appeal from an Order of the United States
District Court for the District of Delaware,
Civil Action No. 20-613 (The Honorable Stephanos Bibas)*

## SUPPLEMENTAL BRIEF FOR DEFENDANT-APPELLANT

Anne M. Voigts
Ranjini Acharya
PILLSBURY WINTHROP SHAW PITTMAN
2550 Hanover Street
Palo Alto, CA 94304

Kayvan Ghaffari
PILLSBURY WINTHROP SHAW PITTMAN
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111

Yar R. Chaikovsky
WHITE & CASE
3000 El Camino Real
2 Palo Alto Square
Suite 900
Palo Alto, CA 94306

Andy LeGolvan
WHITE & CASE
555 S Flower Street, Suite 2700
Los Angeles, CA 90071

Mark S. Davies
*Counsel of Record*
Anna B. Naydonov
Kufere J. Laing
WHITE & CASE
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
mark.davies@whitecase.com

Ji Won Oh
WHITE & CASE
1221 Avenue of the Americas
New York, NY 10020

*Counsel for Defendant-Appellant*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I.     *ASTM* requires reversing the district court on the first factor. ......................... 2

II.    *ASTM* requires affirming the district court on the second factor. ..................... 5

III.   *ASTM* requires affirming the district court on the third factor. ....................... 5

IV.    *ASTM* requires reversing the district court on the fourth factor. ...................... 5

CONCLUSION .......................................................................................................... 7

CERTIFICATE OF COMPLIANCE ......................................................................... 9

CERTIFICATE OF SERVICE ................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Society for Testing & Materials v. UpCodes, Inc.,*
172 F.4th 253 (3d Cir. 2026) ....................................................................*passim*

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,*
598 U.S. 508 (2023) ........................................................................... 2, 3

*ASTM v. Public.Resource.Org., Inc.,*
82 F.4th 1262 (D.C. Cir. 2023) ............................................................ 1

*Google v. Oracle,*
593 U.S. 1 (2021) ............................................................................... 6

*Neb. Press Ass'n v. Stuart,*
427 U.S. 539 (1976) ........................................................................... 4

*United States v. Google LLC,*
803 F. Supp. 3d 18 (D.D.C. 2025) ...................................................... 4

## STATUTES AND RULES

17 U.S.C. § 107(1) .................................................................................. 2

17 U.S.C. § 107(2) .................................................................................. 5

17 U.S.C. § 107(3) .................................................................................. 5

17 U.S.C. § 107(4) ............................................................................... 5, 6

## OTHER AUTHORITIES

Shanice Harris, *Federal judges report broad adoption of AI tools,*
https://tinyurl.com/yc7nvz3v .............................................................. 7

Thomson Reuters, *CoCounsel Legal – Reimagined,*
https://tinyurl.com/y3w4bxfz ............................................................. 4

**INTRODUCTION**

A year ago, ROSS's petition for interlocutory appeal raised a "novel and difficult question of first impression." A63, A69-70. Does the fair use doctrine allow an innovator to copy available legal standards when building a new research platform? Just last month, a unanimous panel provided the answer: Yes. In fact, the fair use doctrine *encourages* an innovator to copy available legal standards when building a new research platform. *American Society for Testing & Materials v. UpCodes, Inc.*, 172 F.4th 253, 262 (3d Cir. 2026) (*ASTM*) (applying the D.C. Circuit's "persuasive" opinion, *ASTM v. Public.Resource.Org., Inc.*, 82 F.4th 1262 (*Public.Resource*)).

Recognizing *ASTM*'s relevance to the issues in this appeal, the Court asked for supplemental briefing addressing *ASTM*'s impact. This is a straightforward case under *ASTM*.  The Court should summarily reverse the decision below. *See, e.g.*, Opening Brief (OB) 36-37 (arguing that *Public.Resource* weighs in ROSS's favor on factor 2), OB47 (same on factor 4); Reply Brief (RB) 14 (factor 2 again).

**BACKGROUND**

The material facts here are nearly identical to those in *ASTM*. West, like the *ASTM* plaintiff, is "a recognized [industry] leader" whose users buy "a subscription package" to access copyrighted legal standards and "explanatory notes." 172 F.4th at 258-60; *see also* A36. ROSS, like the *ASTM* defendant, is an innovative "for-profit startup" that built a legal research platform using the "copyrighted" standards "without securing a license." *Id.* at 259; *see also* A37. Both defendants, here and in

1

*ASTM*, attract users with a "freemium business model" so subscribers can take advantage of their platforms' "artificial intelligence tools." *Id.* at 259; *see also* A4462 (explaining ROSS's free Google Chrome Extension); A6479 (discussing the impact of free users on ROSS's business operations). This case introduces one unique fact: ROSS's platform publishes uncopyrightable judicial opinions—it does not reproduce the copyrighted works. A51, A55. The *ASTM* defendant, on the other hand, "republishe[d] the [w]orks without alteration." 172 F.4th at 263.

