# KIRKLAND & ELLIS LLP

Dale M. Cendali, P.C.
To Call Writer Directly:
+1 212 446 4846
dale.cendali@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

June 4, 2026

Patricia S. Dodszuweit
Office of the Clerk
21400 U.S. Courthouse
601 Market St.
Philadelphia, PA 19106

Re:     *Thomson Reuters Enter. Ctr. GmbH v. ROSS Intelligence, Inc.*, No. 25-2153 (3d Cir.)—Response to ROSS's Fed. R. App. P.28(j) Letter

Dear Ms. Dodszuweit:

Appellees write in response to ROSS's 28(j) letter, Dkt.198, concerning *Whyte Monkee Prods., LLC v. Netflix, Inc.*, No. 22-6086 (10th Cir. 2026) ("Op.").

*Whyte* is an out-of-Circuit decision involving facts nothing like those here.  There, a video clip of Joe Exotic was used in a documentary to comment about him; the copyright owner admitted the documentary was not a substitute for the video.  Op.66.  Here, a legal-research platform copied from Westlaw to substitute for Westlaw in the legal-research and training-data markets.

*Whyte* supports finding ROSS's use was not fair.  **First**, *Whyte* emphasized that "[i]f a secondary use poses a risk of substituting for or supplanting the original work, the first factor ordinarily will weigh against fair use."  Op.22.  ROSS's stated goal and effect was to substitute for Westlaw.  Dkt.88.at.11-12.  This is "copyright's bête noire."  Op.19.  *Whyte* also emphasized that commerciality concerns whether the defendant "stands to profit from *exploitation of the copyrighted material*."  Op.3.  Here, ROSS admits it is a for-profit company, and it used Westlaw Content to make money.  Dkt.88.at.49-50, 58-59.  When a use is substitutive, like ROSS's, this type of commerciality "'loom[s] larger' in importance."  Op.27.

**Second**, in contrast to the work in *Whyte*, where a camera was left running and the footage was not edited, Op.58, Appellees' attorney-editors engage in extensive selection, arrangement, and drafting of headnotes.  Dkt.88.at.29-32.

***Third***, it was "reasonably necessary" for the *Whyte* defendant to use a video of Mr. Exotic to comment on him.  Op.65.  ROSS did not comment on Appellees; its copying was unnecessary.

***Finally***, the *Whyte* plaintiff offered only "conclusory statements to the effect that there must have been some derivative markets."  Op.71.  Here, Appellees have detailed the harms to actual and potential markets for the original work and derivatives, and what will happen if ROSS's actions became widespread.  Dkt.88.at.54-55.  Whatever initial burden ROSS thinks Appellees had, Dkt.198.at.1, they discharged it, and it was ROSS's burden to show lack of harm. *See Dr. Seuss Enters., LP v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020).[1]

Sincerely,

Dale M. Cendali, P.C.

---

[1]  Also, ALI's Copyright Restatement, cited in *Whyte*, is the subject of considerable criticism.  *See* https://copyrightrestatement.org/restatement-flaws/.