# KIRKLAND & ELLIS LLP

601 Lexington Avenue
New York, NY 10022
United States

Dale M. Cendali, P.C.
To Call Writer Directly:
+1 212 446 4846
dale.cendali@kirkland.com

+1 212 446 4800

Facsimile:
+1 212 446 4900

www.kirkland.com

September 9, 2026

Patricia S. Dodszuweit
Office of the Clerk
21400 U.S. Courthouse
601 Market St.
Philadelphia, PA 19106

Re: *Thomson Reuters Enter. Ctr. GmbH v. ROSS Intelligence, Inc.*, No. 25-2153 (3d Cir.)—Response to ROSS's Fed. R. App. P.28(j) Letter

Dear Ms. Dodszuweit:

On behalf of Appellees ("TR"), we write in response to ROSS's 28(j) letter, Dkt.206, which argues that the U.S. D.O.J. statement in *In re OpenAI Inc. Copyright Infringement Litigation* supports ROSS. The statement concerns large language models, which are not at issue here, and does not support finding ROSS's copying was fair use for several reasons.

***First***, the statement says it supports a "robust AI industry." TR is part of that industry. It used Westlaw headnotes and key numbers to create its AI algorithm that finds relevant case law. ROSS illicitly took the Westlaw content and used it for the same purpose as TR: to create a legal research product. A robust AI industry requires protecting companies' investments from competing substitutes. Indeed, since the district court's decision in TR's favor, the AI market has only grown; a decision in TR's favor does not compromise the strength of this industry.

***Second***, the statement cites *Bartz v. Anthropic* regarding how fair use applies to generative models, a question not presented here. The *Bartz* court expressly distinguished this case, explaining that ROSS's use "was not transformative" because "what was trained—using a proprietary system for finding court opinions in response to a given legal topic—was a competing AI tool for finding court opinions." 787 F. Supp. 3d 1007, 1022 (N.D. Cal. 2025).

***Third***, the statement emphasizes the importance of market substitution, of which there is overwhelming evidence here. ROSS touted its platform as a replacement for Westlaw, did comparative advertising asking customers to consider, "ROSS or Westlaw?", and planned discounts for Westlaw customers. A6496-00, A6482; A4519; A4494-97; A4814:25-15:11, A4815:16-21:1; A4989:17-20. ROSS's use harmed the value that TR garnered from exclusive

access to its own content. And it harmed the licensing market for this content, of which TR put forward substantial evidence. *See* Dkt.173.at.50-51. Whatever persuasive value the statement may have it does not apply to the facts here.

Sincerely,

Dale M. Cendali

Dale M. Cendali, P.C.