**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

No. 25-2153

THOMSON REUTERS ENTERPRISE CENTRE GMBH;
WEST PUBLISHING CORP.,
*Plaintiffs-Appellees,*

v.

ROSS INTELLIGENCE INC.,
*Defendant-Appellant.*

---

On Appeal from the United States District Court for the District of Delaware, No. 1:20-cv-00613 (Bibas, J., sitting by designation)

---

**PROPOSED BRIEF FOR AMICUS CURIAE AUTHORS ALLIANCE IN SUPPORT OF DEFENDANT-APPELLANT'S PETITION FOR REHEARING EN BANC**

---

Yuanxiao Xu
Authors Alliance
2108 N ST # 8898
Sacramento, CA 95816
734-680-3980
xu@authorsalliance.org

Counsel for Amicus Curiae

November 9, 2026

## CORPORATE DISCLOSURE STATEMENT

Authors Alliance, a 501(c)(3) nonprofit organization, has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Dated: Nov. 10, 2026

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** iv

**STATEMENTS OF INTEREST** vi

**INTRODUCTION** 1

**ARGUMENT** 2

I. REVIEW BY THE FULL COURT IS NECESSARY BECAUSE THE DECISION CONFLICTS WITH PRECEDENT OF THE SUPREME COURT, THIS COURT, AND OTHER CIRCUITS 2

A. The Panel Made Necessity a Prerequisite of Transformativeness, Contrary to *Oracle*. 2

B. The Panel's Analysis Regarding Intermediate Copying Contravenes the Idea/Expression Dichotomy Protected Under *Feist*. 4

C. The Panel Wrongly Dismissed the Importance of the Second Factor. 5

D. The Panel Misread *Video Pipeline*, *Castle Rock*, and Supreme Court Precedent, by Treating Harm to a Work's Value as Arising from Competition Rather than Substitution by Its Protected Expression. 6

II. THE PANEL'S DECISION PRESENTS QUESTIONS OF EXCEPTIONAL IMPORTANCE 9

A. The Panel's Reasoning Reaches Every Author Who Learns from Existing Works. 9

B. The Error Will Not Likely Reach Review Again. 12

**CONCLUSION** 12

**STATEMENT OF COMPLIANCE WITH RULE 29** 13

**CERTIFICATE OF SERVICE** 14

## TABLE OF AUTHORITIES

Cases

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) 2
*Arica Inst., Inc. v. Palmer*, 970 F.2d 1067 (2d Cir. 1992) 7
*Assessment Techs. of Wis., LLC v. WIREdata, Inc.*, 350 F.3d 640 (7th Cir. 2003) 5
*Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) 6, 7
*BellSouth Advert. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.*, 999 F.2d 1436 (11th Cir. 1993) (en banc) 5
*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) 3, 7, 9
*Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132 (2d Cir. 1998) 6, 8
*Chapman v. Maraj*, No. 218CV09088VAPSSX, 2020 WL 6260021 (C.D. Cal. Sept. 16, 2020) 5
*Emerson v. Davies*, 8 F. Cas. 615 (C.C.D. Mass. 1845) (No. 4,436) 9
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) 1, 3, 4, 6
*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) 11
*Google LLC v. Oracle Am., Inc.*, 593 U.S. 1 (2021) 2, 3, 5, 6
*Oracle Am., Inc. v. Google LLC*, 886 F.3d 1179 (Fed. Cir. 2018) 3
*Romanova v. Amilus Inc.*, 138 F.4th 104 (2d Cir. 2025) 10
*Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303 (2d Cir. 1966) 4
*Sony Comput. Ent., Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000) 4
*Sundeman v. Seajay Soc'y, Inc.*, 142 F.3d 194 (4th Cir. 1998) 10
*Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, No. 25-2153 (3d Cir. Sept. 29, 2026) 2, 6, 7, 8
*Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151 (1975) 11
*Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191 (3d Cir. 2003) 1, 6, 7, 8, 9

Other Authorities

Louis Menand, *Believer*, New Yorker, Mar. 7, 2005 10

William F. Patry, *Patry on Fair Use* (2018) 5
Pamela Samuelson, *The Quest for a Sound Conception of Copyright's Derivative Work Right*, 101 Geo. L.J. 1505 (2013) 9

## STATEMENTS OF INTEREST

Authors Alliance is a 501(c)(3) nonprofit with over 3,500 members. Members of Authors Alliance hope to see their work widely read.

Its members are copyright owners, but they are also users of copyrighted works and entrants into markets already occupied by other authors. A rule that treats competition from noninfringing expression as cognizable market harm would therefore burden every form of authorship.