## ARGUMENT

### I.   *ASTM* requires reversing the district court on the first factor.

**A.** *ASTM* undertook "an objective inquiry" into whether the "new work" "adds something new, with a further purpose or different character" to the original work. 172 F.4th at 262 (internal quotations to *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) omitted); *see* 17 U.S.C. § 107(1). Works that "further the goals of copyright without lessening the incentive to create" are "described as transformative" because their "distinct purpose" "adds something new" to the original work. *Id.* Transformative purposes provide "[i]ndependent justification" for "copying" the original work. *Id.*; *see also* OB45-46; RB22.

The district court is wrong under *ASTM*.

First, *ASTM* explains that the first factor "is an 'objective inquiry into what use was made, *i.e.*, what the user does with the original work' and is not dependent on subjective intent." 172 F.4th at 262 (quoting *Warhol*, 598 U.S. at 545). But the district court analyzed ROSS's subjective purpose; it held that ROSS's use was not

transformative because ROSS "took the headnotes to make it easier to develop a competing legal research tool." A53.

In so doing, the district court ignored ROSS's transformative objective purpose. ROSS copied the headnotes to teach its AI model "about the relationships among legal words" so it could build a new platform where the "headnotes *do not* appear as part of the final product." A51-52 (emphasis added); *see also* OB10-12 (explaining ROSS's training). ROSS's purpose is thus distinct from West using headnotes "to return a list of cases," help "legal researchers navigate Westlaw," and "possibly" improve "Westlaw's internal search tool." A51. ROSS's distinct purpose also "involved a change in medium," making its use far more transformative than the one *ASTM* endorsed—there, the defendant republished the copyrighted works "without alteration." 172 F.4th at 263.

Second, the district court replaced ROSS's objective use—training an AI model—with ROSS's expression, "spit[ting] back relevant judicial opinions." A51. But *ASTM* distinguished "the first factor's focus on purpose" from "mere[] expressive similarity" with the original work. 172 F.4th at 263-64 (discussing *Warhol*, 598 U.S. 542, and decisions from "sister circuits"). And *ASTM* reiterated that this Court has "never held [] some overlap in audience or general aim is necessarily fatal to a fair use defense." *Id.* at 264. The district court's conflation is especially troublesome here: ROSS's expressions (legal opinions) are uncopyrightable because they belong to the public—this further weighs in favor of fair use. *Cf. Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (recognizing the right to publish legal proceedings); OB49-50.

3

Those two errors bore a third. Teaching a machine the language of the law is a "compelling independent justification for copying." 172 F.4th at 265; OB6, OB41. Thus, ROSS's use of headnotes to build an AI model "further[ed] the goals of copyright—including advancing public knowledge." 172 F.4th at 262, 265; *see also United States v. Google LLC*, 803 F. Supp. 3d 18, 55-59 (D.D.C. 2025) (upstart AI search firms offer a new type of search engine that forces legacy search firms to innovate). As West now admits, AI models are "a different kind of [research] tool," not a "faster" one. Thomson Reuters, *CoCounsel Legal – Reimagined*, https://tinyurl.com/y3w4bxfz.

**B.** The "first statutory factor" also considers "the commercial nature of the work." 172 F.4th at 265. ROSS, like the *ASTM* innovator, is a "commercial actor" that did "not charge users for access" to the copyrighted works. *Id.*; *see also* A55 ("ROSS's output to an end user does not include a West headnote"). Thus, ROSS's "for-profit status is moderated by the fact" that its revenue derives from users paying to access its "proprietary tools and technology, not for access to the [w]orks." 172 F.4th at 266. Also consider ROSS's "freemium business model," which allowed users access to its "artificial intelligence tools" without a paid subscription; this further weighs in favor of non-commercial activity. *Id.* at 259; *e.g.*, A4462 (ROSS's free Google Chrome Extension), A4820 (ROSS's two-week free trial), A6479 (discussing ROSS users who access the entire platform for free). All told, ROSS did not receive any "*direct* monetary profit from publishing the [w]orks." 172 F.4th at 265 (emphasis in original).

4

As in *ASTM*, the "commerciality inquiry here does "little to help either party," and does not change the fact that the first factor favors ROSS. 172 F.4th at 264.

## II.   *ASTM* requires affirming the district court on the second factor.

The district court's ruling that West's headnotes are "*not* that creative," so "factor two goes for ROSS" is consistent with *ASTM*. A54 (emphasis in the original); *see* 17 U.S.C. § 107(2). *ASTM* held that "explanatory," "non-binding[,] and non-authoritative" legal materials sit at "the periphery of copyright's core protection." 172 F.4th at 267-68. If headnotes fall within copyright's ambit, they could not be further from its core protection. Unlike the *ASTM* works, headnotes are not independently "develop[ed]" and "publish[ed]." 172 F.4th at 271. Rather, headnotes are sentences taken directly from publicly owned judicial opinions and placed behind a paywall. RB4-10.