Authors Alliance files this brief with an accompanying motion for leave under Federal Rule of Appellate Procedure 29(b)(2). No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund its preparation or submission, and no person other than Authors Alliance, its members, or its counsel contributed such money.

## INTRODUCTION

The panel's decision construes copyright protection too broadly. Copyright "encourages others to build freely upon the ideas and information conveyed by a work." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350 (1991). A use that extracts only unprotected facts and ideas, without disseminating any of the work's protected expression, does not unlawfully usurp what copyright protects.

By requiring a copier to show it had no alternative to copying under the first factor, and by treating the extraction of unprotected facts and ideas as cognizable harm under the fourth factor, the panel departed from well-established precedent. Left in place, its reasoning would discourage the very authorship that copyright exists to promote.

ARGUMENT

## I. REVIEW BY THE FULL COURT IS NECESSARY BECAUSE THE DECISION CONFLICTS WITH PRECEDENT OF THE SUPREME COURT, THIS COURT, AND OTHER CIRCUITS

### A. The Panel Made Necessity a Prerequisite of Transformativeness, Contrary to *Oracle*.

The Supreme Court precedent directly contradicts the panel's statement of the law as requiring *necessity*—the *lack of alternative* to copying—as a prerequisite for the first factor weighing in favor of fair use.

The panel rejected ROSS's intermediate-copying argument on the ground that ROSS's copying was not necessary. Because ROSS "had access to the underlying judicial opinions and could freely copy them," the panel concluded the copying was not necessary. Slip op. at 20–21. The panel followed the same reasoning under the third factor, holding that ROSS "took more than necessary" from the plaintiff because "the underlying judicial opinions were freely available." *Id.* at 23.

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith* confirms that necessity is not relevant: the Court gave no weight to whether there existed any alternative to licensing Orange Prince to Condé Nast. 598 U.S. 508 (2023). In *Google LLC v. Oracle America, Inc.*, the Supreme Court held Google's copying was a transformative use while acknowledging that an alternative existed for

Google: "In principle, Google might have created its own, different system of declaring code." 593 U.S. 1, 34–35 (2021). Rather than requiring necessity, *Oracle* focused its first factor inquiry on the copier's purpose and the amount of original expression in the resulting work: "[C]opying a larger amount of material can fall within the scope of fair use where the material copied captures little of the material's creative expression or is central to a copier's valid purpose." *Id.* at 33.

The Court rejected the Federal Circuit's holding that Google could have achieved its compatibility objective by copying only the 170 lines of code "necessary to write in the Java language." 593 U.S. at 34 (quoting *Oracle Am., Inc. v. Google LLC*, 886 F.3d 1179, 1206 (Fed. Cir. 2018)). The dissent advanced the same argument as the Federal Circuit, faulting Google for copying to "avoid the drudgery in working up something fresh," *id.* at 57 (Thomas, J., dissenting) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994)), and noting that "Apple and Microsoft created mobile operating systems without using Oracle's declaring code." *Id.* at 55. This is the exact argument the panel tried to duplicate in finding ROSS's copying was not necessary because it could have used judicial opinions instead.

Similarly, *Feist* rejected the argument that a competitor was "obliged" to gather the same facts for itself rather than copy them, 499 U.S. at 344, explaining that "[i]t is just such wasted effort that the proscription against the copyright of

ideas and facts . . . [is] designed to prevent." *Id.* at 354 (quoting *Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303, 310 (2d Cir. 1966)).

**B. <u>The Panel's Analysis Regarding Intermediate Copying Contravenes the Idea/Expression Dichotomy Protected Under *Feist*.</u>**

Intermediate copying refers to the creation of a non-public, preliminary work as a step toward producing a different, public-facing work. Such copying is how a later creator extracts unprotected facts and ideas in a work, and courts have held it non-infringing when done to extract unprotectable elements.

The *Feist* Court accepted that Rural's directory, as a whole, was copyrightable. 499 U.S. at 361. Yet Feist's copying of 1,309 listings from that directory was not infringement, because "[n]ot all copying . . . is copyright infringement" and the listings Feist extracted were unoriginal facts. *Id.* at 361–64. Copyright law "encourages others to build freely upon the ideas and information conveyed by a work." *Id.* at 350.

Intermediate copying is noninfringing when it is undertaken to "gain[] access to the unprotected elements [of plaintiff's work]." *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 602 (9th Cir. 2000). Case law has long recognized that the non-public nature of an intermediate copy strongly favors fair use. Courts ask whether the copying was leveraged to get at unprotected facts or ideas, and whether the final work contains protected elements.