## III.   *ASTM* requires affirming the district court on the third factor.

*ASTM* held that copying the "entirety" of a work is "reasonable" when "tethered to a valid, and transformative, purpose." 172 F.4th at 267 (cleaned up); *see* 17 U.S.C. § 107(3). The district court "decide[d] factor three for ROSS." A60, A65. *ASTM* requires affirmance given that ROSS copied only .08% of the 28 million headnotes.

## IV.   *ASTM* requires reversing the district court on the fourth factor.

*ASTM* identifies "the relevant market" as the one "in which [the plaintiff] operates and sells the [w]orks." 172 F.4th at 269; *see* 17 U.S.C. § 107(4). Harms must be "cognizable" (the new work is a "substitute" for the original), "significant" (the new work does more than "*damage* the market," but "*usurps* the market"), and find support in "the record." *Id.* (emphases in the original) & nn.10, 11; OB47. If the new

5

works are effective substitutes for the original work, courts may "assess how likely public benefits balance against likely economic harm, paying special attention to implications for copyright's core concern with the 'creative production of new expression.'" 172 F.4th at 270 (quoting *Google v. Oracle*, 593 U.S. 1, 35 (2021)). *ASTM* refutes the district court at every turn: relevant market, market harm, evidentiary support, and public benefits.

Start with the relevant market. The district court identified "legal-research platforms" as the "obvious" market. A56. That is wrong under *ASTM*, which evaluated "the market for technical standards" by looking at "sales of technical standards" and the "percentage of [website] revenue derive[d] from sales of standards incorporated into law." 172 F.4th at 269. *ASTM* did not look at the broader platform market because the defendant did not copy the plaintiff's platform. So too here. The relevant analysis here examines sales of headnotes and the percentage of Westlaw subscriptions derived from sales of headnotes. *Id.*; *see also* OB48-50, RB24-26.

Now consider the market harm and the required evidentiary support. The district court held that the absence of supporting evidence "[did] not matter," ROSS harmed West's market simply by intending "to compete with Westlaw." A56. *ASTM* says the opposite: Courts must "delve into the record to examine the extent of market harm." 172 F.4th at 269 n.11. And West conceded that ROSS has not harmed it in the relevant market—consumers have no desire to purchase headnotes as an independent search tool. West Answering Brief at 49 n.6. If anything, West's evidentiary showing is far worse than the *ASTM* plaintiff's. West fails to quantify the

6

"modest number of users" "who have subsequently canceled their [Westlaw] subscriptions," there are no "known" subscribers who left West for ROSS, there are users that "shared the same email domain" on both platforms, nor is there evidence of "lost revenue." 172 F.4th at 269; RB30-33. ROSS did not harm the market for West's headnotes.

That leaves the public benefits. All agree that "there is a public interest in accessing the law." A56. The district court oddly discounted this "clear and significant" benefit, 172 F.4th at 270, theorizing that "[t]here is nothing that [West] created that ROSS could not have created for itself," A56-57. But the relevant question is whether "widespread conduct" like ROSS's would temper West's "motivation to produce new works." 172 F.4th at 269-70. Obviously not. ROSS was an early entrant into the growing AI legal search market, and West has not provided "sufficient information" that suggests "significant market harm." *Id.* at 270; *see also* Shanice Harris, *Federal judges report broad adoption of AI tools*, https://tinyurl.com/yc7nvz3v. In 2020, West should have responded to ROSS with innovation. Instead, West chose litigation. Copyright rewards the former, not the latter.

## CONCLUSION

*ASTM* supports summarily reversing the district court's denial of ROSS's fair use defense.

Respectfully submitted,

/s/Mark S. Davies
Mark S. Davies

7

*Counsel of Record*

Anne M. Voigts
Ranjini Acharya
PILLSBURY WINTHROP
SHAW PITTMAN
2550 Hanover Street
Palo Alto, CA 94304

Kayvan Ghaffari
PILLSBURY WINTHROP
SHAW PITTMAN
Four Embarcadero Center,
22nd Floor
San Francisco, CA 94111

Andy LeGolvan
WHITE & CASE
555 S Flower Street,
Suite 2700
Los Angeles, CA 90071

Anna B. Naydonov
Kufere J. Laing
WHITE & CASE
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
mark.davies@whitecase.com

Yar R. Chaikovsky
WHITE & CASE
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306

Ji Won Oh
WHITE & CASE
1221 Avenue of the Americas
New York, NY 10020

Dated: May 11, 2026

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that (i) this document complies with the Court's supplemental briefing order because it does not exceed 7 pages double spaced in 12 point font excluding the portions exempted by Federal Rule of Appellate Procedure 32(f); (ii) I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit; (iii) the electronic copy of this brief has been virus scanned using CrowdStrike Falcon and no virus was detected; (iv) the text in the electronic brief is identical to the text in the paper copies.

Dated: May 11, 2026                    /s/ *Mark S. Davies*
                                       Mark S. Davies

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on May 11, 2026. All counsel of record are registered CM/ECF users, and service will be accomplished using the CM/ECF system.

Dated: May 11, 2026　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　*/s/ Mark S. Davies*
　　　　　　　　　　　　　　　　　　Mark S. Davies