*See Bellsouth Advertising & Publishing Corp. v. Donnelley Information Publishing, Inc.*, 999 F.2d 1436 (11th Cir. 1993) (en banc) (holding that direct copying of a competitor's yellow pages to produce a competing directory was not an infringement when the publicly accessible final product did not incorporate the plaintiff's expression); *Assessment Techs. of Wis., LLC v. WIREdata, Inc.,* 350 F.3d 640 (7th Cir. 2003) (stating that copying real estate assessment data to extract unprotectable factual information was fair use because the ultimate use did not exploit any copyrighted expression). *See also*, *Chapman v. Maraj,* No. 218CV09088VAPSSX, 2020 WL 6260021, at *10 (C.D. Cal. Sept. 16, 2020) (finding that copying of a song in the creation of a new work for purposes of private artistic experimentation and seeking license approval did not infringe plaintiff's derivative rights); William F. Patry, Patry on Fair Use § 6:7 (2018) (copyright is only concerned with harm "caused by the use of expression"). ROSS notably did not use Westlaw headnotes for their expressive components, but only used the headnotes to access features that are functional and utilitarian.

### C. **The Panel Wrongly Dismissed the Importance of the Second Factor.**

The fair use factors are not weighed the same way in every case: "some factors may prove more important in some contexts than in others." *Oracle*, 593 U.S. at 19. The second factor is one such factor.

In *Oracle*, for example, the second factor shaped the analysis of the remaining factors. Google copied the code to get at the underlying functionality, rather than for "their creativity, their beauty, or even (in a sense) because of their purpose." *Id.* at 34. Even the dissent recognized that the majority's analysis "rests so heavily on this factor." *Id.* at 50 (Thomas, J., dissenting).

The panel wrongly dismissed the second factor as one that "'has rarely played a significant role in the' fair use determination." slip op. at 22 (quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220.). In fact, *Authors Guild*'s second factor analysis only stated that the dissemination of copies, though highly factual, still may constitute copyright infringement; it did not speak to the dissemination of works that contain no protectable elements. 804 F.3d at 220. *Feist* is more instructive: A competitor may freely take and disseminate unprotected facts. 499 U.S. at 349–50.

### D. The Panel Misread *Video Pipeline*, *Castle Rock*, and Supreme Court Precedent, by Treating Harm to a Work's Value as Arising from Competition Rather than Substitution by Its Protected Expression.

The panel held that ROSS harmed the "value" of Thomson Reuters's headnotes because, although "there may be no standalone market for headnotes," Thomson Reuters "touts the headnotes as a feature to attract users," and ROSS "appropriated the headnotes' value for finding and analyzing judicial opinions and

diminished their value as a draw for users to Thomson Reuters's legal-research platform." Slip op. at 24–25. That reasoning misstates both *Video Pipeline* and Supreme Court precedent.

The fourth factor asks whether the use harms the market or value of the work's *protected expressions* by substitution. *Campbell*, 510 U.S. at 591. Copyright only gives authors control over the market for their protected expression. *See Authors Guild v. Google, Inc.,* 804 F.3d 202, 224 (2d Cir. 2015) (cognizable market effect must be based on copyrightable aspects of what was copied, not on uncopyrightable aspects); *Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1078 (2d Cir. 1992) ("the relevant market effect is that which stems from defendant's use of plaintiff's 'expression,' not that which stems from defendant's work as a whole."). Where the alleged substitute is a different, noninfringing work, and the claimed rivalry depends only on unprotected similarities or general audience overlap, the economic injury does not constitute cognizable harm. As the Supreme Court has held, "the only harm to derivatives that need concern us . . . is the harm of market substitution." *Campbell*, 510 U.S. at 593.

The panel mischaracterizes *Video Pipeline* as recognizing any diversion of users as cognizable market harm, pointing solely to how the defendant drew users from the plaintiff's website. In *Video Pipeline,* the defendant's infringing clips were streamed to users, and users watched the infringing copies instead of plaintiff

Disney's trailers. 342 F.3d at 202–03. Every harm the Court identified flowed from the infringing copies themselves reaching the public. *Id.* As the Court explicitly noted in footnote 5, had Video Pipeline not shared any protected expressions with the public, such as only sharing a list of a film's actors or its rating, "the fair use doctrine might not be implicated at all because copyright protection does not include facts and ideas, but only their expression." Stated correctly, *Video Pipeline* found cognizable market harm *only* when protected expressions were shown to users so users no longer needed to go to the original source to access those protected expressions.

Under its analysis for the harm on the derivative market, the panel similarly mischaracterizes *Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.* The panel insists *Castle Rock* held that a market may exist whenever a copyright owner expresses intention to enter said market. Slip op. at 26. However, in *Castle Rock,* the copied materials were creative expressions at the core of copyright. Each "fact" in the defendant's trivia book was "in reality fictitious expression created by [plaintiff]." 150 F.3d 132, 139. The court clarified that its concern was "not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps or substitutes for the market of the original work." *Id.* at n.11. The derivative work right has an important role to play, but that role is not to shrink fair use. *See* Pamela Samuelson,

*The Quest for a Sound Conception of Copyright's Derivative Work Right,* 101 Geo. L.J. 1505, 1538 (2013).

Thomson Reuters remains free to pursue anyone who reproduces or distributes its headnotes, and Westlaw remains the only place users can read them. Whether or not ROSS were allowed to continue, the Westlaw headnotes would have remained exactly as much of a draw to prospective and current subscribers. But legal researchers now are poorer for the courts' rulings.

By abandoning *Video Pipeline*'s requirement that market harm considers only substitution from protected expressions, the panel created a conflict with *Video Pipeline*. Rehearing en banc is warranted to restore uniformity within the Circuit.

## II. THE PANEL'S DECISION PRESENTS QUESTIONS OF EXCEPTIONAL IMPORTANCE

### A. <u>The Panel's Reasoning Reaches Every Author Who Learns from Existing Works.</u>

Creativity depends on building from what came before. "Every book in literature, science and art, borrows, and must necessarily borrow, and use much which was well known and used before." *Campbell*, 510 U.S. at 575 (quoting *Emerson v. Davies*, 8 F. Cas. 615, 619 (C.C.D. Mass. 1845) (Story, J.)). Authors have long copied others' expressions as a part of their creative process. Hunter S.

Thompson typed out pages of The Great Gatsby "just to get the feeling, he said, of what it was like to write that way." Louis Menand, *Believer*, New Yorker, Mar. 7, 2005, at 27.

In *Sundeman v. Seajay Soc'y, Inc*., 142 F.3d 194 (4th Cir. 1998), a scholar was given a copy of Marjorie Kinnan Rawlings's unpublished first novel so that she could study it without damaging the fragile manuscript, and she then presented a critique that quoted it at length. *Id.* at 197–99. The Fourth Circuit held both the copying to provide the scholar with the manuscript and her reuse in a scholarly presentation were fair, explaining that "[i]t would severely restrict scholarly pursuit, and inhibit the purposes of the Copyright Act, if a fragile original could not be copied to facilitate literary criticism." *Id.* at 205–06.

Although the issue of intermediate copying is seldom litigated, it is exceedingly common. As the Second Circuit in *Romanova v. Amilus Inc*. observed, "[t]he most paradigmatically recognized transformative uses are rarely the subject of litigation, so that there are few precedential cases discussing them." 138 F.4th 104, 111 (2d Cir. 2025). Without clear protection of intermediate copying, numerous legitimate activities—such as a student copying a book page while drafting a research paper, or a designer copying a political photograph to create a parody—would be chilled by the threat of litigation.

The ROSS panel's decision makes it so that creators who copy a work only to extract its unprotected facts and ideas, and whose final work contains no protected expression, can still be liable for copyright infringement. Many creators, researchers and developers will abandon projects, or significantly narrow them, or pay for licenses the law does not require, when faced with such uncertainty.

Copyright law demands the opposite: "it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 527 (1994). And "[w]hen technological change has rendered its literal terms ambiguous, the Copyright Act must be construed in light of this basic purpose" of stimulating creativity "for the general public good." *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 156 (1975).

**B. <u>The Error Will Not Likely Reach Review Again.</u>**

A rule that chills creative activity rarely produces the cases that would allow a court to revisit it. Creators who forgo a project, or license material they were free to use, never become defendants. Individual authors, scholars and small developers often cannot afford to defend a shaky fair use claim. The panel's rule will therefore shape conduct throughout this Circuit with little chance of being tested again. As one of the handful of appellate decisions that address intermediate copying, it will

be cited by courts across the country. Rehearing en banc is essential for correcting the error.

## CONCLUSION

Because the panel's decision conflicts with Supreme Court and Third Circuit precedent and presents a question of exceptional importance, amicus respectfully urges the Court to grant the petition.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(b)(4) because it contains 2587 words.
2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Times New Roman.
3. Pursuant to Third Circuit L.A.R. 31.1(c), the text of the electronic brief is identical to the text of the paper copies, and a virus detection program, Malwarebytes 5.28 for Mac, has been run on the electronic file and no virus was detected.
4. Pursuant to Third Circuit L.A.R. 28.3(d) and 46.1(e), undersigned counsel is a member in good standing of the bar of this Court.

Dated: November 9, 2026

/s/ Yuanxiao Xu

*Counsel for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: November 9, 2026

/s/ Yuanxiao Xu

Yuanxiao Xu

*Counsel for Amicus Curiae*